UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| LARRY SWANSON, *Individually and on behalf of all others similarly situated*, | * * * * | Case No. 15-CV-5383(ENV) |
| Plaintiff, | * * | Brooklyn, New York December 18, 2023 |
| v. | * * | |
| MANHATTAN BEER DISTRIBUTORS, LLC, | * * * | |
| Defendant. | * * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

TRANSCRIPT OF CIVIL CAUSE FOR STATUS CONFERENCE
BEFORE THE HONORABLE TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:            STEVEN WITTELS, ESQ.
                             TIASHA PALIKOVIC, ESQ.
                             ETHAN ROMAN, ESQ.
                             Wittels McInturff Palikovic
                             18 Half Mile Road
                             Armonk, NY  10504

For the Defendant:           ALLEN B. ROBERTS, ESQ.
                             ADRIANA S. KOSOVYCH, ESQ.
                             Epstein Becker & Green PC
                             875 Third Avenue
                             New York, NY  10022

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

2

1        (Proceedings commenced at 11:32 a.m.)

2        THE CLERK:  This is civil cause for a status

3    conference, Docket 15CV5383, Swanson v. Manhattan Beer

4    Distributors, LLC, et al.

5        Before asking the parties to state their appearance,

6    I would like to note the following.  Persons granted remote

7    access to proceedings are reminded of the general prohibition

8    against photographing, recording, and rebroadcasting of court

9    proceedings.

10       Violation of these prohibitions may result in

11   sanctions, including removal of court issued media

12   credentials, restricted entry to future hearings, denial of

13   entry to future hearings, or any other sanctions deemed

14   necessary by the Court.

15       Will the parties please state their appearances for

16   the record, starting with the plaintiff?

17       MR. WITTELS:  Good morning, Your Honor.  This is

18   Steven Wittels from Wittels, McInturff, and Palikovic for

19   plaintiffs -- plaintiff, Mr. Swanson, and the proposed

20   classes.

21       MS. PALIKOVIC:  Good morning, Your Honor, this is --

22       MR. WITTELS:  Oh, I'm here with -- oh, yeah.

23       MS. PALIKOVIC:  Yes, this is Tiasha Palikovic.  I'm

24   a colleague of Mr. Wittels, also on behalf of the plaintiffs.

25       THE COURT:  Okay.

1          MR. ROMAN:  And Ethan Roman also on behalf of

2     plaintiffs.

3          THE COURT:  Okay.  Mr. Roman, have you entered your

4     notice of appearance?

5          MR. ROMAN:  Not yet, Your Honor.  That will be

6     forthcoming.

7          THE COURT:  Okay.  Thank you.  And your last name,

8     is it spelled like R-O-M-A-N?

9          MR. ROMAN:  Yes, Your Honor.

10          THE COURT:  Okay.  Thank you.  And for the

11     defendants?

12          MS. KOSOVYCH:  Good morning, Your Honor.  Adriana

13     Kosovych.  I'm joined with my colleague, Allen Roberts, from

14     Epstein Becker and Green.

15          MR. ROBERTS:  Good morning, Your Honor.  Allen

16     Roberts here.

17          THE COURT:  Good morning.

18          So we're here today following a lengthy history in

19     this case and some intervening Second Circuit case law, and as

20     you know, the most recent opinions by Judge Vitaliano.

21          And as Judge Vitaliano indicated, he referred the

22     matter to me for further pretrial proceedings.  And so, I need

23     to figure out what you guys need to do in terms of getting

24     this case to wherever it's headed.  So I'd like a little bit

25     of a procedural overview, please.

4

1          I'm obviously familiar with the basic nature of the

2     allegations from the motion practice, but an overview about

3     the case, where you think it's headed, and the current

4     procedural posture will be very welcome.  And from there, I'd

5     like to know kind of what discovery remains outstanding,

6     whether there is going to be class briefing, or collective

7     briefing, all those kinds of things.

8          So Mr. Wittels, would you like to start?

9          MR. WITTELS:  Yes.  Thank you, Judge.  Appreciate

10    the little intro that you've given here.  Yes, I was trying

11    with my colleagues this morning to see if it -- the case was

12    *Jarndyce v. Jarndyce*, I think, and we're debating whether it

13    was from Dickens or Melville as the oldest case that sort of

14    goes on forever.

15         This case -- I think it was *Jarndyce v. Jarndyce*,

16    but it's an eight year old case, which I have to say is now --

17    that means I have kids from probably grade school to

18    graduating law school at this point on this.  Almost.

19         We brought this case back in 2015, and now I just

20    want to give you a quick overview that it's a very peculiar

21    posture is probably a good word, because we have one of the

22    claims that's extant is very advanced, that's our deductions

23    claim.  And then the other part of the case, which has now

24    been resuscitated is the wage claim.

25         We brought the case in 2015 for a driver from

1    Manhattan Beer, called Larry Swanson, and the claims at the

2    time were that Mr. Swanson and a proposed class of -- and it

3    turns out to be more than 1,500 drivers, were underpaid their

4    wages -- overtime wages.

5         And the second part of the claim was that they were

6    not -- that their wages were illegally deducted.  That's our

7    deductions claim.

8         What the drivers do is they go out in -- throughout

9    the manhattan area, or -- well, I should say the metropolitan

10   area mostly, although they do go up to Dutchess and other

11   counties, delivering beer and other beverages, some soft

12   drinks, but mostly beer, to bodegas, to restaurants, et cetera

13   in the metro area.

14        Manhattan Beer is the largest -- one of the largest

15   beer distributors in the country, actually, and they have

16   major brands.  Coors, Heineken, things like that.

17        The claim that's now most advanced, and as you can

18   see from Judge Vitaliano's ruling in 2020, we have summary

19   judgment for Mr. Swanson singularly, on an individual basis,

20   that the defendant wrongfully deducted his wages.  And what

21   does that mean?

22        The drivers, when they deliver cases of beer or they

23   deliver kegs, they often deliver these things on pallets.  If

24   something doesn't come back in like a pallet, or there's a

25   wrong count on the number of cases delivered, what the company

6

1    did, and which Judge Vitaliano found was unlawful under the

2    labor law, was it deducted from that employee's wages, the

3    mistake, and they call it in Manhattan Beer parlance, a

4    shortage.

5              So they would -- if you didn't come back with a

6    pallet, or there was a mistake on an account, or broken

7    bottles, they took it out of the driver's hide.

8              And it would be like going into a supermarket and

9    hearing, you know, spill on aisle 4, and someone broke the

10   ketchup, and then they'd blame the worker who was putting the

11   ketchup up on the shelves.  So that was found to be illegal

12   under the labor law by Judge Vitaliano.

13             What we then did after that, and I'm going to just

14   stick with the deduction before I get back to the wage claim.

15   Once we got that ruling, we -- and actually, I think it was

16   the defendant's suggestion -- we ended up going to mediation

17   in -- from the end of 2019 -- no, I may have got that wrong.

18   2021, I think we ended up, early, in mediation.  That was

19   unsuccessful.

20             What happened was, in order to get to the mediation

21   and have some understanding of -- that it was going to go

22   forward on a class basis for settlement purposes, we needed to

23   get some idea what the damages were, because at that point --

24   until that point, we had been prevented from getting any

25   classified damages, and Magistrate Mann had ruled that we were

1    not entitled to any class discovery until we were -- obtained

2    class certification.

