**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

LARRY SWANSON,
Individually and on Behalf of All Others
Similarly Situated,

                                        Plaintiff,

        v.

MANHATTAN BEER DISTRIBUTORS,
LLC AND SIMON BERGSON,

                                        Defendants.

---

Case No. 15 Civ. 5383 (ENV) (RLM)

---

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR PRELIMINARY APPROVAL OF THE**
**CLASS ACTION SETTLEMENT AND RELATED RELIEF**

---

**WITTELS MCINTURFF PALIKOVIC**
Steven L. Wittels
Tiasha Palikovic
Ethan D. Roman
305 BROADWAY, 7TH FLOOR
NEW YORK, NEW YORK 10007
Telephone: (914) 775-8862
slw@wittelslaw.com
tpalikovic@wittelslaw.com
edr@wittelslaw.com

*Counsel for Plaintiff and the Class*

Dated: November 14, 2025

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................................... 1

I.   FACTUAL AND PROCEDURAL BACKGROUND .........................................................2

    A.   Factual Allegations and Plaintiffs' Investigation........................................................ 2

    B.   Litigation and Settlement Negotiations ...................................................................... 3

    C.   The Settlement Amount and Allocation Formula ........................................................ 4

    D.   Eligible Class Members ............................................................................................... 5

    E.   Distribution of the Settlement Fund............................................................................ 6

    F.   Releases ....................................................................................................................... 6

    G.   Named Plaintiff Service Award ................................................................................... 6

    H.   The Settlement Administrator ...................................................................................... 7

II.  RULE 23 CLASS ACTION SETTLEMENT PROCEDURE................................................8

III. PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED.......................9

    A.   Adequacy of Representation: Both Plaintiff and Counsel Are Zealous and Qualified Advocates for the Class ............................................................................ 11

    B.   Adequate Relief for the Class: The Settlement Amount Is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation ................... 12

        1.   Litigation Through Trial Would Be Complex, Costly, and Long (*Grinnell* Factor 1) ............................................................................................ 13

        2.   Plaintiff Faces Real Risks if the Case Proceeds (*Grinnell* Factors 4 and 5)......... 14

        3.   Maintaining the Class Through Trial Would Not Be Simple (*Grinnell* Factor 6) ............................................................................................ 15

    C.   Effectiveness of the Proposed Method of Distributing Relief: Direct Payments to Class Members Without a Claims Process Is the Preferred Method and the Parties' Allocation Plan Is Reasonable and Fair ..................................................... 16

    D.   The Terms of Any Proposed Award of Attorneys' Fees: Class Counsel's Fee and Expense Award Was Negotiated at Arm's Length and Is Well Within the Norms of this Circuit ..................................................................................................... 17

E.    Equitable Treatment of Class Members Relative to One Another: The Parties' Allocation Plan Correlates with Actual Damages and Is Reasonable ................................. 19

F.    The Remaining Grinnell Factors Demonstrate That the Settlement Is Fair, Reasonable, and Adequate ........................................................................................ 19

    1.    The Reaction of the Class Is Too Early to Gauge and Therefore Neutral ............ 19

    (*Grinnell* Factor 2) ......................................................................................... 19

    2.    Discovery Is Advanced Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3) .......................................................... 20

    3.    Defendants' Ability to Withstand a Greater Judgment  (*Grinnell* Factor 7) ........ 21

    4.    The Settlement Amount Is Significant, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation  (*Grinnell* Factors 8 and 9) ....... 21

IV.   THE CLASS SHOULD BE CONDITIONALLY CERTIFIED ............................................22

A.    Numerosity................................................................................................... 24

B.    Commonality................................................................................................. 25

C.    Typicality ..................................................................................................... 26

D.    Adequacy of the Named Plaintiffs and Proposed Class Counsel ................................. 27

E.    Certification Is Proper Under Rule 23(b)...................................................................... 28

    1.    Common Questions Predominate ......................................................... 28

    2.    A Class Action Is a Superior Mechanism for Adjudicating Claims ..................... 30

V.    THE NOTICE PLAN EXCEEDS THE APPLICABLE REQUIREMENTS AND SHOULD BE APPROVED.................................................................................................31

CONCLUSION ....................................................................................................... 34

# TABLE OF AUTHORITIES

**Cases**

*Abarza v. Spirit Pharms. LLC*,
No. 23 Civ. 3637 (JMW), 2025 WL 1519147 (E.D.N.Y. May 28, 2025) ........................ *passim*

*Bryant v. Potbelly Sandwich Works, LLC*,
No. 17 Civ. 7638 (CM) (HBP), 2020 WL 563804 (S.D.N.Y. Feb. 4, 2020) ........................... 21

*Caccavale v. Hewlett-Packard Co.*,
No. 20 Civ. 974 (NJC) (ST), 2024 WL 4250337 (E.D.N.Y. Mar. 13, 2024) ................... *passim*

*Campbell v. Bukhari Grp. LLC*,
No. 22 Civ. 2813 (PK), 2025 WL 1874485 (E.D.N.Y. July 8, 2025)............................... *passim*

*Campos v. Kijakazi*,
No. 21 Civ. 5143 (VMS), 2023 WL 8096923 (E.D.N.Y. Nov. 20, 2023) ............................... 13

*Cazares v. AVA Rest. Corp.*,
No. 15 Civ. 477 (KAM) (RML), 2017 WL 1229727 (E.D.N.Y. Mar. 31, 2017) .............. 29, 31

*Charles v. Opinion Access Corp.*,
No. 16 Civ. 6868 (KAM) (JO), 2020 WL 13659084 (E.D.N.Y. May 5, 2020)....................... 20

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974).......................................................................... 10, 11, 21

*Consol. Rail Corp. v. Town of Hyde Park*,
47 F.3d 473 (2d Cir. 1995).......................................................................................... 24

*Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*,
502 F.3d 91 (2d Cir. 2007)........................................................................................... 11

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
502 F.3d 91 (2d Cir. 2007)........................................................................................... 28

*DDMB, Inc. v. Visa, Inc.*,
No. 05 MD 1720 (MKB), 2021 WL 6221326 (E.D.N.Y. Sept. 27, 2021)............................... 27

*Denney v. Deutsche Bank AG*,
443 F.3d 253 (2d Cir. 2006)........................................................................................ 27

*Duffy v. Illinois Tools Works, Inc.*,
No. 15 Civ. 7407 (NGG) (SIL), 2024 WL 1174539 (E.D.N.Y. Mar. 19, 2024)...................... 33

iii

*Everetts v. Personal Touch Holding Corp.*,
    No. 21 Civ. 2061 (JMA) (ARL), 2025 WL 942800 (E.D.N.Y. Mar. 28, 2025) ...................... 15

*Faroque v. Park W. Exec. Servs.*,
    No. 15 Civ. 6868 (DLI) (CLP), 2020 WL 9812905 (E.D.N.Y. Jan. 29, 2020)........................ 21

*Flores v. CGI Inc.*,
    No. 22 Civ. 350 (KHP), 2022 WL 13804077 (S.D.N.Y. Oct. 21, 2022) ................................ 26

*Flores v. Mamma Lombardi's of Holbrook, Inc.*,
    104 F. Supp. 3d 290 (E.D.N.Y. 2015)............................................................................ 14, 31

*Frank v. Eastman Kodak Co.*,
    228 F.R.D. 174 (W.D.N.Y. 2005) .......................................................................................... 21

*Fujiwara v. Sushi Yasuda Ltd.*,
    58 F. Supp. 3d 424 (S.D.N.Y. 2014) ..................................................................................... 20

*Goldberger v. Integrated Res., Inc.*,
    209 F.3d 43 (2d Cir. 2000)..................................................................................................... 17

*Green v. Wolf Corp.*,
    406 F.2d 291 (2d Cir. 1968)................................................................................................... 30

*Hasemann v. Gerber Prods. Co.*,
    331 F.R.D. 239 (E.D.N.Y. 2019) .......................................................................................... 26

*Hasemann v. Gerber Prods. Co.*,
    No. 15 Civ. 2995 (EK) (JAM), 2025 WL 2773748,  (E.D.N.Y. Sept. 29, 2025) ...................... 7

*Hunter v. Blue Ridge Bankshares, Inc.*,
    No. 23 Civ. 8944, 2025 WL 1649323 (E.D.N.Y. June 11, 2025)..................................... *passim*

*Iglesias-Mendoza v. La Belle Farm, Inc.*,
    239 F.R.D. 363 (S.D.N.Y. 2007)..................................................................................... 24, 31

*In re 3D Sys. Sec. Litig.*,
    No. 21 Civ. 1920 (NGG) (TAM), 2023 WL 4621716 (E.D.N.Y. July 19, 2023).................... 27

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000)....................................................................... 13, 20, 21

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
    No. 05-cv-10240 (CM), 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ................................... 16

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
   343 F. Supp. 3d 394 (S.D.N.Y. 2018) .................................................................. 16

*In re GSE Bonds Antitrust Litig.*,
   414 F. Supp. 3d 686 (S.D.N.Y. 2019) .................................................................. 10

*In re NIO, Inc. Sec. Litig.*,
   No. 19 Civ. 1424 (NGG) (JRC), 2023 WL 5048615 (E.D.N.Y. Aug. 8, 2023) ...................... 26

*In re Nortel Networks Corp. Sec. Litig.*,
   539 F.3d 129 (2d Cir. 2008) ............................................................................. 18

