UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| LARRY SWANSON,<br>Individually and on Behalf of All Others<br>Similarly Situated,<br><br>                                    Plaintiff,<br><br>               v.<br><br>MANHATTAN BEER DISTRIBUTORS,<br>LLC AND SIMON BERGSON,<br><br>                                 Defendants. | Case No. 15 Civ. 5383 (ENV) (RLM) |

**DECLARATION OF STEVEN L. WITTELS IN SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY APPROVAL OF THE CLASS ACTION SETTLEMENT
AND RELATED RELIEF**

I, Steven L. Wittels, declare as follows under penalty of perjury, pursuant to 28 U.S.C. § 1746:

1. I am a partner at Wittels McInturff Palikovic ("WMP"). WMP is counsel for Plaintiff and the proposed Class. Based on my active participation in and supervision of all material aspects of the prosecution and settlement of this wage and hour class action, I have personal knowledge of the matters set forth herein.

2. I make this Declaration in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and Related Relief (the "Preliminary Approval Motion"). Through Plaintiffs' Preliminary Approval Motion, Plaintiffs seek an Order: (1) granting preliminary approval of the terms set forth in the parties' Class Action Settlement Agreement ("Settlement Agreement"), attached hereto as **Exhibit A**; (2) preliminarily certifying the proposed Class for settlement purposes; (3) approving the proposed Notice of Proposed Class Action Settlement and Final Approval Hearing (the "Notice") and directing its distribution; (4) appointing WMP as Class Counsel ("Class Counsel"); (5) scheduling the Final Approval Hearing; and (6) granting such other relief as the Court deems just and proper.[1]

I. **Class Counsel's Background**

3. I have been a member of the New York and New Jersey bars since 1985 and 1984, respectively, and am in good standing in both. I graduated from Berkeley Law School (The University of California) in 1984 with Highest Honors on my class action thesis. I have practiced primarily in employment and consumer fraud class action litigation for most of my career. I opened my own firm in 1997, and since then, have served as class counsel in dozens of class actions around the United States, generating hundreds of millions of dollars in recoveries to class members.

---

[1] The proposed Order granting preliminary approval is attached hereto as **Exhibit B**. The proposed Email Notice, Long-Form Notice, and notice transmittal envelope are attached as **Exhibits C–E**, respectively.

4. I was one of the lead trial lawyers in the *Novartis* gender discrimination class action tried before the Honorable Colleen McMahon in the Southern District of New York in May 2010, which led to a $250 million punitive damages verdict, the largest ever obtained in a discrimination class action. *Velez v. Novartis Pharmaceuticals Corporation*, No. 04 Civ. 9194. In November 2010, Judge McMahon approved a class-wide settlement of the case for more than 5,600 female sales representatives.

5. My law firm, WMP, has deep experience handling class actions, including prosecuting and settling wage and hour class actions generally, with particularized expertise in home care wage and hour matters. For example, in 2017, WMP obtained a $1,500,000 settlement on behalf of home care workers who brought claims for overtime and other wages, which settlement was approved by Magistrate Judge Cheryl L. Pollak in the Eastern District of New York. In 2020, WMP was appointed as Plaintiffs' Coordinating Counsel in a class-wide arbitration involving more than forty home care agencies. In 2021, WMP obtained a wage and hour settlement of $6,500,000 on behalf of home care workers, which was approved by Magistrate Judge Lois Bloom in the Eastern District of New York. And in 2024, WMP obtained a $3,500,000 settlement on behalf of home care workers, which was approved by Judge Gregory Woods in the Southern District of New York.

6. Further, WMP currently serves as lead counsel in *Diaz v. New York Paving, Inc.*, No. 18-cv-4910 (ALC) (GWG) (S.D.N.Y.), a large and complex wage and hour dispute where the firm obtained class and collective action certification and is currently overseeing all expert discovery and trial preparation efforts.

7. Earlier this year, Judge Cathy Seibel of the Southern District of New York approved a $5,750,000 class action settlement in a case brought by WMP against Manhattan Beer, including approving WMP's request for service awards and class counsel's fees.

