Exhibit A

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Agreement") is entered into by and between Larry Swanson ("Plaintiff") on the one hand and Defendants Manhattan Beer Distributors LLC, ("Manhattan Beer"), Manhattan Beer Distributors Inc., and Simon Bergson ("Bergson") (Bergson, together with Manhattan Beer and Manhattan Beer Distributors Inc., are "Defendants") on the other (Defendants and Plaintiff are collectively referred to as the "Parties"), by and through their respective counsel of record.

## I.    RECITAL AND BACKGROUND

**WHEREAS**, on September 18, 2015, Plaintiff filed a class and collective action lawsuit in the United States District Court for the Eastern District of New York, styled *Larry Swanson, individually and on behalf of all others similarly situated v. Manhattan Beer Distributors, LLC, Manhattan Beer Distributors, Inc., and Simon Bergson*, Civil Action No. 15 Civ. 5383, ECF No. 1 (the "Action" or "Litigation"), in which Plaintiff sought to represent a class and collective of Drivers who were allegedly compelled to reimburse Manhattan Beer for certain monetary losses (the "Reimbursements Claim"), and Drivers and Helpers who allegedly did not receive compensation for all overtime worked, or allegedly did not receive spread-of-hours pay, as alleged and defined in the Action;

**WHEREAS**, the Litigation asserted class and collective action claims that Defendants violated the Fair Labor Standards Act ("FLSA"), and the New York Labor Law ("NYLL");

**WHEREAS**, on November 2, 2015, Plaintiff filed a First Amended Class Action and Collective Action Complaint ("First Amended Complaint"), further particularizing the allegations, ECF No. 14;

**WHEREAS**, on December 12, 2016, Defendants moved for summary judgment on unpaid overtime wages pursuant to both the FLSA and NYLL, spread-of-hours pay pursuant to N.Y.C.R.R. § 142-2.4, wage notice violations pursuant to the NYLL, and recordkeeping violations pursuant to both the FLSA and NYLL, ECF No. 39;

**WHEREAS**, on June 28, 2018, the Court held that Plaintiff and the putative class and collective he sought to represent fell within the Motor Carrier Act Exemption of the FLSA, 29 U.S.C. § 213(b)(1), ("MCA Exception") and dismissed all FLSA claims in the Action. The Court also held that the MCA Exception was incorporated into the NYLL and likewise dismissed all NYLL claims for unpaid overtime wages, leaving the Reimbursements Claim and the wage notice violation claim pursuant to the NYLL as the only claims left in the case, ECF No. 68;

**WHEREAS**, on November 7, 2018, the Court dismissed all claims asserted by Patrick Heady ("Heady") in the First Amended Complaint and ordered that Heady will not, and shall not, participate in any manner in any resolution or settlement as a member of a putative class or otherwise relative to claims asserted in the First Amended Complaint, ECF No. 85;

**WHEREAS**, on July 24, 2019, the Parties cross-moved for summary judgment, with Defendants moving for dismissal of the Reimbursements Claim and the wage notice violations pursuant to the NYLL, and Plaintiff moving for judgment on the same, ECF Nos. 108, 119;

**WHEREAS**, on October 7, 2020, the Court granted Plaintiff's motion for summary judgment as to his Reimbursements Claim and granted Defendants' motion as to Plaintiff's NYLL claims for alleged wage notice violations, ECF No. 138;

**WHEREAS**, on July 21, 2021, Plaintiff moved for reconsideration of the Court's June 28, 2018 Order to the extent that the MCA Exception did not extend to the NYLL, ECF No. 157;

**WHEREAS**, on November 22, 2023, the Court granted Plaintiff's motion for reconsideration, holding that the MCA Exception did not extend to the NYLL, and vacated its prior June 28, 2018, Order, to the extent it had granted summary judgment regarding Plaintiff's NYLL overtime claims on that basis, ECF No. 161;

**WHEREAS**, the Parties commenced discovery on January 11, 2016 and have engaged in extensive discovery in connection with the Litigation for more than nine years, including: (1) eighteen interrogatories, thirty-one requests for production, and one request for admission issued by Plaintiffs; (2) fifty-two interrogatories, sixty requests for production, and two requests for admission issued by Defendants; (3) thirteen document productions by Defendants consisting of thousands of pages, all of which were reviewed and analyzed by Class Counsel; and (4) two document productions by Plaintiff, which were reviewed and analyzed by Defendants' Counsel;

**WHEREAS** over the course of the Litigation, the Parties vigorously contested discovery, including: (1) conducting a lengthy deposition of Plaintiff Larry Swanson and two separate depositions of Defendant's Chief Operations Officer Michael McCarthy, one in his individual capacity and one as Defendants' Rule 30(b)(6) corporate designee; (2) appearing before Magistrate Judge Roanne L. Mann four times for case management and discovery conferences to seek the Court's guidance on complex contested issues including the scope of class action and merits discovery and the timing of document production and deposition discovery; (3) appearing before Magistrate Judge Taryn A. Merkl two times for case management and discovery conferences; and (4) filing nearly ten substantive letters arguing Party positions regarding disputes case management and discovery issues, *see, e.g.*, ECF Nos. 75–76, 78, 86–87, 90–91, 153, 155;

**WHEREAS**, Plaintiff and Defendants, through their respective counsel, also have participated in Court-annexed mediation and extensive arm's length negotiations in efforts to settle remaining disputes underlying the Litigation;

**WHEREAS**, on November 25, 2020, the Court referred the Litigation to mediation and on November 30, 2020, the Court selected an experienced class action mediator Robert J. Kheel. The Parties attended an initial joint pre-mediation session with Mediator Kheel on November 30, 2020, followed by two joint mediation sessions on December 28, 2020 and January 11, 2021;

**WHEREAS**, in preparation for mediation, Defendants produced data concerning deductions, and Plaintiffs engaged in extensive pre-mediation damages, liability, and class certification analysis, including preparing comprehensive reports on liability and damages issues. Additionally, Plaintiff had multiple follow-up communications with Mediator Kheel from January 2021 to May 2021, including virtual meetings solely with the mediator on February 10, March 10, and April 9, 2021;

**WHEREAS**, Defendants performed similarly detailed and comprehensive assessments and reports of the claims and defenses in this matter and the evidence adduced in discovery that was relevant thereto, and also had sole meetings with the mediator on January 8, January 26, March 10, April 10, and May 5, 2021;

**WHEREAS**, beginning in February 2024, the Parties reengaged in further settlement efforts with the assistance of noted class action Mediator Martin F. Scheinman, Esq., including a joint virtual mediation session on August 14, 2025 with all counsel led by Mediators Scheinman and Barry Peek;

**WHEREAS**, the Parties' settlement efforts were fruitful, and on September 19, 2024 the Parties requested that the Court enter a 90-day stay of all Court deadlines in preparation for mediation, ECF No. 172;

**WHEREAS**, on September 20, 2024, the Court granted the Parties' requested stay;

**WHEREAS**, on December 18, 2024, the Parties notified the Court that they were hopeful for resolving this matter and requested a 60-day extension of the stay to allow settlement discussions to continue and to enable the Parties to undertake the process of finalizing a written class action settlement agreement, ECF No. 173, and on December 19, 2024, the Court extended the stay by an additional sixty days;

**WHEREAS**, on February 14, 2025, the Parties requested a 60-day extension of the stay to work on finalizing a written class action settlement agreement, ECF No. 174, and on February 19, 2025, the Court granted the extension;

**WHEREAS**, on April 17, 2025, the Parties requested a 60-day extension of the stay to continue work on finalizing a written class action settlement agreement, ECF No. 175, and on April 21, 2025, the Court granted the extension;

**WHEREAS**, on June 20, 2025, the Parties requested a 60-day extension of the stay to continue work on finalizing a written class action settlement agreement, ECF No. 176, and on June 23, 2025, the Court granted the extension to August 18, 2025;

**WHEREAS**, on August 18, 2025, the Parties requested a 60-day extension of the stay to continue work on finalizing a written class action settlement agreement, ECF No. 177, and on August 19, 2025, the Court granted the extension to October 17, 2025;

**WHEREAS**, on October 17, 2025, the Parties requested a 4-week extension of the stay to continue work on finalizing a written class action settlement agreement, ECF No. 178, and on October 20, 2025, the Court granted the extension to November 14, 2025;

**WHEREAS**, the Parties spent the period from December 5, 2024 to November 5, 2025 negotiating the final settlement terms. As with all prior settlement negotiations and litigation in this matter, these discussions were vigorous and included comprehensive written correspondence and meet and confers among counsel on December 27, 2024, February 13, 2025, March 20, 2025, April 10, 2025, April 11, 2025, April 16, 2025, April 17, 2025, May 7, 2025, May 9, 2025, May 21, 2025, June 10, 2025; June 12, 2025, June 17, 2025, June 18, 2025, July 3, 2025, August 13,

