UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------X
LARRY SWANSON, individually and on
behalf of all others similarly situated,

                      Plaintiff,

           -against-

MANHATTAN BEER DISTRIBUTORS,
LLC and SIMON BERGSON,

                    Defendants.
-----------------------------------------------------------X

**MEMORANDUM
AND ORDER**
15-CV-5383 (ENV) (TAM)

**TARYN A. MERKL**, United States Magistrate Judge:

This is a putative class action brought against Manhattan Beer Distributors, LLC ("Manhattan Beer" or the "Company") and Simon Bergson (collectively, "Defendants"). *See generally* Compl., ECF 1; Am. Compl., ECF 14. Plaintiff, on behalf of himself and other current or former members of Defendants' "dedicated delivery force," alleged that certain of Defendants' wage and hour practices violated the New York Labor Law ("NYLL"), its implementing New York State Department of Labor regulations ("NYCCRR"), and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* Am. Compl., ECF 14, ¶¶ 2, 5.

Currently pending before the Court is Plaintiff's unopposed motion for preliminary settlement approval. *See* Mot. for Settlement, ECF 179; *see also* Consent Notice, ECF 188; Magistrate Judge Reference Order, ECF 189. For the following reasons, the Court grants Plaintiff's motion.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### I.  Factual Background[1]

Manhattan Beer Distributors, LLC is a "wholesale regional distributor of popular beer brands and other beverages." Am. Compl., ECF 14, ¶ 1. According to the amended complaint, "Manhattan Beer services over 25,000 customers throughout New York and is one of the largest distributors of alcoholic and non-alcoholic beverages in the country." *Id.* ¶ 2. Manhattan Beer is "headquartered in the Bronx, with additional facilities in Brooklyn, Ridgewood, Suffern, and Wyandanch, New York." *Id.* ¶ 1. Simon Bergson is Manhattan Beer's chairman and president. *Id.*

Plaintiff and other members of the proposed class are current and former members of Manhattan Beer's "dedicated delivery force," which is comprised of (1) "the delivery department workers who drive" the trucks delivering beverages to Manhattan Beer's customers ("Drivers"), and (2) those who "help the drivers" ("Helpers"). *Id.* ¶ 2. The amended complaint alleges that Drivers and Helpers "regularly work[] more than 40 hours a week to service Manhattan Beer's ever-expanding customer base" but that "Manhattan Beer fails to pay . . . the members of the Class all overtime wages due." *Id.* ¶ 4. Additionally, the amended complaint avers that Manhattan Beer "mak[es] unlawful deductions from the workers' hard-earned wages" in order to cover the Company's losses. *Id.* More specifically, the amended complaint alleges that Manhattan Beer's violations include:

---

[1] The Court recites the facts as alleged in the first amended class action complaint. *See, e.g.*, *Mikhlin v. Oasmia Pharm. AB*, No. 19-CV-4349 (NGG) (RER), 2021 WL 1259559, at *1 (E.D.N.Y. Jan. 6, 2021); *see generally* Am. Compl., ECF 14. Defendants deny these allegations and dispute liability. *See* Settlement Agreement, ECF 181-1, at 26–27.

a) failing to pay Drivers and Helpers the overtime wages they earned while working through half-hour unpaid lunch breaks;

b) failing to pay Drivers and Helpers correct overtime rates by not including their commissions and bonuses in the regular rates of pay;

c) failing to compensate Drivers and Helpers for hours worked in excess of 10 hours per day (the "spread of hours payment");

d) making unlawful deductions from Drivers' wages; and

e) failing to maintain proper records of all wages earned and due for work performed by its employees.

*Id.* ¶ 5.

In support of these allegations, the amended complaint states that members of the proposed class "did not take full, uninterrupted 30-minute meal breaks because they consistently needed to work through their lunches in order to ensure timely deliveries and completion of routes." *Id.* ¶ 27. Additionally, the amended complaint alleges that Defendants did not pay workers at the proper overtime rate under the FLSA because Defendants did not include commissions and non-discretionary bonuses in the calculations of employees' "regular rate." *Id.* ¶ 30. Plaintiff further alleges that Manhattan Beer impermissibly deducted money from workers' wages "pursuant to the Company's policy of requiring Drivers to pay for purported mistakes and costs incurred during the performance of their duties." *Id.* ¶ 35. For example, if "a wooden pallet used for delivering beverages," an empty beer keg, or beverages went missing, the Company deducted the cost of the items from the Drivers' wages. *Id.* ¶ 36. The amended complaint further alleges that "Defendants failed to keep accurate or adequate records of hours worked" as required by the FLSA and the NYLL. *Id.* ¶ 54.

## II.  Procedural History

Plaintiff, on behalf of himself and others similarly situated, initiated this putative class action on September 18, 2015. Compl., ECF 1. Plaintiff, along with since-dismissed

3

named plaintiff Patrick Heady, filed an amended class action complaint on November 2, 2015. Am. Compl., ECF 14. On December 12, 2016, Defendants filed their fully briefed motion for summary judgment. *See* Mot. for Summ. J., ECF 39; Mem. in Supp. of Summ. J., ECF 65; *see also* Opp'n to Summ. J., ECF 58. On July 10, 2018, the Honorable Eric N. Vitaliano partially granted Defendants' motion for summary judgment, finding that the motor carrier act exemption applied and, as a result, dismissing Plaintiff's federal claims arising under the FLSA and Plaintiff's claims for overtime wages under the NYLL. Mem. & Order, ECF 68. The state law claims for unlawful deductions from wages and wage notice violations remained. *Id.*

The parties filed a joint discovery schedule on August 15, 2018. Joint Schedule, ECF 73. The Honorable then-Magistrate Judge Roanne L. Mann declined to adopt the discovery schedule; the court instead set a fact discovery deadline of December 28, 2018, and sent the case to court-annexed mediation. Aug. 24, 2018 Order; *see also* Oct. 31, 2018 Order (directing the parties to proceed to mediation by the end of 2018). However, the court "reluctantly" granted the parties' motion to set aside mediation, which sought an adjournment due to the parties' disparate views on class certification and the merits. *See* Mot. to Set Aside Scheduling Order, ECF 82; Nov. 8, 2018 ECF Order.

Concurrently, on November 6, 2018, the parties agreed to dismiss Patrick Heady from the suit, individually and as a purported representative of a putative class. Notice of Voluntary Dismissal, ECF 81; Stip. of Dismissal, ECF 84. On November 8, 2018, Judge Vitaliano dismissed Heady from the case, noting that the parties agreed that "Heady will not, and shall not, participate in any manner in any resolution or settlement as a member of a putative class or otherwise relative to claims asserted by the Plaintiffs in the First Amended Complaint." Nov. 8, 2018 ECF Entry & Order Dismissing Parties.

On February 1, 2019, Judge Mann denied Plaintiff's request to stay discovery due to the late notice of the request and the absence of Defendants' position. Feb. 1, 2019 ECF Order; *see* Pl.'s Mot. to Stay, ECF 94 (requesting a stay of discovery). On March 22, 2019, Defendants submitted a letter motion for leave to file another motion for summary judgment. Defs.' Letter Mot. for Pre-Mot. Conference, ECF 96. On March 26, 2019, Plaintiff filed a letter motion for leave to file a motion for class certification; Plaintiff later noted an intent to file a cross-motion for summary judgment as well. *See* Pl.'s Letter Mot. for Class Cert., ECF 97; Pl.'s Letter Mot. to Stay Discovery, ECF 98. On April 10, 2019, Judge Vitaliano ordered that the parties' cross-motions for summary judgment were to be fully briefed by July 24, 2019. Apr. 10, 2019 ECF Order. On October 19, 2020, Judge Vitaliano granted Plaintiff's motion for summary judgment as to his unlawful wage deduction claims, and denied Plaintiff's motion as to his NYLL § 195(1)(a) wage notice violation claim; additionally, Defendants' motion was denied as to Plaintiff's wage deduction claims, and granted as to Plaintiff's NYLL § 195(1)(a) claim. Mem. & Order, ECF 138.