3            So that put us in a bind, but we were able to get,

4    voluntarily from defendants, what they produced and what --

5    which we thought were accurate statements as to how much the

6    company had taken from drivers in terms of the deductions, and

7    they gave us what was -- what were called shortage sheets.

8            Well, it proved out -- and this is actually public,

9    that the shortage sheets were not accurate in terms of the

10   actual numbers.  They were over -- they were -- well, I should

11   say, not exaggerated, but they were too large, and that more

12   calculations had to be done to figure out what the actual

13   deductions were that were taken.  We don't have that data.

14           So we were unable to reach an agreement on that.  So

15   where we are here, and that was two -- over two and a half

16   years ago.  Where we are now is we're in the same boat we were

17   when we left that mediation.

18           We don't know what the damages are and there's --

19   you know, we need discovery on the class.  We need class

20   discovery on the wage deductions to know what the amounts are.

21   We're not as concerned about liability damages because we've

22   got a ruling from Judge Vitaliano that applies to Swanson,

23   that the company unlawfully made deductions on the wages, so

24   we're not as concerned.  We could probably move for a partial

25   class certification under Rule 23(c)(4), but it wouldn't be

8

1    efficient.

2            It would be probably not an efficient use of the

3    Court's time to have it done piece meal.  So that's sort of

4    one bucket.  We need class discovery.  We need it on the wage

5    deduction claims.

6            We need to ascertain the exact amount, and then we

7    could move for both, you know, liability and we'd be able to

8    show the court a clear methodology for how we would ascertain

9    the damages for the class numbers.  So that's the deductions

10   claim.

11           On the wage claim, we originally, as I said, brought

12   a wage claim for the workers for not being paid overtime, not

13   at the correct rates.  We felt that commissions should have

14   been included in the basic rate.

15           The defendants moved to dismiss, and then later it

16   was a summary judgment motion to say that because of the motor

17   carrier exemption -- motor carrier vehicle act exemption, we

18   were not entitled to bring those federal claims.

19           Judge Vitaliano ended up -- we only got -- we only

20   had discovery on the motor vehicle claim.  We didn't get any

21   overtime wage data or anything like that.  So we litigated

22   that, we briefed it.  Judge Vitaliano granted summary judgment

23   and dismissed the federal claim.

24           On one of the reconsideration motions, however, on

25   -- that defendant made when they were faced with the

9

1    deductions, summary judgment, Judge Vitaliano invited the

2    plaintiffs to file motion for reconsideration on the wage

3    claim because of the intervening federal law that you

4    mentioned.

5         It was a Second Circuit decision which came down.

6    *Hayward* I think it was called, that came down favorably that

7    would allow a labor law claim, notwithstanding that the Motor

8    Vehicle Act had sort of quashed the federal aspects.  So you

9    could still have a New York Labor Law claim for overtime.

10        So we made that motion two and a half years ago.  We

11   were fortunate in getting a ruling now that in plaintiff's

12   favor, allowing the overtime claim to go forward, and that's

13   where the half hour -- mostly for the half hour lunch claim

14   that we -- that Mr. Swanson and other witnesses were aware of,

15   claim -- other drivers were aware of, say that they work

16   through without getting paid.  It's a very arduous job.  You

17   have to deliver all day.  You're driving very heavy trucks

18   with a lot of product on them, and in order to do their job,

19   we understood that the workers had -- didn't have time to take

20   lunch.

21        So we -- there now, in that case, at it's infancy,

22   it's almost as if it's day one, because we have -- we never

23   issued discovery demands in that case on the wage aspect.

24   Well, yeah.  And we have no responses on that.

25        And, you know, there have been no depositions.  We

1    have had some depositions on the motor vehicle aspect of it.

2    That was with one of their employees.  It was operations

3    manager McCarthy, but that was on the Motor Vehicle Act aspect

4    of it.

5            We do have one deposition from Mr. McCarthy on the

6    deductions, but again, it doesn't answer the question of how

7    much was taken illegally from their wages on the deductions.

8            So we need Your Honor's assistance, and we have some

9    ways perhaps to -- we'd like to try to get this expedited so

10   it's not another eight years, to try to get this resolved in a

11   much shorter fashion and not have to do it piece meal, because

12   we don't think it would make sense to have serial motions,

13   like having a partial motion for class, a partial summary

14   judgment motion, say, on liability for the class on the

15   deductions.

16           Rather than do it that way, we think it makes more

17   sense from the expeditious efficiency standpoint to have --

18   get our discovery finished for both cases.  And that would

19   entail asking Your Honor to set a expedited discovery process.

20           We think six months would be a good place to start

21   for that.  We think we could do it, if we get defendant's

22   cooperation, to get what we need from them on the wage case,

23   in six months, and now for them to answer the discovery

24   demands we previously issued seven years ago.

25           Actually, I think it was 2018, five years ago, on

1    the -- on the deductions claim that are outstanding.  We've

2    asked for all the data.  It's encompassed by this -- discovery

3    demands that are already issued.  They could start producing

4    that data so we could get to the number, how much did they

5    take.  And that includes getting from them all the wage -- we

6    need all the wage records from all the workers.

7        Why do we need that?  Because Judge Vitaliano in his

8    most recent decision said, you need to -- you can't do

9    averages.  You need to see the actual wage statements, and

10   we've done a lot of wage and hour cases, a lot of consumer

11   fraud cases where we get wage -- it's not unfamiliar to us.

12   They produce all the wage data and we have our experts look at

13   that.

14       So we would be able, once we got the wage data, to

15   figure out what their hourly rate was and whether it was

16   properly paid under the minimum wage law, which sort of is

17   involved in ascertaining whether -- what the actual wage claim

18   is for that time, as well as getting any other related data on

19   the wage claim as to how they account for the half hour, and

20   we believe they take it out of the wages, whether they monitor

21   whether people are taking lunch, those sorts of things.

22       So that -- those demands, we would issue shortly,

23   but in the meantime, we would get the deductions data, and

24   then quickly, in our responses, which is how much should you

25   take, they must know what the workers pay.

12

1          We'll give you another wrinkle as to why we need the

2     wage data.  We know that the defendant has spent -- and I'm

3     sorry for going on so long, but it's eight years I'm trying to

4     synthesize.

5          There are two -- there are -- we know that before

6     2013, April 2013, the company took the deductions right out of

7     people's payroll.  So it shows up on the pay stubs that they

8     took a deduction, and they actually used that -- I think the

9     term is shortage shows up on the wage, you know, statement.

10         So before April 2013, the company did it directly

11    from the wages, and after 2013, they changed their

12    methodology, and we allege, and it really doesn't matter what

13    we allege why they did it, but it seemed like they were doing

14    it to try to -- try to make it more lawful, which Judge

15    Vitaliano did not buy, and they changed it so that instead of

16    coming out of the wages, they would tell the worker at the end

17    of the -- when he came back from his truck, here's what

18    shortage -- the shortages, now we're going to give you an

19    invoice, now you have to pay it.

20         So they made the workers pay it separately to them

21    and in the shortage sheets that we got, there's different

22    columns.  Some might say paid, yes, no, and you can't figure

23    out from the shortage sheets exactly how much they took,

24    because the number is so much bigger.

25         We don't have the reconciliation, and we were told

13

1    here that there's some sort of reconciliation that went on.

2    We don't have the reconciliation data, so we can't tell

3    whether -- what they ended up actually paying.