*In re Parking Heaters, Antitrust Litig.*,
   No. 15 MC 940 (DLI) (JO), 2019 WL 8137325 (E.D.N.Y. Aug. 15, 2019) ........................ 18

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   330 F.R.D. 11 (E.D.N.Y. 2019) .......................................................................... 10

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   991 F. Supp. 2d 437 (E.D.N.Y. 2014) .................................................................. 17

*In re Tenaris S.A. Sec. Litig.*,
   No. 18 Civ. 7059 (KAM) (SJB), 2024 WL 1719632 (E.D.N.Y. Apr. 22, 2024) .................... 16

*In re Visa Check/Master Money Antitrust Litig.*,
   280 F.3d 124 (2d Cir. 2001) ............................................................................. 29

*Joel A. v. Giuliani*,
   218 F.3d 132 (2d Cir. 2000) ............................................................................. 22

*Johnson v. Brennan*,
   No. 10 Civ. 4712 (CM), 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) ........................... 30

*Johnson v. Nextel Commc'ns Inc.*,
   780 F.3d 128 (2d Cir. 2015) ............................................................................. 25

*Leong v. Laundry Depot, LLC*,
   No. 19 Civ. 3545 (HG) (PK), 2023 WL 6226415 (E.D.N.Y. Sept. 26, 2023) ........ 26, 29, 30, 31

*Li v. NY Capri Nails & Spa Inc.*,
   No. 20 Civ. 6296 (KAM) (ST), 2024 WL 708775 (E.D.N.Y. Jan. 17, 2024) ...................... 24

*Lora v. To-Rise, LLC*,
   452 F. Supp. 3d 5 (E.D.N.Y. 2019) .................................................................. 10, 23

*Marisol A. v. Giuliani*,
    126 F.3d 372 (2d Cir. 1997) ................................................................. 24

*Martinez v. Ayken, Inc.*,
    No. 13 Civ. 7411 (LDW) (AKT), 2016 WL 5107143 (E.D.N.Y. Feb. 29, 2016)...................... 24

*Massiah v. MetroPlus Health Plan*,
    No. 11 Civ. 5669 (BMC), 2012 WL 5874655 (E.D.N.Y. Nov. 20, 2012)................................ 9

*McLaughlin v. IDT Energy*,
    No. 14 Civ. 4107 (ENV) (RML), 2018 WL 3642627 (E.D.N.Y. July 30, 2018) .................... 28

*Mendez v. MCSS Rest. Corp.*,
    No. 16 Civ. 2746 (RLM), 2022 WL 3704591 (E.D.N.Y. Aug. 26, 2022) ...................... 9, 12, 20

*Montiel-Flores v. JVK Operations Ltd.*,
    No. 19 Civ. 3005 (JS) (SIL), 2023 WL 6057375 (E.D.N.Y. Sept. 18, 2023) .......................... 29

*Moses v. New York Times Co.*,
    79 F.4th 235 (2d Cir. 2023)................................................................... 9, 10

*Newton v. R.C. Bigelow, Inc.*,
    No. 22 Civ. 5660 (LDH) (SIL), 2025 WL 994721 (E.D.N.Y. Feb. 14, 2025)........................ 11

*Pagano v. HN & Sons LLC*,
    No. 22 Civ. 4897 (BMC), 2024 WL 4625296 (E.D.N.Y. Oct. 30, 2024) ................................ 12

*Penney v. Deutsche Bank AG*,
    443 F.3d 253 (2d Cir. 2006) ............................................................... 11, 12

*Pennsylvania Pub. Sch. Employees' Ret. Sys. v. Morgan Stanley & Co.*,
    772 F.3d 111 (2d Cir. 2014)................................................................. 24

*Porter v. MooreGroup Corp.*,
    No. 17 Civ. 7405 (KAM) (VMS), 2021 WL 3524159 (E.D.N.Y. Aug. 11, 2021) .................. 26

*Ramos v. Nikodemo Operating Corp.*,
    No. 16 Civ. 1052 (KAM) (JO), 2017 WL 11508016 (E.D.N.Y. Aug. 7, 2017) ...................... 15

*Roberts v. Genting New York LLC*,
    --- F. Supp. 3d ----, 2025 WL 2813648 (E.D.N.Y. Oct. 3, 2025) ............................................ 29

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993) ................................................................. 26

*Rosenfeld v. Lenich*,
   No. 18 Civ. 6720 (NGG) (PK), 2021 WL 508339,  (E.D.N.Y. Feb. 11, 2021) ...................... 17

*Rossini v. Ogilvy & Mather, Inc.*,
   798 F.2d 590 (2d Cir. 1986) ......................................................................................... 28

*Schear v. Food Scope Am., Inc.*,
   297 F.R.D. 114 (S.D.N.Y. 2014) .................................................................................. 29

*Schutter v. Tarena Int'l, Inc.*,
   No. 21 Civ. 3502 (PKC) (RML), 2024 WL 4118465 (E.D.N.Y. Sept. 9, 2024) ..................... 14

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.*,
   659 F.3d 234 (2d Cir. 2011) .......................................................................................... 26

*Sharpe v. A&W Concentrate Co.*,
   No. 19 Civ. 768 (BMC), 2021 WL 3721392 (E.D.N.Y. July 23, 2021) ................................ 27

*Spencer v. No Parking Today, Inc.*,
   No. 12-cv-6323 (AJP), 2013 WL 1040052 (S.D.N.Y. Mar. 15, 2013) .................................... 25

*Sukhnandan v. Royal Health Care of Long Island LLC*,
   No. 12-cv-4216 (RLE), 2013 WL 4734818 (S.D.N.Y. Sep. 3, 2013) ...................................... 10

*Sykes v. Mel S. Harris & Assocs. LLC*,
   780 F.3d 70 (2d Cir. 2015) ........................................................................................... 29

*Velez v. 111 Atlas Rest. Corp.*,
   No. 14 Civ. 6956 (MKB) (CLP), 2016 WL 9307471 (E.D.N.Y. Aug. 11, 2016) .................... 24

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ..................................................................................................... 25

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005) ........................................................................................... 17

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005) ............................................................................................. 9

*Ying v. All-Ways Forwarding of N.Y. Inc.*,
   No. 20 Civ. 6242 (ENV) (MMH), 2025 WL 968586 (E.D.N.Y. Mar. 31, 2025) ............. *passim*

*Zivkovic v. Laura Christy LLC*,
   329 F.R.D. 61 (S.D.N.Y. 2018) ............................................................................... 26, 29

**Rules**

Fed. R. Civ. P. 23(a) ........................................................................................................ 11, 23, 28

Fed. R. Civ. P. 23(b) ................................................................................................... 23, 24, 28, 30

Fed. R. Civ. P. 23(c) .......................................................................................................... *passim*

Fed. R. Civ. P. 23(e) .......................................................................................................... *passim*

**Treatises**

Herbert B. Newberg & Alba Conte,
  *Newberg on Class Actions* (4th ed. 2002) ............................................................... 8, 23

## INTRODUCTION

Plaintiff Larry Swanson and the proposed Class (collectively "Plaintiffs") brought this wage and hour class action against Defendants Manhattan Beer Distributors, LLC and Simon Bergson (collectively, "Manhattan Beer," "Defendants," or the "Company") to recover unlawful deductions and unpaid overtime wages. Following over ten years of extensive investigation and hard-fought litigation, the parties have agreed to a $1,000,000 cash settlement that achieves a substantial portion of this lawsuit's goal.

This settlement was no easy achievement. It is the result of voluminous discovery and vigorous litigation, including forceful negotiations overseen by multiple noted class action mediators with specific expertise in wage and hour class actions. As set forth below, this ten-year process resulted in a fair and reasonable settlement for the workers included in the Class ("Class Members" unless noted otherwise).

The settlement also satisfies the criteria for preliminary approval under federal law. Accordingly, Plaintiffs respectfully request that the Court: (1) grant preliminary approval of the settlement as described in the Class Action Settlement Agreement ("Settlement Agreement"), attached as Exhibit A to the accompanying Declaration of Steven L. Wittels ("Wittels Decl."); (2) preliminarily certify the proposed "Class," including the "Reimbursements Subclasses" and "Overtime Pay Subclass," for settlement purposes; (3) approve the proposed Notice of Proposed Class Action Settlement and Final Approval Hearing (the "Notice") and direct its distribution; (4) appoint Wittels McInturff Palikovic as Class Counsel ("Class Counsel"); (5) schedule the Final Approval Hearing; and (6) grant such other relief as the Court deems just and proper.

I.    **FACTUAL AND PROCEDURAL BACKGROUND**

A.    **Factual Allegations and Plaintiffs' Investigation**

Plaintiff and Class Members are current and former Manhattan Beer delivery drivers and helpers. Plaintiffs allege that certain of Defendants' pay practices violated the New York Labor Law ("NYLL"). First Amended Class Action Compl. ("FAC") ¶¶ 67–87, ECF No. 14. Plaintiffs' claims essentially involve two separate sets of factual allegations. The first is that Defendants unlawfully deducted Manhattan Beer drivers' wages for mistakes or other shortages, which was impermissible under the New York Labor Law. FAC ¶¶ 35–39. Plaintiff was granted summary judgment for unlawful deductions on his individual claims on October 19, 2020. ECF No. 138 at 7–12. The second claim is for unpaid overtime worked by both drivers and their helpers during lunch breaks. This overtime claim suffered many ups and downs over the course of this lengthy litigation. Your Honor initially granted Defendants' motion for summary judgment on Plaintiffs' overtime wage claims back in July of 2018. ECF No. 68. After Plaintiffs' motion for reconsideration, the Court later revived the overtime claims under a narrowed basis, allowing these claims to proceed solely under the New York Labor Law but not the FLSA. ECF No. 161. Defendants employed approximately 1,680 drivers and helpers in New York during the applicable limitations period. Wittels Decl. ¶ 23.