8. The lawyers assigned to this matter are also well-versed in wage and hour law and in class action law and are highly qualified to represent the interests of the Class. Lawyers at WMP have represented classes of employees and consumers in more than a dozen class action lawsuits in state and federal courts throughout the United States, including many in this District. Their backgrounds and qualifications are detailed in WMP's firm resume.

9. Attached to this Declaration as **Exhibit F** is a true and correct version of WMP's 2025 Firm Resume.

10. Further, the team of attorneys and staff litigating this matter on behalf of Class Members dedicated substantial time and resources, investigating, prosecuting, and settling this case. The work that Class Counsel has performed in this case demonstrates our skill and commitment to representing the interests of the Class.

## II.     Introduction to the Proposed Settlement and Relief Sought by this Motion

11. The proposed settlement resolves the claims brought by Plaintiff Larry Swanson ("Plaintiff") against Defendants Manhattan Beer Distributors, LLC and Simon Bergson (collectively, "Manhattan Beer" or "Defendants").

12. Plaintiff's Preliminary Approval Motion seeks preliminary approval of the settlement of this wage and hour class action—a settlement achieved after ten years of extensive investigation, hard-fought litigation, and forceful negotiations overseen by third-party mediators. The final terms of the parties' settlement were memorialized in the Settlement Agreement that is

4

now being submitted for the Court's preliminary approval. At all times, the parties' negotiations have been vigorous, adversarial, and conducted at arms-length.

13. The proposed settlement provides a monetary benefit to the Class in the form of a $1,000,000.00 Settlement Fund, with the settlement payments (net of expenses and fees) to be distributed directly to Class Members. As described herein, each Class Member is entitled to a *pro rata* share of the Settlement Fund based on each individual's aggregate damages.

14. In arriving at this favorable result, Plaintiff also recognized the expense and length of a trial and potential appellate process, and further acknowledged that both certification of the class and ultimate success on the merits remain uncertain.

15. Pursuant to the terms of the Settlement Agreement, Plaintiff now moves for entry of the proposed preliminary approval order which accomplishes the following:

> (i) grants preliminary approval of the proposed settlement;
>
> (ii) approves the form and content of the Notice and the parties' plan for its distribution; and
>
> (iii) schedules the final farness hearing so the Court can assess Class Members' reaction to the settlement.

16. In the paragraphs that follow, I will describe the factual background and procedural history of this lawsuit and summarize the terms of the proposed Settlement Agreement. Accompanying this Declaration is Plaintiff's supporting Memorandum of Law that demonstrates why, under governing law, this Court should preliminarily approve the settlement and grant the relief requested in Plaintiff's Motion.

### III. Thorough Investigation of Class Members' Claims

17. Before the initiation of this action, I, along with a team of attorneys, conducted a thorough investigation into the merits of the potential claims and defenses. Our investigation and

legal research focused on the underlying merits of Class Members' claims, the damages to which they were entitled, and the propriety of class certification.

18.     Our team also conducted in-depth background research on Manhattan Beer, obtaining information on Manhattan Beer's compensation policies and practices. We conducted in-depth interviews with Plaintiff and other Manhattan Beer workers regarding Defendants' payment policies and practices, the number of hours drivers and helpers worked, deductions taken out of Defendants' workers' wages, and other information pertinent to Plaintiff's claims in this action. In addition, we obtained and reviewed numerous documents and communications from Plaintiff and others, and conducted research and investigation into the pertinent and changing case law and the facts developed in other wage and hour class actions that informed this case. Our team also performed extensive legal research and analysis concerning the particular legal complexities attendant to wage and hour and unlawful deductions claims.

**IV.    Plaintiffs' Complaint, Discovery, and the Parties' Settlement Negotiations**

19.     On September 18, 2015, Plaintiff filed the Class and Collective Action Complaint against Defendants in the United States District Court for the Eastern District of New York (ECF No. 1), which was later amended on November 2, 2015 (ECF No. 14).