2025, August 14, 2025, September 4, 2025, September 10, 2025, September 25, 2025, September 26, 2025, October 6, 2025, October 14, 2025, October 16, 2025, October 17, 2025, October 27, 2025, and November 5, 2025;

**WHEREAS**, Defendants deny and continue to deny all of the allegations made in the Litigation and have denied and continue to deny that they are liable or owe wages, or any other damages to anyone with respect to the allegations or causes of action asserted in the Litigation. Nevertheless, to avoid the substantial expense and uncertainty of litigation, including appeals, and the disruption to their business, and without admitting to any of the allegations or claims made by or on behalf of Plaintiff or the Class in the Litigation, Defendants have agreed to settle the Litigation on the terms and conditions set forth in this Agreement;

**WHEREAS**, Class Counsel (as defined below) analyzed and evaluated the facts and the law relating to the merits of the claims made against Defendants and the impact of this Agreement on Plaintiff and the Class Members, and based upon Class Counsel's analysis and evaluation of a number of factors and recognizing the substantial risks of continued litigation, including the possibility that the Litigation, if not settled now, might result in a recovery that is less favorable and that would not occur for several more years, Class Counsel is satisfied that the terms and conditions of this Agreement are fair, reasonable and adequate and that this Agreement is in the best interest of the Plaintiff and the Class Members;

**WHEREAS**, the Parties have now negotiated and drafted this Agreement providing for a resolution of Plaintiff's and the Class Members' claims;

**WHEREAS**, the Parties recognize that continued prosecution of this litigation would be protracted and expensive and the results uncertain;

**WHEREAS**, the purpose of this Agreement is to settle fully and finally all claims among the Plaintiff, the Class Members, and Defendants, including all claims asserted in the Litigation, in order to avoid the burden, expense, and uncertainty of continuing the Litigation; and

**NOW THEREFORE**, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto agree to a full and complete settlement of the Litigation and all disputes between the Parties on the following terms and conditions:

## 1. DEFINITIONS

The defined terms set forth herein shall have the meanings ascribed to them below.

**1.1    Action or Litigation.** The "Action" or "Litigation" shall mean the class action complaint in the United States District Court for the Eastern District of New York, styled *Larry Swanson, individually and on behalf of all others similarly situated v. Manhattan Beer Distributors, LLC, Manhattan Beer Distributors, Inc., and Simon Bergson*, Civil Action No. 15 Civ. 5383.

**1.2    Administrator or Settlement Administrator.** The "Administrator" or "Settlement Administrator" will be Arden Claims Services LLC, or another administrator to be

mutually agreed upon by the Parties, subject to approval by the Court, to mail the Notices, and administer the calculation, allocation, and distribution of the Settlement Fund (defined below).

1.3   **Agreement.**  "Agreement" shall refer to this Settlement Agreement and Release entered into between the Parties.

1.4   **Bar Date.**  "Bar Date" means the date by which any Class Member must opt-out from the settlement, or object to the settlement.  The Bar Date shall be sixty (60) days after the initial mailing of the Notice by the Settlement Administrator.  The Bar Date shall be clearly set forth in the Notice.

1.5   **Class or Class Member(s).** "Class" or "Class Members" shall be defined as all members of Reimbursements Subclasses and/or Overtime Pay Subclass, collectively (as defined below).

1.6   **Class Counsel or Plaintiffs' Counsel.**  **"**Class Counsel" or "Plaintiff's Counsel" shall mean Wittels McInturff Palikovic, 305 Broadway, 7th Floor, New York, New York 10007.  The terms Class Counsel and Plaintiff's Counsel shall be used interchangeably.

1.7   **Court.** The "Court" means the United States District Court, Eastern District of New York.

1.8   **Days.** Unless otherwise specified in this Agreement as "business days," which shall mean consecutive business days, all other references to "days" shall mean consecutive calendar days.

1.9   **Defendants' Counsel.**  "Defendants' Counsel" shall mean Epstein Becker & Green, P.C., 875 Third Avenue, New York, New York 10022.

1.10   **Drivers.** "Drivers" means Manhattan Beer employees who were so classified in Defendants' records.  If a Driver worked at any time in his employment with Manhattan Beer as both a Driver and Helper, then that Class Member shall be categorized as a Driver for settlement purposes.

1.11   **Effective Date.**  "Effective Date" of the settlement shall be thirty (30) days after the later of: (a) the Court's entry of a Final Approval Order (as defined herein) approving this Agreement; or (b) such later date when any appeals, objections, or other challenges are resolved definitively and in such manner that this Agreement becomes effective.  In the event a notice of appeal is filed, the Effective Date shall be the latest of the following:  (1) the date any appeal from the Final Approval Order has been finally dismissed; (2) the date the Final Approval Order has been affirmed on appeal in a form substantially identical to the form of the Final Approval Order entered by the Court; (3) the time to petition for review with respect to any appellate decision affirming the Final Approval Order has expired; and/or (4) if a petition for review of an appellate decision is filed, the petition has been denied or dismissed, or, if granted, has resulted in affirmance of the Final Approval Order in a form substantially identical (*i.e.*, including identical payment obligations and procedures, releases, and other material terms) to the form of the Final Approval Order

entered by the Court.  If the Final Approval Order remains subject to appeal or review, the Effective Date of the settlement has not yet occurred.

1.12 **Employer Payroll Taxes.**  "<u>Employer Payroll Taxes</u>" means all taxes and withholdings, including the Federal Insurance Contributions Act (FICA), Federal Unemployment Tax Act (FUTA), and State Unemployment Tax Act (SUTA) obligations, that Defendants are required to  withhold or pay in connection with the payments made, if any, on that portion of any payments made for wages, to Participating Class Members in this Litigation under the terms of this Agreement.

1.13 **Escrow Account.**  "<u>Escrow Account</u>" means the separate, interest-bearing escrow account to be established by the Settlement Administrator under terms agreed upon with counsel for the Parties.

1.14 **Fairness Hearing.** "<u>Fairness Hearing</u>" means the hearing before the Court relating to the Motion for Final Approval of this Agreement, unless otherwise scheduled by the Court without the filing of a motion.

1.15 **Final Approval Order.** The "<u>Final Approval Order</u>" shall mean the order entered by the Court after the Fairness Hearing approving the terms and conditions of this Agreement, directing distribution of the settlement payments from the Settlement Fund, approving professional fees, expenses, and costs, and dismissing the Litigation (as defined below) with prejudice.

1.16 **Gross Settlement Amount.** "<u>Gross Settlement Amount</u>" means One Million Dollars and Zero Cents ($1,000,000.00), which is inclusive of all potential Individual Settlement Awards to Plaintiff and Class Members, and any Court-approved attorneys' fees and costs and expenses for Class Counsel, Court-approved Settlement Administrator fees, a Court-approved Reserve Fund, and Court-approved Service Award to the Plaintiff, to the extent authorized by a Final Approval Order.  In no event shall the total amount paid by Defendants to fund this Agreement exceed the amount of the Gross Settlement Amount.

1.17 **Helpers.**  "<u>Helpers</u>" means Manhattan Beer employees who were so classified in Defendants' records.

1.18 **Individual Settlement Award.** The "<u>Individual Settlement Award</u>" is the portion of the Net Settlement Amount attributable to Plaintiff and each settlement Class Member.

1.19 **Net Settlement Amount.**  "<u>Net Settlement Amount</u>" means the remainder of the Gross Settlement Amount after deductions for: (1) the Settlement Administration Expenses (which amount shall not exceed Thirty Thousand Five Hundred Dollars and Zero Cents ($30,500.00)); (2) Court-approved attorneys' fees (which amount shall not exceed Three Hundred Thirty-Three Thousand and Three Hundred Thirty-Three Dollars and Thirty-Three Cents  ($333,333.33); and costs (which amount shall not exceed Fifteen Thousand Dollars and Zero Cents ($15,000.00)) for Class Counsel; (3) any Court-approved Service Award to Plaintiff (which amount shall not exceed Fifteen Thousand Dollars and Zero Cents  ($15,000.00)); and (4) the Court-approved Reserve Fund (which amount shall not exceed Five Thousand Dollars and Zero Cents ($5,000.00)).  Any amounts not approved

for the deductions above shall be reallocated into the Settlement Fund as part of the Net Settlement Amount.

**1.20** **Notice.** "Notice" or "Settlement Notice" means the form to be negotiated and mutually agreed upon by the Parties, and approved by the Court that shall be mailed and emailed to the Class Members.

**1.21** **Objector.** "Objector" means an individual Class Member who properly files an objection to this Agreement. Any individual Class Member who opts-out of this Agreement may not simultaneously object to this Agreement.

**1.22** **Overtime Pay Subclass.** The "Overtime Pay Subclass" or "Overtime Pay Subclass Members" shall be defined as Plaintiff and all current and former Manhattan Beer employees who were employed as Drivers or Helpers and who worked for Manhattan Beer in New York State at any time from September 18, 2009, through and including the Court's Preliminary Approval of the Agreement.