Shortly thereafter, the parties were referred to mediation. *See* Nov. 2, 2020 ECF Min. Entry. The mediation was ultimately not successful. *See* Status Report, ECF 149. On June 15, 2021, Judge Vitaliano invited the parties to brief Plaintiff's motion for reconsideration of his dismissal of Plaintiff's overtime claim under the NYLL due to an intervening change of law and Plaintiff filed the motion on July 21, 2021. *See* June 15, 2021 ECF Order; Mot. for Reconsideration, ECF 157. On January 9, 2023, the undersigned Magistrate Judge was assigned to the case. Jan. 9, 2023 ECF Order. On November 22, 2023, Judge Vitaliano granted Plaintiff's motion for reconsideration. Mem. & Order, ECF 161; *see Swanson v. Manhattan Beer Distributors, LLC*, No. 15-CV-5383 (ENV) (TAM), 2023 WL 8366534 (E.D.N.Y. Nov. 22, 2023). On reconsideration,

5

Judge Vitaliano vacated his prior summary judgment order to the extent it granted Defendants' motion for partial summary judgment on Plaintiff's NYLL overtime claim, due to an intervening change in law. *Swanson*, 2023 WL 8366534, at *1. Judge Vitaliano ultimately found that there was a disputed issue of material fact as to Plaintiff's pay rate, which precluded summary judgment as to the NYLL unpaid overtime claim.[2] *Id.* at *3. Following the resolution of the motion for reconsideration, Judge Vitaliano referred the parties to this Court for further pretrial proceedings. Nov. 22, 2023 ECF Mem. & Order.

On December 18, 2023, and February 13, 2024, the Court held status conferences with the parties to discuss case status and discovery. Dec. 18, 2023 ECF Min. Entry & Order; Feb. 13, 2024 ECF Min. Entry & Order. The Court permitted the parties to begin class-wide discovery as to the unlawful deductions claim. Feb. 13, 2024 ECF Min. Entry & Order. On September 19, 2024, Plaintiff filed a letter notifying the Court that settlement discussions had been fruitful and that the parties intended to prepare the necessary papers for preliminary class settlement approval. Letter Mot. to Stay, ECF 172. The Court granted the stay and directed the parties to file a motion for preliminary class settlement approval by December 20, 2024. Sept. 20, 2024 ECF Order. After numerous extensions, the unopposed motion for preliminary class settlement approval was filed on November 14, 2025. Mot. for Settlement, ECF 179; *see also* Proposed Order Preliminarily Approving Settlement ("Proposed Order"), ECF 181-2. On November 18,

---

[2] As to the overtime claim arising under New York state law, the Court notes that "although the NYLL's overtime-pay provision, 12 N.Y.C.R.R. § 142.2-2, adopts the Motor Carrier Exemption," such workers are entitled to overtime compensation of one and one-half times the state minimum wage. *Hayward v. IBI Armored Servs., Inc.*, 954 F.3d 573, 575–76 (2d Cir. 2020) (per curiam).

2025, Judge Vitaliano referred the motion to the undersigned Magistrate Judge. Nov. 18, 2025 ECF Order Referring Mot. Following the referral, the Court scheduled a fairness hearing. *See* Nov. 25, 2025 ECF Scheduling Order; Dec. 8, 2025 ECF Rescheduling Order.

The Court held a fairness hearing on February 2, 2026. *See* Feb. 2, 2026 ECF Min. Entry & Order; Tr. of Feb. 2, 2026 Preliminary Fairness Hearing ("Fairness Hr'g"), ECF 190. The Court heard argument regarding Plaintiff's unopposed pending motion, including the likelihood of final settlement approval and class certification, as well as the parties' proposed notice procedures. *See generally* Fairness Hr'g, ECF 190. The Court directed the parties to make specific corrections to the proposed notice to be provided to the putative class members (the "Long Form Notice"). *See id.* at 45:22–54:18. Moreover, the Court inquired about the proposed classes and subclasses, and directed the parties to file a revised Long Form Notice addressing the Court's comments and clarifying the distinction between the subclasses. *See id.* at 44:12–45:21. The Court further directed the parties to submit a revised Long Form Notice by February 6, 2026, and took the pending motion under advisement. *See* Feb. 2, 2026 ECF Min. Entry & Order.

On February 6, 2026, Plaintiff filed his revised Long Form Notice, which reflected the changes the Court requested at the February 2, 2026 hearing. *See* Revised Long Form Notice, ECF 187-1. Three days later, the parties consented to the jurisdiction of the undersigned Magistrate Judge for the purpose of ruling on the unopposed motion for preliminary class settlement approval. *See* Consent to Magistrate Judge, ECF 188. That same day, Judge Vitaliano issued an order approving the parties' consent to the undersigned's jurisdiction. *See* Magistrate Judge Reference Order, ECF 189.

## DISCUSSION

Plaintiff requests that the Court (1) grant preliminary approval of the settlement agreement; (2) preliminarily certify the settlement class for the purposes of settlement; (3) preliminarily approve the notice plan and direct its distribution; (4) appoint Wittels McInturff Palikovic as class counsel; and (5) schedule a final approval hearing. Pl.'s Mem. in Supp. of Mot. for Class Action Settlement ("Mem."), ECF 180, at 1; *see also* Settlement Agreement, ECF 181-1.

Under Federal Rule of Civil Procedure 23(e), "[t]he claims, issues, or defenses of a certified class — or a class proposed to be certified for purposes of settlement — may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). "At the preliminary approval stage, a court makes an initial evaluation of fairness prior to notifying the class . . . ." *Rosenfeld v. Lenich*, No. 18-CV-6720 (NGG) (PK), 2021 WL 508339, at *3 (E.D.N.Y. Feb. 11, 2021).

Preliminary approval is guided by a "likelihood standard," *i.e.*, "whether the parties have shown that the court will *likely* be able to grant final approval and certify the class." *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 28 n.21 (E.D.N.Y. 2019) (hereinafter "*Payment Card*"); *see also* Fed. R. Civ. P. 23(e)(1)(B)(i)–(ii). "If the court determines that notice to class members is 'justified by the parties' showing'" as to the likelihood of final approval and class certification, "it 'must direct notice in a reasonable manner to all class members who [would] be bound by the proposal.'" *Rosenfeld*, 2021 WL 508339, at *4 (quoting Fed. R. Civ. P. 23(e)(1)(B)). The court must also appoint class counsel for purposes of settlement. *Payment Card*, 330 F.R.D. at 58.

The Court begins with an analysis of the likelihood of final settlement approval and class certification, then assesses the proposed form and manner of notice, and concludes with appointment of class counsel.

## I. Likelihood of Final Settlement Approval

### A. Legal Standards

In assessing the likelihood of final approval, courts "look[] to the factors contained in the text of Rule 23(e)(2)." *Payment Card*, 330 F.R.D. at 28. Under Rule 23(e)(2), courts must consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). "[P]aragraphs (A) and (B) are 'procedural' factors that address 'the conduct of the litigation and of the negotiations leading up to the proposed settlement,' whereas . . . paragraphs (C) and (D) are 'substantive' factors that address the 'relief that the settlement is expected to provide to class members.'" *Rosenfeld*, 2021 WL 508339, at *3 (quoting Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment).

The substantive factors are supplemented by the nine *Grinnell* factors, which "courts in this Circuit have traditionally considered" when "evaluating the fairness, reasonableness, and adequacy of the proposed settlement." *Id.* (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)); *Payment Card*, 330 F.R.D. at 29 (noting the "significant overlap" between the *Grinnell* and substantive factors). The *Grinnell* factors include:

> (1) the expense, complexity, and likely duration of the litigation; (2) the class's reaction to the settlement; (3) the stage of the proceedings and amount of discovery completed; (4) the risks of establishing damages; (5) the risks of establishing liability; (6) the risks of maintaining the class throughout the litigation; (7) defendants' ability to withstand greater judgment; (8) the range of reasonableness of the settlement amount considering the best possible recovery; and (9) the range of reasonableness of the settlement amount given the risks of litigation.