4            So from 2013, April 2013, and prior, we can probably

5    from the wage data, ascertain the exact number, and we believe

6    it's about $330,000.  We kind of calculated that.  We don't

7    know if it's accurate.  Plus, of course, we have liquidated

8    damages, we've got interest, and we'd have to see how well

9    that figures in.

10           As for the post, again, we need the reconciliation

11   data so we can figure out exactly how much was taken after

12   that point.

13           Let me look at my -- from my counsel.  I'm not sure

14   if they want to chime in if I missed anything here.  No, I

15   don't think so.  So if you have further questions, I'm happy

16   to answer them and address anything you can think of, Your

17   Honor.

18           THE COURT:  So somewhere in the various filings,

19   there was a reference to the possibility that this case was

20   related to a case that I believe was before Judge Dunst,

21   *Cursio v. Manhattan Beer*.  They're obviously very different.

22   It appears at least, at first blush, that they are very

23   different time periods alleged, and I don't know if the pay

24   practices remain the same.  For example, your description

25   about how the deductions changed over time.

14

1          So a couple of questions.  Where are you trying to

2     go with Swanson, how does it relate to Cursio, and how many

3     plaintiffs do you have?  I mean, I just want to understand

4     where you see this all going in the *Swanson* case.

5          MR. WITTELS:  Right.  Thank you, Your Honor, and

6     thanks for reminding me that, Cursio.

7          Cursio came out of the blue, obviously, to us.  We

8     didn't -- we weren't notified by the plaintiff's counsel.  In

9     fact, we don't know them in that case, and they filed in the

10    same district here.

11         The Cursio case, as Your Honor points out, it's

12    different and it's perhaps overlapping.  That's what does

13    concern us and why we put in the notice of related case.

14         They have federal FLA -- SFLA claims and New York

15    Labor Law, but it appears they're trying to get around Judge

16    Vitaliano's dismissal of the federal claims by -- well, I'm

17    not going to speak for them, but they want to try to get

18    around the federal claims that we were unsuccessful on.

19         We know from some discovery we've gotten in our case

20    on the deductions, that there appear to be over 1,500 workers,

21    at least there were at, say from 2009 to -- and ongoing.  At

22    least maybe to when we were -- last got that data, 2021,

23    maybe, or -- so they're -- you know, there's a big -- there's

24    a pretty large number of workers.

25         We are concerned about the Cursio case, and in some

1    way we believe it has to be consolidated with ours, and then

2    we should be appointed interim class counsel because we -- you

3    know, in the class action world, it sometimes happens that the

4    defendant will make what's -- will take -- make moves to

5    sometimes settle for the lowest amount they can with another

6    party, which would settle out our claim.

7    So for example, if defendants here were to approach

8    Cursio and try to settle the New York Labor Law claims and

9    they had a broad release, we would be, you know, severely

10   disadvantaged and wouldn't know what was going on.

11   So we need to be appointed interim class counsel, we

12   believe, at some point here in the not too distant future so

13   that we are protecting the rights of the proposed classes.

14   But I can't really -- to be more specific, I can't

15   tell you -- I mean, *Swanson* wants to go forward and become --

16   THE COURT:  There's no class or collective in the

17   Cursio case.  Correct?

18   MR. WITTELS:  Well, not -- they just filed it.

19   THE COURT:  Correct.

20   MR. WITTELS:  You know, presumably --

21   THE COURT:  Well, I don't see how --

22   MR. WITTELS:  -- they -- they --

23   THE COURT:  -- the collateral impacts for you at

24   this juncture.

25   MR. WITTELS:  Well, if they -- if they were

1    approached about settling and then suddenly turned it -- I

2    mean, they've brought it as a class, I believe.  It wasn't

3    brought individually.

4                 THE COURT:  They brought it under collective action.

5                 MR. WITTELS:  Sorry?

6                 THE COURT:  I believe it's styled as a collective

7    action.

8                 MR. WITTELS:  Right, but they do have labor law

9    claims, and those would have to be done in the class, because

10   they did bring overtime claims under the New York Labor Law.

11   So those could --

12                THE COURT:  Yeah, they have (indiscernible) but

13   there's been no certification and there's been no motion, and

14   the case is two weeks old.  So --

15                MR. WITTELS:  Right.

16                THE COURT:  -- the possibility that this case is

17   suddenly going to have collateral impacts on you, I'm just not

18   fully seeing that on the horizon.

19                MR. WITTELS:  Well, I hope not.  Right.

20                But in terms of what Mr. Swanson -- you know, what

21   we want for Mr. Swanson is -- I mean, we had actually opt-ins

22   in our case early on before the case -- before the federal

23   claims were dismissed.  So there were other plaintiffs, you

24   know, who had come forward and wanted to join.

25                We don't have a collective in our case because we

1    don't have the federal FLSA claims.  So now it's labor law,

2    which is obviously not an opt-in class.

3         But we would -- if we were to file and we had, you

4    know, advised the Court on a number of occasions we wanted to

5    file for class cert, that was sort of the thought once we had

6    the deductions ruling, that we would go for class cert.

7         It -- we would only -- it would be under sort of

8    23(c)(4), which is for limited issues only for particular

9    issues.  That's the actual definition under the rule, could be

10   maintained as to -- you could maintain a class on particular

11   issues, but the only issue we had, because we didn't have the

12   damages, would be for liability and then rely on Judge

13   Vitaliano's summary judgment ruling.

14        But we don't think it's -- again, it's efficient in

15   thinking about it.  We've been, you know, stayed for two and a

16   half years in terms of filing that motion, and know that the

17   federal claims revived for overtime -- excuse me, the state

18   law claims were allowed for overtime, we think it just makes

19   more sense to do it in one fell swoop to try to get it, say,

20   on a six-month discovery track.  Have Your Honor, to the

21   extent you'd be willing to do this, monitor us every four to

22   six weeks and know where we are.  You'd know if we're getting

23   the discovery we need.

24        And then hopefully at the end of six months, have

25   the discovery that would enable us to move for a class cert

1    after that point, and also summary judgment for a class in the

2    deductions claim.  That's sort of the goal.

3              THE COURT:  Okay.

4              MR. WITTELS:  I hope -- if that doesn't answer that,

5    you know, I tried, Your Honor.

6              THE COURT:  No, I mean, it just -- I'm just trying

7    to get the lay of the land.  I don't think there's clear

8    answers.  Mr. Kosovych -- I mean, Ms. Kosovych, are you taking

9    the lead today, or is it Mr. Roberts?

10             MS. KOSOVYCH:  I am, Your Honor.

11             THE COURT:  Okay.  So where would you like to begin?

12   There's a lot to respond to.  Go ahead.

13             MS. KOSOVYCH:  There is a lot to respond to.  So we

14   agree in some respects and we disagree in others with what Mr.

15   Wittels has laid out so far.

16             So he is correct that where this case started is

17   very different from where it is now.  It started with FLSA

18   overtime claims.  It also included claims under the New York

19   Labor Law for the Wage Theft Act, wage notice and wage

20   statement claims.