Prior to commencing this action, Class Counsel conducted a thorough investigation into Class Members' claims, their damages, and the likelihood of obtaining class certification. *Id.* ¶ 17. Further, Class Counsel performed extensive background research on Defendants and obtained information on Defendants' compensation policies and practices. *Id.* ¶ 18. Class Counsel also conducted in-depth interviews with Plaintiff and other former Manhattan Beer employees concerning, *inter alia*, the Company's practice of deducting wages from the drivers for so called "shortages," as well as the number of hours worked, Defendants' pay practices, and other

information pertinent to Plaintiffs' claims. *Id.* Counsel obtained and reviewed numerous documents from Plaintiff and other Manhattan Beer employees, researched prior wage and hour cases, and conducted extensive research and analysis of the pay practices at issue in this action. *Id.*

### B. Litigation and Settlement Negotiations

Following a five-month investigation, on September 18, 2015, Plaintiff filed his Class and Collective Action Complaint (ECF No. 1), which was later amended on November 2, 2015 (ECF No. 14). The litigation spawned substantial discovery, including: written discovery; the production and analysis of dense and complicated shortage sheets and other electronic records and documents; numerous interviews with Plaintiff, Class Members, and potential witnesses; two separate depositions of one of Defendants' senior management employees; the deposition of Plaintiff; and the negotiation of a protective order (ECF No. 26) and ESI Protocol (ECF No. 21). Wittels Decl. ¶ 20. The parties also conducted extensive motion practice, including two summary judgment motions by Defendants (ECF Nos. 39 and 108), Plaintiff's summary judgment motion (ECF No. 119), and Plaintiff's motion for reconsideration of the Court's ruling on one of Defendants' summary judgment motions (ECF No. 157), numerous discovery disputes (e.g., ECF Nos. 27–28, 75–76, 86–87, 90–91, 153, 155), including multiple court hearings, and undertook preparations for proceedings on class certification, summary judgment, and trial. Wittels Decl. ¶ 20.

In late 2020, the Court directed the parties to mediation. *See* ECF No. 140. The parties then engaged in extensive pre-mediation damages analysis, including preparing comprehensive reports on liability and damages. This analysis encompassed the review of twelve years of deductions records for the Class. The parties thereafter engaged in an initial pre-mediation session with Robert J. Kheel, a noted mediator with extensive experience in class action litigation on November 30, 2020, followed by two joint mediation sessions on December 28, 2020 and January 11, 2021. The parties separately and together further conferred with Mediator Kheel on multiple occasions for

four more months through April 2021 in an attempt to bridge their differences, but despite the Mediator's and parties' earnest attempts, the parties could not reach agreement.

Beginning in February 2024, the parties reengaged in further settlement efforts with the assistance of noted class action Mediator Martin F. Scheinman, including a joint virtual mediation session on August 14, 2025 with all counsel led by Mediators Scheinman and Barry Peek. With Mr. Scheinman and Mr. Peek's assistance, the parties reached agreement on most material settlement terms. Following additional months of hard-fought negotiations over many contentious sticking points, the Settlement Agreement was finally executed on November 13, 2025.

### C.     The Settlement Amount and Allocation Formula

Under the Settlement Agreement, Defendants will establish a cash fund of $1,000,000 ("Settlement Fund"). Settlement Agreement § 1.16. Each Class Member will then be issued a direct settlement payment without the need to submit a claim. *Id.* § 3.1. Class Members' share of the settlement will be calculated based on their *pro rata* share of all hours worked by Class Members as reflected in Defendants' payroll records, except for Reimbursements Subclass B Members, who were hired on or after April 15, 2016, who will receive the allocated minimum amount specified in the Settlement Agreement. *Id.* This formula reasonably correlates with Plaintiff's claims for unlawful deductions and unpaid overtime wages for working during lunch breaks and will fairly compensate Class Members in relation to their alleged damages. Wittels Decl. ¶ 26. In addition, each driver will be afforded a minimum allocation of $75, and each helper will receive a minimum of $25 to account for Class Counsel's assessment of the relative strength of the individual Class Member's claims. Settlement Agreement § 3.1(B); Wittels Decl. ¶ 24.

The $1,000,000 Settlement Fund represents 60.6% of the approximately $1.65 million in pecuniary class-wide harm that Class Counsel calculated in connection with their evaluation of potential damages assuming liability was proven. Wittels Decl. ¶ 26. After accounting for

deductions for a service award to the named Plaintiff, attorneys' fees and expenses, settlement administration expenses, and a reserve fund to cover administration issues, the average payment to the nearly 1,700 Class Members is expected to be $739.98 (Reimbursements Subclass A), $110.82 (Reimbursements Subclass B), or $35.82 (Overtime Pay Subclass). *Id.* ¶ 26.

### D.    Eligible Class Members

Two groups of current and former Manhattan Beer employees are entitled to Settlement Fund payments: the "Reimbursements Subclasses" and the "Overtime Pay Subclass" (together, "Class Members"). Settlement Agreement §§ 1.22, 1.25. The "Reimbursements Subclass" is further divided into two groups, which consist of drivers who worked for Manhattan Beer at any time between September 18, 2009 and April 15, 2016 ("Reimbursements Subclass A") and drivers who were hired and worked for Manhattan Beer at any time after April 15, 2016 through and including the Court's Preliminary Approval of the Settlement. *Id.* § 1.25.

Class Counsel's review of the available records has determined that the largest portion of the settlement should be allocated to the drivers in Reimbursements Subclass A, who worked at Manhattan Beer between September 2009 and April 2016, which is when the available records show that the Company was deducting wages from drivers. Although Plaintiffs allege that all drivers suffered reimbursement-related damages, the Company has produced evidence which it claims support the assertion that such deductions ceased as of April 15, 2016. In light of these disputed issues and evidentiary support, and in order to ensure that all drivers are adequately compensated in the Reimbursements Subclass for any alleged damages, a minimum payment was established for Subclass B drivers who worked only after April 15, 2016.

Discovery on the overtime issue, which involved focusing on whether drivers and helpers were owed unpaid overtime for working during lunch breaks, revealed that this was a less supportable claim than the Reimbursements Subclass claims. Thus, the bulk of the settlement is

allocated to the drivers in the Reimbursements Class. The "Overtime Pay Subclass" consists of drivers and helpers employed by Manhattan Beer at any time from September 18, 2009 through the date of Preliminary Approval. *Id.* § 1.22.

        **E.**       **Distribution of the Settlement Fund**

      Importantly, Class Members will not be required to submit a claim to receive payment and instead will be issued checks directly. Settlement Agreement § 3.1, *see also* The Federal Judicial Center's "Judges' Class Action Notice and Claims Process Checklist" ("When the defendant already holds information that would allow at least some claims to be paid automatically, those claims should be paid directly without requiring claim forms."); *id.* (directing courts to question if "a claims process [is] actually necessary"). Following the Court's final approval and the expiration of the appeal deadline (the "Effective Date" defined in Settlement Agreement § 1.11), Defendants will deposit the Settlement Fund in escrow. *Id.* § 3.3. Each Class Member will then receive a check based on the allocation formula. *Id.* § 3.1.

        **F.**       **Releases**

      Upon the Effective Date, Plaintiff and each Class Member who does not timely opt out will fully release and discharge Defendants from all claims asserted in the action. *Id.* § 4.1. In addition, Plaintiff Larry Swanson and Defendants will fully release potential claims against each other. *Id.* § 4.2.

        **G.**       **Named Plaintiff Service Award**

      In recognition of the key services rendered by Plaintiff Mr. Swanson on behalf of the more than 1,675 other drivers and helpers, Plaintiff will apply for a $15,000 service award, reflective of his invaluable contributions to this action throughout ten years of litigation. *Id.* § 3.4(E). Service awards "are common in class action cases" and serve to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and

continuing as a litigant, and any other burdens sustained by plaintiff." *Campbell v. Bukhari Grp. LLC*, No. 22 Civ. 2813 (PK), 2025 WL 1874485, at *13 (E.D.N.Y. July 8, 2025) (cleaned up).

As detailed in the Wittels Declaration, before joining this action Plaintiff Swanson agreed to shoulder the responsibilities of sole representative plaintiff, reviewed and discussed the pleadings, repeatedly conferred with Class Counsel on case progress, litigation strategy, and settlement. Wittels Decl. ¶ 30. Throughout the litigation, Plaintiff Swanson made himself available on many occasions to promptly respond to Class Counsel's questions, requests for documents and information about the claims, and prepared and appeared for deposition. *Id.* at ¶¶ 30–31. At all times, Plaintiff encouraged Class Counsel to obtain the best possible result for Class Members. *Id.* In short, Plaintiff Swanson's participation in this case was significant and critical. *Id.*

The requested service award is well-deserved and well within the range of awards approved in similar cases. *See, e.g.*, *Hasemann v. Gerber Prods. Co.*, No. 15 Civ. 2995 (EK) (JAM), 2025 WL 2773748, at *12 (E.D.N.Y. Sept. 29, 2025) (case law supports service awards of between $2,500 and $85,000); *Ying v. All-Ways Forwarding of N.Y. Inc.*, No. 20 Civ. 6242 (ENV) (MMH), 2025 WL 968586, at *13 (E.D.N.Y. Mar. 31, 2025) (approving $30,000 service award as "reasonable and within the range of awards granted in this district"). Moreover, the award application was subject to arms-length negotiations, was facilitated by an experienced mediator, and will be disclosed to the Class. Wittels Decl. ¶ 32. In sum, both the facts and law support the requested service award. The Court need not rule on the award now, however, as per the Settlement Agreement Plaintiff will move for final court approval of the service award with the Motion for Final Approval of the Settlement.