20.     The litigation spawned substantial discovery, including: written discovery; the production and analysis of dense and complicated shortage sheets and other electronic records and documents; numerous interviews with Plaintiff, Class Members, and potential witnesses; two separate depositions of one of Defendants' senior management employees; the deposition of Plaintiff; and the negotiation of a protective order (ECF No. 26) and ESI Protocol (ECF No. 21). The parties also conducted extensive motion practice, including two summary judgment motions by Defendants (ECF Nos. 39 and 108), Plaintiff's summary judgment motion (ECF No. 119), and

6

Plaintiff's motion for reconsideration of the Court's ruling on one of Defendants' summary judgment motions (ECF No. 157), numerous discovery disputes (e.g., ECF Nos. 27–28, 75–76, 86–87, 90–91, 153, 155), including multiple court hearings, and undertook preparations for proceedings on class certification, summary judgment, and trial.

21. In late 2020, the Court directed the parties to mediation. The parties then engaged in extensive pre-mediation damages analysis, including preparing comprehensive reports on liability and damages. This analysis encompassed the review of twelve years of deductions records for the Class. The parties thereafter engaged in an initial pre-mediation session with Robert J. Kheel, a noted mediator with extensive experience in class action litigation on November 30, 2020, followed by two joint mediation sessions on December 28, 2020 and January 11, 2021. The parties separately and together further conferred with Mediator Kheel on multiple occasions for four more months through April 2021. Beginning in February 2024, the parties reengaged in further settlement efforts with the assistance of noted class action Mediator Martin F. Scheinman, including a joint virtual mediation session on August 14, 2025 with all counsel led by Mediators Scheinman and Barry Peek. With Mr. Scheinman and Mr. Peek's assistance, the parties reached agreement on most material settlement terms. Following additional months of hard-fought negotiations over many contentious sticking points, the Settlement Agreement was finally executed on November 13, 2025.

22. At all times, the parties' negotiations have been vigorous, adversarial, and at arms-length.

## V.  Settlement Terms and Allocation Formula

23. According to Defendants' records, there are approximately 1,680 Class Members.

7

24. Under the Settlement Agreement, Defendants will establish a cash fund of $1,000,000 ("Settlement Fund"). Settlement Agreement § 1.16. Each Class Member will then be issued a direct settlement payment without the need to submit a claim. *Id.* § 3.1. Class Members' share of the settlement will be calculated based on their *pro rata* share of all hours worked by Class Members as reflected in Defendants' payroll records, except for Reimbursements Subclass B Members, who were hired on or after April 15, 2016, who will receive at least the allocated minimum amount specified in the Settlement Agreement. *Id.* In addition, each driver will be afforded a minimum allocation of $75, and each helper will receive a minimum of $25 to account for the Parties' assessment of the relative strength of Plaintiff's claims. *Id.* § 3.1(B).

25. The parties negotiated heavily over the settlement amount, including disputes both as to liability and the value of the wage deduction and overtime claims. These central disputes were the primary reason why this case continued for an extraordinary length of time.

26. The chosen distribution plan reasonably correlates with Plaintiffs' claims for unlawful deductions and unpaid overtime wages for working during lunch breaks and will fairly compensate Class Members in relation to their alleged damages. The $1,000,000 Settlement Fund represents approximately 60.6% of the approximately $1.65 million in pecuniary class-wide harm that Class Counsel calculated in connection with their evaluation of potential damages assuming liability was proven.

27. There is a *possibility* that at trial the Class might obtain amounts in excess of their calculated out-of-pocket losses, or that Plaintiffs would achieve multiples in the form of liquidated damages and interest. But those outcomes are not guaranteed and would require Class Members to wait additional years for payment from this matter, assuming such payments were even ordered and collected from Defendants.

28. After accounting for deductions for a service award to the named Plaintiff, attorneys' fees and expenses, settlement administration expenses, and a reserve fund to cover administration issues, the average payment to the nearly 1,700 Class Members is expected to be approximately $739.98 (Reimbursements Subclass A), $110.82 (Reimbursements Subclass B), or $35.82 (Overtime Pay Subclass).