**1.23** **Preliminary Approval Order.** "Preliminary Approval Order" means the Order entered by the Court preliminarily approving the terms and conditions of this Agreement and directing the manner and timing of providing the Notice to Class Members.

**1.24** **Participating Class Members.** "Participating Class Members" mean Class Members who do not opt-out of this Agreement in accordance with the procedures set forth below.

**1.25** **Reimbursements Subclasses.** The "Reimbursements Subclasses" or "Reimbursements Subclasses Members" shall be defined as Plaintiff and all current and former Manhattan Beer employees who were at any time classified as Drivers in Manhattan Beer's records and who worked for Manhattan Beer in New York State at any time from September 18, 2009, through and including the Court's Preliminary Approval of the Agreement. "Reimbursements Subclass A" or "Reimbursements Subclass A Members" shall be defined as all current and former Manhattan Beer employees who were at any time classified as Drivers in Manhattan Beer's records and who worked for Manhattan Beer in New York State at any time between September 18, 2009 and April 15, 2016. "Reimbursements Subclass B" or "Reimbursements Subclass B Members" shall be defined as all current and former Manhattan Beer employees who were at any time classified as Drivers in Manhattan Beer's records and who were hired by and worked for Manhattan Beer in New York State at any time after April 15, 2016 through and including the Court's Preliminary Approval of the Agreement.

**1.26** **Reserve Fund.** "Reserve Fund" means the Five Thousand Dollars and Zero Cents ($5,000.00) within the Escrow Account to address errors and omissions in the calculation of Class Members' individual shares of the Settlement, as mutually agreed to by the Parties, including but not limited to (1) undisputed claims from individuals claiming to be Class Members but not identified as such by Defendants, (2) Class Members who correctly challenge their share of the Settlement Fund; and (3) Class Members who have reasonable explanations for not having timely cashed their checks. The Reserve Fund shall remain open through the 18-month anniversary of the Effective Date.

1.27 **Settlement Administration Expenses.** "Settlement Administration Expenses" means all costs, fees, and expenses incurred by the Settlement Administrator in providing Notice, responding to inquiries from Class Members, issuing settlement payments, related services, the costs of the Escrow Account, and any other costs, fees, or expenses associated with the administration of this settlement. All Settlement Administration Expenses must be approved by the Court, and shall not exceed Thirty Thousand Five Hundred Dollars and Zero Cents ($30,500.00).

1.28 **Settlement Checks.** The "Settlement Checks" shall mean the checks issued to Participating Class Members from the Settlement Fund by the Administrator as calculated by the Administrator in accordance with this Agreement.

1.29 **Settlement Fund.** "Settlement Fund" means the cash fund equal to the Gross Settlement Amount, to be deposited by Manhattan Beer in accordance with the terms of this Settlement Agreement into the Escrow Account. The Settlement Fund includes all interest and income that shall accrue on the sums deposited in the Escrow Account. All taxes on income or interest generated by the Settlement Fund, if any, shall be paid out of the Settlement Fund.

## 2. PROCEDURAL ISSUES

2.1 **Binding Agreement.** This Agreement is a binding agreement and contains all material agreed-upon terms for the Parties to seek a full and final settlement of their disputes as set forth in the Litigation (as defined herein).

2.2 **Retention of the Administrator.** Plaintiff shall engage the Settlement Administrator to mail Notices and administer the settlement consistent with this Agreement.

2.3 **Retention and Responsibilities of the Settlement Administrator.** The Settlement Administrator shall be responsible for:

(A) preparing, printing and disseminating the Notice to the Class and any other notices required by the Court or by law;

(B) copying counsel for all Parties on material correspondence and promptly notifying all counsel for the Parties of any material requests or communications made by any Party;

(C) receiving, reviewing, and responding to any Opt-Out Statements (defined below), objections, or any other inquiries submitted by Class Members;

(D) promptly furnishing to counsel for the Parties copies of any Opt-Out Statements, objections or other written or electronic communications from Class Members that the Administrator receives;

(E) maintaining and memorializing Opt-Out Statements and objections, including maintaining the original mailing envelope in which the request was mailed;

(F)     establishing a Settlement Fund to be used for the distribution of all Individual Settlement Checks to Participating Class Members, Class Counsel, the Settlement Administrator, and Plaintiff;

(G)     calculating the amount of each Class Member's Settlement Check;

(H)     calculating the employer-side payroll taxes required, if any, pursuant to this Agreement;

(I)     calculating and paying each Participating Class Member's payroll taxes and Employer Payroll Taxes and preparing appropriate tax forms for Defendants and for Plaintiff and each Participating Class Member, in relation to payments received under this Agreement;

(J)     mailing the Notices to Class Members, in accordance with the Court's Preliminary Approval Order;

(K)     mailing the Settlement Checks to Participating Class Members

(L)     preparing and mailing the Settlement Checks and any related tax reporting forms to Plaintiff and Participating Class Members;

(M)     ascertaining current address and addressee information for each Notice returned as undeliverable and attempting multiple mailings of said Notice as provided for in this Agreement;

(N)     responding to inquiries from Class Members regarding procedures for filing objections and Opt-Out Statements;

(O)     referring to Class Counsel all inquiries by the Class regarding matters not within the Administrator's duties specified herein;

(P)     responding to inquiries from Class Counsel and Defendants' Counsel consistent with the Administrator's duties specified herein;

(O)     promptly apprising Class Counsel and Defense Counsel of the activities of the Administrator and providing a final declaration detailing the Notice mailing results;

(P)     maintaining adequate records of its activities, including the dates of the mailing of Notice(s), returned mail and other communications, and attempted written or electronic communications with the Class;

(Q)     distributing funds in the Settlement Fund pursuant to the procedures set forth in this Agreement;

(R)     confirming in writing to Class Counsel and Defendants' Counsel its completion of the administration of the settlement;

(S)     timely responding to communications from the Parties or their counsel;

(T)     providing a final report and affidavit, deliverable to Class Counsel and Defense Counsel, detailing the results of the class mailings, opt-outs, and objections; and

(U)     such other tasks the Parties mutually agree.

Throughout the period of claims administration, the Administrator will provide periodic reports to the Parties regarding the status of the mailing of the Notices to the Class, the claims administration process, and distribution of the Settlement Checks or any other aspect of the claims administration process.

**2.4     Access to the Administrator.** The Parties will have equal access to the Administrator throughout the settlement administration period. The Parties agree to cooperate with the Settlement Administrator and assist it in any way reasonably possible in administering the settlement.

**2.5     Preliminary Approval Motion**

**(A)**     Within forty-five (45) days after the execution of this Agreement, or as otherwise ordered by the Court, Class Counsel, on Plaintiff's behalf, will file an unopposed Motion for Preliminary Approval of the Class Action Settlement ("Preliminary Approval Motion") in Court, which shall include: (1) the proposed Notice; (2) a proposed Preliminary Approval Order; (3) an executed final version of this Agreement; and (4) the necessary documents, memoranda, affidavits, and exhibits for the purposes of certifying a Class under Rule 23 of the Federal Rules of Civil Procedure for settlement purposes only, and preliminarily approving this Agreement.

**(B)**     The Preliminary Approval Motion will also seek: (1) the appointing of Wittels McInturff Palikovic as Class Counsel; (2) the setting of a date for individuals to opt-out of this Agreement and/or provide objections to this Agreement, which date shall be sixty (60) days from the initial distribution of Notice to the Class Members by the Administrator; and (3) to set a date for the Fairness Hearing for Final Approval of the settlement which shall be no earlier than ninety (90) days following the date that the Court enters the proposed Preliminary Approval Order.

**(C)**     The proposed Preliminary Approval Motion, including but not limited to the Notice and proposed Preliminary Approval Order shall be drafted by Class Counsel. Class Counsel will provide Defendants' Counsel the opportunity to review and comment on the items in Section 2.5(A) above prior to their submission and should the Parties disagree on content, after good faith efforts at resolution, any remaining issues will be promptly addressed to Mediator Martin F. Scheinman.  The Parties will work together diligently and in good faith to obtain preliminary and final approval expeditiously.  Defendants will not oppose the Preliminary Approval Motion unless it is inconsistent with this Agreement.