*Rosenfeld*, 2021 WL 508339, at *3 (citing *Grinnell*, 495 F.2d at 463).

## B. Analysis

### 1. *Procedural Factors*

#### a. Adequate Representation

"In determining the adequacy of class representatives and counsel, courts consider 'whether (1) plaintiff's interests are antagonistic to the interests of other members of the class and (2) plaintiff's attorneys are qualified, experienced[,] and able to conduct the litigation.'" *Rosenfeld*, 2021 WL 508339, a *4 (quoting *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007) (internal quotation marks omitted)); *see Payment Card*, 330 F.R.D. at 30 n.25 (explaining that "Rule 23(a)(4) case law . . . guide[s]" the Rule 23(e)(2)(A) analysis). Class representatives "'must be part of the class and possess the same interest and suffer the same injury as the [other] class members.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348–49 (2011) (quoting *E.*

*Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) (internal quotation marks omitted)); *see also Payment Card*, 330 F.R.D. at 31 (explaining that the Due Process Clause requires adequate representation). As for class counsel, "[a] court reviewing a proposed settlement must pay close attention to the negotiating process, to ensure that . . . counsel have possessed the experience and ability, and have engaged in the discovery[] necessary to effective representation of the class's interests." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (quotation marks omitted); *see also* Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment ("For example, the nature and amount of discovery in this or other cases . . . may indicate whether counsel negotiating on behalf of the class had an adequate information base.").

Here, the record illustrates that Plaintiff's interests are aligned with those of the proposed class. More specifically, the proposed class (the "Class" or "Class Members") comprises two groups: (1) the Reimbursements Subclasses (comprised of two subclasses); and (2) the Overtime Pay Subclass. The Reimbursements Subclasses are defined as follows:

> Plaintiff and all current and former Manhattan Beer employees who were at any time classified as Drivers in Manhattan Beer's records and who worked for Manhattan Beer in New York State at any time from September 18, 2009, through and including the Court's Preliminary Approval of the Agreement. "Reimbursements Subclass A" or "Reimbursements Subclass A Members" shall be defined as all current and former Manhattan Beer employees who were at any time classified as Drivers in Manhattan Beer's records and who worked for Manhattan Beer in New York State at any time between September 18, 2009 and April 15, 2016. "Reimbursements Subclass B" or "Reimbursements Subclass B Members" shall be defined as all current and former Manhattan Beer employees who were at any time classified as Drivers in Manhattan Beer's records and who were hired by and worked for Manhattan Beer in New York State at any time after April 15, 2016 through and including the Court's Preliminary Approval of the Agreement.

Settlement Agreement, ECF 181-1, at 7. The Overtime Pay Subclass includes:

> Plaintiff and all current and former Manhattan Beer employees who were employed as Drivers or Helpers and who worked for Manhattan Beer in New York State at any time from September 18, 2009, through and including the Court's Preliminary Approval of the Agreement.

*Id.*

Plaintiff claims that he was harmed as a Manhattan Beer Driver and Helper because Defendants' pay practices violated the NYLL by unlawfully deducting wages from Manhattan Beer Drivers and Helpers for mistakes or other shortages, and by not paying workers overtime for working lunch breaks. Mem., ECF 180, at 2. The Class has likewise suffered these harms. *Id.* at 2, 5–6. Absent any indication that Plaintiff's interests in this action "are antagonistic to the interest[s] of other members of the class," the record demonstrates that Plaintiff is well positioned to represent the Class. *Cordes*, 502 F.3d at 99.

The Court similarly finds that Plaintiff is adequately represented by his attorneys (herein referred to as "Lead Counsel"). The Court notes that Lead Counsel have on several occasions been appointed class counsel for the purpose of settlement. *See Cap 111 Enters. LLC v. Manhattan Beer Distributors, LLC*, No. 22-CV-1408 (CS) (AEK), 2025 WL 1212394, at *2 (S.D.N.Y. Apr. 24, 2025) (reaffirming the appointment of Wittels McInturff Palikovic as class counsel for purposes of granting final approval of class settlement); *Franck v. N.Y. Health Care Inc.*, No. 21-CV-4955 (GHW) (JLC), 2024 WL 4182601, at *1 (S.D.N.Y. Sept. 13, 2024) (same); *Nichols v. Noom, Inc.*, No. 20-CV-3677 (KHP), 2022 WL 2705354, at *5 (S.D.N.Y. July 12, 2022) (concluding that Lead Counsel is qualified to serve as class counsel "as Wittels McInturff Palikovic attorneys have extensive experience in prosecuting complex consumer and employment class actions"); *cf. Velez v. Novartis Pharms. Corp.*, No. 04-CV-9194 (CM), 2010 WL 4877852, at *10

12

(S.D.N.Y. Nov. 30, 2010) (finding that Lead Counsel's former law firm, "Sanford Wittels & Heisler LLP, has just the sort of established record contemplated by" Rule 23).

Both the pleadings and motion papers demonstrate a thorough investigation by Lead Counsel into the underlying facts and applicable law. *See generally* Compl., ECF 1; Am. Compl., ECF 14; Mem., ECF 180. After the Court ordered the parties to engage in mediation in late 2020, Lead Counsel participated in an initial pre-mediation session in November 2020, two joint mediation sessions in December 2020 and January 2021, and additional separate and joint conferences with the mediator on several occasions through April 2021, all in an effort to work towards a settlement. Mem., ECF 180, at 3–4. Although those efforts did not yield a settlement, Lead Counsel began to participate in further settlement negotiations with the assistance of a different mediator in February 2024. *Id.* at 4. These discussions culminated in a joint mediation session in August 2025, at which the parties reached an understanding "on most material settlement terms." *Id.* In the following months, further discussions over the remaining terms resulted in the Settlement Agreement that was signed by the parties in November 2025. *Id.*

Plaintiff additionally notes that the parties engaged in significant discovery in this case prior to agreeing to the settlement, a fact that supports the conclusion that Lead Counsel has adequately represented the interests of the proposed class. *Id.* at 3. Indeed, Plaintiff represents that the parties undertook written discovery, the production and review of complex records and documents, interviews with Plaintiff, Class Members, and potential witnesses, two depositions of one of Defendants' senior managers, and a deposition of Plaintiff. *Id.* In light of Lead Counsel's experience and efforts in this case to investigate and substantiate the alleged violations, the Court finds that Plaintiff is being represented by "qualified, experienced" legal counsel. *Cordes*, 502 F.3d at 99 (quotation marks omitted).

b. <u>Arm's Length Negotiation</u>

"A class settlement reached through arm's-length negotiations between experienced, capable counsel knowledgeable in complex class litigation is entitled to a presumption of fairness." *Rosenfeld*, 2021 WL 508339, at *5 (quotation marks omitted). Likewise, a "mediator's involvement in pre-certification settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure." *D'Amato*, 236 F.3d at 85.