21             Plaintiffs had pushed at the outset to, you know,

22   move for a collective certification at that point, and back

23   then, we had advocated, and Judge -- Magistrate Judge Mann had

24   agreed that the more efficient way to proceed was to first

25   engage in targeted discovery as to the ability of the named

1    plaintiffs to proceed with overtime claims under the FLSA New

2    York Labor Law -- New York Labor Law.

3            And that resulted in deferring any briefing on

4    collective certification issues and engaging in targeted

5    discovery as to the overtime claims, which ultimately led to

6    the -- just, you know, a dispositive motion practice that

7    resulted in the dismissal of the biggest part of this case,

8    the FLSA overtime claims and the New York Labor Law 195

9    claims, because based on the discovery that we undertook at

10   that point, we prevailed in showing that Larry Swanson had no

11   basis to proceed with those claims individually or as it

12   purports, a defendant of an FLSA collective.

13           Now -- and when I say the biggest part of the

14   claims, that was the $75 million claim that was at issue in

15   this case.  We were able to prevail to get rid of it.

16           As to what Judge Vitaliano has revised with his

17   latest decision, meaning the New York Labor Law overtime

18   claims, we expect that there will be a similar result here.

19           What we believe is that given Mr. Swanson's

20   pleadings, and based on the pay stubs that he received and has

21   continued to receive because he is still employed with

22   Manhattan Beer, targeted discovery as to the New York Law --

23   New York Labor Law overtime claims that Mr. Swanson has

24   continued to press forward with, discovery on that claim will

25   show that he has no ability to proceed with that claim and

1  that it's unsustainable as to the single named plaintiff in

2  the case.

3          He knows it based on what he pleaded in the

4  complaint with the two work weeks that he puts in there as

5  examples.  They show that he earned something like 300 percent

6  of what he was entitled to under the New York Labor Law for

7  any overtime hours that were worked, and he knows it based on

8  the pay stubs that he's continued to receive.

9          And so as to that claim, what we believe and what we

10  propose for the next steps, is to again engage in targeted

11  discovery, and it shouldn't take long at all, which would

12  include production by Mr. Swanson of the pay stubs that he

13  receives on a weekly basis and that he's been under a

14  continuing obligation to preserve, and that we serve very

15  targeted interrogatories and request to admit, which we expect

16  will show that he cannot prove that in any week in which he

17  worked any overtime hours, that he earned less than 1.5 times

18  the then applicable New York minimum wage, and he cannot

19  proceed as an individual plaintiff with these claims.

20          And therefore, he can't proceed as a class

21  representative for these claims at all.  If there is no named

22  plaintiff with a viable New York Labor Law overtime claim,

23  then there is no basis to engage in briefing on class

24  certification as to that claim, and there is no basis for him

25  to purport to proceed as a representative claiming to be

1    common and typical of a class that's out there.

2            And so in our view, the most efficient way to

3    proceed right now is to take a very short period of time,

4    engage in targeted discovery focused on that one New York

5    Labor Law that Judge Vitaliano just revived for Mr. Swanson,

6    and then engage -- and if Mr. Swanson, you know, responds to

7    discovery and the discovery shows what we believe it will,

8    then he can either voluntarily withdraw that claim or

9    discontinue or dismiss it, or we engage in dispositive motion

10   practice to get it dismissed.  I mean, because we believe

11   that's what his pay records will show.

12           As to -- yes?

13           THE COURT:  I was going to ask you about the

14   deductions claims.  Is that where you're headed?

15           MS. KOSOVYCH:  That is where I'm headed.

16           THE COURT:  Very good.  Thank you.

17           MS. KOSOVYCH:  Sure.  So one area in which we do

18   agree with Mr. Wittels is that we shouldn't engage in piece

19   meal motion practice here, and that's why I focused first on

20   talking about the New York Labor Law overtime claims, because

21   the remnants of the case, the wage deduction claims, we think

22   having any sort of discovery on a class basis is premature

23   until we figure out what claims are going to be going forward

24   to briefing for class certification.

25           The briefing on class certification should be

22

1    deferred until after we resolve the individual issue that Mr.

2    Swanson faces with the overtime claims, and his request for

3    discovery of a class on the wage reduction claim or otherwise

4    at all, is premature given that he hasn't been able to

5    establish yet, and there has been no briefing on the issue of

6    whether he will be able to establish commonality, typicality,

7    and predominance with respect to wage deductions or separate

8    transactions, and that's what he needs to show in order to

9    gain entitlement to any discovery for a class.  And so we need

10   to go through that briefing.  But again, that briefing should

11   be deferred until we know what claims are going to be going

12   forward.

13            THE COURT:  Okay.  One other question for you.

14            You mentioned you thought it could be relatively

15   straight forward.  How long of a period of time do you think

16   would be necessary to do targeted discovery regarding the New

17   York Labor Law overtime claim?

18            MS. KOSOVYCH:  Well, given -- only because of where

19   we are in the calendar right now, with the intervening

20   holidays, I would put it at around two months, give or take,

21   because what we're envisioning is really -- it is

22   straightforward.

23            It's production by Mr. Swanson of all of the pay

24   stubs that he's been receiving, and it's serving request to

25   admit any interrogatories that go to the heart of that claim,

1    which we think will dispositively show that he has no New York

2    Labor Law overtime claim that he could proceed with, either as

3    an individual plaintiff or as a purported class rep.

4            THE COURT:  You keep focusing on his production of

5    records.  What is your client prepared to do vis-a-vis

6    production of all of the wage and hour records?

7            MS. KOSOVYCH:  We can produce Mr. Swanson's pay

8    records as well.  We've analyzed them and I can tell you that

9    we've -- we already know what's in them, and just as one

10    example, from 2019 to now, the lowest earnings he received in

11    any one week was over $1,500.  And even if we were to assume,

12    and of course this isn't without conceding anything, but even

13    if he had worked 60 hours that week, 20 overtime hours, that

14    still would have put in at an hourly rate, for every hour

15    worked, of $25.81, which is more than twice what he was

16    entitled to.

17            THE COURT:  Okay.  So --

18            MS. KOSOVYCH:  Yeah.

19            THE COURT:  All right.  Thank you.  And then --

20            MS. KOSOVYCH:  Uh-huh.

21            THE COURT:  -- in terms of your sort of suggestion

22    of sort of service triaging it for -- sort of first focusing

23    on discovery for the New York Labor Law overtime claim, do you

24    quarrel with Mr. Wittels's representation with regard to the

25    value or approximate value of what the records may show as to

1    what they allege are these improper deductions?  I think he

2    mentioned about 330,000 or so.

3          Do you agree or disagree with those sorts of

4    numbers?  What are we talking about on a sort of class-wide

5    basis, if you know, with regard to the deductions claim?

6          MS. KOSOVYCH:  Yeah.  That $330,000 number did come

7    out of materials that we had voluntarily disclosed to Mr.

8    Wittels during the course of the mediation, and that mediation

9    by the way, spaned something like almost six months.  It was

10   from December of 2020 through May of 2021.

11         As to Mr. Swanson, himself, his grand total is a

12   whopping $769.68.  But the $330,000 figure, it does align --

13   it does track with what we have as to what a putative class

14   could be.

15         THE COURT:  Okay.  Because, you know, it does jump

16   off the page to me given the age of this case, that depending

17   upon what the discovery shows as to the New York Labor Law

18   overtime claim, whether there might be viable claim or not,

19   with these -- so many legal issues having been resolved, if

20   there is, you know, going to be further litigation regarding

21   this deductions claim, the 330,000, if it's the amount, does

22   strike me as something that we should work on settling instead

23   of continuing to litigate this case.

24         But that, you know, is no way assuming that Mr.

25   Swanson is not going to be able to make out his standing to

1    prevail as a class plaintiff on the New York Labor Law

2    overtime claim.