### H.    **The Settlement Administrator**

The parties jointly selected Arden Claims Services to provide notice to the Class and administer payments to Class Members. Settlement Agreement § 1.2. The Settlement

Administrator's fee of up to $30,500 will be paid from the Settlement Fund. *Id.* §§ 1.19, 1.27. Based on Class Counsel's experience and defense counsel's input, Class Counsel recommends Arden Claims Services and believes its fee is reasonable for a wage and hour case of this size and the notice process described below. Wittels Decl. ¶ 45.

## II.    RULE 23 CLASS ACTION SETTLEMENT PROCEDURE

The well-defined class action settlement procedure includes three distinct steps:

1.  Preliminary approval of the proposed settlement after submission to the Court of a motion for preliminary approval;

2.  Dissemination of both emailed and mailed notice of settlement to class members; and

3.  A final settlement approval hearing for the Court to consider the settlement's fairness, adequacy, and reasonableness.

*See* Fed. R. Civ. P. 23(e); *see also* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* §§ 11.22, *et seq.* (4th ed. 2002) ("*Newberg*"). Consistent with these steps, the parties submit the following proposed schedule for final resolution and dismissal:

1.  Within twenty (20) days after entry of the Preliminary Approval Order, Defendants will provide the Settlement Administrator with a Class List, containing, *inter alia*, the full names, social security numbers, last-known addresses, last-known email addresses, and hours worked during the Class Period of each Class Member. Settlement Agreement § 3.6(B).

2.  The Settlement Administrator will take reasonable and customary efforts to ensure the Class List is as up-to-date as practicable, including running the Class List through the National Change of Address Database, which provides updated addresses for individuals who filed an address change with the United States Postal Service. Settlement Agreement § 2.6(D).

3.  Within thirty (30) days after entry of the Preliminary Approval Order, the Settlement Administrator will both email and mail the Notice. *Id.* § 2.6(C).

4.  Undeliverable mailed Notices will be skip traced and re-mailed. *Id.* § 2.6 (D).

5.      Class Members will have sixty (60) days after the date the Notice is emailed and mailed to opt out or object to the settlement (the "Bar Date"). *Id.* § 1.4.

6.      A final Fairness Hearing will be held as soon as convenient for the Court. *Id.* §§ 1.14, 2.5(B), 2.9.

7.      Prior to the Fairness Hearing, the Settlement Administrator shall certify the completion of its responsibilities that can be accomplished prior to the Fairness Hearing. *Id.* §§ 2.3(T), 2.9(A).

8.      Plaintiff will file a Motion for Final Approval of Settlement in accordance with the schedule the Court sets in the Preliminary Approval Order. *Id.* § 2.9(A).

9.      After the final Fairness Hearing, if the Court grants the Motion for Final Approval, the Court will issue a Final Order and Judgment. *Id.* § 2.9(B).

10.     Not later than twenty-eight (28) days after the settlement's Effective Date, Class Members' settlement checks will be mailed. *Id.* § 3.3(D).

## III.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED

"Public policy and the courts strongly favor settlement of class actions and complex litigation." *Hunter v. Blue Ridge Bankshares, Inc.*, No. 23 Civ. 8944, 2025 WL 1649323, at *13 (E.D.N.Y. June 11, 2025); *see also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005) ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). The approval of a class action settlement is a matter of discretion for the trial court. *Ying*, 2025 WL 968586, at *3. "In evaluating the fairness of a settlement, 'the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation.'" *Mendez v. MCSS Rest. Corp.*, No. 16 Civ. 2746 (RLM), 2022 WL 3704591, at *5 (E.D.N.Y. Aug. 26, 2022) (quoting *Massiah v. MetroPlus Health Plan*, No. 11 Civ. 5669 (BMC), 2012 WL 5874655, at *2 (E.D.N.Y. Nov. 20, 2012)); *see also Moses v. New York Times Co.*, 79 F.4th 235, 243 (2d Cir. 2023) ("[T]he arms-length quality of the [settlement] negotiations remain[s] a factor in favor of approving the settlement.").

At preliminary approval, "the court is tasked only with evaluating the settlement for fairness, adequacy, and reasonableness, and to ensure[] that the agreement is not a product of collusion." *Abarza v. Spirit Pharms. LLC*, No. 23 Civ. 3637 (JMW), 2025 WL 1519147, at *7 (E.D.N.Y. May 28, 2025) (citing *Lora v. To-Rise, LLC*, 452 F. Supp. 3d 5, 7 (E.D.N.Y. 2019)). In fact, "[c]ourts often grant preliminary settlement approval without requiring a hearing or a court appearance." *Sukhnandan v. Royal Health Care of Long Island LLC*, No. 12-cv-4216 (RLE), 2013 WL 4734818, at *1 (S.D.N.Y. Sep. 3, 2013).

To grant preliminary approval, the Court "must consider whether the court 'will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal.'" *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 28 (E.D.N.Y. 2019); *see also In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019) ("To be likely to approve a proposed settlement under Rule 23(e)(2)," the Court must find that the settlement "is fair, reasonable, and adequate.").

Rule 23 "enumerates four factors for the Court to consider as part of this inquiry: (1) adequacy of representation, (2) existence of arm's-length negotiations, (3) adequacy of relief, and (4) equitableness of treatment of class members." *In re GSE Bonds*, 414 F. Supp. 3d at 692 (citing Fed. R. Civ. P. 23(e)(2)). As recently clarified by the Second Circuit, the latter two factors are "core factors" to be considered "when reviewing the substantive fairness of a settlement." *Moses*, 79 F.4th at 244. However, the Rule 23 factors "overlap" with the *Grinnell* factors "[h]istorically" used to evaluate settlements.[1] *Id.*; *see also In re GSE Bonds*, 414 F. Supp. 3d at

---

[1] The *Grinnell* factors are (1) the litigation's complexity, expense and likely duration; (2) the class's reaction to the settlement; (3) the state of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class through the trial; (7) Defendants' ability to withstand a greater judgment; (8) the settlement's range of reasonableness in light of the best possible recovery; and (9) the settlement's range of reasonableness to a

*Footnote continued on next page*

692 ("The Advisory Committee Notes to the 2018 amendments indicate that the four new Rule 23 factors were intended to supplement rather than displace these '*Grinnell*' factors."). Accordingly, this memorandum addresses both sets of factors.

## A.    Adequacy of Representation: Both Plaintiff and Counsel Are Zealous and Qualified Advocates for the Class

Rule 23(e)(2)(A) requires a Court to find that "the class representatives and class counsel have adequately represented the class" before preliminarily approving a settlement. "Determination of adequacy typically entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007) (cleaned up); *accord Abarza*, 2025 WL 1519147, at *5.[2]

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "An adequate class representative is one who has 'an interest in vigorously pursuing the claims of the class' and 'no interests antagonistic to the interests of other class members.'" *Campbell*, 2025 WL 1874485, at *5 (quoting *Penney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)). "[O]nly a conflict that goes to the very subject matter of the litigation will defeat . . . representative status." *Newton v. R.C. Bigelow, Inc.*, No. 22 Civ. 5660 (LDH) (SIL), 2025 WL 994721, at *5 (E.D.N.Y. Feb. 14, 2025).

Here, Plaintiff is adequate because he "allege[s] a common practice or policy of unlawful labor practices" and there is "no evidence that [his] interests are not closely aligned with those of"

---

possible recovery in light of all the attendant risks of litigation. *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).

[2] "This adequate representation factor is nearly identical to the Rule 23(a)(4) prerequisite of adequate representation in the class certification context." *In re Payment Card*, 330 F.R.D. at 30 n.25. "As a result, the Court looks to Rule 23(a)(4) case law to guide its assessment of this factor." *Id.*

the Class. *Mendez*, 2019 WL 2504613, at *10 (E.D.N.Y. June 14, 2019). Because of these injuries, Plaintiff has an "interest in vigorously pursuing the claims of the class." *Penney*, 443 F.3d at 268; *see also Pagano v. HN & Sons LLC*, No. 22 Civ. 4897 (BMC), 2024 WL 4625296, at *2 (E.D.N.Y. Oct. 30, 2024) (plaintiffs who conducted "vigorous prosecution" in wage and hour litigation were adequate).

Moreover, Plaintiff has contributed significant time and effort to the case by participating in numerous in-person meetings and telephone conferences with Class Counsel, providing Class Counsel with detailed information regarding the deductions from his and other drivers' wages for so-called shortages, his daily work schedule and job duties, as well as reviewing and discussing the pleadings and case strategy. Wittels Decl. ¶¶ 30–31. Plaintiff also assisted with settlement negotiations and lent support during the mediation sessions and various follow-up calls. *Id.* In sum, Plaintiff has been an excellent representative.