29. At the final approval stage Class Counsel will also request that in recognition of the services he rendered on behalf of the more than 1,675 other drivers and helpers, Plaintiff Larry Swanson be granted a service award of $15,000.

30. This proposed award is intended to compensate Mr. Swanson for his valuable and tremendous efforts in assisting counsel throughout 10 years of this litigation in developing the theories of the case and obtaining evidence used to convince Manhattan Beer of its risks in defending against liability. Before joining this litigation, Plaintiff agreed to shoulder the responsibilities of representative plaintiffs. He also reviewed and discussed the pleadings, repeatedly conferred with Class Counsel on case progress, litigation strategy, and settlement, at all times encouraging Class Counsel to obtain the best possible result for Class Members.

31. Notably, Plaintiff was also deposed at length after earnestly preparing for his deposition. And, on multiple occasions during the decade this case was pending, Mr. Swanson was called upon to provide documents and other information and data supporting both his own and the Class claims in this litigation. Plaintiff also assisted with preliminary settlement negotiations and lent support during two mediation sessions and various follow-up calls. His participation in this case was significant and critical.

32. The service award request was subject to arms-length negotiations between the parties, was facilitated by an experienced mediator, and will be disclosed to the Class. Plaintiff

will move for Court approval of the Service Award simultaneously with Plaintiff's Motion for Final Approval of the Settlement.

33. In connection with their Motion for Final Approval of the Settlement, Plaintiff will also request that the Court approve attorneys' fees of no more than one-third of the Settlement Fund (i.e., $333,333), plus litigation expenses of up to $15,000. This sum is consistent with fee awards in the Second Circuit. In Class Counsel's experience, law firms that represent plaintiffs in contingency employment matters in this Circuit typically charge their clients at least one third (33.33%) of their gross recoveries, exclusive of litigation expenses. Further, as set forth in the accompanying Memorandum of Law, many courts in this District and elsewhere routinely approve one-third fee awards. This fee represents but a small fraction of Class Counsel's lodestar over ten years of litigation. Indeed, the amount requested is barely over 10% of Class Counsel's total $3,072,609 lodestar.

34. Class Counsel's fee and expense request was also subject to arms-length negotiations between the parties, was facilitated by Mr. Scheinman, and will be disclosed to the Class.

35. Class Counsel have also committed significant resources to the ten-year investigation and litigation of this case, brought viable claims and aggressively pursued the facts necessary to prevail on the merits in the event that this case had not settled.

36. Altogether, WMP devoted over 3,700 hours in the ten years spent investigating, prosecuting, and settling this case. The chart below summarizes the billable time each attorney performed on behalf of Plaintiff and the Class.[2]

---

[2] Class Counsel further used its judgment to write-off hours for current and former attorneys from these calculations.

10

| **SUMMARY OF CLASS COUNSEL'S LODESTAR** | | |
|---|---|---|
| **TIMEKEEPER** | **TOTAL HOURS** | **TOTAL FEES** |
| Daniel J. Brenner, Senior Associate | 79.4 | $40,097.00 |
| Russell M. Busch, Former Associate | 960.0 | $460,800.00 |
| J. Burkett McInturff, Shareholder and Partner | 150.6 | $134,034.00 |
| Sharon S. Ourien, Former Senior Associate | 188.7 | $95,293.50 |
| Tiasha Palikovic, Shareholder and Partner | 1,124.0 | $1,032,240.00 |
| Ethan D. Roman, Counsel | 232.8 | $157,140.00 |
| Steven L. Wittels, Founding Partner | 973.0 | $1,153,005.00 |
| **TOTAL** | **3,708.5** | **$3,072,609.50** |

37.     The hours reported are reasonable for a case of this complexity and magnitude and were compiled from time records maintained by each attorney participating in the case. Based on my knowledge and experience in cases of this kind, the time spent was reasonable and necessary to achieve the excellent result Class Counsel's efforts achieved here.