## 2.6    Sending of Notice to Class Members

**(A)**  Within twenty (20) business days of the Court entering the Preliminary Approval Order, Defendants will provide the Settlement Administrator, in electronic form, a list of all Class Members (the "Class Members List") which includes the following information:

(i) for Reimbursements Subclass A Members, (1) name, (2) title, (3) weeks worked at Manhattan Beer from September 18, 2009 through April 15, 2016, and, to the extent available, (4) Social Security Number, (5) last known email address, and (6) last known mailing address, as that information exists on file with Defendants and to the extent Defendants have such information, contained in a Microsoft Excel spreadsheet that shall remain confidential;

(ii) for Reimbursements Subclass B Members, (1) name, (2) title, and, to the extent available, (3) Social Security Number, (4) last known email address, and (5) last known mailing address, as that information exists on file with Defendants and to the extent Defendants have such information, contained in a Microsoft Excel spreadsheet that shall remain confidential; and

(iii) for Overtime Pay Subclass Members, (1) name, (2) title, (3) weeks worked at Manhattan Beer as Drivers or Helpers at any time from September 18, 2009 through the date of the Court's Preliminary Approval Order, and, to the extent available, (4) Social Security Number, (5) last known email address, and (6) last known mailing address, as that information exists on file with Defendants and to the extent Defendants have such information, contained in a Microsoft Excel spreadsheet that shall remain confidential.

**(B)**  Defendants shall provide the Class Members List to the Settlement Administrator, with a copy to Class Counsel. At the time of providing the Class Members List, Defendants shall certify that the data represents the most current and up to date information that Defendants have for Class Members.  The Class Members List is to be used by the Settlement Administrator and Class Counsel only to effectuate the settlement, and may not be copied, disseminated to anyone, or used for any other purpose. The Settlement Administrator shall delete and destroy all electronic and paper copies of the Class Members List within thirty (30) days of the Settlement Administrator's verification that it has completed its administration of the settlement, which it shall confirm in writing to the Parties.

**(C)**  Within thirty (30) days of the Preliminary Approval Order, the Settlement Administrator shall mail the appropriate Notice to all Class Members, via First Class United States Mail, postage prepaid, and via email, using each Class Member's last known mailing address and email address as recorded in Defendants' records.

**(D)**  The Settlement Administrator will take all reasonable steps to obtain the correct address of any Class Member for whom a First Class United States Mail Notice is returned as undeliverable, including one skip trace, and shall attempt a re-distribution to any Class

11

Member for whom it obtains more recent contact information. The Settlement Administrator shall notify Class Counsel and Defense Counsel of any Notice sent to a Class Member that is returned as undeliverable after the first distribution, as well as any such Notice returned as undeliverable after any subsequent distribution(s) as set forth in this Agreement.

**(E)** No Settlement Check shall be sent to a Class Member for whom a First Class United States Mail Notice is returned as undeliverable, and for which the Settlement Administrator is unable to obtain more recent contact information by the end of the Opt-Out Period (as defined below). The Individual Settlement Awards attributable to such Class Members shall instead be distributed pursuant to the procedures in this Agreement.

**(F)** Subject to Court approval of the Final Approval Order, Class Members who do not timely opt-out in accordance with Section 2.7 shall be mailed a Settlement Check as provided for herein, and have released, waived, foreclosed, and are precluded from raising all Released Claims against Defendants as defined in Section 4 of this Agreement, irrespective of whether they choose to endorse or negotiate the Settlement Check.

## 2.7    Opt-Outs.

**(A)**    Any Class Member may request exclusion from the class by "opting out" in accordance with the provisions of this Agreement. Any Class Member who chooses to do so must mail, email, or fax a written, signed statement to the Settlement Administrator that he or she is opting out of the settlement ("Opt-Out Statement"). The Opt-Out Statement must contain the full name, address, and telephone number of the Class Member to be valid. The Opt-Out statement must also be personally signed by the Class Member requesting exclusion (an attorney's signature or a typed signature will not satisfy this requirement), and contain a statement reasonably indicating that the Class Member elects to exclude themselves from the class settlement in *Swanson et al. v. Manhattan Beer Distributors, LLC et al.* in order to be valid. Such Opt-Out Statement must also be sent via mail and postmarked by the Bar Date or via e-mail or fax to the Settlement Administrator prior to midnight, Eastern Standard Time, on the Bar Date. Opt-Out Statements will not be valid unless all of the requirements set forth above are timely and properly satisfied.

**(B)**    The Settlement Administrator shall stamp the date received on the original of each Opt-Out Statement that it receives, and note the date and time of any emailed or faxed Opt-Outs, and shall serve copies of each Statement by email on (1) Class Counsel and (2) Defendants' Counsel not later than 3 calendar days after receipt thereof. The Settlement Administrator shall, within 3 calendar days of the end of the Bar Date, send by email a final list of all Opt-Out Statements to Class Counsel and Defendants' Counsel. The Settlement Administrator shall retain the stamped originals of all Opt-Out Statements and originals of all envelopes accompanying Opt-Out Statements, as well as all emailed or faxed Opt-Outs, in its files until such time as the Settlement Administrator is relieved of its duties and responsibilities under this Agreement.

**(C)** Any Class Member who does not properly submit an Opt-out Statement pursuant to this Agreement will be deemed to have accepted the settlement and the terms of this Agreement.

**(D)** Only individual opt-outs are allowed. Any statement that purports to opt-out more than one Class Member will be null and void.

**(E)** Plaintiff affirmatively supports this settlement and agrees not to opt-out. Neither Plaintiff, Class Counsel, Defendants, nor their counsel will in any way encourage any Class Member to opt-out or discourage any Class Member from participating in this settlement. None of the Parties shall have contact with any Class Member for any purpose prohibited under this Agreement.

**(F)** Class Members who timely opt out will not be bound by the terms of this Agreement, including any releases contained herein, nor will they be entitled to receive any benefits from the settlement.

**2.8    Objections to Settlement.**

**(A)** Class Members who wish to present objections to the settlement at the Fairness Hearing must first make their objections via a written statement. To be considered, such statement must be sent via mail and postmarked by the Bar Date or via e-mail or fax to the Settlement Administrator prior to midnight, Eastern Standard Time, on the Bar Date. The Settlement Administrator must provide copies of each objection received to Class Counsel and Defendants' Counsel by email within 24 hours after receipt by the Settlement Administrator. Any objections not raised properly and timely will be waived, and any Class Member who fails to timely file and serve a valid written objection shall not be permitted to object to the settlement and shall be foreclosed from seeking any review of the settlement or the terms of this Agreement by any means, including but not limited to an appeal.

To be valid, any objection must be set forth in writing and contain all of the following:

a. reference to *Swanson et al. v. Manhattan Beer Distributors, LLC et al.*;

b. the objector's full name, address, telephone number, and personal signature (a typed signature or an attorney's signature will not satisfy this requirement);

c. a written statement of all reasons for the objection;

d. the name and contact information of any and all attorneys or persons representing, advising, or in any way assisting the objector in connection with the preparation or submission of the objection or who may profit from the pursuit of the objection;

e. a statement of whether the objector intends to appear at the Fairness Hearing; and,

  f. only if the objector intends to appear at the Fairness Hearing through counsel, a statement identifying all attorneys representing the objector who will appear at the Fairness Hearing;

(ii) In addition, any objection filed with the assistance of an attorney or persons representing, advising, or in any way assisting the objector in connection with the preparation or submission of the objection or who may profit from the pursuit of the objection must contain all of the following to be valid:

  g. a written statement of any legal support for such objection;

  h. copies of any papers, briefs, or other documents upon which the objection is based;

  i. a list of all persons who will be called to testify in support of the objection, if any;

  j. a detailed list of any other objections and any orders pertaining to the prior objections, the objector, or his or her counsel or other person who may profit from the pursuit of the objection referenced in this item submitted in any action in the previous five (5) years.  If the Class Member or his or her counsel or other person who may profit from the pursuit of the objection referenced in this item has not objected to any other class action settlement in the previous five (5) years, he, she, or it shall affirmatively state so in the written materials provided in connection with the objection; and

  k. a statement of the Class Member's membership in the Class.

Any Class Member who submits a timely written objection written or filed with the assistance of an attorney, law firm staff, or other person referenced in this item shall be deemed to consent to deposition by Class Counsel and/or Defendants' Counsel prior to the Fairness Hearing.

**(B)** The Settlement Administrator shall stamp the date received on the original objection.  Class Counsel shall file the date-stamped originals of all valid objections with the Clerk of Court within eight (8) business days after the Bar Date.

**(C)** If a Class Member intends to object to the Agreement through retained counsel, then that counsel must file with the Court and serve on the Settlement Administrator and Class Counsel and Defendants' Counsel a notice of appearance no later than 14 calendar days after the Bar Date, and include a statement of whether counsel intends to appear at the Fairness Hearing.

**(D)** No Class Member or counsel for an objector may appear at the Fairness Hearing unless he or she has filed a timely objection that complies with all procedures provided in this section and the previous sections.

**(E)**    An objector may withdraw his/her objections at any time.

**(F)**    Any Class Member who has requested exclusion from the settlement may not submit objections to the settlement.

**(G)**    Class Members who fail to make timely and valid written objections in the manner specified above shall be deemed to have waived any objections and shall be forever barred from making any objection to the Agreement and the settlement by appearing at the Fairness Hearing, appeal, collateral attack, or otherwise.