As to the parties' selected mediators for the largely successful August 2025 mediation, Martin F. Scheinman and his colleague Barry Peek, several courts in this circuit have held that Mr. Scheinman's involvement has supported a finding that class-action settlement agreements were fair. *See Emeterio v. A&P Rest. Corp.*, No. 20-CV-0970 (KHP), 2022 WL 274007, at *7 (S.D.N.Y. Jan. 26, 2022) (approving settlement reached with the assistance of "neutral third-party mediator Martin F. Scheinman"); *In re Penthouse Exec. Club Comp. Litig.*, No. 10-CV-1145 (KMW), 2014 WL 185628, at *1, *4–5 (S.D.N.Y. Jan. 14, 2014) (approving settlement reached with assistance of "experienced mediator" Mr. Scheinman); *Chen v. XpresSpa at Terminal 4 JFK LLC*, No. 15-CV-1347 (CLP), 2021 WL 4487835, at *2, *5 (E.D.N.Y. Oct. 1, 2021) (same); *see also Ying v. All-Ways Forwarding of N.Y. Inc.*, No. 20-CV-6242 (ENV) (MMH), 2025 WL 968586, at *2 (E.D.N.Y. Mar. 31, 2025); *Griffin v. Endicott Coil Co.*, No. 22-CV-1128 (MAD) (ML), 2024 WL 4771271, at *1, *3 (N.D.N.Y. Apr. 9, 2024). Additionally, Plaintiff represents that the parties reached an agreement on most material settlement terms with the assistance of Mr. Scheinman and Mr. Peek, who "were able to close the gaps on certain issues" between the parties. Fairness Hr'g, ECF 190, at 25:13–26:25; *see* Mem., ECF 180, at 4. Based on the record in this case, there is no "'evidence or indicia suggesting that the negotiations were collusive.'" *Gordon v. Vanda Pharms.*, No. 19-CV-1108 (FB) (LB), 2022

14

WL 4296062, at *4 (E.D.N.Y. Sept. 15, 2022) (quoting *Simerlein v. Toyota Motor Corp.*, No. 17-CV-1091 (VAB), 2019 WL 1435055, at *13 (D. Conn. Jan. 14, 2019)). The Court therefore finds that the parties' proposed settlement was the result of arm's length negotiations.

### 2. *Substantive Factors*

#### a. Adequate Relief

##### i. *Costs, Risks, and Delay of Trial and Appeal*

The first factor in assessing whether the proposed settlement provides adequate relief for the putative class is an evaluation of the "costs, risks, and delay of trial and appeal." Fed. R. Civ. P. 23(e)(2)(C)(i). This factor "'subsumes several *Grinnell* factors,' including the complexity, expense and likely duration of litigation, the risks of establishing liability, the risks of establishing damages, and the risks of maintaining the class through trial" (factors 1, 4, 5, and 6). *Rosenfeld*, 2021 WL 508339, at *5 (quoting *Payment Card*, 330 F.R.D. at 36). Put simply, courts must assess whether the proposed settlement "'results in substantial and tangible present recovery, without the attendant risk and delay of trial.'" *Id.* (quoting *Payment Card*, 330 F.R.D. at 36).

Plaintiff has submitted the parties' proposed Settlement Agreement, which indicates that the settlement amount is $1 million. *See* Settlement Agreement, ECF 181-1, § 1.16. Plaintiff represents that without approval of the Settlement Agreement, litigation would resume, exposing Plaintiff to "significant risk, expense, and further delay" on the road to an "uncertain[]" outcome on motions or at trial. Mem., ECF 180, at 13. Plaintiff contends, for example, that "extensive additional discovery will be required for class certification, summary judgment, and trial," while suggesting that a judgment at or before trial would likely be appealed. *Id.* Such an appeal, Plaintiff argues, would only lead to more uncertainty and delay for the Class. *Id.* Furthermore, both parties at the

15

preliminary fairness hearing suggested to the Court that the risk attendant to continuing litigation is heightened by the fact that this case has been pending for a considerable amount of time. *See* Fairness Hr'g, ECF 190, at 27:7–29:4. From the parties' perspective, that reality may make it difficult to obtain the relevant documents and electronic records that might be needed at trial, given that the materials may not have been adequately maintained over the years despite the parties' good faith efforts to preserve them. *Id.* at 27:7–28:11, 28:17–29:4. In addition, both parties suggested that the time that has passed since the alleged conduct underlying Plaintiff's claims has occurred may make it difficult for trial witnesses to recall the events at issue. *Id.* at 27:7–9 (Plaintiff's counsel noting that "the risk is even exacerbated here because memories fade"), 28:17–21 (raising similar concern from Defendants' perspective).

The Court agrees that should the parties continue to litigate this matter, the costs, risks, and additional time expended would be significant. A settlement would result in a tangible present recovery. This factor therefore weighs in favor of preliminary approval of the parties' proposed settlement.

### ii.    *Effectiveness of Proposed Method of Distributing Relief*

The Court next evaluates the parties' "proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C)(ii). "An allocation formula need only have a reasonable, rational basis" and "need not be perfect." *Payment Card*, 330 F.R.D. at 40 (quotation marks omitted). As to claims processing, the proposed method should "'deter or defeat unjustified claims' without imposing an undue demand on class members." *Rosenfeld*, 2021 WL 508339, at *6 (quoting Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment).

The parties' Settlement Agreement sets out the process by which Defendants will provide Arden Claims Service LLC ("Arden" or "Settlement Administrator") a list of all

16

Class Members. Settlement Agreement, ECF 181-1, § 2.6(A)–(B). Such list must be provided by Defendants to the Settlement Administrator within 20 business days of the Court's entry of the preliminary settlement approval order. *Id.* § 2.6(A). In addition, Defendants must certify that the information contained therein "represents the most current and up to date information" that they have for Class Members, and a copy of the list must be furnished to Lead Counsel. *Id.* § 2.6(B).

The parties' Settlement Agreement further states that within 30 days of the preliminary settlement approval order, "the Settlement Administrator shall mail the appropriate Notice to all Class Members . . . using each Class Member's last known mailing address and email address." *Id.* §§ 1.2, 2.6(C). Subject to the Court's final approval of the settlement, "Class Members who do not timely opt-out in accordance with" the opt-out procedure specified in the Settlement Agreement[3] "shall be mailed a Settlement Check as provided for" by the agreement. *Id.* § 2.6(F).

Class Members who participate in the settlement are entitled to receive "a proportionate share of the Net Settlement Amount, subject to reduction by the Minimum Individual Settlement Amounts," as discussed below. *Id.* § 3.1(A). The Net Settlement Amount is to be split among the Reimbursements Subclasses and the Overtime Pay Subclass, with 90 percent of the Net Settlement Amount applying to the

---

[3] Class Members who wish to opt out of the settlement may request to be excluded from the Class and "must mail, email, or fax a written, signed statement to the Settlement Administrator that he or she is opting out of the settlement." Settlement Agreement, ECF 181-1, § 2.7(A). Those Class Members who properly and timely opt out pursuant to the provisions of the Settlement Agreement will not be bound by the terms of the Settlement Agreement and will not be entitled to receive any distribution of funds. *Id.* § 2.7(F). Any Class Member who fails to properly and timely opt out will be found to have accepted the Settlement Agreement's terms. *Id.* § 2.7(C). The Settlement Administrator is responsible for receiving, reviewing, and responding to opt-out statements, objections to the settlement, and other inquires submitted to it by Class Members. *Id.* § 2.3(C); *see also id.* § 2.8 (describing the process by which Class Members may present objections to the settlement at the fairness hearing).

former and 10 percent to the latter. *Id.* Individual Class Members' proportionate shares of the Net Settlement Amount are to be calculated *pro rata* based on the subclass for which they are eligible and the number of workweeks they were employed by Defendants, "except that Reimbursements Subclass B Members . . . shall receive the minimum amount as defined in" the Settlement Agreement. *Id.*

As to the minimum settlement amounts referenced above, "Reimbursements Subclass A Members whose Individual Settlement Amount is less than [$50.00], and all Reimbursements Subclass B Members," will receive at least $50.00. *Id.* § 3.1(B). Moreover, "Overtime Pay Subclass Members whose Individual Settlement Amount is less than [$25.00]" will receive at least $25.00. *Id.* The parties agree to subtract from the Net Settlement Amount any funds needed to meet the minimum amounts for the Reimbursements Subclasses and Overtime Pay Subclass before distributing the remaining funds in accordance with the Settlement Agreement. *Id.* However, the parties may agree to lower the minimum amounts as to Overtime Pay Subclass Members to ensure that 90 percent of the Net Settlement Amount is distributed to Reimbursement Subclasses Members. *Id.*

Finally, each Class Member who receives a settlement check shall have 90 days after the mailing date to endorse and negotiate their check. *Id.* § 3.4(A). Should any Class Member fail to endorse or negotiate their check, opt out of, or object to the Settlement Agreement, within 45 days after the settlement checks are mailed, the Settlement Administrator is directed to mail and email a "follow-up Notice" to them. *Id.* § 3.4(D). In the event that a Class Member does not timely negotiate or endorse their settlement check, they shall lose their entitlement to any payment for any claim recognized under the agreement. *Id.* § 3.4(C). The Settlement Administrator must verify

18

in writing to the parties when it completes its administration of the settlement. *Id.* §§ 2.3(R), 2.6(B).