3              Given the -- this issue, however, that defendant is

4    raising, Mr. Wittels, what is your reaction to the targeted

5    discovery for two months or so?  We can have another meeting

6    and see where you are on the question of whether or not there

7    is an overtime issue here.

8              MR. WITTELS:  Yeah, Judge, can I have two minutes to

9    confer with my team on this before I get back to you, or --

10             THE COURT:  Yes, that's fine.

11             MR. WITTELS:  -- just separately?

12             THE COURT:  That's fine.

13             MR. WITTELS:  Thank you.

14             THE COURT:  You can go on mute for a minute or two.

15             MR. WITTELS:  Thank you.

16        (Pause)

17             MS. PALIKOVIC:  Your Honor, this is Tiasha

18   Palikovic.  If I may speak for plaintiff just for a little bit

19   before passing it back to my partner, Mr. Wittels?

20             THE COURT:  Okay.

21             MS. PALIKOVIC:  Okay.  Just briefly on the issue of

22   the New York Labor Law overtime claim and the lunch time

23   deduction issue.

24             Ms. Kosovych is -- she may be correct that Mr.

25   Swanson does not have a claim for overtime in that he was paid

1    more than the statutory time and a half minimum, the time and

2    a half minimum wage for his overtime.  That may be the case,

3    but you know, it's been eight years of litigation and we have

4    yet to receive all these payroll records.

5            So that's an issue that could easily be put to rest

6    by defendant, producing at minimum, Mr. Swanson's payroll

7    records, and it's, you know, a question of arithmetic.  If

8    they're correct, then he doesn't have that claim and we can

9    move on.  If not, we can take it from there.

10           But that's an issue that Mr. -- that -- pardon me.

11   That Judge Vitaliano noted in his order, and he said we, you

12   know, you can't make this determination through aggregates and

13   averages.  We need to see the payroll records to see if this

14   claim has legs or not, and I don't think this should be

15   terribly burdensome.

16           However, no matter how we resolve that issue, that

17   has no bearing on the lunchtime deduction claim.  Part of Mr.

18   Swanson's New York Labor Law overtime claim is that defendant

19   improperly deducted a half an hour every day for lunch time,

20   even though defendant knew that Mr. Swanson and other workers

21   like him weren't taking lunch and were working through lunch

22   every day.  But they were just sort of automatically, as a

23   matter of policy, deduct 30 minutes from the lunch.  We allege

24   that that's unlawful.  We allege that that was something that

25   affected the entire class.

27

1          That's the claim that we have never gotten to take

2    discovery on, because we were precluded from ever diving into

3    that because we were first focused on the application of the

4    motor carrier exemption.

5          And then when the -- when we lost on that issue and

6    the FLSA claims were dismissed, the New York Labor Law claims

7    with them.  So that claim has not been live, so to speak,

8    until the recent ruling from Judge Vitaliano.

9          So this is -- you know, this claim is in its infancy

10   and we need to take discovery on it, and the question of how

11   the overtime rate was calculated has no bearing on this.  So

12   that was my response to Ms. Kosovych's recitation.  Unless you

13   have any questions on that, I will pass it back to Mr.

14   Wittels.

15          THE COURT:  Wouldn't lunch -- wouldn't an unlawfully

16   deprived lunch period constitute overtime?

17          MS. PALIKOVIC:  It would, Your Honor, but if they

18   have -- if it -- they haven't been paying for these lunches,

19   then they would need to pay for their lunches.  That's

20   separate from the question of whether the overtime that they

21   do recognize was -- worked was paid -- was sufficiently paid.

22          THE COURT:  Are you alleging a discrepancy between

23   the wage and hour records and the number of hours that are

24   reflected in the wage statements you've seen based on that

25   lunch claim?

1          MS. PALIKOVIC:  We are not, Your Honor.  That's an

2     -- that's -- the claim was that they were not paying -- they

3     were not getting paid their regular rate plus commission.

4     That was before we lost on the motor carrier exemption.

5          So our claim -- it was a two-part claim and that's a

6     -- we allege that the overtime was not calculated at the

7     correct rate, and that we weren't paid for sufficient overtime

8     hours because lunchtime -- a 30-minute period of lunch time

9     was automatically deducted every day.

10          We lost on the calculation bit.  Judge Vitaliano

11     ruled that commissions do not have to be included in the

12     calculation of the regular rate, so now all that's left is the

13     New York Labor Law overtime, which is time and a half minimum

14     wage.

15          It's possible, if not likely, that Mr. Swanson has

16     always been paid at least the statutory minimum.  But as Mr.

17     -- as -- pardon me.  I keep saying mister.  As Judge Vitaliano

18     has noted, we just can't know that until we have all of the

19     payroll records in the record.

20          That is not something that we have been pushing.

21     That was not our understanding of what's been happening in

22     this case, but pursuant to his guidance, and because we've

23     been requesting Mr. Swanson's payroll records from the very

24     start of this case, we think that's an issue that can easily

25     be put to rest with documents that are already part of the

1    record because they shed light on other issues in this case.

2    So I hope that answers your question.

3              THE COURT:  You don't have the records from your

4    client?

5              MS. PALIKOVIC:  Pardon me?

6              THE COURT:  You don't have your own client's payroll

7    records from him?

8              MS. PALIKOVIC:  We have -- we have limited ones.  We

9    do not have -- he, like most people, does not keep all of his

10   records, and this is now spanning a period of 14 years if my

11   math is correct.  So, no, he doesn't have all of the records,

12   but we think defendant in all likelihood, does.

13             THE COURT:  Well, the defendants better, because if

14   they don't, they're going to have major problems under the

15   *Anderson* case, so -- and in light of the fact that there's

16   been a litigation hold for many years.

17             So this just seems, you know, like this should have

18   been done a long time ago.  I have nothing but deep admiration

19   for Judge Mann.  I don't know how this happened that the basic

20   payroll records for the named plaintiff have not been

21   exchanged, but I do take you up on your suggestion on behalf

22   of the defendant, that we do targeted discovery with regard to

23   the New York Labor Law overtime claim.

24             And whatever that -- whatever shakes out with the

25   numbers -- I mean, we do FLSA calculations many times per week

1    in my chambers because we have so many defaults, Cheeks

2    settlements, et cetera.  These are not difficult.  The parties

3    need to just get this done and figure out if there is in fact

4    some sort of overtime issue.

5           If there isn't, because he's paid so much that even

6    if you took out all the lunch period, depending upon what the

7    number of hours reported on the wage and hour statements

8    versus the payroll, who know -- I just -- it's impossible for

9    him to guess whether or not there's going to be a live New

10   York Labor Law claim.

11          But I agree with the defendant that this issue can

12   be resolved relatively quickly, but I remind the defendant

13   that the burden is on the employer, not the plaintiff, to

14   prove the wage and hour records, and that is one of the

15   reasons that I questioned your premise there, Ms. Kosovych.

16   The supreme court has been clear on this since the '40s, that

17   the defendant is responsible for keeping and maintaining all

18   of the relevant payroll records, and in the absence of

19   records, the plaintiffs recollection governs.

20          So defendant is ordered to produce any and all

21   records regarding the named plaintiff in this case.  We'll

22   have another conference in a couple months and find out where

23   you guys want to go with all this.  The case is so old.  My

24   counsel would be to find out if there is a way we can get this

25   resolved.