Class Counsel also meet the adequacy requirement. Wittels McInturff Palikovic has extensive experience in successfully prosecuting wage and hour class actions. Wittels Decl. ¶¶ 3– 7. The attorneys leading this action have served as Class Counsel in multiple wage and hour and consumer protection class actions and have secured millions of dollars in recoveries to class members. *Id.* ¶¶ 3, 8. Further, Wittels McInturff Palikovic has dedicated substantial time and resources investigating, prosecuting, and settling Class Members' claims during this extraordinarily long litigation. *Id.* ¶¶ 35–38. The work performed on this case demonstrates Class Counsel's skill and commitment to representing the interests of the Class. *Id.* ¶¶ 10, 38.

### B. Adequate Relief for the Class: The Settlement Amount Is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation

Rule 23(e)(2)(C) looks to whether relief for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of

12

processing class-member claims, if required; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).

This inquiry overlaps significantly with several *Grinnell* factors, including factors 1 and 4–6 which help guide the Court's application of Rule 23(e)(2)(C)(i). *In re Payment Card*, 330 F.R.D. at 29.

1. Litigation Through Trial Would Be Complex, Costly, and Long (*Grinnell* Factor 1)

By reaching a favorable settlement, Plaintiff seeks to avoid significant risk, expense, and further delay and instead ensure a significant recovery for the Class. *See Campos v. Kijakazi*, No. 21 Civ. 5143 (VMS), 2023 WL 8096923, at *6 (E.D.N.Y. Nov. 20, 2023) ("Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them."); *see also In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000) ("Particularly in complex wage and hour litigation like this one . . . protracted litigation is costly and burdensome, and includes motion practice and potential appeals over class certification."). This case is no exception, with approximately 1,680 Class Members and novel and complex claims under state law.

Continued litigation will only add more expense and delay. While significant discovery has occurred, extensive additional discovery will be required for class certification, summary judgment, and trial. This would consume tremendous time and resources for the parties and the Court. Further, any judgment would likely be appealed, adding further uncertainty and delay. In contrast, the settlement bestows appreciable monetary relief to Class Members and avoids the uncertainty of further motions and a trial. The first *Grinnell* factor thus weighs heavily in favor of approval. *See, e.g.*, *Hunter*, 2025 WL 1649323, at *16 ("[T]he recovery of approximately 26% of total maximum potential damages . . . supports a finding that the settlement amount provides

13

adequate relief."). This settlement provides monetary relief to Class Members in a prompt and efficient manner. Thus, the first factor weighs in favor of judicial approval of the settlement."); *Caccavale v. Hewlett-Packard Co.*, No. 20 Civ. 974 (NJC) (ST), 2024 WL 4250337, at *7 (E.D.N.Y. Mar. 13, 2024) (risks due to further discovery, expert discovery, and class certification and summary judgment motion practice weighed in favor of preliminary approval).

2. Plaintiff Faces Real Risks if the Case Proceeds
   (*Grinnell* Factors 4 and 5)

Although Plaintiff believes his case is strong, he is nevertheless cognizant of the risks of proceeding to trial. First, "[l]itigation inherently involves risks." *Schutter v. Tarena Int'l, Inc.*, No. 21 Civ. 3502 (PKC) (RML), 2024 WL 4118465, at *11 (E.D.N.Y. Sept. 9, 2024) (quotation omitted). "Indeed, the primary purpose of settlement is to avoid the uncertainty of a trial on the merits." *Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 303 (E.D.N.Y. 2015). In weighing the risks of establishing liability and damages, the court "need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *Caccavale*, 2024 WL 4250337, at * 13 (quoting *In re Payment Card*, 330 F.R.D. at 37).

Moreover, class certification is not guaranteed, as Defendants would likely oppose certification if the case proceeds. *In re Payment Card*, 330 F.R.D. at 39–40 (finding risks of maintaining class through trial weighed in favor of settlement where "it is likely that defendants would oppose class certification"). Plaintiff would have to overcome, among other things, defenses: (1) that Defendants did not wrongfully deduct all drivers' wages for shortages; and (2) that the Class claims for unpaid overtime lack common support and are not actionable. While Plaintiff is confident in his prospects, Class Counsel are both experienced and realistic and understand that the resolution of liability issues, the outcome of trial, and the inevitable appeals

are inherently uncertain in terms of outcome and duration. The proposed settlement alleviates these uncertainties and therefore weighs in favor of preliminary approval.

### 3. Maintaining the Class Through Trial Would Not Be Simple (*Grinnell* Factor 6)

The risk of obtaining class certification and maintaining it through trial is also present. The Court has not yet certified the Class and, to obtain certification, Plaintiff would have to overcome defenses that that individual questions predominate, that the challenged pay practices were not uniform, and that Plaintiff cannot prove class-wide damages. *See, e.g.*, *Ramos v. Nikodemo Operating Corp.*, No. 16 Civ. 1052 (KAM) (JO), 2017 WL 11508016, at *6 (E.D.N.Y. Aug. 7, 2017) ("Defendants would likely argue that there are individualized questions as to the job duties and payment structure for the Class Members that makes trial and judgment on a class-wide basis . . . impractical"); *see also Everetts v. Personal Touch Holding Corp.*, No. 21 Civ. 2061 (JMA) (ARL), 2025 WL 942800, at *4 (E.D.N.Y. Mar. 28, 2025) (similar).

While Class Counsel are dedicated class action litigators, certification would occur only after further extensive litigation, including additional discovery, expert discovery, and extensive briefing. *See, e.g.*, *Caccavale*, 2025 WL 882220, at *7 (noting expense and time associated with further discovery, including expert discovery, and litigating summary judgment and class certification). Further, Defendants would likely challenge those determinations after the close of discovery. *See, e.g.*, *Ying*, 2025 WL 968586, at *7 ("Counsel also understands that maintaining a class through trial would not be simple because there is a significant risk that the Court may decertify the Class upon experienced defense counsel's motion practice." "[T]he parties' understanding of the complexity, risks, and expenses of continued litigation and their desire to avoid those risks and costs support [] approval of the settlement." *Id.* This factor strongly favors preliminary approval.

**C.    Effectiveness of the Proposed Method of Distributing Relief: Direct Payments to Class Members Without a Claims Process Is the Preferred Method and the Parties' Allocation Plan Is Reasonable and Fair**

Rule 23(e)(2)(C)(ii) requires courts to examine "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Here, Plaintiff has secured the best possible distribution method: Class Members will be issued checks directly without the need to file a claim, which is without question the optimal method. *See supra* at p. 6. Moreover, the Settlement Administrator will send a reminder notice to "[a]ny Class Member who has not cashed their check within 45 days of the date of mailing of the checks." Settlement Agreement § 3.4(D).

Regarding the method of dividing settlement funds among the Class, while the allocation plan must be fair and adequate, it "need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *Ying*, 2025 WL 968586, at *8 (quoting *In re Tenaris S.A. Sec. Litig.*, No. 18 Civ. 7059 (KAM) (SJB), 2024 WL 1719632, at *9 (E.D.N.Y. Apr. 22, 2024)). "[C]ourts look primarily to the opinion of counsel in determining the reasonableness and fairness of a plan of allocation." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 414 (S.D.N.Y. 2018), *aff'd sub nom. In re Facebook, Inc.*, 822 F. App'x 40 (2d Cir. 2020) (cleaned up). However, an allocation formula "need not be perfect." *Hunter*, 2025 WL 1649323, at *17; *see also In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05-cv-10240 (CM), 2007 WL 2230177, at *11 (S.D.N.Y. July 27, 2007) (collecting cases).

Here, the payment allocation plan tracks Plaintiff's damages model and yields a fair result. Further, each Class Member's allocation is based on their *pro rata* share of the settlement fund. Such allocation plans are routinely accepted. *See Campbell*, 2025 WL 1874485, at *9 (finding that *pro rata* allocation is "fair and reasonable"); *Hunter*, 2025 WL 1649323, at *17 (*pro rata*

distribution found "fair and rational, as it treats class members equitably while taking into account variations in the magnitude of their injuries").

D.    **The Terms of Any Proposed Award of Attorneys' Fees: Class Counsel's Fee and Expense Award Was Negotiated at Arm's Length and Is Well Within the Norms of this Circuit**

Rule 23(e)(2)(C)(iii) requires courts to examine "the terms of any proposed award of attorneys' fees, including timing of payment." Class Counsel will request that the Court approve attorneys' fees of no more than one-third of the $1,000,000 Settlement Fund (i.e. $333,333), plus litigation expenses of up to $15,000. Settlement Agreement § 1.19. This sum is consistent with fee awards in the Second Circuit. *See Rosenfeld v. Lenich*, No. 18 Civ. 6720 (NGG) (PK), 2021 WL 508339, at *6 (E.D.N.Y. Feb. 11, 2021) ("Courts in this Circuit routinely find that requests for attorney's fees totaling one-third of the settlement fund are well within the range of reasonableness.") (quotation omitted and collecting cases); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 445 (E.D.N.Y. 2014) (It is very common to see 33% contingency fees in cases with funds of less than $10 million."). Class Counsel's requested fee and expense award is also reasonable in relation to the result achieved: a $1,000,000 cash fund.