38.     WMP's $3M+ lodestar built up over 10 years of commitment demonstrates that despite what turned out to be a low damages case for the amount of hours needed to achieve this result, Class Counsel nonetheless devoted the attorney resources required to see this 10-year-old case through to the end. Indeed, Class Counsel worked tirelessly for a decade against a fierce adversary, cognizant that the ultimate settlement would nowhere near reimburse counsel for its exhaustive efforts.

39.     In addition to the time already expended, Class Counsel's attorneys' fees are also meant to compensate Class Counsel for time that they will be required to spend administering the settlement in the future. Class Counsel anticipate spending additional time with respect to

11

continuing communications with the Settlement Administrator in administering the settlement, and responding to Class Members' inquiries, especially after checks are issued. In Class Counsel's experience, administering class settlements of this nature requires non-negligible post-Fairness Hearing attorney and staff time.

40. In total, WMP's lodestar amounts to $3,072,609.5. As described more fully in Plaintiffs' accompanying Memorandum of Law, Plaintiffs' counsel are not asking for a multiplier, although as can be seen from the years of work which yielded this settlement, this is a case that would have warranted a multiplier had Plaintiffs' lodestar not vastly exceeded legal fees incurred.

41. In addition, as note above, Class Counsel's requested fee—as compensation for ten years of work—is 89% less than the fair-market value of the firm's lodestar. This represents a substantially discounted charge for the services Class Counsel rendered to Class Members and the public on a purely contingency basis.

42. Class Counsel undertook to prosecute this action without any assurance of payment for their services, litigating this case in the face of significant risk. Wage and hour class actions often involve thousands of class members and millions of dollars at stake, and are, by their very nature, complicated and time-consuming. Attorneys representing clients in these types of class actions inevitably must be prepared to make a tremendous investment of time, energy, and resources. Due also to the contingent nature of the customary fee arrangement, attorneys must be prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind. Indeed, the facts and circumstances of this case presented numerous and substantial hurdles to a successful recovery on behalf of all Class Members. Class Counsel stood to gain no compensation in the event the case was unsuccessful.

12

43. To date, Class Counsel has worked without compensation of any kind, and their compensation is wholly contingent upon the result achieved.

44. The majority of Class Counsel's cases are taken on pure contingency, and Class Counsel cover all out-of-pocket costs and expenses incurred. Thus, when Class Counsel spends time on contingency matters, they do so at significant cost and risk for the firm. Class Counsel frequently turns away cases, including hourly litigation matters and other contingency matters, in order to enable its attorneys to work on pending contingency matters, primarily class or collective actions.

45. The Parties have agreed on the selection of the firm Arden Claims Services as Settlement Administrator to provide notice to the Class and administer payment of the settlement to Class Members. The Settlement Administrator's fee of up to $30,500 will be paid from the Settlement Fund. Based on the experience of Class Counsel, the Settlement Administrator's fee in this matter is reasonable for a wage and hour case of this size and the notice process described below.

## VI. The Notice and Settlement Fund Distribution Plan

46. Within twenty (20) days after entry of the Preliminary Approval Order, Defendants will provide the Settlement Administrator with a Class List, containing, inter alia, the full names, social security numbers, last-known addresses, last-known email addresses, and hours worked during the Class Period of each Class Member. Settlement Agreement § 3.6(B).

47. The Settlement Administrator will take reasonable and customary efforts to ensure the Class List is as up-to-date as practicable, including running the Class List through the National Change of Address Database, which provides updated addresses for individuals who filed an address change with the United States Postal Service. *Id.* § 2.6(D).

48. Within thirty (30) days of receiving the Class List, the Settlement Administrator will both mail and email the Notice. *Id.* § 2.6(C).

49. Undeliverable Notices will be skip traced and re-mailed. *Id.* § 2.6 (D).

50. Class Members will have sixty (60) days after the date the Notice is mailed to opt out or object to the settlement (the "Bar Date"). *Id.* § 1.4.