**(H)**    The Parties may file with the Court written responses to any objections no later than 14 calendar days after Class Counsel has filed the date-stamped originals of all valid objections with the Court, if any.

**(I)**    Plaintiff affirmatively supports this settlement and agree not to object. Neither Plaintiff, Class Counsel, Defendants, nor their counsel will in any way encourage any Class Member to object to this settlement.

**2.9    Fairness Hearing and Motion for Final Approval and Dismissal.**

**(A)**    In accordance with the schedule set by the Court in the Preliminary Approval Order and in advance of the Fairness Hearing, Class Counsel shall file a Motion for Final Approval, with supporting documents and materials for final approval of the settlement. Class Counsel will provide Defendants' Counsel the opportunity to review and comment on the items in Section 2.9(A) above prior to their submission and should the Parties disagree on content, after good faith efforts at resolution, any remaining issues will be promptly addressed to Mediator Martin F. Scheinman. The Parties will work together diligently and in good faith to obtain preliminary and final approval expeditiously. Defendants will not oppose the Final Approval Motion unless it is inconsistent with this Agreement. The Motion for Final Approval shall contain a compliance affidavit from the Administrator, an application for attorneys' fees and costs, and the Service Award, and supporting affirmation and documents from Class Counsel regarding the fairness, adequacy and reasonableness of the settlement, or any aspect related to this Agreement. The Motion for Final Approval may also include a proposed Final Approval Order.

**(B)**    At the Fairness Hearing, the Parties will request that the Court, among other things: (1) certify the Class for purposes of the settlement; (2) approve the settlement and Agreement as fair, reasonable, adequate, and binding on all Class Members who have not timely opted-out of the settlement; (3) approve the procedure for Defendants to pay the Gross Settlement Amount into the Settlement Fund and for the Settlement Administrator to issue Individual Settlement Checks to Participating Class Members in the amounts set forth pursuant to the agreed-upon settlement allocation, and for the Settlement Administrator to perform the other duties of the Settlement Administrator stated in this Agreement; (4) order the Settlement Administrator to distribute Settlement Checks to Participating Class Members; (5) order the attorneys' fees, expenses and costs to be paid to Class Counsel out of the

15

Settlement Fund; (6) order the Settlement Administration Expenses be paid out of the Settlement Fund; (7) order that the Service Award be paid out of the Settlement Fund; (8) order the dismissal with prejudice of all claims by Plaintiff and all Class Members who did not opt-out; (9) order entry of Final Dismissal of the Litigation with prejudice in accordance with this Agreement; and (10) retain jurisdiction over the implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.

**2.10    Good Faith.**  The Parties shall work together, diligently and in good faith, to expeditiously obtain a Preliminary Approval Order, Final Approval Order, and Final Dismissal of the Litigation with prejudice.  Any disputes which arise between the Parties related to the Parties' efforts to obtain a Preliminary Approval Order, Final Approval Order, and Final Dismissal with prejudice, including, but not limited to, any issues which may arise between the Parties regarding settlement administration, or if the Parties are unable to reach agreement on the form or content of any document needed to implement the Agreement, or on any steps needed to effectuate the terms of the settlement embodied in this Agreement, including responding to Class Member inquiries, such issues shall be referred to Martin F. Scheinman, Esq., or, in his absence, Barry J. Peek, Esq. for a final and binding determination.

**2.11    Effect of Failure to Obtain Final Approval.**  In the event the Court grants preliminary approval, but fails to grant final approval and dismiss this matter with prejudice in accordance with this Agreement, the Parties shall resume the Litigation unless the Parties jointly agree to: (1) seek reconsideration or appellate review of the decision denying entry of dismissal with prejudice, or (2) attempt to renegotiate the settlement and/or appear before mediator Martin F. Scheinman for mediation, and seek Court approval of the renegotiated settlement.  In the event any reconsideration or appellate review is denied, or a mutually agreed-upon settlement is not approved:

**(A)**    The Litigation will proceed as if no settlement had been attempted, subject to resetting deadlines for activities which had been suspended or curtailed pending settlement, and the entire Gross Settlement Amount shall be returned to Defendants' Counsel for distribution to the appropriate Defendant(s).  In that event, the class certified for purposes of settlement shall be automatically decertified, and Defendants may contest any application by Plaintiff thereafter to request the Court to certify and maintain the Litigation as a class action, and may contest the merits of the claims being asserted by Plaintiff in the Litigation.

**(B)**    The Administrator shall provide notice to Class Members that this Agreement did not receive final approval and that, as a result, no payments will be made to Class Members under this Agreement.  The content of such notice shall be mutually agreed to by the Parties.  Such notice shall be mailed by the Settlement Administrator via First Class United States Mail, postage prepaid, to the addresses used by the Administrator in mailing the Settlement Notice, and emailed as described above in Section 2.6.

## 3.    SETTLEMENT TERMS

### 3.1    Settlement Amount Computation and Allocations.

**(A)**    Settlement Amount Formula.  Class Members who do not opt-out of the settlement shall be entitled to receive an Individual Settlement Award representing a proportionate share of the Net Settlement Amount, subject to reduction by the Minimum Individual Settlement Amounts specified in Section 3.1(B), below. The Net Settlement Amount shall be split among two subclasses: (1) the Reimbursements Subclasses; and (2) the Overtime Pay Subclass. Ninety Percent (90%) of the Net Settlement Amount shall be applied to the Reimbursements Subclasses, and Ten Percent (10%) of the Net Settlement Amount shall be applied to the Overtime Pay Subclass. Individual Class Members' proportionate shares of the Net Settlement Amount shall be computed pro rata based on the Subclass for which they are eligible and the number of workweeks each Class Member is or was employed with Defendants, except that Reimbursements Subclass B Members, who were hired on or after April 15, 2016, shall receive the minimum amount as defined in Section 3.1(B).

**(B)**    Minimum Individual Settlement Amounts. For Reimbursements Subclass A Members whose Individual Settlement Amount is less than Fifty Dollars and Zero Cents ($50.00), and all Reimbursements Subclass B Members, those Class Members will be allocated Fifty Dollars and Zero Cents ($50.00).  For Overtime Pay Subclass Members whose Individual Settlement Amount is less than Twenty-Five Dollars and Zero Cents ($25.00), those Class Members will be allocated a minimum amount of Twenty-Five Dollars and Zero Cents ($25.00).  Upon receipt and analysis of the Class List, the Parties may mutually agree to reduce the Minimum Individual Settlement Amount to Overtime Pay Subclass Members in order to ensure that Ninety Percent (90%) of the Net Settlement Amount is allocated to Reimbursement Subclasses Members pursuant to Section 3.1(A) above. Class Members who are members of both Subclasses shall be allocated at least the Minimum Individual Settlement Amount for each Subclass.  The Parties shall subtract from the Net Settlement Amount any funds required to meet the minimum amounts for the Reimbursements Subclasses and Overtime Pay Subclass and allocate the remaining funds in accordance with Section 3.1(A).

### 3.2    Administrator's Fees.  As part of Plaintiff's motion for preliminary approval of the settlement, Plaintiff shall submit a declaration from the Administrator detailing the administration process, and shall petition the Court for an award from the Gross Settlement Amount of administration fees and expenses.  At the Fairness Hearing, Class Counsel will petition the Court to award the Administrator its fees and expenses to be paid out of the Gross Settlement Amount.  The outcome of any proceeding or ruling by the Court related to the request for Administrator fees and expenses shall not terminate this Agreement or otherwise affect the Court's Final Approval.

**3.3    Funding of the Settlement Fund.**

(A)    Manhattan Beer agrees to pay and shall deposit in the Settlement Fund, as set forth below, the total amount of One Million Dollars ($1,000,000.00), as a cash Settlement Fund.

(B)    Within fourteen (14) days after entry of the Preliminary Approval Order, Manhattan Beer shall deposit the Settlement Administration Expenses into the Settlement Fund.

(C)    Other than the Settlement Administration Expenses, as discussed in Section 3.3(B) and the Cost and Fee Award, as discussed in Section 3.5(C), which shall be funded separately, Defendants shall fund the remaining balance of the Gross Settlement Amount fourteen (14) days after the Effective Date, provided that all of the following events have also occurred: (1) Defendants' Counsel are in physical receipt of a fully executed copy of this Agreement, and completed and signed Internal Revenue Service ("IRS") Forms W-9 from Class Counsel; (2) Plaintiff has filed with the Court the Motion for Final Approval, seeking final approval of the settlement and this Agreement, and dismissal of the Litigation with prejudice; (3) the Court has entered a Final Approval Order approving the Agreement and dismissing the Litigation with prejudice; and (4) the time provided under Federal Rules of Appellate Procedure Rule 4 for Plaintiff to appeal the Final Approval Order has expired.