"This allocation plan appears to be rational and fair, as it treats class members equitably while taking into account variations in the magnitude of their injuries." *Rosenfeld*, 2021 WL 508339, at *6. As Plaintiff explained at the fairness hearing, Judge Vitaliano's grant of summary judgment to the Defendants on the motor carrier exemption related to the overtime claim "took away the heart of the claim" because Plaintiff had believed to that point "that the overtime claim was the larger aspect of the class action." Fairness Hr'g, ECF 190, at 12:6–14. Therefore, as Plaintiff explained at the fairness hearing, it is equitable to allocate 90 percent of the Net Settlement amount to the Reimbursements Subclasses. *Id.* at 12:4–5 (explaining that the deductions claim "really was the strongest case" following summary judgment, leading to 90 percent of the settlement being allocated to the Reimbursements Subclasses); *see* Settlement Agreement, ECF 181-1, § 3.1(A). Likewise, it appears that the claims processing method imposes a minimal burden on claimants and provides those who wish to opt out of the settlement with ample and clear means to do so. The Court therefore finds that the proposed methods of processing claims and distributing relief are rational and fair.

       iii.    *Proposed Award of Attorneys' Fees*

The third factor in the evaluation of whether the settlement provides adequate relief is an assessment of "the terms of any proposed award of attorneys' fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). "Courts may award attorneys' fees in common fund cases under either the 'lodestar' method or the 'percentage of the fund' method." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005), (hereinafter "*Visa U.S.A.*") (quoting *Goldberger*, 209 F.3d at 50).

Here, Lead Counsel intends to "ask the Court to approve payment of up to one-third of the Gross Settlement Amount for attorneys' fees ($333,333.33)" and "to approve reimbursement of their out-of-pocket expenses totaling approximately $15,000 for litigation expenses and costs." Revised Long Form Notice, ECF 187-1, at 7; *see* Mem., ECF 180, at 17–19. "Courts in this Circuit routinely find that requests for attorney's fees totaling one-third of the settlement fund are well within the range of reasonableness" — particularly "in cases with funds of less than $10 million." *Rosenfeld*, 2021 WL 508339, at *6 (quotation marks omitted). Assuming that Lead Counsel's request for litigation expenses is documented and substantiated, the Court finds that the requested award for attorneys' fees will likely be found to be reasonable.[4]

### iv.   *Other Agreements*

The fourth factor requires courts to consider "any agreement required to be identified under Rule 23(e)(3)," *i.e.*, "any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(2)(C)(iv), (e)(3). Rule 23(e)(3) is aimed at revealing "undertakings that, although seemingly separate, may have influenced the terms of the settlement by trading away possible advantages for the class in return for advantages for others," namely, the representative plaintiffs or their attorneys. Fed. R. Civ. P. 23 advisory committee's note to 2003 amendment; *see also* J. Alex Grimsley, Annotated

---

[4] The Court notes that Lead Counsel's requested award is, of course, subject to modification at final settlement approval. *See Rosenfeld v. Lenich*, No. 18-CV-6720 (NGG) (PK), 2021 WL 508339, at *7 (E.D.N.Y. Feb. 11, 2021). Lead Counsel should be prepared to submit contemporaneous time records to facilitate a cross-check against the lodestar. *See In re PPDAI Grp. Inc. Sec. Litig.*, No. 18-CV-6716 (TAM), 2022 WL 198491, at *14–17 (E.D.N.Y. Jan. 21, 2022); *see also Marion S. Mishkin L. Off. v. Lopalo*, 767 F.3d 144, 148–49 (2d Cir. 2014) (discussing the "strict rule" that any request for attorneys' fees must be "accompanied by contemporaneous time records" (quotation marks omitted)).

Manual for Complex Litigation § 21.631 (4th ed. 2025) ("Requiring the parties to file the complete agreement might elicit comments from class members and facilitate judicial review.").

Here, Lead Counsel represent that "there are no agreements under Rule 23(e)(3) that the Court must review." Mem., ECF 180, at 19 n.5. The parties further confirmed at the Fairness Hearing that there are no other agreements amongst the parties. Fairness Hr'g, ECF 190, at 34:9–22.

b.  Equitable Treatment

The proposed settlement must "treat[] class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). In making this assessment, "the court may weigh 'whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief.'" *Rosenfeld*, 2021 WL 508339, at *7 (quoting Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment). As explained above, the Settlement Agreement provides for *pro rata* disbursement to Class Members. "In this way, the agreement appropriately and fairly accounts for . . . point[s] of differentiation among class members' claims." *Id.*

Plaintiff contends that not only is the *pro rata* allocation plan fair and equitable, but also that "the payment allocation plan correlates with Plaintiff['s] damages model" and that "all Class Members will be bound by the same release." Mem., ECF 180, at 19; *see* Wittels Decl., ECF 181, ¶ 26. As explained above, the Court finds that this plan of allocation, including the allocation of 90 percent of the Net Settlement to the Reimbursements Subclasses and 10 percent to the Overtime Pay Subclass, treats Class Members equitably relative to each other and to their claims.

c.  Stage of Proceedings and Amount of Discovery Completed (*Grinnell* Factor 3)[5]

"This [*Grinnell*] factor requires the Court to consider whether the parties have adequate information about their claims." *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 198 (S.D.N.Y. 2012). "To approve a proposed settlement," however, "the Court need not find that the parties have engaged in extensive discovery." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000). The Court need only ensure that the parties have sufficiently investigated the facts such that the settlement is fair and reasonable. *See id.*

Plaintiff submits that this factor supports preliminary approval because "the parties have completed more than enough discovery to recommend settlement." Mem., ECF 180, at 20. In support of that contention, Plaintiff points to the pre-litigation investigation, "written discovery, depositions, and extensive analysis of Defendants' records" that occurred in this case. *Id.* Additionally, Plaintiff argues that the considerable motion practice that the parties engaged in, including summary judgment briefing on two separate occasions, and their lengthy settlement discussions under the supervision of reputable mediators demonstrate that Lead Counsel was "able to evaluate the strengths and weaknesses of Class Members' claims against Plaintiff's damages model." *Id.* The Court agrees. Accordingly, the Court finds that Plaintiff was adequately informed about his claims prior to reaching a proposed settlement.

---

[5] The second *Grinnell* factor, "the class's reaction to the settlement," cannot be assessed at this time. *Rosenfeld*, 2021 WL 508339, at *3; *see id.* at *4 n.2 (declining to assess this factor at the preliminary approval stage).

d.  Defendants' Ability to Withstand a Greater Judgment (*Grinnell* Factor 7)

"Under the *Grinnell* analysis, the court also considers Defendants' ability to withstand a greater judgment than that provided for in the proposed settlement." *Rosenfeld*, 2021 WL 508339, at *7. The Court notes, however, that a defendant's "ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Pinnacle Grp.*, 874 F. Supp. 2d at 201 (quotation marks omitted). Indeed, courts consider this factor "much less important" than the others, especially where "the other *Grinnell* factors weigh heavily in favor of settlement approval." *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 339 (E.D.N.Y. 2010) (quotation marks omitted). Here, Plaintiff views this factor as "neutral" and "negligible" given that Lead Counsel "identified no issue with Defendant's financial condition." Mem., ECF 180, at 21. At the preliminary fairness hearing, Plaintiff reiterated this position, and Defendants did not advance an opposing view. Fairness Hr'g, ECF 190, at 40:11–41:3; *see id.* at 39:1–40:5. Furthermore, Lead Counsel indicated that Plaintiff is "settling the claim based upon the valuation that [Lead Counsel] actually ascribed the damages that [they] find provable as opposed to giving" Defendants "a big discount." *Id.* at 40:23–41:3.