1           As soon as we know whether or not the plaintiff is

2     in a viable position to proceed on a classified basis with

3     regard to any overtime claims, whether they be lunch claims or

4     otherwise, will have to make the determination of whether or

5     not plaintiff is going to move for it.

6           But eight years in is quite late to be sort of, you

7     know, starting class certification practice if it's going to

8     be contested, and I would hate for this case to linger for

9     another five to seven years.

10          So I think what we should do is set a two-month

11    window to engage in this very limited discovery, and I'd like

12    another status conference in two months where the parties

13    report back about what their findings are and anticipated next

14    steps.

15          I have no idea if the parties might be willing to go

16    back to mediation, for example, if we're able to narrow what

17    issues are live in this case, of narrow and targeted

18    mediation, even if it's on a classified basis for the

19    deduction claims could be productive.

20          So I encourage everybody to keep an open mind as to

21    what we should do next, review the records, and let's have

22    another conference in two months.  Does that make sense to

23    you, Mr. Wittels?

24          MR. WITTELS:  Judge, I have a few comments, and

25    perhaps questions to Your Honor as well.

32

1          I want to clarify something on the deductions claim.

2     The number is not what Ms. Kosovych said in terms of $330,000

3     is the number.

4          THE COURT:  You said that number, sir.  I got that

5     from you.

6          MR. WITTELS:  Sorry?  No, right.  I said that --

7          THE COURT:  You said it.

8          MR. WITTELS:  -- but I said that was for -- and let

9     me clarify, because I probably wasn't clear.

10         What the -- that number came from a representation

11    by defendants as to the 2009 to 2013 period, April 2013, when

12    they changed how they took the deductions.  What they did

13    before 2013 was take it right out of the payroll, so they were

14    disclosive about that number.  And again, they didn't give us

15    the payroll records to verify it, but that's the number they

16    said was for the pre-2013 period.

17         We don't have any number from 2013 on, where they

18    made the workers pay it directly out of their own pocket after

19    they had already gotten paid.  So they would give them -- the

20    company would give them an invoice and say, pay this.  So

21    there was all sort of gyrations as to later how much each

22    person paid.  We don't have that number.

23         So we believe it's at least double, if not more, for

24    the later period, and they've not been willing to produce any

25    discovery on that.  So we need that claim, regardless of the

1    overtime and -- claim that's just been revived, goes forward.

2         So I would ask that Your Honor make the defendants

3    produce the responses to our discovery because we're entitled

4    to move forward when we have summary -- particularly because

5    we have summary judgment on a finding by Judge Vitaliano that

6    they unlawfully deducted wages from Mr. Swanson.  We know it

7    happened to everyone else.

8         They've admitted that because they gave us the

9    330,000 number for the pre-2013.  So we're entitled to

10   discovery for all the workers, for all the 1,500 workers.  But

11   they need to produce discovery and answer our demands.  How

12   did you deduct?  How did you calculate it?  Where's the data?

13        So that's one thing we'd like not to have any stay

14   on, and we want to move forward on it.

15        In terms of going back to mediation, you know, as

16   Ms. Kosovych said, it was six months.  We thought we would at

17   least be able to estimate with them, but they didn't want to

18   play an estimation game.  We thought we would, you know, come

19   to some sort of meeting of the minds.  We couldn't do it.

20        I don't know if Your Honor could help, but you know,

21   we'd be happy if they would be disclosive on the numbers to

22   try to reach a mediated result on a class-wide basis.  But so

23   far, we haven't seen that in eight years.

24        On the labor law claims, as Ms. Palikovic, my

25   colleague, was saying, even if they didn't pay -- even if for

1    some reason they're right that they -- Mr. Swanson was paid

2    for time and a half, he wasn't paid for the half hour, so I

3    don't see how that -- maybe you know something, Judge, I'm

4    missing.  He still didn't get the half hour and we're alleging

5    none of the other workers got their half hour of pay because

6    they work through lunch.  Have to eliminate --

7                THE COURT:  But I -- what I asked your colleague,

8    sir, was whether or not you actually quarrel with the time

9    records, because if they're not clocking out for lunch -- I

10   mean, is 30 minutes automatically deducted for -- but they're

11   clocked in and then they clock out?  Like, I don't know how

12   their payroll system works.  I've seen it done different ways

13   in different cases.

14               MR. WITTELS:  Right.  Right.  As we understand it,

15   everyone gets a half hour out whether they -- and there's no

16   clocking out.  They work through lunch, they have a half hour

17   taken out, even if they work through lunch.  So there's no

18   mechanism.  It would have to be the workers' testimonies, we

19   understand it, that I worked through lunch.

20               THE COURT:  But -- so do you -- so you do take issue

21   with their --

22               MR. WITTELS:  Yes.

23               THE COURT:  -- with their time records?

24               MS. PALIKOVIC:  We do, Your Honor.

25               MR. WITTELS:  Yes.

35

1          MS. PALIKOVIC:  I think I misunderstood your other

2     question.  We do -- we think there's been a -- they're all

3     wrong by a half hour is what -- is what our position is.

4          THE COURT:  Okay.  All right.  So I hear you on the

5     deduction claim and the need for discovery there.  I think I

6     misapprehended the time period that you believed that the --

7     you had the records, or the basic number for that -- you did

8     describe it as a rough calculation.

9          Ms. Kosovych, would you like to respond?

10          MS. KOSOVYCH:  Yes.  Thank you, Your Honor.

11          On the -- this half-hour lunch deduction claim, I'm

12     not really -- I think it's plaintiff's probably making much

13     ado about nothing perhaps, because even if we assume that a

14     half hour was taken out and that they weren't paid for that

15     half hour missed meal break, first of all, there's -- in New

16     York, you don't have to -- you don't have to even provide a

17     meal break, and there's no -- in other words, even if he

18     worked through and you added that half hour into his work

19     time, his pay rate is still well over one and a half times the

20     New York minimum wage, which means he still has no

21     entitlement.

22          The example that I had given you from 2019, even --

23     that was assuming that he worked 20 hours of overtime, which

24     would subsume any half-hour missed meal break per day, and

25     that still got him to $25 an hour, which is well over what the

1    statutory entitlement is.

2            With respect to the deductions, I also misunderstood

3    the question about the value and I agree -- the 330,000 is

4    limited to the actual deduction period of time, the 2009 to

5    2013.  We did disclose to the plaintiffs in the course of the

6    mediation, other figures that track for the remainder of the

7    period.

8            And I also wanted to make clear, just on the record,

9    Your Honor, we did produce Mr. Swanson's pay records through,

10   you know, the date of the production.

11           We were -- we have maintained and we will produce,

12   as we've been -- as Your Honor has ordered us, to produce the

13   balance of those pay records from the last date of disclosure,

14   but it's not true that we have never produced his pay records.

15   We did produce them early on in this case.

16           As to the wage deduction claim, Magistrate Judge

17   Mann ruled and nothing has disturbed that ruling, in April of

18   2019, that only if a class were to be certified as to that

19   claim, would at that point the Court reopen discovery to allow

20   class discovery, meaning pay records and everything else for

21   the putative -- or at that point, it would certified for a

22   class of individuals under the New York Labor Law.

23           At this point, there is no class certified, and so

24   we would submit that any class-wide discovery is premature and

25   unwarranted.

37

1          THE COURT:  I understand.  I also am trying to be

2    reasonably efficient here in terms of moving this very old

3    case along.  That being said, my -- what I'd like the parties

4    to do is exchange all relevant payroll records for the entire

5    period as to Mr. Swanson, dig into this question regarding the

6    overtime possibility.