Application of the lodestar/multiplier method also confirms the reasonableness of Class Counsel's request. Although "the trend in the Second Circuit" is to use the percentage of the fund method, *Caccavale*, 2025 WL 2960237, at * 11,[3] the Second Circuit has advised that the lodestar method remains potentially useful as a "cross-check" of the percentage method. *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000). Here, Class Counsel's lodestar to date is

---

[3] *See also Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116–17 (2d Cir. 2005) ("The trend in this Circuit is toward the percentage method, which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." (cleaned up)).

$3,072,609.50, which reflects the over 3,700 hours counsel reasonably devoted in ten years of investigation and litigation. Wittels Decl. ¶¶ 36, 40. Class Counsel are thus **not** asking for a multiplier, although the result achieved from 10+ years of pure contingency work certainly would have warranted one.[4] In fact, comparing Class Counsel's lodestar with the requested fee here yields a **negative** multiplier of .11, or a 89% discount on the fair-market value of their legal services.

Finally, Class Counsel's requested fee and expense request is consistent with public policy, because the NYLL is a "remedial statute[] designed to protect the wages of workers." *In re Parking Heaters, Antitrust Litig.*, No. 15 MC 940 (DLI) (JO), 2019 WL 8137325, at *7 (E.D.N.Y. Aug. 15, 2019) ("[P]ublic policy favors the award of reasonable attorneys' fees in class action settlements because the class members' small individual claims would not justify the expense of separate litigation."). This is especially true where, like here, there are no public enforcement actions.

The Settlement also provides substantial benefits to the public by compensating workers and deterring other employers, who will be on notice that they will suffer unwanted cost, inconvenience, bad publicity, and legal exposure if they fail to properly compensate workers.

Moreover, the fee request does not bestow any windfall on Class Counsel (*see* lodestar cross-check discussion above) and represents a fairly minimal compensation for the ten years of contingency work they devoted to this case. Simply put, Class Counsel's requested fee is more than reasonable, as this amount falls well within the range of fees normally approved within this Circuit under either the percentage of the fund or lodestar/multiplier methodology. The Court need not rule on fees and costs now, as pursuant to Rule 23(h), Plaintiff will move for final court

---

[4] *See, e.g.*, *Ying*, 2025 WL 968586, at *15 ("Courts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers." (citation omitted); *In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 134 (2d Cir. 2008) (stating that a "2.04 lodestar multiplier, is toward the lower end of reasonable fee awards").

approval of Class Counsel's fee and expense request simultaneously with the Motion for Final Approval of the Settlement.[5]

### E. Equitable Treatment of Class Members Relative to One Another: The Parties' Allocation Plan Correlates with Actual Damages and Is Reasonable

Rule 23(e)(2)(D) requires the Court to consider whether "the proposal treats class members equitably relative to each other." Consideration of this factor "could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment.

Here, the settlement treats Class Members fairly in relation to their actual damages. As discussed *supra*, the allocation formula bases each Class Member's payment on their *pro rata* share of the fund. Courts routinely find that such *pro rata* allocations are "fair," *Campbell*, 2025 WL 1874485, at *9, and "equitabl[e]," *Hunter*, 2025 WL 1649323, at *17. Moreover, the payment allocation plan correlates with Plaintiffs' damages model. *See* Wittels Decl. ¶ 26.

Further, all Class Members will be bound by the same release. Settlement Agreement § 4.1(A). This release does not affect the apportionment of relief among Class Members, demonstrating equity. *In re Payment Card*, 330 F.R.D. at 47.

### F. The Remaining Grinnell Factors Demonstrate That the Settlement Is Fair, Reasonable, and Adequate

#### 1. The Reaction of the Class Is Too Early to Gauge and Therefore Neutral (*Grinnell* Factor 2)

Notice has not yet been issued to the Class. The Court should therefore assess this factor after Class Members have had an opportunity to respond. At this early stage, this factor is neutral.

---

[5] Rule 23(e) (2)(C)(iv) requires courts to consider "any agreement required to be identified by Rule 23(e)(3)," that is, "any agreement made in connection with the proposal." Here, there are no agreements under Rule 23(e)(3) that the Court must review.

2.  Discovery Is Advanced Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3)

Although litigating to trial would likely require many hundreds (if not thousands) of hours of additional discovery, the parties have completed more than enough discovery to recommend settlement. The question raised by this factor is whether the parties "had an adequate appreciation of the merits of the case before negotiating a resolution." *Ying*, 2025 WL 968586, at *10 (quoting *Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 433 (S.D.N.Y. 2014)). "The pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement but [are] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *Mendez*, 2022 WL 3704591, at *7 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 176) (cleaned up).

The discovery taken here easily meets this standard. As set forth *supra* at pp. 2–4, Class Counsel undertook in-depth pre-litigation investigation, and the parties litigated extensively, engaging in substantial discovery, including written discovery, depositions, and extensive analysis of Defendants' records. Wittels Decl. ¶ 20. The parties also undertook significant pre- and post-lawsuit legal research and analysis concerning Plaintiff's claims, and conducted extensive motion practice, including multiple court hearings and two rounds of summary judgment briefing. *Id.* As a result of this and vigorous settlement discussions during multiple mediation sessions overseen by two sets of experienced class action mediators, Class Counsel were able to evaluate the strengths and weaknesses of Class Members' claims against Plaintiff's damages model.

Based on this record, the parties were well-equipped to make the compromises necessary to resolve this litigation. *Charles v. Opinion Access Corp.*, No. 16 Civ. 6868 (KAM) (JO), 2020 WL 13659084, at *2 (E.D.N.Y. May 5, 2020) (finding pre-mediation "targeted discovery" sufficient to allow parties to resolve case responsibly; *Faroque v. Park W. Exec. Servs.*, No. 15

Civ. 6868 (DLI) (CLP), 2020 WL 9812905, at *4 (E.D.N.Y. Jan. 29, 2020) (same); *Bryant v. Potbelly Sandwich Works, LLC*, No. 17 Civ. 7638 (CM) (HBP), 2020 WL 563804, at *3 (S.D.N.Y. Feb. 4, 2020) (approving settlement after similar discovery in wage and hour litigation where "parties were well-positioned to evaluate the strength of their respective positions and potential damages recoverable") *see also Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 185 (W.D.N.Y. 2005) (approving settlement "in relatively early stages of discovery" where parties had exchanged extensive information pertaining to defendants' time and pay practices and where counsel's negotiations had "been in no way collusive").

3. Defendants' Ability to Withstand a Greater Judgment
    (*Grinnell* Factor 7)

This factor is negligible as Class Counsel identified no issue with Defendant's financial condition as Defendant Manhattan Beer is highly successful and one of the largest beer and beverage distributors in the country. Thus, this factor is neutral.

4. The Settlement Amount Is Significant, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation
    (*Grinnell* Factors 8 and 9)

"Determining whether a settlement amount is reasonable does not necessarily involve a mathematical equation yielding a particularized sum." *Abarza*, 2025 WL 1519147, at *12 (quotation omitted); *see also In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178) (similar). Rather, "it considers a range of reasonableness which recognizes the uncertainties of law and fact and the accompanying costs of litigation." *Abarza*, 2025 WL 1519147, at *12. "There is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell*, 495 F.2d at 455 n.2; *see also Caccavale*, 2025 WL 882220, at *14 ("A proposed settlement that is only the fraction of the potential recovery does not, in and of itself, mean that the proposed settlement

is grossly inadequate and should be disapproved.") (quotation omitted). Here, Defendants have agreed to settle this case for a substantial amount: $1,000,000. This sum is more than 60% of the approximately $1.65 million in pecuniary harm Class Counsel calculated in its damages model. Wittels Decl. ¶ 26. To be sure, there is a *possibility* that at trial the Class might obtain a higher amount, or that Plaintiffs would achieve multiples in the form of liquidated damages and interest. *Id.* ¶ 27. But those outcomes are not guaranteed and would require Class Members to wait additional years for payment from this matter, assuming such payments were even ordered and collected from Defendants. *Id.*

Given the attendant risks of litigation, the settlement provides substantial value to each Class Member. Every Class Member will receive a payment correlated to their out-of-pocket damages, a decidedly potential realistic recovery at trial. Weighing the benefits of the settlement against the risks of proceeding with litigation, the settlement is reasonable. *See Abarza*, 2025 WL 1519147, at *13 ("This settlement amount reflects a balance of the strength of the Class Members' claims versus the risk of trial and thus appears to fall within the "range of reasonableness" set out in the eighth and ninth *Grinnell* factors.") (citation omitted).").

\*        \*        \*

In sum, the relevant factors strongly favor preliminary approval. Because the settlement "on its face, is fair, adequate, and reasonable, and not the product of collusion," the Court should grant preliminary approval. *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000).