51. A final Fairness Hearing will be held as soon as convenient for the Court. *Id.* §§ 1.14, 2.5(B), 2.9.

52. Prior to the Fairness Hearing, the Settlement Administrator shall certify the completion of its responsibilities that can be accomplished prior to the Fairness Hearing. *Id.* §§ 2.3(T), 2.9(A).

53. Plaintiffs will file a Motion for Final Approval of Settlement in accordance with the schedule the Court sets in the Preliminary Approval Order. *Id.* § 2.9(A).

54. After the final Fairness Hearing, if the Court grants the Motion for Final Approval, the Court will issue a Final Order and Judgment. *Id.* § 2.9(B).

55. Not later than twenty-eight (28) days after the settlement's Effective Date, Class Members' settlement checks will be mailed. *Id.* § 3.3(D).

### VII. The Class Meets the Requirements for Class Certification for Settlement Purposes

56. Plaintiff easily satisfies the numerosity requirement because according to Defendants' records there are approximately 1,680 Class Members.

57. There exist questions of law or fact common to the entire Class. All of the Class Members' claims raise common questions and all arise under the NYLL.

58. Plaintiff's claims are typical of those of the Class. Plaintiff and the Class challenge the same policies and practices under the same legal theories, share similar facts, and seek similar

relief. Plaintiff's claims arise from the same factual and legal circumstances that form the bases of all Class Members' claims. Plaintiff claims to have suffered the same injuries as Class Members did. Because Plaintiff's wage and hour claims arise from the same factual and legal circumstances that form the basis of Class Members' claims, Plaintiff satisfies the typicality requirement.

59. Plaintiff is an adequate representative of the Class's interests. First, Plaintiff has wage and hour claims identical to those of the Class he seeks to represent, and thus, no conflicts of interest are present. Second, Plaintiff's counsel has substantial experience prosecuting and settling employment class actions, including wage and hour class actions. Further, the lawyers assigned to this matter are well-versed in wage and hour and class action law and are well-qualified to represent the interests of the Class.

60. Common issues present in this action predominate over any individual issues. This case centers on Manhattan Beer's alleged common employment policies and practices, which the comprehensive settlement seeks to address.

61. A class action is the superior method of adjudicating this action. Litigating the individual claims of the Class Members would be inefficient and cost prohibitive. Furthermore, especially given the complexity of proof in this case, many Class Members would be unable to maintain individual litigation and would be prevented from obtaining relief for their injuries. Further, Plaintiff and Class Members have limited financial resources with which to prosecute individual actions.

62. The settlement provides a substantial benefit to Plaintiff and the proposed Class. This benefit outweighs the risk that all or some of the claims in the Complaint could be dismissed, or that a smaller or no recovery might be achieved after a trial and appeals, possibly years in the

future, during which Manhattan Beer would have had the opportunity to assert substantial defenses to the claims.

63. Accompanying this Declaration is a proposed Order (attached hereto as **Exhibit B**) and supporting Memorandum of Law that demonstrates why, under governing law, this Court should preliminarily approve the proposed Settlement and grant the relief requested in the instant motion.

WHEREFORE, Plaintiff respectfully requests that the Court (1) grant preliminary approval of the proposed settlement as described in the Settlement Agreement attached hereto as Exhibit A; (2) conditionally certify the proposed Class for settlement purposes; (3) approve the proposed Notice and direct its distribution; (4) appoint Wittels McInturff Palikovic as Class Counsel; (5) schedule the Final Approval Hearing; and (6) grant such other relief as the Court deems just and proper.

I declare under penalty of perjury that the foregoing is true and correct.

Executed:   New York, New York
            November 14, 2025            /s/  *Steven L. Wittels*
                                              Steven L. Wittels

**WITTELS MCINTURFF PALIKOVIC**
305 BROADWAY, 7TH FLOOR
NEW YORK, NEW YORK 10007
Telephone: (914) 775-8862
slw@wittelslaw.com

*Counsel for Plaintiff and the Class*