(D)    The Settlement Administrator shall distribute the Settlement Checks to Participating Class Members within fourteen (14) days after the remaining balance of the Gross Settlement Amount is deposited into the Settlement Fund, as provided for in Section 3.3(C).

(E)    The Settlement Fund shall be a court-approved Qualified Settlement Fund ("QSF") for federal tax purposes pursuant to Treas. Reg. § 1.468B-1. Manhattan Beer shall be the "transferor" to the QSF within the meaning of Section 1.468B-1(d)(1) of the Treasury Regulations with respect to the Escrow Account.  The Settlement Administrator shall be the "administrator" of the QSF within the meaning of Section 1.468B-2(k)(3) of the Treasury Regulations, responsible for causing the filing of all tax returns required to be filed by or with respect to the QSF, paying from the QSF any taxes owed by or with respect to the QSF, and complying with any applicable information reporting or tax withholding requirements imposed by Section 1.468B-2(l)(2) of the Treasury Regulations or any other applicable law on or with respect to the QSF.  Manhattan Beer shall provide to the Settlement Administrator any documentation required for the Settlement Administrator to facilitate obtaining QSF status for the Escrow Account pursuant to Treas. Reg. §1.468B-l.  All taxes on income or interest generated by the Settlement Fund, if any, shall be paid out of the Settlement Fund.

(F)    Under no circumstances will Defendants have any liability for taxes or tax expenses under the Settlement.  Plaintiffs, Class Counsel, and the Class are responsible for

any taxes on their respective recoveries or awards.  Nothing in this Agreement, or statements made during the negotiation of its terms, shall constitute tax advice by Defendants or Defendants' Counsel.

**(G)**    Unless the Parties mutually agree otherwise, the Escrow Account shall be maintained at a depository institution insured by the Federal Deposit Insurance Corporation, which has total assets of at least Five Hundred Million Dollars and Zero Cents ($500,000,000.00) million and a short-term deposit rating of at least P-1 (Moody's) or A-1 (Standard & Poor's).  Funds in the QSF shall be invested in the following types of accounts and/or instruments and no other: (1) demand deposit accounts; (2) time deposit accounts and certificates of deposit, in either case with maturities of forty-five (45) days or less; (3) United States Treasury bills; or (4) other instruments backed by the full faith and credit of the United States Government.  The costs of establishing and maintaining the QSF shall be paid from the Settlement Fund.

**(H)**    In no event shall Manhattan Beer's financial obligation under this Agreement exceed the amount of the Settlement Fund as provided for in this Section.

**3.4**    **Time to Negotiate Settlement Checks; Unnegotiated Checks.**

**(A)**    Each Class Member to whom a Settlement Check is mailed shall have ninety (90) days after such mailing to endorse and negotiate his or her Settlement Check.

**(B)**    Settlement checks shall be issued only to Participating Class Members as their names are recorded and maintained in Defendants' business records, subject to the following.  If a check issued to a Participating Class Member has not been negotiated and the Settlement Administrator has received competent verification that the Participating Class Member is deceased or has changed his or her name, then upon receipt of satisfactory documentary support for the exclusive and uncontested payment to an intended recipient, the Settlement Administrator may exercise discretion to reissue the check to either: (1) the qualifying estate, executor, personal representative, administrator, or beneficiary of a deceased Class Member, or (2) to a living Class Member whose legal name has changed.

**(C)**    All Settlement Checks that are not endorsed and negotiated within the ninety (90) day period specified above  shall immediately be voided.  Class Members who do not timely endorse and negotiate their Settlement Check shall have no entitlement to any payment for any claim covered by this Agreement.

**(D)**    The Settlement Administrator shall mail and email one (1) follow-up Notice to any Class Member who has not endorsed and negotiated his or her Settlement Check, or opted-out or objected to the Agreement, forty-five (45) days after Settlement Checks are mailed.

**(E)**    Notwithstanding the above, and provided that an effective stop-payment has been placed on the previously-issued Settlement Check, the Settlement Administrator will re-issue a Settlement Check to a Participating Class Member who provides a

statement that he or she never received or lost the original Settlement Check, or if the Class Member has a reasonable explanation for not having timely cashed their check, including, but not limited to, delays related to a Class Member being deceased or whose name has changed. Re-issued Settlement Checks shall only be sent by the Administrator if it receives such a request from a Class Member within the original ninety (90) day period. Class Members who are re-issued Settlement Checks shall have thirty (30) days after such mailing to endorse and negotiate his or her re-issued Settlement Check.  All re-issued Settlement Checks that are not endorsed and negotiated during this 30-day period shall immediately be voided, and Class Members who do not timely endorse and negotiate their re-issued Settlement Check shall have no entitlement to any payment for any claim covered by this Agreement.

**(F)**  The Administrator shall take appropriate actions to immediately void Settlement Checks that are not timely endorsed and negotiated, as provided herein.  The Administrator shall not undertake further payment to Class Members who fail to timely endorse and negotiate their Settlement Checks.

**3.5  Attorneys' Fees, Expenses, and Service Awards.**

**(A)**  In their Motion for Preliminary Approval of the Settlement and supporting papers, Class Counsel will provide the maximum amount of the Settlement Fund they will seek from the Court as attorneys' fees, as well as the total amount of expenses (or best estimates for expenses not yet charged) incurred that may be subject to reimbursement.

**(B)**  If Preliminary Approval is granted, fourteen (14) days before the Objection/Exclusion Deadline, Class Counsel shall petition the Court for a Cost and Fee Award of no more than one third of the Settlement Fund as an award of attorneys' fees, plus reimbursement out of the Settlement Fund of actual out-of-pocket expenses incurred by Class Counsel in the Action.  While the Parties did not discuss the amount of attorneys' fees in their negotiations of this Settlement, Manhattan Beer shall not oppose Class Counsel's fee petition unless it is inconsistent with this Agreement.

**(C)**  The Settlement Administrator shall pay from the Settlement Fund any Cost and Fee Award approved by the Court to Class Counsel to an account designated in writing. Such attorneys' fees and costs shall be paid in the amount approved by the Court within seven (7) days after the funds are deposited into the Settlement Fund, whether or not the Effective Date has occurred notwithstanding the existence of any timely filed objections thereto or to the Settlement, or potential for appeal therefrom, or collateral attack on the awarded fees and expenses, the Settlement, or any part thereof.  In the event the Effective Date does not occur, Class Counsel agree to repay the attorneys' fees and costs, plus interest at the same rate earned by the Settlement Fund to Manhattan Beer.  Manhattan Beer shall have responsibility for the payment of any taxes due on interest repaid to Manhattan Beer from the Settlement Fund.  Any such repayment shall be made within five (5) business days

of Class Counsel receiving written notice that Manhattan Beer is terminating the Settlement because the Effective Date has not occurred.  Each Class Counsel law firm receiving any portion of a Fee Award, as a condition of receiving such payment, agrees that the law firm is subject to the jurisdiction of the Court for the purpose of enforcing the provisions of this Section.  If Class Counsel fails to repay any portion of the Fees Award as required by this Section, the Court shall, upon application by Manhattan Beer and notice to Class Counsel, issue such orders as appropriate to compel compliance by Class Counsel and their respective law firms, and shall, if circumstances warrant, award reasonable attorneys' fees and expenses incurred by Manhattan Beer in connection with the enforcement of this Section.  All obligations set forth in this Section shall expire upon the Effective Date.

**(D)**    Should the Court award a Cost and Fee Award less than the amount sought in Class Counsel's petition, the difference between the amount sought and the amount awarded shall remain in the Settlement Fund to be allocated to Class Members in accordance with Section 3.1(A), after the latter of any appeal from or motion for reversal or modification of the Court's Cost and Fee Award is resolved or the deadline for filing an appeal or motion for reconsideration regarding the amount of any Cost and Fee Award has expired without the filing of an appeal or motion. Any Settlement Administration Expenses associated with the allocation of these funds to Class Members shall be drawn from the Gross Settlement Amount and the Settlement Administration Expenses approved by the Court pursuant to Section 1.26 of this Agreement. Class Counsel shall have the sole and absolute discretion to allocate the Cost and Fee Award amongst Class Counsel.  Manhattan Beer shall have no liability or other responsibility for allocation of any Cost and Fee Award.

**(E)**    The Parties agree that the Plaintiff may apply to the Court for a Service Award which shall not exceed Fifteen Thousand Dollars and Zero Cents ($15,000.00), for his services in the prosecution of this matter.  The Parties agree that the decision whether or not to award any such payment, and the amount of that payment, rests in the exclusive discretion of the Court.  Plaintiff understands and acknowledges that he may receive no monetary payment, and his agreement to the Settlement is not conditioned on the possibility of receiving monetary payment.