Accordingly, although the proposed $1 million settlement may be less than Defendants' theoretical capacity to pay, the Court finds that this factor is not likely to preclude settlement approval, because the settlement provides reasonable value based on Class Members' actual claims. The Court thus finds that this factor favors settlement.

e.  Range of Reasonableness of Settlement Fund (*Grinnell* Factors 8 and 9)

The Court next considers "the range of reasonableness of the settlement fund in light of [both] the best possible recovery" and "the attendant risks of litigation." *Charron v. Wiener*, 731 F.3d 241, 247 (2d Cir. 2013); *see Payment Card*, 330 F.R.D. at 47–48 (noting that these "two *Grinnell* factors . . . are often combined for the purposes of analysis"). To

23

calculate the best possible recovery, courts "assume complete victory on both liability and damages as to all class members on every claim asserted against each defendant in the [a]ction." *Payment Card*, 330 F.R.D. at 48 (quotation marks omitted). The risks of litigation include "the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Visa U.S.A.*, 396 F.3d at 119 (quotation marks omitted).

Plaintiff represents that his total maximum recovery on the actionable claims per his damages model is "approximately $1.65 million." Mem., ECF 180, at 22. The settlement therefore represents a recovery of 60.61% of this forecast. Although Plaintiff maintains that "there is a *possibility* that at trial the Class might obtain a higher amount" than his damages model suggests, the Court agrees with Plaintiff that such an outcome is not guaranteed and would require Class Members to wait for additional litigation to transpire before having the chance to receive any payment. *Id.*

It is well established that although "a proposed settlement may only amount to a fraction of the potential recovery," that does not "mean that the proposed settlement is grossly inadequate and should be disapproved." *Grinnell*, 495 F.2d at 455. "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Id.* at 455 n.2. This is because the "best possible recovery" may not be "a realistic" one. *Cagan v. Anchor Sav. Bank FSB*, No. 88-CV-3024 (CPS), 1990 WL 73423, at *13 (E.D.N.Y. May 22, 1990). Accordingly, it remains important to evaluate the settlement amount "in light of the strengths and weaknesses of Plaintiff's case." *Rodriguez v. CPI Aerostructures, Inc.*, No. 20-CV-0982 (ENV) (CLP), 2023 WL 2184496, at *16 (E.D.N.Y. Feb. 16, 2023) (quotation marks omitted).

Given the risks of litigation described above, the Court finds that the parties' settlement amount falls well within a reasonable range.

$$*\quad*\quad*\quad*\quad*$$

On balance, the Court concludes that an evaluation of both the procedural and substantive factors set forth in Rule 23 and *Grinnell* indicates that the parties' proposed settlement is fair and reasonable.

## II.  Likelihood of Class Certification

### A.  Legal Standards

"In order to conclude that giving notice to the putative class is justified, the court must also determine that it will likely be able to certify the class for purposes of judgment on the proposal" under Rule 23(a) and (b). *Rosenfeld*, 2021 WL 508339, at *8. It is the burden of the party seeking class certification to "affirmatively demonstrate" compliance with these rules. *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 237 (2d Cir. 2012) (quotation marks omitted).

Rule 23(a) sets forth the familiar "four prerequisites for class certification": (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *Rosenfeld*, 2021 WL 508339, at *8; *see* Fed. R. Civ. P. 23(a). "In addition to the explicit requirements of Rule 23(a), the class must satisfy the implied requirement of ascertainability." *Payment Card*, 330 F.R.D. at 50 (citing *In re Petrobras Secs.*, 862 F.3d 250, 266 (2d Cir. 2017)).

Rule 23(b) "lays out three alternative 'types' of class actions that may be maintained." *Rosenfeld*, 2021 WL 508339, at *9. As relevant here, Plaintiff seeks certification under Rule 23(b)(3), which "requires both that (1) 'questions of law or fact common to class members predominate over any questions affecting only individual members,' and that (2) 'a class action is superior to other available methods for fairly

25

and efficiently adjudicating the controversy.'" *Payment Card*, 330 F.R.D. at 50 (quoting Fed. R. Civ. P. 23(b)(3)); *see* Mem., ECF 180, at 23–24.

### B. Analysis

#### 1. *Rule 23(a) Requirements*

##### a. Numerosity

"The numerosity requirement mandates that the class be 'so numerous that joinder of all members is impracticable.'" *In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298, 304 (S.D.N.Y. 2010) (quoting Fed. R. Civ. P. 23(a)(1)). The "inquiry is not strictly mathematical but must take into account the context of the particular case." *Penn. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120 (2d Cir. 2014); *see also id.* (listing factors to consider). As a general rule, when a class consists of 40 or more members, numerosity is presumed. *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

Here, Plaintiff asserts that "there are approximately 1,680 Class Members." Mem., ECF 180, at 24. For their part, Defendants do not contest that the numerosity requirement is met in this case. *See* Fairness Hr'g, ECF 190, at 41:21–42:11 (Defendants declining to dispute or otherwise comment on the numerosity requirement being satisfied). The Second Circuit recognizes that numerosity may be found where the proposed class is "obviously numerous." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997). Based on the nature of the claims in this case, Plaintiff has established a high likelihood that the numerosity requirement will be satisfied at the time of final settlement approval.

##### b. Commonality

"Commonality requires a showing that common issues of fact or law affect all class members." *In re Sadia*, 269 F.R.D. at 304 (citing Fed. R. Civ. P. 23(a)(2)). It "requires

the plaintiff to demonstrate that the class members 'have suffered the same injury,'" not "merely that they have all suffered a violation of the same provision of law." *Dukes*, 564 U.S. at 349–50 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). "In other words, the relevant inquiry is whether a classwide proceeding is capable of 'generat[ing] common *answers* apt to drive the resolution of the litigation.'" *Jacob v. Duane Reade, Inc.*, 602 F. App'x 3, 6 (2d Cir. 2015) (alteration in original) (quoting *Dukes*, 564 U.S. at 350 (internal quotation marks omitted)).

Plaintiff asserts that "[t]his case involves numerous common issues and courts in this District routinely find commonality when presented with the same common questions as those at issue here." Mem., ECF 180, at 25 (citing *Caccavale v. Hewlett-Packard Co.*, No. 20-CV-0974 (NJC) (ST), 2025 WL 882220, at *16 (E.D.N.Y. Mar. 14, 2025) (court considering NYLL class claims observing that "[i]n wage cases, the commonality requirement is usually satisfied where the plaintiffs allege that defendants had a common policy or practice of unlawful labor practices" (quotation marks omitted)); *Abarza v. Spirit Pharms. LLC*, No. 23-CV-3637 (JMW), 2025 WL 1519147, at *5 (E.D.N.Y. May 28, 2025) (finding the commonality requirement satisfied where class members "sustained similar types of damages as a result of Defendant's failure to comply with the NYLL" (quotation marks omitted))). All Class Members' claims depend on the same core question — whether Defendants' pay practices violated NYLL requirements. *See* Am. Compl., ECF 14, ¶ 5. At the preliminary fairness hearing, Defendants did not dispute that the commonality requirement is satisfied in this action. *See* Fairness Hr'g, ECF 190, at 41:21–42:11.