7          If there is, you know, no -- the math is really

8    straightforward.  There's no, like, hiding the math.  If the

9    payroll records show certain number of hours per week, all in,

10   and there's no clocking out for the lunch break, and that's

11   kind of what I was getting at before, actually.

12         If he clocks in at 7:00, if he clocks out at 6:00,

13   and there's no 30 minutes automatically deducted for the lunch

14   break, and he's paid for those full period of -- those full

15   hours, whatever rate, if it ends up being more than one and a

16   half under the applicable New York Labor Law pay rate at the

17   time under the Second Circuit case law, I don't know that

18   there would be a viable overtime claim.

19         I agree with the defendants, it's not efficient to

20   do things piece meal, so I want the parties to report back in

21   two months where you are on this overtime issue, and we'll

22   take it from there in terms of next steps.

23         So today is December 18th.  Ms. Chan is there a date

24   that we could provide the parties the week of February 12th or

25   February 19th?  Oh, no.  February 19th, I think I'm going to

38

1    be at a conference overseas, actually.  Is there a date we can

2    provide the week of February 12th to touch base with the

3    parties about where they are, Ms. Chan?

4            THE CLERK:  Sure.  Could do February 13th at 3:45?

5            THE COURT:  Does that work for the plaintiff?

6        MR. WITTELS:  I think it does, Your Honor, but I do want

7    to just ask you something else if I may.

8            THE COURT:  I'm trying to set a schedule, sir.

9            MR. WITTELS:  Once we -- right.  Right.

10           THE COURT:  So --

11           MR. WITTELS:  After we set the date.

12           THE COURT:  Ms. Kosovych, does that work for the

13   defendants?

14           MS. KOSOVYCH:  Yes, it does, Your Honor.  Thank you.

15           THE COURT:  Okay.  So we'll have our next conference

16   February -- is it 13th at 3:15?  Is that correct, Ms. Chan?

17           THE CLERK:  Correct, Judge.  3:45.

18           THE COURT:  3:45.  My bad.  Okay.  Thank you.

19           All right.  So what I'll -- and in that time, full

20   exchange of all relevant payroll records, and we'll see where

21   we are on the overtime claims.

22           What were you going to add, Mr. Wittels?

23           MR. WITTELS:  Yeah.  Yes, I wanted to ask Your Honor

24   two things.  On that claim, though, what Your Honor -- if I

25   understood what you said was, if he worked -- showed up at

1    7:00 in the morning, worked until 6:00, and was paid for all

2    hours without any deduction, then the Second Circuit law would

3    be, he's been paid correctly because he got time and a half.

4          But if they took out a half an hour for lunch, and

5    he didn't get paid for that, whether -- he got paid nothing

6    for that half hour because they took it out, am I -- are we

7    right here that he still -- he and all the other workers who

8    say they didn't get paid for that half hour and that it was

9    taken out of their pay records, out of their payroll, they

10   would still have a viable claim for that half hour at time and

11   a half, minimum wage.  Do you agree with that analysis or

12   theory?

13         THE COURT:  I mean, as Judge Vitaliano observed in

14   his most recent order, when people are paid on an hourly

15   basis, they actually have to be compensated for each hour

16   worked.  I do not know what these payroll records look like.

17   I'm not going to opine on the legal fact of their payroll

18   records when I have not seen a single piece of paper on this

19   case that would -- other than what's on the docket.  You know,

20   I haven't looked at the pay stubs and whatnot.

21         MR. WITTELS:  Sure.

22         THE COURT:  So, you know, I don't know what this

23   review of the records will show.

24         Ms. Kosovych, do you have a view?

25         MS. KOSOVYCH:  They will show that he was paid at

40

1    least the statutory wage that was required for each and every

2    hour, even if they included that half hour lunch break.

3    That's what we believe the records will show.

4              MR. WITTELS:  So you're saying that he -- that the

5    company does not take out a half hour for lunch, which is what

6    we've been told by -- and understood, the --

7              MS. KOSOVYCH:  No.  What I'm saying is, if he takes

8    the total compensation that he earned in that work week, and

9    you divide it by the number of hours that he worked, plus .5,

10   he still earned minimum wage or 1.5 times minimum wage for

11   every single hour, which is what New York Labor Law requires.

12             MR. WITTELS:  Okay, that -- that seems different

13   from our theory, so I guess we'll have to see whether they

14   take out the half hour or not, and the judge will have to

15   weight it, because as you said, Judge Vitaliano said, you have

16   to be paid for every hour you work if you're paid on an hourly

17   basis.  We say he wasn't paid for every hour worked.  They

18   just -- Ms. Kosovych just represented he was, but I don't know

19   that the records show that, so we'll have to see.

20             As for, Judge, the second part, can we not be -- can

21   we progress on that, because we're waiting two months, two and

22   a half months.  We know we have summary judgment already.  We

23   know that we don't have the full pay -- we don't have the full

24   deductions records.

25             Can you order them to respond to our discovery,

41

1    which is now outstanding for five years, so we can get the

2    data to show how much was deducted unlawfully from April 2013

3    and on, which includes producing all the payroll records for

4    all the class?

5              If we are handicapped by that earlier ruling by

6    Judge Mann --

7              THE COURT:  I'm not going to order all the payroll

8    records for all the class if there isn't going to be an

9    overtime claim for the whole class.  That's the point.

10             MR. WITTELS:  So, we're not --

11             THE COURT:  I don't know if the deduction records

12   can be produced separately.  But no, I'm not doing that unless

13   he's -- I don't know exactly how these records are going to be

14   able to be produced.

15             MR. WITTELS:  Well, Judge, what I'm saying is --

16             THE COURT:  And your argument is that they stopped

17   -- they stopped including the deductions in the payroll

18   records as of April 2013.

19             MR. WITTELS:  Right.  But they still took money from

20   workers.  It's not like they didn't --

21             THE COURT:  I understand, but that's not the payroll

22   records.

23             MR. WITTELS:  Right.

24             THE COURT:  So I'm not going to order all the

25   payroll records for all the class for the whole time period if

1    that's not --

2             MR. WITTELS:  But -- but --

3             THE COURT:  -- proportional.

4             MR. WITTELS:  -- well, but -- but from December,

5    when we go back to -- back from 2019 until April 2013, we

6    don't have the verification that the number is $330,000

7    because we don't have the payroll records.  We know it's in

8    there, so that -- we would ask at a minimum, they should

9    produce for that period.

10            And then for the period 2013 on, give us the data

11   that shows how much they paid.  They know -- I mean, they're

12   taking money from the workers.  They didn't stop the

13   deductions policies.  They argued in the summary judgment

14   motion to Judge Vitaliano that they were allowed to do it.  So

15   there's not a question as to whether the workers paid it.

16   They paid it pre, and they paid it post.  They just paid it in

17   different ways.

18            But pre 2013, they have payroll records that show

19   exactly how much they took, and they've refused to --

20            THE COURT:  I understand.

21            MR. WITTELS:  -- produce them.

22            THE COURT:  I understand, but you're -- what I'm

23   reacting to is your suggestion that I order they produce all

24   the payroll records for all the employees.  I don't think

25   that's relevant and proportional.  I also don't think that

43

1   ordering them to respond to your discovery request from five

2   years ago is very meaningful, because I don't know which

3   discovery request you're referring to.