## IV.    THE CLASS SHOULD BE CONDITIONALLY CERTIFIED

Plaintiff seeks to certify the following class under Federal Rule of Civil Procedure 23(e): all current and former Manhattan Beer employees who were employed as Drivers or Helpers and who worked for Manhattan Beer in New York State at any time from September 18, 2009, through

and including the Court's Preliminary Approval of the Settlement. The Class is further split into Subclasses: Reimbursements Subclass A is defined as all current and former Manhattan Beer employees who were at any time classified as Drivers in Manhattan Beer's records and who worked for Manhattan Beer in New York State at any time between September 18, 2009 and April 15, 2016; Reimbursements Subclass B is defined as all current and former Manhattan Beer employees who were at any time classified as Drivers in Manhattan Beer's records and who were hired by and worked for Manhattan Beer in New York State at any time after April 15, 2016 through and including the Court's Preliminary Approval of the Settlement; and the Overtime Pay Subclass is defined as all current and former Manhattan Beer employees who were employed as Drivers or Helpers and who worked for Manhattan Beer in New York State at any time from September 18, 2009, through and including the Court's Preliminary Approval of the Settlement. As discussed below, the Class meets the certification requirements, which Defendants do not oppose. Settlement Agreement § 2.5(A); *see also Newberg* § 11.27 ("When the court has not yet entered a formal order determining that the action may be maintained as a class action, the parties may stipulate that it be maintained as a class action for the purpose of settlement only.").

"Provisional settlement class certification and appointment of class counsel have several practical purposes, including avoiding the costs of litigating class status while facilitating a global settlement, ensuring notification of all class members of the terms of the proposed Settlement Agreement, and setting the date and time of the final approval hearing." *Lora*, 452 F. Supp. 3d at 10.

Under Rule 23(a), a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b). Plaintiffs request certification of a Rule 23(b)(3) damages class and thus must satisfy Rule 23(b)(3)'s requirements. Rule 23(a) requires that:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Rule 23(b)(3) requires courts to find that:

[Q]uestions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

In the Second Circuit, courts "apply Rule 23 according to a liberal, rather than a restrictive interpretation and to adopt a standard of flexibility" in evaluating class certification. *Li v. NY Capri Nails & Spa Inc.*, No. 20 Civ. 6296 (KAM) (ST), 2024 WL 708775, at *4 (E.D.N.Y. Jan. 17, 2024) (quotation omitted) (citing *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)). Here, class certification is particularly appropriate—numerous courts have found that wage claims "***are about the most perfect questions for class treatment***." *Velez v. 111 Atlas Rest. Corp.*, No. 14 Civ. 6956 (MKB) (CLP), 2016 WL 9307471, at *23 (E.D.N.Y. Aug. 11, 2016) (emphasis added) (quoting *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 373 (S.D.N.Y. 2007)); *see also Martinez v. Ayken, Inc.*, No. 13 Civ. 7411 (LDW) (AKT), 2016 WL 5107143, at *12 (E.D.N.Y. Feb. 29, 2016) (same).

### A.    <u>Numerosity</u>

"Numerosity is presumed for classes larger than forty members." *Pennsylvania Pub. Sch. Employees' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120 (2d Cir. 2014) (citing *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)). Plaintiff easily satisfies this requirement because there are approximately 1,680 Class Members. Wittels Decl. ¶ 56. In addition,

"sheer size alone is not the only factor to consider when analyzing numerosity . . . and a finding of numerosity is supported where, as here, the potential class members are of limited financial means, or may fear retaliation by their employer." *Spencer v. No Parking Today, Inc.*, No. 12-cv-6323 (AJP), 2013 WL 1040052, at *13 (S.D.N.Y. Mar. 15, 2013) (collecting cases).

### B. Commonality

The Class also satisfies the commonality requirement. Commonality is satisfied where "there are questions of law or fact common to the Class." *Ying*, 2025 WL 968586, at *47 (S.D.N.Y. Feb. 14, 2022). "Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("Their claims must depend upon a common contention—for example, the assertion of [unlawful conduct] on the part of the same supervisor. That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.").

This case involves numerous common issues and courts in this District routinely find commonality when presented with the same common questions as those at issue here. *See Caccavale*, 2025 WL 882220, at *16 ("In wage cases, the commonality requirement is usually satisfied where the plaintiffs allege that defendants had a common policy or practice of unlawful labor practices.") (quotation omitted); *Abarza*, 2025 WL 1519147, at *5 (commonality satisfied where complaint alleged all class members "sustained similar types of damages due to [d]efendant's failure to comply with the NYLL").

C.    **Typicality**

Rule 23 requires that the claims of the representative party be typical of the class's claims. *Hasemann v. Gerber Prods. Co.*, 331 F.R.D. 239, 269 (E.D.N.Y. 2019). "The typicality requirement is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Id.* (quoting *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 252 (2d Cir. 2011)). "[M]inor variations in the fact patterns underlying [the] individual claims do not preclude a finding of typicality." *Ying*, 2025 WL 968586 (quoting *Flores v. CGI Inc.*, No. 22 Civ. 350 (KHP), 2022 WL 13804077, at *3 (S.D.N.Y. Oct. 21, 2022)) *see also Robidoux v. Celani*, 987 F.2d 931, 936–37 (2d Cir. 1993) (similar). Typicality should also "be determined with reference to the company's actions, not with respect to particularized defenses it might have against certain class members." *In re NIO, Inc. Sec. Litig.*, No. 19 Civ. 1424 (NGG) (JRC), 2023 WL 5048615, at *6 (E.D.N.Y. Aug. 8, 2023).

Here, typicality is easily met because all Class Members' claims, including Plaintiff's, "arise from the same course of conduct (defendants' practice and policy of [NYLL violations])." *Porter v. MooreGroup Corp.*, No. 17 Civ. 7405 (KAM) (VMS), 2021 WL 3524159, at *6 (E.D.N.Y. Aug. 11, 2021). In fact, this case is virtually indistinguishable from the many wage and hour class actions in this Circuit where courts have found typicality. *See., e.g.*, *id.*; *Leong v. Laundry Depot, LLC*, No. 19 Civ. 3545 (HG) (PK), 2023 WL 6226415, at *5 (E.D.N.Y. Sept. 26, 2023) (Plaintiff "intends to present the same claims as the rest of the class, has provided evidence suggesting that Defendants violated the class members' rights under the NYLL in the same manner that they allegedly violated her NYLL rights, and the overtime exemption defense that Defendants intend to assert against an unspecified number of class members is at issue for Plaintiff's claims too."); *Zivkovic v. Laura Christy LLC*, 329 F.R.D. 61, 71 (S.D.N.Y. 2018) ("[T]he members of the

putative subclasses were subject to the same policies regarding tip credits, overtime, spread of hours pay, and wage notices and statements.").

**D.** **Adequacy of the Named Plaintiffs and Proposed Class Counsel**

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "To determine the adequacy of class representatives and counsel, courts evaluate 'whether (1) plaintiff['s] interests are antagonistic to the interests of other members of the class and (2) plaintiff['s] attorneys are qualified, experienced and able to conduct the litigation." *Hunter*, 2025 WL 1649323, at *14 (quoting *In re 3D Sys. Sec. Litig.*, No. 21 Civ. 1920 (NGG) (TAM), 2023 WL 4621716, at *5 (E.D.N.Y. July 19, 2023)); *see also Campbell*, 2025 WL 1874485, at *5 ("An adequate class representative is one who has 'an interest in vigorously pursuing the claims of the class and 'no interests antagonistic to the interests of other class members." (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)).

Plaintiff meets the adequacy requirement because there is no evidence that he has interests that are antagonistic to or at odds with those of the Class Members and he seeks to maximize the Class's recovery. *Hunter*, 2025 WL 1649323, at *16; *see also DDMB, Inc. v. Visa, Inc.*, No. 05 MD 1720 (MKB), 2021 WL 6221326, at *20 (E.D.N.Y. Sept. 27, 2021) (adequacy satisfied where "alleged harm applies to all members of the putative class, making [p]laintiffs similarly incentivized as class members to vigorously litigate and prove [d]efendants' liability"); *Sharpe v. A&W Concentrate Co.*, No. 19 Civ. 768 (BMC), 2021 WL 3721392, at *5 (E.D.N.Y. July 23, 2021) ("The fact that plaintiffs' claims are typical of the class is strong evidence that their interests are not antagonistic to those of the class.") (quotation omitted). Moreover, as detailed on pp. 6–7, 12 above, Plaintiff has contributed significant time and effort to the case. In sum, Plaintiff has been an excellent class representative.

Class Counsel also meet the adequacy requirement of Rule 23(a)(4). As set forth on pp. 11–12 above, Class Counsel have been zealous and able advocates for the Class.

### E. Certification Is Proper Under Rule 23(b)

Plaintiff requests certification of a Rule 23(b)(3) damages class for settlement purposes. Rule 23(b)(3) requires that common questions of law or fact not only be present, but also that they "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). That Plaintiff easily meets the Rule 23(a) criteria is a strong indicator that Rule 23(b)(3) is satisfied. *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986) (satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality"); *see also McLaughlin v. IDT Energy*, No. 14 Civ. 4107 (ENV) (RML), 2018 WL 3642627, at *8 (E.D.N.Y. July 30, 2018) (predominance satisfied where plaintiffs asserted "common factual allegations and common legal theories").

#### 1. Common Questions Predominate

To establish predominance, Plaintiff must demonstrate that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 108 (2d Cir. 2007); *see also Campbell*, 2025 WL 1874485, at *11 ("Rule 23(b)(3) requires that 'questions of law or fact "predominate over any questions affecting only individual members . . . .'" (quoting Fed. R. Civ. P. 23(b)(3)).