**(F)**    The Settlement Administrator, within ten (10) days after the Effective Date, shall pay from the Settlement Fund the amount of any Court-approved Service Award for the Plaintiff via check, to be sent care of Class Counsel.  Should the Court award less than the amount sought in the petition, the difference between the amount sought and the amount awarded shall remain in the Settlement Fund to be allocated to Class Members pursuant to Section 3.1(A). Any Settlement Administration Expenses associated with the allocation of these funds to Class Members shall be drawn from the Gross Settlement Amount and the Settlement Administration Expenses approved by the Court pursuant to Section 1.26 of this Agreement.

**(G)**    It is not a condition of the Settlement that any Cost and Fee Award or Service Award be approved by the Court.  Any order or proceeding relating to the amount of any Cost and Fee Award and/or Service Award, or any appeal from or reversal

21

or modification thereof, shall not operate to modify, terminate, or cancel the Settlement, this Agreement, or affect or delay Final Judgment.

**3.6    Tax Characterization.**

(A)    Payments of attorneys' fees and costs pursuant to Section 4.6 shall be made without withholding. Class Counsel will receive a Form 1099 for this payment. Any service award pursuant to Sections 1.19 and 3.5(F) shall be made without withholding and reported to the IRS and the payee under the payee's name and social security number on an IRS Form 1099.

(B)    The portion of each Individual Settlement Amount paid to Reimbursements Subclass Members pursuant to Sections 3.1(A)–(B) shall be attributable to reimbursement for alleged unlawful deductions and shall be made without any withholdings.  The Settlement Administrator shall determine and provide an IRS Form 1099 to Reimbursements Subclass Members at the Administrator's discretion.

(C)    If the portion of each Individual Settlement Amount paid to Overtime Pay Subclass Members pursuant to Sections 3.1(A)-(B) is Six Hundred Dollars ($600) or more, it shall be attributable to alleged back wage payments and/or wage income and shall be subject to all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported to the IRS on an IRS Form W-2.  The Administrator shall be responsible for making withholdings, if any, from the portion of the Individual Settlement Amounts treated as alleged wages, as required pursuant to any federal, state, or local tax law or regulation.

(D)    If the portion of each Individual Settlement Amount paid to Overtime Pay Subclass Members pursuant to Sections 3.1(A)-(B) is Five Hundred Ninety-Nine Dollars and Ninety-Nine Cents ($599.99) or less, it shall be attributable to liquidated damages, issued without any withholdings, and shall be reported on an IRS Form 1099 at the Administrator's discretion.

(E)    The employer's share of the payroll taxes that may be due, if any, such as FICA, FUTA, SUTA, and the like, shall be paid from the Gross Settlement Amount. The Settlement Administrator shall inform Defense Counsel of the estimated employer-side payroll taxes that will have to be paid out within thirty (30) days after the Final Approval Order.

(F)    The Administrator is responsible for issuing and filing appropriate tax forms associated with payments of any amounts to Class Members, including but not limited to, issuing the appropriate W-2 forms to Participating Class Members and Class Counsel. There will be no withholding from payments in an amount of Five Hundred Ninety-Nine Dollars and Ninety-Nine Cents ($599.99) or less, unless the Administrator determines otherwise.

**(G)**  The Plaintiff and Class Members acknowledge and agree that they are solely responsible for all taxes, interest, and penalties due with respect to any payment received pursuant to this Agreement (other than the Employer Payroll Taxes). Per Treasury Department Circular 230, this Agreement is not intended to provide tax advice, and any (inadvertent) tax advice contained in this Agreement or any notice summarizing this Agreement is not intended to be used, and cannot be used, for the purpose of avoiding penalties under the Internal Revenue Code or promoting, marketing, or recommending to another party any transaction or matter addressed herein.

**(H)**  The Parties recognize that the Individual Settlement Award to be paid to Participating Class Members reflects the settlement of a dispute over claimed overtime wages, payroll and non-payroll deductions, reimbursements, interest, and penalties. The Parties agree that such payments are not, and are not intended to be made as a payment with respect to, a penalty or a punishment of any type or kind for purposes of Internal Revenue Service Code § 162(f).

**3.7**  **Responsibility for Taxes.** The Class Members agree that Defendants have not made any representations regarding the taxability of any payments made pursuant to this Agreement. The Class Members agree and warrant that they have been and remain solely responsible for the timely payment of all taxes owed by each of them, if any, which have been due, or which may become due to any governmental authority from receipt of any funds received from Defendants pursuant to this Agreement.

**3.8**  **Non-Disparagement.** Plaintiff and Class Counsel agree that they shall not knowingly issue or cause to be issued or encourage any communication, statement or publication related to the Litigation or any claims asserted in the Litigation, written or otherwise, that disparages, criticizes, or otherwise reflects adversely or encourages any adverse action against any of the Defendants, their products, services, agents, representatives, directors, officers, shareholders, attorneys, employees, vendors, affiliates, successors or assigns, or do so through, under, or in concert with any other person (including, without limitation, any blog, social media or other online posting or comment). Defendants similarly agree not to make statements related to the Litigation that disparage Plaintiff or Class Counsel, or to encourage others to make statements related to the Litigation that disparage Plaintiff or Class Counsel. Nothing in this Section shall limit any Party, person, or entity from: (1) testifying truthfully under oath pursuant to any lawful court order or subpoena; (2) responding to or providing disclosures required by law; or (3) engaging in the activities referenced in Section 3.9(B) of this Agreement. This includes any statement to or response to an inquiry by any member of the press or media, whether written, verbal, electronic, or otherwise.

**3.9**  **Non-Disclosure/Confidentiality.**

**(A)**  The Parties agree to maintain as completely confidential the amount of settlement until public filing of a motion for preliminary approval of the settlement. After the filing of a public motion for preliminary approval, the Parties and their counsel will not make any public communication regarding the settlement except: (1) as

required to implement the settlement, including responding to Class Member inquiries and any court proceedings regarding the settlement; (2) to refer to public filings; or (3) for Defendants or their attorneys, as they determine appropriate in connection with other litigation. However, nothing herein shall preclude the Parties or their respective counsel from making any necessary or required disclosures to government regulators, auditors, the Court, and the like. Nothing in this Section or this Agreement shall prohibit, prevent, or restrict Plaintiff from discussing the terms and conditions of his employment with Manhattan Beer or assisting current or former co-workers with matters relating to the Manhattan Beer workplace pursuant to the National Labor Relations Act; or communicating with others (including the NLRB) regarding their employment with Manhattan Beer for mutual aid or protection pursuant to the National Labor Relations Act.

**(B)**    Nothing in this Agreement, including, but not limited to, any Section pertaining to confidentiality and non-disclosure, a release of claims, or non-disparagement, shall prohibit or restrict Plaintiff, Class Members, or Class Counsel from: (1) filing a charge, testifying, assisting, complying with a subpoena from, or participating in any manner in an investigation, inquiry, hearing or legal proceeding by a criminal or civil law enforcement agency or any administrative or regulatory (including any self-regulatory) agency or authority or otherwise communicating with a criminal or civil law enforcement agency or any administrative or regulatory (including any self-regulatory) agency or authority, including, but not limited to, the Securities and Exchange Commission ("SEC"), the Financial Industry Regulatory Authority ("FINRA"), the Commodity Futures Trading Commission ("CFTC"), the Consumer Financial Protection Bureau ("CFPB"), the Occupational Safety and Health Administration ("OSHA"), the Department of Justice ("DOJ"), the U.S. Congress, any agency Inspector General, the Equal Employment Opportunity Commission ("EEOC"), the National Labor Relations Board ("NLRB"), the New York State Division of Human Rights ("NYSDHR"), the New York City Commission on Human Rights ("NYCCHR"), or any other state or local commission on human rights or agency enforcing anti-discrimination laws; or (2) attorney-client communications between Plaintiff or Class Members and Class Counsel or an attorney retained by any Class Member. Class Members understand that nothing in this Agreement shall require notification or prior approval by Defendants of any communications described above. Nothing in this Agreement shall affect any right Class Members may have to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of her own choosing, or to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, or from refraining from any or all such activities. To be clear, individuals covered by the National Labor Relations Act are permitted to discuss the terms and conditions of employment with co-workers, the union representing them in collective bargaining, or others for mutual aid or protection.