Given the nature of the allegations in this case, the Court concludes that the pleadings establish that the Class Members suffered the same injury. As a result, commonality is present.

c.  Typicality

"[T]he typicality requirement[] is satisfied by a showing that 'each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability.'" *In re Deutsche Bank AG Sec. Litig.*, 328 F.R.D. 71, 80 (S.D.N.Y. 2018) (quoting *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (internal quotation marks omitted)). It "is usually met" where "the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented." *Robidoux v. Celani*, 987 F.2d 931, 936–37 (2d Cir. 1993). In this case, where all Class Members are current or former Manhattan Beer employees who have been similarly affected by the same, allegedly unlawful pay practices of Defendants, "Plaintiff[] and the proposed class would therefore present similar legal arguments in prosecuting their cases." *Elkind v. Revlon Consumer Prods. Corp.*, No. 14-CV-2484, 2017 WL 9480894, at *10 (E.D.N.Y. Mar. 9, 2017), *report and recommendation adopted*, 2017 WL 1169552 (E.D.N.Y. Mar. 29, 2017). The Court finds that Plaintiff has demonstrated the typicality requirement in this case.

d.  Adequacy of Representation

To satisfy the adequacy requirement, "[p]laintiffs must meet two standards — that 'class counsel . . . be qualified, experienced[,] and generally able to conduct the litigation,' and that 'the class members . . . not have interests that are antagonistic to one another.'" *Balestra v. ATBCOIN LLC*, No. 17-CV-10001 (VSB), 2022 WL 950953, at *4 (S.D.N.Y. Mar. 29, 2022) (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992) (internal quotation marks omitted)). Based on the Court's determinations *supra* regarding the parallel requirements under Rule 23(e)(2), the Court finds that the proposed class is adequately represented by Plaintiff and Lead Counsel,

28

and that the adequacy requirement will likely be found at the time of final settlement approval and judgment.

e. Ascertainability

"[A] class is ascertainable if it is defined using objective criteria that establish a membership with definite boundaries." *In re Petrobras Sec.*, 862 F.3d at 257. Here, the class is clearly defined as consisting of three groups of current and former Manhattan Beer employees: the Reimbursements Subclasses and the Overtime Pay Subclass. Mem., ECF 180, at 5; Proposed Order, ECF 181-2, at 3. As to the Reimbursements Subclasses, Subclass A consists of Drivers who were employed by Manhattan Beer and worked in New York State at any time between September 18, 2009, and April 15, 2016, while Subclass B consists of Drivers who were employed by Manhattan Beer and worked in New York State at any time after April 15, 2016, through the date of this Court's preliminary approval of the settlement. Mem., ECF 180, at 5; Proposed Order, ECF 181-2, at 3. Additionally, the Overtime Pay Subclass consists of Drivers and Helpers who were employed by Manhattan Beer and worked in New York State at any time between September 18, 2009, through the date of preliminary approval of the settlement. Mem., ECF 180, at 6; Proposed Order, ECF 181-2, at 3. Given these definite boundaries of class membership, the Court concludes that the class is reasonably ascertainable here.

2. *Rule 23(b)(3) Requirements*

"Rule 23(b)(3) imposes two additional burdens on plaintiffs attempting to proceed by class action, namely, predominance and superiority." *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 81 (2d Cir. 2015); *see* Fed. R. Civ. P. 23(b)(3) (requiring "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available

methods for fairly and efficiently adjudicating the controversy"). These inquiries are ordinarily guided by four factors:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;

> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). However, in the settlement context, "'[s]ome inquiries essential to litigation [of] class certification,' including the issue of 'manageability — how the case will or can be tried, and whether there are questions of fact or law that are capable of common proof,'" are no longer relevant. *Rosenfeld*, 2021 WL 508339, at *10 (quoting *In re Am. Int'l Grp.*, 689 F.3d at 239 (internal quotation marks omitted)). The other factors, however, "demand undiluted, even heightened, attention." *In re Am. Int'l Grp.*, 689 F.3d at 239 (quotation marks omitted).

### a. Predominance

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Again, because the prospect of settlement obviates the manageability concerns ordinarily assessed as part of this inquiry, the focus is instead whether "'the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'" *Payment Card*, 330 F.R.D. at 55 (quoting *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (internal quotation marks omitted)); *see also Rosenfeld*, 2021 WL 508339, at *10.

Here, Class Members' claims that Defendants allegedly violated state wage and hour laws involve similar, if not identical, questions of law and fact. To the extent there are unique issues as to each Class Member, for instance, when they worked for Manhattan Beer and what amount of damages they should be awarded, the common questions are much "more substantial." *Payment Card*, 330 F.R.D. at 55 (quotation marks omitted); *see Manley v. Midan Rest. Inc.*, No. 14-CV-1693 (HBP), 2016 WL 1274577, at *6 (S.D.N.Y. Mar. 30, 2016) (finding that the predominance requirement was satisfied in a class involving "failure to pay overtime pay" and "unlawful deductions from wages" because these issues, among others, "all relate to the general practices of defendants"); *Karic v. Major Auto. Co.*, No. 09-CV-5708 (ENV) (CLP), 2015 WL 9433847, at *6 (E.D.N.Y. Dec. 22, 2015) (finding that the class members "were governed by the same pay policies and procedures" and "these common issues predominate over those affecting any one individual"), *report and recommendation adopted sub nom. Karic v. The Major Auto. Co.*, 2016 WL 323673 (E.D.N.Y. Jan. 26, 2016); *see, e.g.*, *Abarza*, 2025 WL 1519147, at *6 ("[T]he common question of Defendant's alleged failure to pay overtime wages predominates over any varying factual or legal theories that may exist among the Class Members.") (collecting cases). Accordingly, the Court finds that common questions of law and fact predominate over individual questions, and the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc.*, 521 U.S. at 623.

b. Superiority

"Rule 23(b)(3)'s superiority requirement may be satisfied when 'the costs of bringing individual actions outweigh the expected recovery,' and when consolidation 'will achieve significant economies of time, effort and expense, and promote uniformity of decision.'" *Rosenfeld*, 2021 WL 508339, at *10 (quoting *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 130 (2d Cir. 2013)). "The superiority requirement is designed to

31

avoid repetitive litigation and possibility of inconsistent adjudications." *Payment Card*, 330 F.R.D. at 57 (quotation marks omitted). Additionally, "[c]ourts have found that the superiority requirement is satisfied" when "potential class members are both significant in number and geographically dispersed." *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 661 (S.D.N.Y. 2015) (quotation marks omitted).

Here, Plaintiff submits that "Class Members have limited financial resources with which to prosecute individual actions," and "[t]he settlement thus represents an optimal result for the workers." Mem., ECF 180, at 30. It is partly because of this consideration that "[c]ourts throughout the Second Circuit have found class certification to be the superior method of litigating wage-and-hour claims." *Leong v. Laundry Depot, LLC*, No. 19-CV-3545 (HG) (PK), 2023 WL 6226415, at *7 (E.D.N.Y. Sept. 26, 2023); *see Abarza*, 2025 WL 1519147, at *7 (finding that "a class action is superior to any other available method for fairly and efficiently adjudicating this [wage-and-hour] controversy"). In addition, given the numerosity of potential Class Members, "there is great utility in resolving the claims of the many [members of] the class through the class action mechanism." *Meredith Corp.*, 87 F. Supp. 3d at 661. Furthermore, in light of this factor, "[c]lass adjudication of this case is superior to individual adjudication because it will conserve judicial resources." *Zeltser v. Merrill Lynch & Co.*, No. 13-CV-1531 (FM), 2014 WL 4816134, at *3 (S.D.N.Y. Sept. 23, 2014). The Court therefore finds it likely that the superiority requirement will be met.

\*   \*   \*   \*   \*

For the above reasons, the Court finds that Plaintiff has demonstrated a good likelihood of class certification. Having concluded that Plaintiff has also demonstrated a likelihood of final settlement approval, the Court grants preliminary settlement

approval and finds that notice to "all class members who would be bound by the proposal" is justified. Fed. R. Civ. P. 23(e)(1)(B).

## III. Notice

Under Rule 23, notice may be issued by either "United States mail, electronic means, or other appropriate means." Fed. R. Civ. P. 23(c)(2)(B). Additionally:

> The notice must clearly and concisely state in plain, easily understood language:
>
> > (i) the nature of the action;
> >
> > (ii) the definition of the class certified;
> >
> > (iii) the class claims, issues, or defenses;
> >
> > (iv) that a class member may enter an appearance through an attorney if the member so desires;
> >
> > (v) that the court will exclude from the class any member who requests exclusion;
> >
> > (vi) the time and manner for requesting exclusion; and
> >
> > (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.* Ultimately, "[t]he standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." *Visa U.S.A.*, 396 F.3d at 113. Courts in this Circuit have found that a settlement notice is substantively sufficient "when it describe[s] the terms of the settlement generally, inform[s] the class about the allocation of attorneys' fees, and provide[s] specific information regarding the date, time, and place of the final approval hearing." *Payment Card*, 330 F.R.D. at 58 (alterations in original) (quotation marks omitted); *see id.* at 58–59 (collecting cases). Courts are concerned both procedurally and substantively with whether the notice plan will provide "'class members the best notice that is practicable under the circumstances.'" *Vargas v. Capital One Fin. Advisors*, 559 F.