4           If you have --

5           MR. WITTELS:  Okay.

6           THE COURT:  -- specific documents that you think

7   need to be produced in furtherance of the deductions, I don't

8   see --

9           MR. WITTELS:  Yes, we do.

10           THE COURT:  -- I do not see a need to continue to

11   stay discovery on that issue.  But as I sit here, I don't have

12   a clear understanding of precisely what records they would

13   need to produce.  It sounds like they would need to produce

14   the payroll up to April 2013, and then after --

15           MR. WITTELS:  Correct.

16           THE COURT:  -- April 2013, they'd have to produce

17   these invoices.  Is that correct, Ms. Kosovych?

18           MS. KOSOVYCH:  Yes, but for the pre-2013, yes, the

19   payroll records.  As to records relating to separate

20   transactions for shortages following April 2013, it would be

21   records out of finance.

22           THE COURT:  Okay.  So the issue, Mr. Wittels, that

23   Ms. Kosovych raised, is that the propriety of producing class-

24   wide discovery prior to the -- prior to class certification.

25   So, you know, at this juncture, we don't know precisely what

44

1    claims are going to be the subject of your class certification

2    motion until we resolve this New York Labor Law issue.  I

3    really don't think two months in the grand scheme of this

4    litigation is a particularly long length period of time, Mr.

5    Wittels.

6              MR. WITTELS:  Well, what I'm saying, Judge, is,

7    you're right.  Two and a half months in eight years is not a

8    long time, but my point being, even if we lost the labor law

9    claim, we still have a viable deductions claim.  So the fact

10   that they're --

11             THE COURT:  But you might lose class certification

12   motion.  We don't know.

13             MR. WITTELS:  Well, let -- if I may on that point?

14   Respectfully, and I hate to throw in the, I've been doing this

15   40 years type of thing, but I've never had a judge who said,

16   you can't get class discovery before class certification.  It

17   doesn't work that way.  And Judge Mann, I don't know why she

18   did it, but you can't certify a class without getting class

19   discovery.  I mean --

20             THE COURT:  I know why she did it.  It's quite clear

21   why she did it.  She had the genuine concern that your motor

22   carrier exemption claim was not viable.  And from reading the

23   docket, it's extremely clear that she did not think it was

24   going to be efficient, relevant, or proportional to order full

25   discovery at an early stage in the case.  So she ordered the

1     stay.

2              MR. WITTELS:  Well --

3              THE COURT:  I'm not -- sir.  Sir.

4              MR. WITTELS:  -- well, but --

5              THE COURT:  Sir.

6              MR. WITTELS:  Yes, Your Honor.  Yes, Your Honor.

7              THE COURT:  Two months is not a long period of time.

8     I'm not saying I'm not going to order the deductions.

9              What I would encourage the parties to do in the next

10    two months, is really dig deep on the question of this New

11    York Labor Law overtime claim, make a determination as to

12    whether or not you can, in good faith, proffer your client as

13    having standing with regard to that claim.

14             If you seek to file class certification motion on

15    the two claims, so be it, and perhaps some discovery in

16    anticipation of those motions will be appropriate.

17             If not, you need to go to mediation and resolve this

18    deductions claim.  That's where I see this going as the most

19    efficient course.  You guys have been in full battle mode for

20    eight years.  It's not working.  The case is never going to

21    get resolved, and my belief is that if your client does not

22    have standing on the New York Labor Law overtime claim, we'll

23    know that pretty soon.

24             MR. WITTELS:  Right, Judge.  Judge, look, we were

25    very successful with the chief magistrate judge in the Eastern

46

1    District -- well, she's now the chief magistrate judge, in

2    settling a class labor -- wage and hour claim.  She was very

3    helpful.

4            We'd happy to -- be happy to have you, you know,

5    mediate our case, because we didn't succeed with the private

6    mediator, six months.

7            But one thing that Judge Mann did say, and I haven't

8    quoted that, but she said it later at a November 2020

9    conferences, she said, certain -- and this when we were

10   pushing for them to give us those shortage sheet, and we

11   wanted them underacted.  We thought they were accurate.

12           We later found out they weren't what we needed, and

13   that was unfortunate, because we were sort of led down a

14   rabbit hole.  She did say certain -- she said, let's talk

15   about pre-mediation discovery.  There's not going to be a

16   chance of settling this case if plaintiff goes into mediation

17   without having an idea of what the potential scope of the

18   class is here.  She said that.

19           And then she said, certainly, the plaintiff is

20   entitled to the discovery necessary in order to make a Rule 23

21   motion.  She said that on the record, November 22nd --

22           THE COURT:  And I just said the same thing.

23           MR. WITTELS:  -- 2020.

24           THE COURT:  And I just said the same thing.  You may

25   well be --

1          MR. WITTELS:  Right.

2          THE COURT:  -- entitled to seek class certification

3     discovery once we know what the scope of your motion will be.

4          MR. WITTELS:  Okay.  Well, thank you.  Thank you

5     very much.  If the defendants want to agree to have you

6     mediate, we're happy to come down there and mediate.  We just

7     need the data.  We've settled, you know, oodles of class

8     actions.  I don't mean to be that facetious, but I mean, we're

9     -- we know how to settle a case if we get a defendant who's

10    reasonable and comes to the table.  So far, respectfully, that

11    has not occurred.

12         THE COURT:  I understand.

13         Ms. Kosovych, is there anything you'd like to say in

14    response?

15         MS. KOSOVYCH:  No, thank you, Your Honor.

16         THE COURT:  All right.  So we are scheduled to

17    regroup in two months, and I fully expect that parties will

18    have done full discovery as to the named plaintiffs, wage and

19    hour records, and that the parties will be prepared to address

20    the viability of proceeding with the New York Labor Law claims

21    in this case, and hopefully have had an opportunity to meet

22    and confer, and talk about realistic next steps.

23         If we're going to class certification motions, so be

24    it.  Rest assured, Ms. Kosovych, I am very -- I am very likely

25    to order some class certification discovery if it is part of

1   the claims that Judge Vitaliano already found viable.  You can

2   make a choice as to what's going to be the most efficient path

3   for your client.

4        If those claims are viable and they're going to cost

5   your client a lot of money, might be better to put our cards

6   on the table and actually try to resolve this case before you

7   can -- before you bill another five years of litigation to the

8   client.

9        Given the scope of the deductions claim, it

10  certainly seems like that's a claim that could settle.  The

11  overtime claims obviously could be a completely different ball

12  game depending upon the number of hours that they're claiming

13  are due and owing.

14       So I get it.  It's complicated for both

15  perspectives, but keep in mind, pick your battles carefully.

16       So anyway, we will get together in February, at 3:45

17  on February 13th, and I hope that you all have a great holiday

18  season.  Take care.

19            MR. WITTELS:  Thank you, Judge.

20            MR. ROBORTS:  Thank you, Your Honor.

21            MS. KOSOVYCH:  Thank you, Your Honor.

22            MR. WITTELS:  Thank you.

23            MS. PALIKOVIC:  Thank you, Your Honor.

24       (Proceedings concluded at 12:41 p.m.)

25

49

1          I, CHRISTINE FIORE, court-approved transcriber and

2     certified electronic reporter and transcriber, certify that

3     the foregoing is a correct transcript from the official

4     electronic sound recording of the proceedings in the above-

5     entitled matter.

6

7

8     _____          December 22, 2023

9          Christine Fiore, CERT

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25