The essential predominance inquiry is whether "liability can be determined on a class-wide basis, even when there are some individualized damage issues." *Sykes v. Mel S. Harris & Assocs.*

*LLC*, 780 F.3d 70, 81 (2d Cir. 2015) (quoting *In re Visa Check/Master Money Antitrust Litig.*, 280 F.3d 124, 139 (2d Cir. 2001)). Simply because a defense "may arise and . . . affect different class members differently . . . does not compel a finding that individual issues predominate over common ones." *Id.* at 138. Where class members' claims are "unified by a common legal theory . . . and by common facts," the predominance requirement is satisfied. *Roberts v. Genting New York LLC*, --- F. Supp. 3d ----, 2025 WL 2813648, at *4 (E.D.N.Y. Oct. 3, 2025).

District courts "routinely find 'common questions predominate in wage and hour actions brought on behalf of a class of employees of the same employer challenging allegedly illegal policies and practices." *Montiel-Flores v. JVK Operations Ltd.*, No. 19 Civ. 3005 (JS) (SIL), 2023 WL 6057375, at *4 (E.D.N.Y. Sept. 18, 2023) (quoting *In re Payment Card*, 330 F.R.D. at 55). "[T]he types of individual questions that exist in wage-and-hour cases, such as the hours worked or the exact damages to which each plaintiff might be entitled, are inevitable and do not defeat the predominance requirement." *Leong*, 2023 WL 6226415, at *7 (quoting *Zivkovic*, 329 F.R.D. at 79 (S.D.N.Y. 2018)).

Here, Class Members' common factual allegations and common legal theory—that Defendants allegedly violated state wage and hour laws—predominate over any variations among Class Members. Thus, for all Class Members, the issue of whether they were damaged by the alleged unlawful wage and hour practices will predominate because "defendants will likely be liable to all parties or to none." *Cazares v. AVA Rest. Corp.*, No. 15 Civ. 477 (KAM) (RML), 2017 WL 1229727, at *7 (E.D.N.Y. Mar. 31, 2017) (citing *Schear v. Food Scope Am., Inc.*, 297 F.R.D. 114, 126 (S.D.N.Y. 2014) ("'class issues predominate over individualized issues because' if plaintiffs succeed in proving the alleged unlawful policy 'then each of the class plaintiffs will likely prevail' on their claims"). A finding of predominance in this case is therefore squarely

in line with the majority of cases in this District. *See, e.g.*, *Abarza*, 2025 WL 1519147, at *6 ("the common question of Defendant's alleged failure to pay overtime wages predominates over any varying factual or legal theories that may exist among the Class Members"); *Ying*, 2025 WL 968586 (predominance met in class action alleging NYLL claims); *Leong*, 2023 WL 6226415, at *7 (same).

### 2. A Class Action Is a Superior Mechanism for Adjudicating Claims

The second part of the Rule 23(b)(3) analysis entails examining whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968); *Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights."). Rule 23(b)(3) sets forth non-exclusive superiority factors, including: the class members' interests in individually controlling the prosecution or defense of separate actions; whether the case would be manageable as a class action at trial; whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3).[6]

Here, Class Members have limited financial resources with which to prosecute individual actions. Wittels Decl. ¶ 61. The settlement thus represents an optimal result for the workers. Indeed, "a class action is . . . likely the only device by which many of the proposed class members

---

[6] For another factor, trial manageability, "a district court need not inquire whether the case, if tried, would present intractable management problems" in the context of a proposed settlement. *Campbell*, 2025 WL 1874485, at *12; *see also Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a [trial] court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial."). "Moreover, denying class certification on manageability grounds is 'disfavored' and 'should be the exception rather than the rule.'" *Johnson v. Brennan*, No. 10 Civ. 4712 (CM), 2011 WL 4357376, at *6 n.1 (S.D.N.Y. Sept. 16, 2011).

would obtain relief"). *Cazares*, 2017 WL 1229727, at *8; *Iglesias-Mendoza*, 239 F.R.D. 363, 373 (S.D.N.Y. 2007) (it is "extremely unlikely" that a meaningful number of proposed Class Members would bring separate actions).

Further, courts "throughout the Second Circuit have found class certification to be the superior method of litigating wage-and-hour claims based on similar considerations." *Leong*, 2023 WL 6226415, at *7 (collecting cases). Adjudicating separate actions all arising from the same operative facts also burdens the courts. This District is an appropriate forum for adjudicating this case as all the Class Members worked in the Eastern and Southern Districts.

Employing the class action device here will not only achieve economies of scale, but will also conserve judicial resources, prevent inconsistent adjudications, and preserve public confidence by avoiding the waste and delay of repetitive proceedings. *See, e.g.*, *Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 297 (E.D.N.Y. 2015). "In sum, a class action is the most suitable mechanism to fairly, adequately, and efficiently resolve the class members' claims against defendants." *Id.*

## V.    THE NOTICE PLAN EXCEEDS THE APPLICABLE REQUIREMENTS AND SHOULD BE APPROVED

The parties respectfully request that the Court approve the parties' agreed Class Action Notice (the "Notice," Wittels Decl. Ex. C).[7] The content of the Notice fully complies with due process and Federal Rule of Civil Procedure 23. Pursuant to Rule 23(c)(2)(B), notice must provide:

> [T]he best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language:
>
> (i)      the nature of the action;
>
> (ii)     the definition of the class certified;

---

[7] The parties have also drafted an email notice that attaches the Notice. *See* Wittels Decl. Ex. D.

(iii)    the class claims, issues, or defenses;

(iv)    that a class member may enter an appearance through an attorney if the member so desires;

(v)    that the court will exclude from the class any member who requests exclusion;

(vi)    the time and manner for requesting exclusion; and

(vii)    the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

Here, the Notice satisfies these requirements and adequately apprises Class Members of their rights. Because "[a] good notice starts with the envelope design,"[8] the Notice will be delivered in an envelope that is based on the Federal Judicial Center's sample notice envelope. *See* Wittels Decl. Ex. E (notice envelope).[9]

As for the Notice itself, it is based on the Federal Judicial Center's Illustrative Forms of Class Action Notices and informs Class Members how to exclude themselves from the Settlement, that they can object to the Settlement, and the consequences of inaction.[10] The Notice also describes the material terms of the Settlement, informs Class Members about the allocation of attorneys' fees, and provides specific information regarding the date, time, and place of the final approval hearing. Courts in this District have approved class notices even when they provided only general information about a settlement. *See, e.g.*, *In re Payment Card*, 330 F.R.D. at 58–59 ("[A] Rule 23 Notice will satisfy due process when it 'describe[s] the terms of the settlement generally,'

---

[8] "Judges' Class Action Notice and Claims Process Checklist," Federal Judicial Center, a*vailable at* https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf.

[9] *Available at* https://www.fjc.gov/sites/default/files/2015/ClaAct07.pdf.

[10] *Available at* https://www.fjc.gov/content/301253/illustrative-forms-class-action-notices-introduction.

" "inform[s] the class about the allocation of attorneys' fees, and provide[s] specific information regarding the date, time, and place of the final approval hearing.");; *see also Caccavale*, 2025 WL 2960237, at *6 (same). "Notice need not be perfect, but need be only the best notice practicable under the circumstances . . . [if] class counsel acted reasonably in choosing the means likely to inform potential class members." *Duffy v. Illinois Tools Works, Inc.*, No. 15 Civ. 7407 (NGG) (SIL), 2024 WL 1174539, at *4 (E.D.N.Y. Mar. 19, 2024). The detailed information in the Notice far exceeds this standard and fully complies with the requirements of Rule 23(c)(2)(B).

The parties' notice plan also satisfies Rule 23(c)(2)(B)'s requirement that the Court order "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." In accordance with the Settlement Agreement the parties will distribute the Notice by U.S. Mail and where available, email, and their notice plan complies fully with due process and Rule 23. As discussed above, the parties have agreed to a detailed notice process that reflects best practices for class action notices and contains numerous quality control measures to ensure that the notice will reach as many Class Members as possible. *See supra* at pp. 8–9.

## <u>CONCLUSION</u>

For the reasons set forth above, Plaintiff respectfully requests that the Court grant Plaintiff's Motion and endorse the proposed Order.


Dated: November 14, 2025
      New York, New York            Respectfully submitted,

                              /s/ Steven L. Wittels
                              Steven L. Wittels
                              Tiasha Palikovic
                              Ethan D. Roman
                              **WITTELS MCINTURFF PALIKOVIC**
                              305 BROADWAY, 7TH FLOOR
                              NEW YORK, NEW YORK 10007
                              Telephone: (914) 775-8862
                              slw@wittelslaw.com
                              tpalikovic@wittelslaw.com
                              edr@wittelslaw.com

                              *Counsel for Plaintiff and the Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the following documents in support of

Plaintiffs' Motion for Preliminary Approval of the Class Action Settlement and Related Relief was

served via ECF this 14th day of November 2025 upon the below-listed counsel of record:

1. Plaintiffs' Notice of Unopposed Motion for Preliminary Approval of the Class Action Settlement and Related Relief, dated November 14, 2025;

2. Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Preliminary Approval of the Class Action Settlement and Related Relief, dated November 14, 2025;

3. Declaration of Lead Class Steven L. Wittels, dated November 14, 2025, with Exhibits; and

4. Proposed Order (Exhibit B to Declaration of Steven L. Wittels).

Allen B. Roberts
Christopher Coyne
Jeffrey Ruzal
Epstein Becker Green, P.C.
875 Third Avenue
New York, NY 10022
(212) 351-4500
aroberts@ebglaw.com
ccoyne@ebglaw.com
jruzal@ebglaw.com

*Attorneys for Defendants*

/s/ Steven L. Wittels
Steven L. Wittels