4.    **RELEASE**

4.1    **Release of Claims.**

(A)    **Release, Waiver, Foreclosure, and Preclusion of State Law Wage and Hour Claims.** Upon the Final Approval Order being issued, and except as to such rights or claims as may be specifically created by this Agreement, each Class Member who does not opt-out of this Agreement, on his or her behalf, and on behalf of his or her respective current, former and future heirs, executors, administrators, agents, and attorneys ("Releasors"), waives and forecloses any right to, is precluded from seeking any relief under, and fully releases and discharges Defendants and each of their respective parents, franchisors, partners, subsidiaries, affiliates, predecessors, agents, attorneys, directors, managers, employees, successors, heirs, administrators, executors, assigns, representatives, or other persons or entities acting on each of their behalf (collectively, the "Released Parties"), from any and all actions, causes of action, claims, demands, controversies, disputes, grievances, liabilities, lawsuits, arbitrations, obligations, damages (including, without limitation, punitive, exemplary, statutory and multiple damages), penalties, sanctions, losses, debts, dues, sums of money, judgments, accounts, contracts, agreements, attorneys' fees, costs, expenses, and rights of any nature and description whatsoever, relating to the payment of wages, compensation, or any other benefits, and any associated derivative claims, whether based on federal, state, or local statutes, common law, regulations, rules or any other law of the United States or foreign jurisdiction, known or unknown, fixed or contingent, suspected or unsuspected, in law or in equity or otherwise, from the beginning of the world to, and including, the Court's Preliminary Approval of the Agreement arising out of or related to or in connection with the allegations in the Action that were asserted or could have been asserted by the Releasors against the Released Parties.

If the release applicable to Plaintiff or any individual settlement Class Member is deemed unenforceable by a court of competent jurisdiction, then Plaintiff or any settlement Class Member affected by such a ruling shall be required to repay to Defendants the Individual Settlement Award allocated to them under this Agreement.

(B)    **General Mutual Release Between Defendants and Named Plaintiff**: Upon the Final Approval Order, and the Court's approval of the Service Award as provided for in Section 3.5(E) of this Agreement, and except as to such rights or claims as may be specifically created by this Agreement, Plaintiff Larry Swanson, in addition to the releases contained in Section 4.1(A) above, and in consideration for any Service Award received under Section 3.5(E), knowingly and voluntarily fully releases and discharges Releasees from any and all claims from the beginning of time through the date the Court provides final approval to this Agreement, including, but not limited to, all claims or causes of action raised in the Litigation, both known and unknown, which Plaintiff has or may have against Releasees including, but not limited to, any alleged violation of: Title VII of the Civil Rights Act of 1964; The Civil Rights Act of 1991; Sections 1981 through 1988 of Title 42

25

of the United States Code; The Equal Pay Act; the Genetic Information Nondiscrimination Act of 2008; The Fair Labor Standards Act; The Employee Retirement Income Security Act of 1974; The Immigration Reform and Control Act; The Consolidated Omnibus Budget Reconciliation Act; The Americans with Disabilities Act of 1990; The Fair Credit Reporting Act; The Occupational Safety and Health Act; The Rehabilitation Act; The Federal Worker Adjustment and Retraining Notification Act; The Family and Medical Leave Act; The Federal False Claims Act; The New York Labor Law; the New York Wage Theft Prevention Act; the New York Minimum Wage Act; the Minimum Wage Order for Miscellaneous Industries and Occupations, 12 N.Y.C.R.R. Part 142, The Minimum Wage Order for the Building Service Industry, 12 N.Y.C.R.R. Part 141; The New York Worker Adjustment and Retraining Notification Act; The New York Corrections Law, including Sections 750-755 thereof; The New York State Human Rights Law; The New York State Paid Sick Leave law; The New York State Paid Family Leave law; The New York Civil Rights Law; The New York City Human Rights Law; The New York City Earned Safe and Sick Time Act; and any other federal, state, and/or local law or ordinance. This release includes all claims for all damages arising from any such released claims, including claims for liquidated damages, interest, and attorneys' fees and costs. Defendants likewise release Plaintiff Larry Swanson from any and all claims from the beginning of time through the date the Court provides final approval to this Agreement, including, but not limited to, all claims or causes of action raised in the Litigation, both known and unknown as enumerated above, except for any criminal, corrupt, or fraudulent act by Swanson or any intentional or willful violation of law.

## 5.    MISCELLANEOUS, INTERPRETATION AND ENFORCEMENT

**5.1    Cooperation Between the Parties; Further Acts.** The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms. Each Party, upon the request of any other Party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

**5.2    Non-Admission of Liability.** This Agreement, and the substance of the negotiations leading up to this Agreement, shall not be construed as an admission that any Defendant has violated any federal, state, or local law, ordinance, public policy, rule, regulation, executive order, or common law, or have committed any wrong whatsoever against Plaintiff or any Class Member, individually or collectively, and Defendants expressly deny all such liability. Likewise, by entering into this Agreement, Defendants in no way admit to the suitability of this case for class or collective action litigation other than for purposes of settlement. Rather, Defendants enter into this Agreement to avoid further protracted litigation and to resolve and settle all disputes with Plaintiff individually and as a representative of a putative class or Class Members. Settlement of the Litigation and/or the Action, negotiation, and execution of this Agreement, and all acts performed or documents executed pursuant to or in furtherance of this Agreement: (1) are not, shall not be deemed to be, and may not be used as an admission or evidence of any wrongdoing or liability on the part of any Defendant or of the truth of any of the factual allegations in any

and all claims or allegations filed in the Litigation or the Action; and (2) are not, shall not be deemed to be, and may not be used as an admission or evidence of fault or omission on the part of any Defendant in any civil, criminal, administrative or arbitral proceeding. The Parties understand and agree that this Agreement is a settlement document and shall be inadmissible as evidence in any proceeding, except an action or proceeding to approve, interpret, or enforce the terms of this Agreement, or as proof of this Agreement.

5.3    **No Assignment.**  Class Counsel and Plaintiff represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Action, the Litigation, or any related action.

5.4    **Entire Agreement.**  This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement. Accordingly, this Agreement shall supersede any and all terms previously agreed-upon by the Parties in connection with this settlement.

5.5    **Binding Effect.**  This Agreement shall be binding upon the Parties and, with respect to Plaintiff and all Class Members, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys, and assigns.

5.6    **Arm's Length Transaction; Materiality of Terms.**  The Parties have negotiated all the terms and conditions of this Agreement at arm's length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

5.7    **Captions.** The captions or headings of the Sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

5.8    **Construction.**  The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each Party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any Party by virtue of draftsmanship.

5.9    **Governing Law.**  This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

5.10    **Continuing Jurisdiction.**  The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby. However, the Parties agree to return to mediation with Martin F. Scheinman for any dispute arising out of this Agreement prior to seeking resolution with

the Court.  The Court shall not have jurisdiction or authority to modify the terms of this Agreement or to increase Defendants' payment obligations hereunder.

5.11    **Waivers, etc. to Be in Writing.**  No waiver, modification, or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification, or amendment, subject to any required Court approval. Any failure by any Party to insist upon the strict performance by any other Party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such Party, notwithstanding such failure.

5.12    **When Agreement Becomes Effective: Counterparts**.  This Agreement shall become effective upon its execution and occurrence of the Effective Date.  The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if Plaintiff and Defendants had signed the same instrument.

5.13    **Right of Appeal.**  The Parties agree to maintain the right to appeal any denial of preliminary and/or final approval of the settlement.

5.14    **Binding Authority of Counsel**. Class Counsel hereby represents that they are fully authorized to bind Plaintiff to the terms and conditions hereof and that they have a retainer agreement and/or authorization to execute this Agreement on his behalf.

5.15    **Signatures.** This Agreement is valid and binding if signed by the Parties' authorized representatives.

5.16    **Facsimile/Electronic Signatures.**  Any Party may execute this Agreement by affixing his, her, or its representative's signature on the designated signature block below and transmitting that signature page via facsimile or email to counsel for the other Party, or via DocuSign.  Any signature made and transmitted by facsimile or email or DocuSign for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the Party whose counsel transmits the signature page by facsimile or email or DocuSign.

**WE AGREE TO THESE TERMS,**

**On behalf of Plaintiff**
**and Class Members:**

**Larry Swanson:** *Larry Swanson*
Larry Swanson (Nov 10, 2025 12:06:30 EST)

**Dated:** 10/11/2025

Steven L. Wittels
Wittels McInturff Palikovic
305 Broadway, 7th Floor
New York, New York 10007

**Dated:** November 10, 2025

**For Manhattan Beer Distributors LLC:**

**By:**
**Name:**
**Title:**

**Dated:**

**For Manhattan Beer Distributors Inc.:**

**By:**
**Name:**
**Title:**

**Dated:**

**Simon Bergson:**

**Dated:**

**WE AGREE TO THESE TERMS,**

**On behalf of Plaintiff
and Class Members:**

**Larry Swanson:** _Larry Swanson_
Larry Swanson (Nov 10, 2025 12:06:30 EST)

**Dated:**        10/11/2025

Steven L. Wittels
Wittels McInturff Palikovic
305 Broadway, 7th Floor
New York, New York 10007

**Dated:**        November 10, 2025

**For Manhattan Beer Distributors LLC:**

**By:**
**Name:**        SIMON BERGSON
**Title:**        PRESIDENT & CE.O.

**Dated:**        11/13/25

**For Manhattan Beer Distributors Inc.:**

**By:**
**Name:**        SIMON BERGSON
**Title:**        PRESIDENT

**Dated:**        11/13/25

**Simon Bergson:**

**Dated:**        11/13/25

29