33

App'x 22, 26 (2d Cir. 2014) (quoting Fed. R. Civ. P. 23(c)(2)(B)); *see also id.* at 26–27 (stating that notice to class members must be "sent by an adequate physical delivery method" and "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings" (quotation marks omitted)).

### A. The Notice Plan

Plaintiff proposes a notice plan designed to "reach as many Class Members as possible." Mem., ECF 180, at 33. The parties request that the Court appoint Arden to administer the notice process. Mem., ECF 180, at 7–8; Settlement Agreement, ECF 181-1, § 1.2; Revised Long Form Notice, ECF 187-1, at 7. At the preliminary fairness hearing, counsel for both parties spoke favorably about their past experiences with Arden. *See* Fairness Hr'g, ECF 190, at 31:25–33:9. In the Settlement Agreement, the parties stipulated that the total settlement administration expenses to be spent on Arden's services shall not exceed $30,500, which is to be paid out of the gross settlement amount. Settlement Agreement, ECF 181-1, §§ 1.19, 1.27; *see* Revised Long Form Notice, ECF 187-1, at 7. Finding that Arden appears well qualified and that there is no reason to deny the parties' choice of claims administrator, the Court appoints Arden to administer the notice process.

The proposed notice plan provides that Defendants will send the Settlement Administrator an electronic list of all Class Members and their unique identifying information within 20 business days of the Court preliminarily approving the settlement. Settlement Agreement, ECF 181-1, § 2.6(A). "Within [30] days of the Preliminary Approval Order, the Settlement Administrator shall mail the appropriate Notice to all Class Members, via First Class United States Mail, postage prepaid, and via email, using each Class Member's last known mailing address and email address as

34

recorded in Defendants' records." *Id.* § 2.6(C). If the mailed notice is returned to the Settlement Administrator as undeliverable, it shall notify the parties and "attempt a re-distribution to any Class Member for whom it obtains more recent contact information." *Id.* § 2.6(D). Throughout this process, the Settlement Administrator is charged with "maintaining adequate records of its activities, including the dates of the mailing of Notice(s), returned mail and other communications" with Class Members. *Id.* § 2.3(P). In addition to periodically updating the parties on the status of the notice and claims administration process, the Settlement Administrator shall also provide the parties a final statement describing the notice mailing results.[6] *Id.* § 2.3(O).

### B. Notice Content

Plaintiff has submitted a long form notice for the Court's review. *See* Revised Long Form Notice, ECF 187-1; *see also* Proposed Long Form Notice, ECF 181-4. This notice sets forth a fair description of the action and claims process and addresses the concerns the Court identified at the preliminary fairness hearing. Specifically, the Court requested that the long form notice clearly communicate (1) that putative Class Members have a right to represent themselves in this action without legal counsel; and (2) the distinctions between the subclasses and the benefits that members of those subclasses may receive under the settlement. *See* Fairness Hr'g, ECF 190, at 43:3–45:21; Feb. 2, 2026 ECF Min. Entry & Order; Revised Long Form Notice, ECF 187-1, at 3, 7, 8.

---

[6] The proposed notice plan also provides for a second notice to be sent by the Settlement Administrator to "any Class Member who has not endorsed and negotiated his or her Settlement Check or opted-out or objected to the" settlement within 45 days after the distribution of the settlement checks. Settlement Agreement, ECF 181-1, § 3.4(D).

35

Having carefully reviewed Plaintiff's revised notice filing, the Court finds that the proposed notice contains the information required by Rule 23, set forth "in plain, easily understood language." Fed. R. Civ. P. 23(c)(2)(B).

Plaintiff has also submitted the following proposed schedule of events:

1. Within twenty (20) days after entry of the Preliminary Approval Order, Defendants will provide the Settlement Administrator with a Class List, containing, *inter alia*, the full names, social security numbers, last-known addresses, last-known email addresses, and hours worked during the Class Period of each Class Member. Settlement Agreement § 3.6(B).

2. The Settlement Administrator will take reasonable and customary efforts to ensure the Class List is as up-to-date as practicable, including running the Class List through the National Change of Address Database, which provides updated addresses for individuals who filed an address change with the United States Postal Service. *Id.* § 2.6(D).

3. Within thirty (30) days after entry of the Preliminary Approval Order, the Settlement Administrator will both email and mail the Notice. *Id*. § 2.6(C).

4. Undeliverable mailed Notices will be skip traced and re-mailed. *Id*. § 2.6(D).

5. Class Members will have sixty (60) days after the date the Notice is emailed and mailed to opt out or object to the settlement (the "Bar Date"). *Id*. § 1.4.

6. A final Fairness Hearing will be held as soon as convenient for the Court. *Id*. §§ 1.14, 2.5(B), 2.9.

7. Prior to the Fairness Hearing, the Settlement Administrator shall certify the completion of its responsibilities that can be accomplished prior to the Fairness Hearing. *Id*. §§ 2.3(T), 2.9(A).

8. Plaintiff will file a Motion for Final Approval of Settlement in accordance with the schedule the Court sets in the Preliminary Approval Order. *Id*. § 2.9(A).

9. After the final Fairness Hearing, if the Court grants the Motion for Final Approval, the Court will issue a Final Order and Judgment. *Id*. § 2.9(B).

10. Not later than twenty-eight (28) days after the settlement's Effective Date, Class Members' settlement checks will be mailed. *Id*. § 3.3(D).

Mem., ECF 180, at 8–9.

The Court finds that Plaintiff's proposed schedule and manner of notice as reflected in the updated submissions comply with Rule 23 and adequately afford due process. Notice should be ordered as proposed by the parties, including distribution of the long form notice. *See* Revised Long Form Notice, ECF 187-1.

## IV. Appointment of Class Counsel

"When a district court certifies a class, it must appoint class counsel." *Payment Card*, 330 F.R.D. at 58. Under Rule 23(g)(1)(A), the Court "must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class[.]" Fed. R. Civ. P. 23(g)(1)(A). The Court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class[.]" Fed. R. Civ. P. 23(g)(1)(B). "The adequacy of counsel requirement is [ordinarily] satisfied where the class attorneys are experienced in the field or have demonstrated professional competence in other ways, such as by the quality of the briefs and the arguments during the early stages of the case." *Mendez v. MCSS Rest. Corp.*, No. 16-CV-2746 (NGG) (RLM), 2019 WL 2504613, at *13 (E.D.N.Y. June 17, 2019) (quotation marks omitted).

As discussed above, the filings in this case show that Lead Counsel has engaged in significant investigation of the underlying claims, that they are experienced in class action litigation and are knowledgeable in the applicable area of law, and that they have the resources necessary to represent the class. The Court therefore appoints Lead Counsel as class counsel for the purposes of settlement.

## CONCLUSION

For the foregoing reasons, the Court (1) grants Plaintiff's motion for preliminary settlement approval, Mot. for Settlement, ECF 179; (2) preliminarily certifies the settlement class for the purposes of settlement; (3) appoints Plaintiff as the class representative; (4) appoints Wittels McInturff Palikovic as class counsel; (5) approves the notice plan; (6) appoints Arden as settlement administrator and directs the parties to commence the notice plan; (7) enters the Proposed Order; and (8) schedules a final fairness hearing for July 22, 2026 at 10:00 a.m.

**SO ORDERED.**

Dated:  Brooklyn, New York
         March 27, 2026

*Taryn A. Merkl*
TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE