**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

LARRY SWANSON,
Individually and on Behalf of All Others
Similarly Situated,

                              Plaintiff,

              v.

MANHATTAN BEER DISTRIBUTORS,
LLC AND SIMON BERGSON,

                        Defendants.

Case No. 15 Civ. 5383 (ENV) (TAM)

---

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR FINAL APPROVAL OF THE**
**CLASS ACTION SETTLEMENT AND RELATED RELIEF**

---

**WITTELS MCINTURFF PALIKOVIC**
Steven L. Wittels
Tiasha Palikovic
Ethan D. Roman
305 BROADWAY, 7TH FLOOR
NEW YORK, NEW YORK 10007
Telephone: (914) 775-8862
slw@wittelslaw.com
tpalikovic@wittelslaw.com
edr@wittelslaw.com

*Class Counsel for Plaintiff and the Class*

Dated: July 10, 2026

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND.......................................................... 3

    I.   SUMMARY OF THE ACTION, SETTLEMENT NEGOTIATIONS, AND NOTICE........................................................................................................................3

        A.  Factual Allegations and Plaintiffs' Investigation......................................... 3

        B.  Litigation and Settlement Negotiations ....................................................... 5

        C.  The Notice Campaign ................................................................................... 6

    II.  SUMMARY OF SETTLEMENT TERMS........................................................7

        A.  Eligible Settlement Class Members ............................................................ 7

        B.  The Settlement Amount and Allocation Formula......................................... 8

        C.  Distribution of the Settlement Fund.............................................................. 9

        D.  Releases........................................................................................................ 9

    III. CLASS MEMBERS' POSITIVE RESPONSE TO THE SETTLEMENT..........................9

ARGUMENT ................................................................................................................... 10

    I.   LEGAL STANDARD FOR CLASS ACTION SETTLEMENT APPROVAL ................10

    II.  THE SETTLEMENT SATISFIES THE CRITERIA FOR FINAL APPROVAL.............11

        A.  The Settlement Is Procedurally Fair .......................................................... 11

            1.  Rule 23(e)(2)(A)'s Adequacy of Representation Requirement: Both Plaintiff and His Counsel Are Zealous and Qualified Advocates for the Class ... 11

            2.  Rule 23(e)(2)(B)'s Requirement of Arm's Length Negotiations: The Parties' Vigorous Negotiations Were Arm's Length at All Times...................... 13

        B.  The Settlement Is Substantively Fair ......................................................... 14

            1.  Adequate Relief for the Class: The Settlement Amount Is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation.................................................................................................. 14

               a.  Rule 23(e)(2)(C)(i): The Costs, Risks, and Delay of Trial and Appeal Strongly Counsel in Favor of Final Approval.............................................. 15

i

   i. Litigation Through Trial Would Be Complex, Costly, and Long (Grinnell Factor 1) ...................................................................... 15

   ii. Plaintiffs Face Real Risks if the Case Proceeds (Grinnell Factors 4 and 5) ............................................................ 16

   iii. Maintaining the Class Through Trial Would Not Be Simple (Grinnell Factor 6) ...................................................................... 17

  2. Rule 23(e)(2)(C)(ii): Effectiveness of the Proposed Method of Distributing Relief: Direct Payments to Class Members Without a Claims Process Is the Preferred Method and the Parties' Allocation Plan Is Reasonable and Fair ......... 18

  3. The Terms of Any Proposed Award of Attorneys' Fees: Class Counsel's Fee and Expense Award Was Negotiated at Arm's Length and Is Well Within the Norms of this Circuit ........................................................... 19

  4. Equitable Treatment of Class Members Relative to One Another: The Parties' Allocation Plan Correlates with Actual Damages and Is Reasonable ..... 24

  5. The Remaining Grinnell Factors Demonstrate That the Settlement Is Fair, Reasonable, and Adequate ..................................................................... 26

   a. The Reaction of the Class Is Too Early to Gauge and Therefore Neutral (Grinnell Factor 2) ..................................................................... 26

   b. Discovery Is Advanced Enough to Allow the Parties to Resolve the Case Responsibly (Grinnell Factor 3) ............................................. 26

   c. Defendants' Ability to Withstand a Greater Judgment (Grinnell Factor 7).... 28

   d. The Settlement Amount Is Significant, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (Grinnell Factors 8 and 9) .................................................................. 28

III. NOTICE TO THE CLASS SATISFIED RULE 23 AND DUE PROCESS ...................... 29

IV. CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE ...................... 30

V. THE COURT SHOULD GRANT A SERVICE AWARD TO PLAINTIFF SWANSON ........................................................................................................... 30

VI. THE COURT SHOULD GRANT THE NEGOTIATED FEES AND EXPENSES ......... 32

  A. Class Counsel Should Be Adequately Compensated for Their Substantial Efforts and the Tremendous Risk They Took for Class Members' Benefit ............... 33

  B. The Standard for Awarding Attorneys' Fees to Class Counsel ................................ 34

ii

1.  The Goldberger Factors Support Plaintiffs' One-Third Requested Fee Award ... 35

    a.  Class Counsel's Time and Labor ................................................................... 35

    b.  Magnitude and Complexity of the Litigation................................................. 35

    c.  Risks of the Litigation.................................................................................. 36

    d.  Quality of Representation ............................................................................ 37

    e.  The Requested Fee Is Reasonable in Relation to the Settlement................... 38

    f.  Public Policy Considerations ....................................................................... 39

2.  The Lodestar Cross Check Further Supports Class Counsel's Fee and Expense Request ........................................................................................................ 40

CONCLUSION.................................................................................................................. 44

## TABLE OF AUTHORITIES

**Cases**

*Abarza v. Spirit Pharms. LLC*,
23-CV-3637, 2025 WL 1519147 (E.D.N.Y. May 28, 2025)...................................... 24, 28, 29

*Azogue v. 16 for 8 Hosp., LLC*,
13-CV-7899, 2016 WL 4411422 (S.D.N.Y. Aug. 19, 2016).................................................... 20

*Bryant v. Potbelly Sandwich Works, LLC*,
17-CV-7638, 2020 WL 563804 (S.D.N.Y. Feb. 4, 2020) ......................................................... 27

*C.K. through P.K. v. McDonald*,
22-CV-1791, 2026 WL 220984 (E.D.N.Y. Jan. 15, 2026)....................................................... 38

*Caccavale v. Hewlett-Packard Co.*,
20-CV-974, 2025 WL 2960237 (E.D.N.Y. Oct. 20, 2025) ............................................... *passim*

*Caccavale v. Hewlett-Packard Co.*,
20-CV-974, 2025 WL 882220 (E.D.N.Y. Mar. 14, 2025).................................................. 17, 28

*Campbell v. Bukhari Grp. LLC*,
22-CV-2813, 2025 WL 1874485 (E.D.N.Y. July 8, 2025).................................................. 19, 25

*Campos v. Kijakazi*,
21-CV-5143, 2023 WL 8096923 (E.D.N.Y. Nov. 20, 2023) ............................................. 15, 35

*Cap 111 Enters., LLC v. Manhattan Beer Distribs., LLC*,
22-CV-1408, 2025 WL 1212394 (S.D.N.Y. April 24, 2025)..................................................... 43

*Carbone v. Limited Run Games, Inc.*,
24-CV-8861, 2026 WL 686144 (E.D.N.Y. Mar. 11, 2026)............................................... *passim*

*Charles v. Opinion Access Corp.*,
16-CV-6868, 2020 WL 13659084 (E.D.N.Y. May 5, 2020)..................................................... 27

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) ..................................................................................... *passim*

*Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*,
502 F.3d 91 (2d Cir. 2007) ...................................................................................... 12

*Cruz v. Local Union No. 3 of IBEW*,
34 F.3d 1148, 1159 (2d Cir. 1994) .......................................................................... 42

*D'Angelo v. Hunter Bus. Sch., Inc.*,
21-CV-3334, 2023 WL 4838156 (E.D.N.Y. July 28, 2023)..................................................... 38

*Davenport v. Elite Model Mgmt. Corp.*,
   13-CV-1061, 2014 WL 12756756 (S.D.N.Y. May 12, 2014) .................................................. 43

*Delgado v. Ocwen Loan Servicing LLC, et al.*,
   13-CV-4427 (E.D.N.Y. Aug. 20, 2019), ECF No. 429 ......................................................... 43

*Denney v. Deutsche Bank AG*,
   443 F.3d 253 (2d Cir. 2006) .............................................................................................. 12

*Deposit Guar. Nat'l Bank v. Roper*,
   445 U.S. 326 (1980)........................................................................................................... 39

*Diaz v. N.Y. Paving, Inc.*,
   18-CV-4910 (S.D.N.Y. June 17, 2026), ECF No. 495 .......................................................... 43

*Dornberger v. Metro. Life Ins. Co.*,
   203 F.R.D. 118 (S.D.N.Y. 2001) ......................................................................................... 29

*Durand v. Excelsior Care Grp. LLC*,
   19-CV-2810, 2021 WL 5409097 (E.D.N.Y. July 14, 2021)..................................................... 16

*Espinosa v. Perez*,
   18-CV-8855, 2020 WL 2950978 (S.D.N.Y. Jan. 27, 2020) ..................................................... 43

*Everetts v. Pers. Touch Holding Corp.*,
   21-CV-2061, 2025 WL 942800 (E.D.N.Y. Mar. 28, 2025)................................................. 17, 21

*Faroque v. Park W. Exec. Servs.*,
   15-CV-6868, 2020 WL 9812905 (E.D.N.Y. Jan. 29, 2020)..................................................... 27

*Flores v. Mamma Lombardi's of Holbrook, Inc.*,
   104 F. Supp. 3d 290 (E.D.N.Y. 2015) .................................................................................. 16

*Franck v. N.Y. Health Care Inc.*,
   21-CV-4955, 2024 WL 4182601 (S.D.N.Y. Sept. 13, 2024) ................................................... 43

*Frank v. Eastman Kodak Co.*,
   228 F.R.D. 174 (W.D.N.Y. 2005)......................................................................................... 27

*Fresno Cty. Emps' Ret. Ass'n v. Isaacson/Weaver Family Tr.*,
   925 F.3d 63 (2d Cir. 2019) ................................................................................................. 35

*Fujiwara v. Sushi Yasuda Ltd.*,
   58 F. Supp. 3d 424 (S.D.N.Y. 2014) .................................................................................... 26

*Garcia v. Pancho Villa's of Huntington Vill., Inc.*,
   09-CV-486, 2012 WL 5305694 (E.D.N.Y. Oct. 4, 2012) .................................................. 33, 42

*Gascho v. Glob. Fitness Holdings, LLC*,
  822 F.3d 269, 287 (6th Cir 2016) ............................................................................ 34

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000) ............................................................................... *passim*

*Hall v. ProSource Techs., LLC*,
  14-CV-2502, 2016 WL 1555128 (E.D.N.Y. Apr. 11, 2016) ..................................... 30

*Hasemann v. Gerber Prods. Co.*,
  15-CV-2995, 2025 WL 2773748 (E.D.N.Y. Sept. 29, 2025) ....................... 21, 26, 31

*Hernandez v. Merrill Lynch & Co., Inc.*,
  11-CV-8472, 2013 WL 1209563 (S.D.N.Y. Mar. 21, 2013) ..................................... 31

*Hunter v. Blue Ridge Bankshares, Inc.*,
  23-CV-8944, 2025 WL 1649323 (E.D.N.Y. June 11, 2025) ............................... 19, 25

*In re Abrams & Abrams, P.A.*,
  605 F.3d 238, 246 (4th Cir. 2010) ........................................................................... 36

*In re Austrian & German Bank Holocaust Litig.*,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000) ........................................................... 15, 27, 28

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
  05-CV-10240, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) .................................... 19

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
  343 F. Supp. 3d 394 (S.D.N.Y. 2018) ...................................................................... 18

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  02-CV-3400, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ................................ 23, 41

*In re Grana y Montero S.A.A. Sec. Litig.*,
  17-CV-1105, 2021 WL 4173684 (E.D.N.Y. Aug. 13, 2021) ....................... 33, 36, 37

*In re Merrill Lynch Tyco*,
  249 F.R.D. 124 (S.D.N.Y. 2008) ...................................................................... 23, 39

*In re MetLife Demutualization Litig.*,
  689 F. Supp. 2d 297 (E.D.N.Y. 2010) ..................................................................... 33

*In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*,
  330 F.R.D. 11, 30 n.25 (E.D.N.Y. 2019) .............................................. 12, 15, 16, 25

*In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*,
  05-MD-1720, 2019 WL 6888488 (E.D.N.Y. Dec. 16, 2019) ................................... 36

*In re Rite Aid Corp. Sec. Litig.*,
   396 F.3d 294, 306–07 (3d Cir. 2005) ...................................................... 41

*In re Signet Jewelers Ltd. Sec. Litig.*,
   16-CV-6728, 2020 WL 4196468 (S.D.N.Y. July 21, 2020).................................. 39

*In re Tenaris S.A. Sec. Litig.*,
   18-CV-7059, 2024 WL 1719632 (E.D.N.Y. Apr. 22, 2024).................................. 18

*Joel A. v. Giuliani*,
   218 F.3d 132 (2d Cir. 2000) .......................................................... 29

*Karic v. Major Automotive Companies, Inc.*,
   09-CV-5708, 2016 WL 1745037 (E.D.N.Y. Apr. 27, 2016).................................. 31

*Khait v. Whirlpool Corp.*,
   06-CV-6381, 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010).................................. 39

*Kurtz v. Kimberly-Clark Corp.*,
   14-CV-1142, 2026 WL 717909 (E.D.N.Y. Mar. 12, 2026).................................. 22

*Kurtz v. Kimberly-Clark Corp.*,
   142 F.4th 112 (2d Cir. 2025) ................................................ 20, 22, 23

*Little v. Ambit Energy Holdings, LLC*,
   16-CV-8800 (D.N.J. July 2, 2020), ECF No. 94 ...................................... 43

*Lozada v. TaskUs, Inc.*,
   22-CV-1479, 2025 WL 3125848 (S.D.N.Y. Nov. 6, 2025).............................. 14, 20

*Medvedeva v. Assistcare Home Health Servs. LLC*,
   17-CV-5739 (E.D.N.Y. June 1, 2021), ECF No. 151 .................................... 43

*Mendez v. MCSS Rest. Corp.*,
   16-CV-2746, 2019 WL 2504613 (E.D.N.Y. June 14, 2019)........................... *passim*

*Mendoza v. A.P.P.I. Mgmt. Corp.*,
   22-CV-2179, 2023 WL 4471944 (E.D.N.Y. July 11, 2023).................................. 37

*Mirkin v. Viridian Energy, Inc.*,
   15-CV-1057 (D. Conn. June 27, 2018), ECF No. 185 .................................... 43

*Moses v. New York Times Co.*,
   79 F.4th 235 (2d Cir. 2023) ............................................. 10, 11, 20, 26

*Newton v. R.C. Bigelow, Inc.*,
   22-CV-5660, 2025 WL 994721 (E.D.N.Y. Feb. 14, 2025) .................................. 12

*Nichols v. Noom, Inc.*,
   20-CV-3677, 2022 WL 2705354 (S.D.N.Y. July 12, 2022)..................................... 43

*Nyarko v. M&A Restoration & Project*,
   18-CV-5194, 2025 WL 2711427 (E.D.N.Y. Sept. 23, 2025) ...................................... 37, 38, 39

*Pagano v. HN & Sons LLC*,
   22-CV-4897, 2024 WL 4625296 (E.D.N.Y. Oct. 30, 2024) ...................................... 12

*Puglisi v. TD Bank, N.A.*,
   13-CV-637, 2015 WL 4608655 (E.D.N.Y. July 30, 2015)........................................ 31

*Rabinowitz v. Colgate-Palmolive Co.*,
   25-CV-6996, 2026 WL 632506 (E.D.N.Y. Mar. 6, 2026)........................................ 20

*Ramos v. Nikodemo Operating Corp.*,
   16-CV-1052, 2017 WL 11508016 (E.D.N.Y. Aug. 7, 2017) ..................................... 17

*Raniere v. Citigroup, Inc.*,
   11-CV-2448, 2015 WL 5724669 (S.D.N.Y. Sept. 29, 2015) ..................................... 40

*Robertson v. Trinity Packaging Corp.*,
   19-CV-659, 2025 WL 2224586 (W.D.N.Y. Aug. 5, 2025)........................................ 21

*Rosenfeld v. Lynch*,
   18-CV-6720, 2021 WL 508339 (E.D.N.Y. Feb. 11, 2021) ...................................... 20

*Saldana v. Middletown Car-G-Cam Uni Corp.*,
   15-CV-3651 (S.D.N.Y. Jan. 8, 2016), ECF No. 22 ............................................... 43

*Schutter v. Tarena Int'l, Inc.*,
   21-CV-3502, 2024 WL 4118465 (E.D.N.Y. Sept. 9, 2024) ...................................... 16

*Simmons v. Ambit Energy Holdings, LLC*,
   No. 503285/2015, NYSCEF No. 205 (N.Y. Sup. Ct. July 16, 2018) ...................................... 43

*Steiner v. Williams*,
   99-CV-10186, 2001 WL 604035 (S.D.N.Y. May 31, 2001) ...................................... 33

*Torretto v. Donnelley Fin. Sols., Inc.*,
   20-CV-2667, 2023 WL 123201 (S.D.N.Y. Jan. 5, 2023) .................................................. 36, 39

*Toure v. Amerigroup Corp.*,
   10-CV-5391, 2012 WL 3240461 (E.D.N.Y. Aug. 6, 2012) ...................................... 40

*Trostorff v. Mynaric AG*,
   800 F. Supp. 3d 486 (E.D.N.Y. 2025) ............................................................ 20, 32

*Wal-Mart Stores v. Visa U.S.A., Inc.*
396 F.3d 96 (2d Cir. 2005) ........................................................................... 10, 29, 40

*Willix v. Healthfirst, Inc.*,
07-CV-1143, 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011) ....................................... 39

*Ying v. All-Ways Forwarding of N.Y. Inc.*,
20-CV-6242, 2025 WL 968586 (E.D.N.Y. Mar. 31, 2025)............................... *passim*

*Zhu v. Wonrong Trading Corp.*,
18-CV-417, 2024 WL 4351357 (E.D.N.Y. Sept. 30, 2024) ............................... 37, 38

**Other Authorities**

Judges' Class Action Notice and Claims Process Checklist............................................ 9

**Rules**

Fed. R. Civ. P. 23(a)(4)............................................................................................. 12

Fed. R. Civ. P. 23(e) ...................................................................................... *passim*

**Treatises**

William B. Rubenstein, On What A "Private Attorney General" Is—and Why It Matters, 57
Vand. L.Rev. 2129, 2168 [2004] ............................................................................. 34

William B. Rubenstein, Why Enable Litigation?: A Positive Externalities Theory of the Small
Claims Class Action, 74 UMKC L.Rev. 709, 724-25 [2006]................................... 34

**INTRODUCTION**

Plaintiff Larry Swanson and the Class ("Plaintiffs") brought this wage and hour class action against Defendants Manhattan Beer Distributors, LLC and Simon Bergson (collectively, "Manhattan Beer," "Defendants," or the "Company") to recover unlawful deductions and unpaid overtime wages. Following over ten years of extensive investigation and hard-fought litigation, the parties have agreed to a $1,000,000 cash settlement that achieves a significant portion of this lawsuit's goal.

This settlement was no easy achievement. It is the result of voluminous discovery and vigorous litigation, including forceful negotiations overseen by multiple noted class action mediators with specific expertise in wage and hour class actions. As set forth below, this ten-year process resulted in a fair and reasonable settlement for the workers included in the Class ("Class Members" unless noted otherwise).

The settlement provides a commendable result—$1,000,000 in monetary payments to Class Members without any requirement to submit a claim form. The allocation plan fairly and adequately accounts for the value of each Class Member's alleged individual damages, and the settlement represents a reasonable compromise of highly contested claims, especially given the material risks inherent in this action and the inevitable delays of continued litigation.

Defendants contested the case at every turn: they moved for summary judgment twice (successful in part), opposed Plaintiffs' summary judgment and reconsideration of summary judgment motions, and litigated numerous discovery disputes. Resolution required two separate rounds of mediation with multiple respected third-party neutrals. Given the likelihood of Defendants' continued fierce opposition to further discovery and maintenance of the Class, the ongoing delay through trial and appeals, and the inherent risk of unpredictable court rulings, the

settlement represents a certain and guaranteed just result for workers who, without this class action, would have had no realistic path to any recovery.

Class Members agree. Following the Court's March 27, 2026 preliminary approval order (ECF No. 191–191-1), on May 6, 2026, the Court-approved Notice was mailed to all 2,018 Class Members, as well as emailed to those Class Members with available addresses, with a bilingual hotline established to respond to inquiries. *See* Declaration of William Varon, dated July 10, 2026 ("Arden Decl.").[1] As of today, 1,984 Class Members—98% of the Class—have received Notice, Arden Decl. ¶ 9, and notably there are no objections and no opt-outs, *id.* ¶¶ 12–13.

As more fully described herein and in the accompanying declaration of Class Counsel, the settlement is fair and reasonable to the Class, which is defined as all current and former Manhattan Beer employees who were employed as drivers or helpers and who worked for Manhattan Beer in New York State at any time from September 18, 2009, through and including the date of the Court's Preliminary Approval of the Settlement. The Class is further split into the following subclasses: Reimbursements Subclass A is defined as all current and former Manhattan Beer employees who were at any time classified as drivers in Manhattan Beer's records and who worked for Manhattan Beer in New York State at any time between September 18, 2009 and April 15, 2016; Reimbursements Subclass B is defined as all current and former Manhattan Beer employees who were at any time classified as drivers in Manhattan Beer's records and who were hired by and worked for Manhattan Beer in New York State at any time after April 15, 2016 through and including the Court's Preliminary Approval of the Settlement; and the Overtime Pay Subclass is defined as all current and former Manhattan Beer employees who were employed as drivers or helpers and who worked for Manhattan Beer in New York State at any time from September 18,

---

[1] Attached as Exhibit C to the Declaration of Steven L. Wittels, dated July 10, 2026 ("Wittels Decl.").

2

2009, through and including the Court's Preliminary Approval of the Settlement. The overall average payment to Class Members under the Settlement is $303.08. Wittels Decl. ¶ 35.

Accordingly, to effectuate this relief and the other payments agreed upon in the Settlement Agreement, Plaintiffs request that the Court endorse the proposed order enclosed as ECF No. 196-1, which order will have the effect of: (1) granting final certification to the Class under Federal Rule of Civil Procedure 23, for settlement purposes; (2) granting final approval of all terms applicable to the Class set forth in the Settlement Agreement; (3) finding that the court-authorized notice was the best notice practicable under the circumstances; (4) approving the requested service awards; (5) awarding Class Counsel reimbursement of litigation expenses and attorneys' fees; (6) approving the parties' proposed final settlement procedure; (7) incorporating all terms of the Settlement Agreement, including the release; and (8) dismissing this action with prejudice and entering final judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

**I.    SUMMARY OF THE ACTION, SETTLEMENT NEGOTIATIONS, AND NOTICE**

**A.    Factual Allegations and Plaintiffs' Investigation**

Plaintiff Swanson and other Class Members are current and former Manhattan Beer delivery drivers and helpers. Defendants employed 2,018 drivers and helpers in New York during the applicable limitations period. *See* Wittels Decl. ¶ 30. Plaintiffs allege that certain of Defendants' pay practices violated the New York Labor Law ("NYLL"). First Amended Class Action Compl. ("FAC") ¶¶ 67–87, ECF No. 14. Plaintiffs' claims essentially involve two separate sets of factual allegations. The first is that Defendants unlawfully deducted Manhattan Beer drivers' wages for mistakes or other shortages, which was impermissible under the New York Labor Law. FAC ¶¶ 35–39. Plaintiff Swanson was granted summary judgment for unlawful

3

deductions on his individual claims on October 19, 2020. ECF No. 138 at 7–12. The second is that Defendants failed to pay for overtime hours worked by drivers and helpers during lunch breaks.

The overtime claim suffered many ups and downs over the course of this lengthy litigation. The Court initially granted Defendants' motion for summary judgment on Plaintiffs' overtime wage claims back in July of 2018. ECF No. 68. After Plaintiffs' motion for reconsideration, the Court later revived the overtime claims under a much-narrowed basis, allowing these claims to proceed solely under the New York Labor Law but not the FLSA. ECF No. 161.[2] This severely curtailed Plaintiffs' potential overtime damages to a sum based on just minimum wages.

Prior to commencing this action, Class Counsel conducted a thorough investigation into Class Members' claims, their damages, and the likelihood of obtaining class certification. *Id.* ¶ 18. Further, Class Counsel performed extensive background research on Defendants and obtained information on Defendants' compensation policies and practices. *Id.* ¶ 19. Class Counsel also conducted in-depth interviews with Plaintiff Swanson and other former Manhattan Beer employees concerning, *inter alia*, the Company's practice of deducting wages from the drivers for so-called "shortages," as well as the number of hours worked, Defendants' pay practices, and other information pertinent to Plaintiffs' claims. *Id.* Counsel obtained and reviewed various documents from Plaintiff and other Manhattan Beer employees, conducted research and investigation into the pertinent and changing case law and the facts developed in other wage and hour class actions that informed this case, and performed extensive legal research and analysis concerning the particular legal complexities attendant to wage and hour and unlawful deductions claims. *Id.*

---

[2] A detailed procedural history is also contained in the Court's Memorandum and Order granting preliminary approval. ECF No. 191 at 3–7.

4

**B.**     **Litigation and Settlement Negotiations**

Following a thorough investigation, Plaintiff Swanson filed his initial Class and Collective Action Complaint (ECF No. 1) on September 18, 2015, which was later amended on November 2, 2015 (ECF No. 14). The litigation spawned substantial discovery, including: written discovery; the production and analysis of dense and complicated shortage sheets and other electronic records and documents; numerous interviews with Plaintiff Swanson, Class Members, and potential witnesses; two separate depositions of one of Defendants' senior management officers; the deposition of Plaintiff Swanson; and the negotiation of a protective order (ECF No. 26) and ESI Protocol (ECF No. 21). Wittels Decl. ¶ 21. The parties also conducted extensive motion practice, including two summary judgment motions by Defendants (ECF Nos. 39 and 108), Plaintiff Swanson's summary judgment motion (ECF No. 119), and Plaintiffs' motion for reconsideration of the Court's ruling on one of Defendants' summary judgment motions (ECF No. 157), numerous discovery disputes (e.g., ECF Nos. 27–28, 75–76, 86–87, 90–91, 153, 155), including multiple court hearings, and undertook preparations for proceedings on class certification, summary judgment, and trial. Wittels Decl. ¶ 21.

In late 2020, the Court directed the parties to mediation. *See* ECF No. 140. The parties then engaged in extensive pre-mediation damages analysis, including preparing comprehensive reports on liability and damages. This analysis encompassed the review of twelve years of deductions records for the Class. The parties thereafter engaged in an initial pre-mediation session with Robert J. Kheel, a noted mediator with extensive experience in class action litigation on November 30, 2020, followed by two joint mediation sessions on December 28, 2020 and January 11, 2021. The parties separately and together further conferred with Mediator Kheel on multiple occasions for four more months through April 2021 in an attempt to bridge their differences, but despite the Mediator's and parties' earnest attempts, the parties could not reach agreement.

5

Beginning in February 2024, the parties reengaged in further settlement efforts with the assistance of noted class action Mediator Martin F. Scheinman, including a joint virtual mediation session on August 14, 2025 with all counsel led by Mediators Scheinman and Barry Peek. With Mr. Scheinman and Mr. Peek's assistance, the parties reached agreement on most but not all material settlement terms. Following additional months of hard-fought negotiations over many contentious sticking points, the Settlement Agreement was finally executed on November 13, 2025. At all times, the Parties' negotiations have been vigorous, adversarial, and at arm's length. Wittels Decl. ¶ 29.

On November 14, 2025, Plaintiffs filed their unopposed motion for preliminary approval of the Settlement Agreement. ECF Nos. 179–81; Wittels Decl. ¶ 23. The Court held a fairness hearing on February 2, 2026. ECF 191 at 7. At the hearing, the Court directed the parties to make specific corrections to the long-form notice to be provided to Class Members. *Id.* On February 6, 2026, Plaintiffs filed the revised long-form notice reflecting the changes the Court directed. *See* ECF No. 187. On March 27, 2026, the Court adopted the revised long-form notice and issued its preliminary approval opinion and order. ECF Nos. 191–191-1.

## C.    **The Notice Campaign**

Following the Court's preliminary approval opinion and order, the parties and the Settlement Administrator implemented the notice plan outlined in the Settlement Agreement. Wittels Decl. ¶ 37. Specifically, on April 29, 2026, Defendants provided the class list, which included each Class Member's first and last name, title (driver and/or helper), last known mailing address, last known email address, and the tenure that each Class Member worked for Manhattan Beer (used to calculate weeks worked during the Class Period) as that information exists on file with Defendants. *Id.* ¶ 38. Defendants also provided a written certification that the class list represents the "most accurate and up-to-date information" Defendants had for Class Members. *Id.*

6

¶ 39; Settlement Agreement § 2.6(B). During this same time, the parties finalized the notice, the notice's transmittal envelope, the FAQs for Class Members who called the Settlement Administrator's hotline, and the recorded message to greet hotline callers. *Id.* ¶ 40.

On May 6, 2026, the Court-approved Notice was mailed and emailed to the 2,018 individuals in the Class. *Id.* ¶ 42.[3] The overwhelming majority (98%) were successfully delivered. *Id.* While the Settlement Administrator has re-issued 201 notices with updated addresses and/or emails, to date the Settlement Administrator has been unable to reach only 34 Class Members (or 1.7% of the class). *Id.* ¶ 43. In addition, no Class Member submitted an opt-out statement, and no objections have been received by the Settlement Administrator. *Id.* ¶ 44. Based on the date Notice was issued, the deadline for Class Members to object or opt out of the settlement was July 6, 2026. *Id.* ¶ 43. In sum, the notice process approved by Your Honor has been successfully implemented and Class Members have had a very positive response.

## II.    SUMMARY OF SETTLEMENT TERMS

### A.    Eligible Settlement Class Members

Current and former workers who are entitled to receive payments from the Settlement Fund are Manhattan Beer employees who were employed as drivers or helpers and who worked for Manhattan Beer in New York State at any time from September 18, 2009, through and including the Court's Preliminary Approval of the Settlement.[4] ECF No. 181-1 ("Settlement Agreement") §§ 1.22, 1.25. The Class is further split into Subclasses: Reimbursements Subclass A is defined as all current and former Manhattan Beer employees who were at any time classified as drivers in

---

[3] Notice was mailed slightly after the Court's original deadline of April 27 due to difficulties extracting the class list and calculating Class Member allocations; this still allowed Class Members the Court-mandated 60 days to comment or otherwise exclude themselves from the settlement. *Id.* ¶ 41 n.3.

[4] Former Plaintiff Patrick Heady is not included in the Class. *See* ECF No. 85.

Manhattan Beer's records and who worked for Manhattan Beer in New York State at any time between September 18, 2009 and April 15, 2016, *id.* § 1.25; Reimbursements Subclass B is defined as all current and former Manhattan Beer employees who were at any time classified as drivers in Manhattan Beer's records and who were hired by and worked for Manhattan Beer in New York State at any time after April 15, 2016 through and including the Court's Preliminary Approval of the Settlement, *id.*; and the Overtime Pay Subclass is defined as all current and former Manhattan Beer employees who were employed as drivers or helpers and who worked for Manhattan Beer in New York State at any time from September 18, 2009, through and including the Court's Preliminary Approval of the Settlement, *id.* § 1.22.

## B.    The Settlement Amount and Allocation Formula

Under the Settlement Agreement, Defendants will establish a cash fund of $1,000,000 ("Settlement Fund"). Settlement Agreement § 1.16. Each Class Member will then be issued a direct settlement payment without the need to submit a claim. *Id.* § 3.1. Class Members' share of the settlement will be calculated based on their *pro rata* share of all weeks worked by Class Members as reflected in Defendants' payroll records, except for Reimbursements Subclass B Members, who were hired on or after April 15, 2016, who will receive the allocated minimum amount specified in the Settlement Agreement. *Id.* This formula reasonably correlates with Plaintiffs' claims such that Class Members will be fairly compensated in relation to their alleged damages. Wittels Decl. ¶ 12. In addition, each driver will be afforded a minimum allocation of $75, and each helper will receive a minimum of $25 to account for Class Counsel's assessment of the relative strength of the individual Class Member's claims. Settlement Agreement § 3.1(B); Wittels Decl. ¶ 31.

The $1,000,000 Settlement Fund represents 60.6% of the approximately $1.65 million in pecuniary class-wide harm that Class Counsel calculated in connection with their evaluation of potential damages assuming liability was proven. Wittels Decl. ¶ 33. After accounting for

8

deductions for a service award to the named Plaintiff, attorneys' fees and expenses, settlement administration expenses, and a reserve fund to cover administration issues, the average payment for Reimbursements Subclass A is $687.65, $50 for Reimbursements Subclass B, and $30.56 for the Overtime Pay Subclass. *Id.* ¶ 35.

### C.    <u>Distribution of the Settlement Fund</u>

Importantly, Class Members will not be required to submit a claim to receive payment and instead will be mailed checks directly. Settlement Agreement § 3.1, *see also* The Federal Judicial Center's "Judges' Class Action Notice and Claims Process Checklist" ("When the defendant already holds information that would allow at least some claims to be paid automatically, those claims should be paid directly without requiring claim forms."); *id.* (directing courts to question if "a claims process [is] actually necessary"). Following the Court's final approval and the expiration of the appeal deadline (the "Effective Date" defined in Settlement Agreement § 1.11), Defendants will deposit the Settlement Fund in escrow. *Id.* § 3.3. Each Class Member will then receive a check based on the allocation formula. *Id.* § 3.1.

### D.    <u>Releases</u>

Upon the Effective Date, Plaintiff and each Class Member who does not timely opt out will fully release and discharge Defendants from all claims asserted in the action. *Id.* § 4.1. In addition, Plaintiff Swanson and Defendants will fully release potential claims against each other. *Id.* § 4.2.

## III.    CLASS MEMBERS' POSITIVE RESPONSE TO THE SETTLEMENT

As discussed above, the deadline for Class Members to opt out of and/or object to the settlement was July 6, 2026. Wittels Decl. ¶ 44. No Class Members have opted out and none have objected to the settlement. *Id.* This participation rate reflects the Class Members' resoundingly positive reaction to the settlement.

## ARGUMENT

### I.     LEGAL STANDARD FOR CLASS ACTION SETTLEMENT APPROVAL

In the Second Circuit there is a "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005). To grant final approval under Rule 23(e)(2), as amended on December 1, 2018, a court must find the settlement "fair, reasonable, and adequate" after considering the following factors:

(A)   the class representatives and class counsel have adequately represented the class;

(B)   the proposal was negotiated at arm's length;

(C)   the relief provided for the class is adequate, taking into account:

   (i)       the costs, risks, and delay of trial and appeal;

   (ii)      the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

   (iii)     the terms of any proposed award of attorneys' fees, including timing of payment; and

   (iv)     any agreement required to be identified under Rule 23(e)(3);[5] and

(D)   the proposal treats class members equitably relative to each other.

"The first two factors are procedural in nature and the latter two guide the substantive review of a proposed settlement." *Moses v. New York Times Co.*, 79 F.4th 235, 242 (2d Cir. 2023).

Prior to the 2018 amendments, courts in this Circuit reviewed class settlements under the nine factors set out in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).[6] Since

---

[5] Rule 23(e)(2)(C)(iv) also requires courts to consider "any agreement required to be identified by Rule 23(e)(3)," that is, "any agreement made in connection with the proposal." Here, there are no such agreements.

[6] The *Grinnell* factors are: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class; (3) the state of the proceedings and the amount of discovery completed; (4) the risks of

*Footnote continued on next page.*

10

the 2018 amendment, the Second Circuit has clarified that "revised Rule 23(e)(2) does not displace our traditional *Grinnell* factors." *Moses*, 79 F.4th at 243. The *Grinnell* factors "remain a useful framework for considering the substantive fairness of a settlement" *id*., and must be considered in addition to the Rule 23(e) factors "in determining whether to approve the proposed settlement of class action claims," *Caccavale v. Hewlett-Packard Co.*, 20-CV-974, 2025 WL 2960237, at *5 (E.D.N.Y. Oct. 20, 2025) (citing *Moses*).

Thus, courts break the Rule 23(e)(2) final approval factors down into a procedural fairness analysis under Rule 23(e)(2)(A) and (B) and a substantive fairness assessment under Rule 23(e)(2)(C) and (D), with the substantive analysis under Rule 23(e)(2)(C)(i) subsuming *Grinnell* factors 1, 4, 5, and 6. *See, e.g.*, ECF 191 at 9. Because the 2018 amendments do not displace *Grinnell*, the remaining factors are also considered. As set forth below, all factors—whether under Rule 23(e)(2) or *Grinnell*—are clearly satisfied here.

## II.    THE SETTLEMENT SATISFIES THE CRITERIA FOR FINAL APPROVAL

### A.    The Settlement Is Procedurally Fair

> 1.  *Rule 23(e)(2)(A)'s Adequacy of Representation Requirement: Both Plaintiff and His Counsel Are Zealous and Qualified Advocates for the Class*

Rule 23(e)(2)(A) requires a finding that "the class representatives and class counsel have adequately represented the class." This "typically entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Cordes & Co. Fin. Servs. v. A.G.*

---

establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class through trial; (7) the ability of the defendant to withstand greater judgment; (8) the range of reasonableness in light of the best possible recovery; and (9) the range of reasonableness in light of the attendant risks of litigation. *Grinnell*, 495 F.2d at 463. These factors are not to be applied in a rigid, formalistic manner; rather, "[t]he evaluation of a proposed settlement requires an amalgam of delicate balancing, gross approximations and rough justice." *Id.* at 468.

*Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007) (cleaned up); *Caccavale*, 2025 WL 2960237, at *9 (similar).[7] "[O]nly a conflict that goes to the very subject matter of the litigation will defeat . . . representative status." *Newton v. R.C. Bigelow, Inc.*, 22-CV-5660, 2025 WL 994721, at *5 (E.D.N.Y. Feb. 14, 2025).

Here, Plaintiff Swanson is adequate because he "allege[s] a common practice or policy of unlawful labor practices" and there is "no evidence that [his] interests are not closely aligned with those of" the Class. *Mendez v. MCSS Rest. Corp.*, 16-CV-2746, 2019 WL 2504613, at *10 (E.D.N.Y. June 14, 2019). Because of these injuries, Plaintiff has an "interest in vigorously pursuing the claims of the class." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006); *see also Pagano v. HN & Sons LLC*, 22-CV-4897, 2024 WL 4625296, at *2 (E.D.N.Y. Oct. 30, 2024) (plaintiffs who conducted "vigorous prosecution" in wage and hour litigation were adequate).

Moreover, Plaintiff Swanson has contributed significant time and effort to the case. He served as the sole named plaintiff for the overwhelming majority of this ten-year litigation, reviewed and discussed the pleadings, repeatedly conferred with Class Counsel on case progress, litigation strategy, and settlement, prepared and appeared for a deposition, and repeatedly made himself available on many occasions to promptly respond to Class Counsel's questions, requests for documents and information about the claims and litigation. Wittels Decl. ¶ 66. Notably, Plaintiff was also deposed at length after earnestly preparing for his deposition. *Id.* ¶ 67. And, on multiple occasions during the decade this case was pending, Mr. Swanson was called upon to provide documents and other information and data supporting both his own and the Class claims

---

[7] "This adequate representation factor is nearly identical to the Rule 23(a)(4) prerequisite of adequate representation in the class certification context." *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 30 n.25 (E.D.N.Y. 2019). "As a result, the Court looks to Rule 23(a)(4) case law to guide its assessment of this factor." *Id.*

in this litigation. *Id.* Plaintiff also assisted with preliminary settlement negotiations and lent support during two mediation sessions and various follow-up calls. *Id.* His participation in this case was significant and critical. Without the evidence Mr. Swanson provided, it is doubtful Class Counsel could have achieved the result they did.

Class Counsel also meet the adequacy requirement. Wittels McInturff Palikovic has extensive experience in successfully prosecuting wage and hour class actions. Wittels Decl. ¶¶ 5, 7. The attorneys leading this action have served as Class Counsel in multiple wage and hour and consumer protection class actions and have secured hundreds of millions of dollars in recoveries to class members. *Id.* ¶¶ 3, 5. Further, Wittels McInturff Palikovic has dedicated substantial time and resources investigating, prosecuting, and settling Class Members' claims during this extraordinarily long litigation. *Id.* ¶ 9. The work that Class Counsel have performed in this case demonstrates Class Counsel's skill and commitment to representing the interests of the Class. *Id.*

   2.   *Rule 23(e)(2)(B)'s Requirement of Arm's Length Negotiations: The Parties' Vigorous Negotiations Were Arm's Length at All Times*

"Rule 23(e)(2)(B) requires procedural fairness, as evidenced by the fact that 'the proposal was negotiated at arm[']s length.'" *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 693 (S.D.N.Y. 2019). Here, the record clearly reflects that the settlement is the product of arm's length negotiations, reached only after ten years of litigation, including extensive discovery and multiple merits rulings. Indeed, the parties engaged in multiple mediations, with their first in-person mediations between November 2020 and January 2021 ending without an agreement, despite being conducted after extensive preparation and before a noted class action mediator and follow up conferrals between the parties with the mediator through April 2021. Wittels Decl. ¶ 22; *see also* Ex. C at 23:20–23 (Court: "I think the record speaks for itself that this case has been very heavily litigated and hotly contested throughout."). It was only five years later, after resolution of the

13

parties' summary judgment motions (including a reconsideration motion), that the parties were able to reach resolution with the assistance of additional noted class action mediators. *Id*. ¶ 22. This history—including the assistance from multiple class action mediators—clearly supports final approval. *See, e.g.*, *Lozada v. TaskUs, Inc.*, 22-CV-1479, 2025 WL 3125848, at *5 (S.D.N.Y. Nov. 6, 2025) (finding Rule 23(e)(2)(B) satisfied where resolution was reached "only after three years of litigation, including extensive discovery, while Plaintiffs' fully-briefed motion for class certification was pending"); *Mendez*, 2022 WL 3704591, at *5 (finding settlement product of arm's length negotiations where reached after "extensive investigation," "discovery" briefing dispositive motions, and three "lengthy" mediation sessions).

*     *     *

In light of the foregoing, the Court should find the settlement procedurally fair.

### B.    <u>The Settlement Is Substantively Fair</u>

A review of the substantive factors related to the settlement's fairness, adequacy, and reasonableness likewise demonstrates that final approval is warranted. Settlements require parties to balance the claims' merits and the defenses asserted against the attendant risks of continued litigation and delay. Plaintiffs believe they asserted meritorious claims and would prevail if this matter proceeded to trial. Wittels Decl. ¶ 46. Defendants of course do not agree, deny any potential liability, and up to the point of settlement indicated a willingness to continue to intensely litigate. The parties, with the assistance of noted mediators, concluded that the benefits of settlement outweigh the risks and uncertainties of trial preparation including motions in limine, then trial, and likely appellate review. *See id*. ¶ 28.

> 1. *Adequate Relief for the Class: The Settlement Amount Is Substantial, Even in* <u>*Light of the Best Possible Recovery and the Attendant Risks of Litigation*</u>

Rule 23(e)(2)(C) looks to whether relief for the class is adequate, taking into account:

14

(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).

      a.   Rule 23(e)(2)(C)(i): The Costs, Risks, and Delay of Trial and Appeal <u>Strongly Counsel in Favor of Final Approval.</u>

This inquiry overlaps significantly with several *Grinnell* factors, including factors 1 and 4–6 which help guide the Court's application of Rule 23(e)(2)(C)(i). *In re Payment Card*, 330 F.R.D. at 29.

      i.   Litigation Through Trial Would Be Complex, Costly, and Long (*Grinnell* Factor 1)

By reaching a favorable settlement, Plaintiffs seek to avoid significant risk, expense, and further delay and instead ensure a significant recovery for the Class. *See Campos v. Kijakazi*, 21-CV-5143, 2023 WL 8096923, at *6 (E.D.N.Y. Nov. 20, 2023) ("Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them."); *see also In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000) ("Particularly in complex wage and hour litigation like this one . . . protracted litigation is costly and burdensome, and includes motion practice and potential appeals over class certification."). This case is no exception, with over 2,000 Class Members and novel and complex claims under state law.

Continued litigation will only add more expense and delay. While significant discovery has occurred, additional discovery would be required for class certification, summary judgment, and trial. This would consume tremendous time and resources for the parties and the Court. Further, any judgment would likely be appealed, adding further uncertainty and delay. In contrast, the settlement bestows appreciable monetary relief to Class Members and avoids the uncertainty of further motions and a trial. The first *Grinnell* factor thus weighs heavily in favor of approval.

*See, e.g.*, *Durand v. Excelsior Care Grp. LLC*, 19-CV-2810, 2021 WL 5409097, at *4 (E.D.N.Y. July 14, 2021) (finding settlement would avoid "additional expenses and costs, as well as litigation risks . . . whereas the proposed settlement agreement makes monetary relief available . . . in a prompt and efficient manner"); *Caccavale*, 2025 WL 2960237, at *9 (risks of establishing liability, damages, and maintaining class through trial weighed in favor of final approval).

ii.    Plaintiffs Face Real Risks if the Case Proceeds
(*Grinnell* Factors 4 and 5)

Although Plaintiffs believe their case is strong, they are nevertheless cognizant of the risks of proceeding to trial. First, "[l]itigation inherently involves risks." *Schutter v. Tarena Int'l, Inc.*, 21-CV-3502, 2024 WL 4118465, at *11 (E.D.N.Y. Sept. 9, 2024) (quotation omitted). "Indeed, the primary purpose of settlement is to avoid the uncertainty of a trial on the merits." *Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 303 (E.D.N.Y. 2015). In weighing the risks of establishing liability and damages, the court "need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *Caccavale*, 2024 WL 4250337, at *13 (quoting *In re Payment Card*, 330 F.R.D. at 37).

Moreover, class certification is not guaranteed, as Defendants would surely oppose certification if the case proceeds. *In re Payment Card*, 330 F.R.D. at 39–40 (finding risks of maintaining class through trial weighed in favor of settlement where "it is likely that defendants would oppose class certification"). Plaintiffs would have to overcome, among other things, defenses that: (1) that Defendants did not wrongfully deduct all drivers' wages for shortages; and (2) that the Class claims for unpaid overtime lack common support and are not actionable. While Plaintiffs are confident in their prospects, Class Counsel are both experienced and realistic and understand that the resolution of liability issues, the outcome of trial, and the inevitable appeals

16

are inherently uncertain in terms of outcome and duration. The proposed settlement alleviates these uncertainties and therefore weighs in favor of final approval.

iii.   Maintaining the Class Through Trial Would Not Be Simple (*Grinnell* Factor 6)

The risk of obtaining class certification and maintaining it through trial is also present. The Court has not yet certified the Class and to obtain certification Plaintiffs would have to overcome defenses that that individual questions predominate, that the challenged pay practices were not uniform, and that Plaintiffs cannot prove class-wide damages. *See, e.g.*, *Ramos v. Nikodemo Operating Corp.*, 16-CV-1052, 2017 WL 11508016, at *6 (E.D.N.Y. Aug. 7, 2017) ("Defendants would likely argue that there are individualized questions as to the job duties and payment structure for the Class Members that makes trial and judgment on a class-wide basis . . . impractical"); *see also Everetts v. Pers. Touch Holding Corp.*, 21-CV-2061, 2025 WL 942800, at *4 (E.D.N.Y. Mar. 28, 2025) (similar).

While Class Counsel are dedicated class action litigators, certification would occur only after further extensive litigation, including additional discovery, expert discovery, and extensive briefing. *See, e.g.*, *Caccavale v. Hewlett-Packard Co.*, 20-CV-974, 2025 WL 882220, at *7 (E.D.N.Y. Mar. 14, 2025) (noting expense and time associated with further discovery, including expert discovery, and litigating summary judgment and class certification). Further, Defendants would likely challenge those determinations after the close of discovery. *See, e.g.*, *Ying v. All-Ways Forwarding of N.Y. Inc.*, 20-CV-6242, 2025 WL 968586, at *7 (E.D.N.Y. Mar. 31, 2025) ("Counsel also understands that maintaining a class through trial would not be simple because there is a significant risk that the Court may decertify the Class upon experienced defense counsel's motion practice." "[T]he parties' understanding of the complexity, risks, and expenses of

17

continued litigation and their desire to avoid those risks and costs support [] approval of the settlement." *Id.* This factor strongly favors approval.

> 2. *Rule 23(e)(2)(C)(ii): Effectiveness of the Proposed Method of Distributing Relief: Direct Payments to Class Members Without a Claims Process Is the <u>Preferred Method and the Parties' Allocation Plan Is Reasonable and Fair</u>*

Rule 23(e)(2)(C)(ii) requires courts to examine "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Here, Plaintiffs have secured the best possible distribution method: Class Members will be issued checks directly without the need to file a claim, which is without question the optimal method. Settlement Agreement §§ 2.6(F), 3.3(D). Moreover, the Settlement Administrator will send a reminder notice to "[a]ny Class Member who has not cashed their check within 45 days of the date of mailing of the checks." Settlement Agreement § 3.4(D).

Furthermore, should the Court grant final approval, the Settlement Agreement provides a reminder mechanism to ensure that all settlement checks issued are in fact cashed by Class Members. Settlement Agreement § 3.4(D) (within 45 days after mailing or distributing settlement checks the Settlement Administrator will send a Reminder Notice to "any Class Member who has not endorsed and negotiated his or her Settlement Check'"").

Regarding the method of dividing settlement funds among the Class, while the allocation plan must be fair and adequate, it "need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *Ying*, 2025 WL 968586, at *8 (quoting *In re Tenaris S.A. Sec. Litig.*, 18-CV-7059, 2024 WL 1719632, at *9 (E.D.N.Y. Apr. 22, 2024)). "[C]ourts look primarily to the opinion of counsel in determining the reasonableness and fairness of a plan of allocation." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 414 (S.D.N.Y. 2018), *aff'd sub nom. In re Facebook, Inc.*, 822 F. App'x 40 (2d Cir. 2020) (cleaned up). However, an allocation formula "need not be perfect." *Carbone v. Limited Run*

18

*Games, Inc.*, 24-CV-8861, 2026 WL 686144, at *6 (E.D.N.Y. Mar. 11, 2026); *see also In re EVCI Career Colleges Holding Corp. Sec. Litig.*, 05-CV-10240, 2007 WL 2230177, at *11 (S.D.N.Y. July 27, 2007) (collecting cases).

Here, the payment allocation plan tracks Plaintiffs' damages model and yields a fair result. Further, each Class Member's allocation is based on their *pro rata* share of the settlement fund. Such allocation plans are routinely accepted. *See Campbell v. Bukhari Grp. LLC*, 22-CV-2813, 2025 WL 1874485, at *9 (E.D.N.Y. July 8, 2025) (finding that a *pro rata* allocation treats "class members equitably . . . and has the benefit of simplicity") (quotation omitted); *Hunter v. Blue Ridge Bankshares, Inc.*, 23-CV-8944, 2025 WL 1649323, at *17 (E.D.N.Y. June 11, 2025) (*pro rata* distribution found "fair and rational, as it treats class members equitably while taking into account variations in the magnitude of their injuries"). The Settlement Agreement's allocation plan more than meets the standard for final approval.

  3. *The Terms of Any Proposed Award of Attorneys' Fees: Class Counsel's Fee and Expense Award Was Negotiated at Arm's Length and Is Well Within the <u>Norms of this Circuit</u>*

Rule 23(e)(2)(C)(iii) requires courts to examine "the terms of any proposed award of attorneys' fees, including timing of payment." The Settlement Agreement authorizes, and Defendants do not oppose, the Court's approval of attorneys' fees of one-third of the $1,000,000 Settlement Fund (i.e. $333,333), plus litigation expenses (i.e., $4,559.19). Settlement Agreement § 1.19. Class Counsel's fee request and their request for reimbursement of expenses represent fair compensation for the years of contingency work Class Counsel devoted to this matter. Wittels Decl. ¶ 48. Class Counsel have undertaken substantial risk and committed significant resources to the more than ten years of investigation, litigation, and settlement of this case, bringing viable claims and aggressively pursuing the facts necessary to prevail on the merits in the event the parties were unable to agree on a resolution. *Id*. ¶ 45.

The Second Circuit has recently provided guidance on how to implement Rule 23(e)(2)(C)(iii) following the 2018 amendments. Specifically, "when reviewing the substantive fairness of a proposed settlement," the district court should "'review both the terms of the settlement and any fee award encompassed in a settlement agreement' in tandem." *Kurtz v. Kimberly-Clark Corp.*, 142 F.4th 112, 118 (2d Cir. 2025) (quoting *Moses v. New York Times Co.*, 79 F.4th 235, 244 (2d Cir. 2023)). Doing so requires the court "to compare the proportion of the total recovery going to attorney's fees with the proportion going to the class, and to consider whether that comparison reveals a sufficient imbalance as to cast doubt on the settlement's fairness." *Id.* at 118–19 (citing Fed. R. Civ. P. 23(e)).

Here, the settlement is a common fund settlement, where attorneys' fees awards of one-third plus costs have consistently been found reasonable.[8, 9] And as common fund cases post-*Kurtz* make clear, *Kurtz* changes little about the ultimate assessment of attorneys' fees in common fund settlements, which, under both Rule 23(e)(2)(C)(iii) and Rule 23(h), assess the reasonableness of fees from the perspective of the Class. *Caccavale*, 2025 WL 2960237, at *11 ("*Kurtz* did not change the approach taken to assess the fairness of a class settlement in common fund cases."); *see also Lozada*, 2025 WL 3125848, at *7 (finding award of 30% or 35.3% of overall settlement

---

[8] *See, e.g.*, *Carbone*, 2026 WL 686144, at *6 ("Courts in this Circuit routinely find that requests for attorney's fees totaling one-third of the settlement fund are well within the range of reasonableness." (quoting *Rosenfeld v. Lynch*, 18-CV-6720, 2021 WL 508339, at *6 (E.D.N.Y. Feb. 11, 2021))); *see also Rabinowitz v. Colgate-Palmolive Co.*, 25-CV-6996, 2026 WL 632506, at *10 (E.D.N.Y. Mar. 6, 2026) (fees of one-third of the settlement fund "is reasonable and 'consistent with the norms of class litigation in this circuit'" (quoting *Azogue v. 16 for 8 Hosp., LLC*, 13-CV-7899, 2016 WL 4411422, at *6 (S.D.N.Y. Aug. 19, 2016))); *Ying*, 2025 WL 968586, at *13 (approving one-third fee in wage and hour class action).

[9] "Courts typically allow counsel to recover their reasonable out-of-pocket expenses" separately from fees paid as a percentage of the common fund. *Ying*, 2025 WL 968586, at *17 (awarding costs separately, and in addition to, percentage-of-recovery attorneys' fees award of one-third of common fund); *see also Trostorff v. Mynaric AG*, 800 F. Supp. 3d 486, 493 (E.D.N.Y. 2025) (awarding nearly $15,000 in reasonable costs and further noting class members were notified costs may have been up to $20,000 with no objections). Here, Class Members were informed the service award could be as much as $15,000 with no objections. Wittels Decl. ¶ 68.

20

value (depending on whether expenses are included in calculation) "reasonable in relation to the benefits to be realized by the Class" for purposes of Rule 23(e)(2)(C)(iii)); *Robertson v. Trinity Packaging Corp.*, 19-CV-659, 2025 WL 2224586, at \*13 (W.D.N.Y. Aug. 5, 2025) (finding one-third "baseline" fee reasonable under Rule 23(e)(2)(C)(iii)). Plaintiffs submit that this request for an award of one-third of the Settlement Fund is appropriate in this case.

However, even if the Court were to instead adopt the *Kurtz* framework and compare the proportion of fees against the proportion going to the Class, the comparison would not yield an imbalance suggestive of unfairness. The Settlement Fund will be distributed to Class members automatically, without any claim submission. This feature was specifically negotiated to ensure maximum participation and to maximize actual disbursements. Wittels Decl. ¶ 31. The speculative gap between the hypothetical maximum and actual recovery that led the *Kurtz* court to prefer the actual recovery benchmark simply does not exist here. A comparison to the funds disbursed under the Settlement Agreement hypothetical maximum effectively yields a 1:2 ratio of attorneys' fees to class recovery, whether or not litigation expenses are included. *See* Wittels Decl. ¶ 54. Thus, under any benchmark, this fee request is well within the range courts in this Circuit have approved.

Indeed, courts in this Circuit approve fee ratios far less favorable to the class than this one, including ratios where fees ***outweigh*** a class's recovery. *See, e.g.*, *Everetts*, 2025 WL 942800, at \*3–4 (approving roughly $300,000 in attorneys' fees where class received, *inter alia*, $98,284.88 in monetary relief and $50,000 in credit monitoring services); *Hasemann v. Gerber Prods. Co.*, 15-CV-2995, 2025 WL 2773748, at \*5, \*11 (E.D.N.Y. Sept. 29, 2025) (concluding settlement agreement provisions providing 19:1 ratio of fees to actual recovery "do not preclude the Court from approving settlement," and ultimately approving fee ratio of approximately 12.5 to 1, plus an additional $1,219,564.45 in costs and expenses.).

Indeed, on remand from the Second Circuit, the *Kurtz* district court earlier this year awarded fees at a 3:1 ratio—which is a ratio nearly six times less favorable to the class than the one presented here—for reasons that apply with equal force here. The *Kurtz* court found that "Class Counsel ha[ve] expended significant time, resources, and effort in successfully representing the Class" over the course of "eight years" of "intensive litigation, entailing substantial discovery, motion practice, two appeals to the Second Circuit, class certification, and settlement negotiations," and that "going to trial would have been a substantial litigation risk." *Kurtz v. Kimberly-Clark Corp.*, 14-CV-1142, 2026 WL 717909, at \*9 (E.D.N.Y. Mar. 12, 2026) (quotations omitted). The same is true here: Class Counsel expended significant time, resources, and effort over ten years of hard-fought litigation—including written discovery; production and analysis of dense and complicated shortage sheets and other electronic records and documents; numerous interviews with Plaintiff Swanson, Class Members, and potential witnesses; two separate depositions of one of Defendants' senior management employees; the deposition of Plaintiff Swanson; two summary judgment motions by Defendants (ECF Nos. 39 and 108); Plaintiff's summary judgment motion (ECF No. 119); Plaintiffs' motion for reconsideration of the Court's ruling on one of Defendants' summary judgment motions (ECF No. 157); numerous discovery disputes (e.g., ECF Nos. 27–28, 75–76, 86–87, 90–91, 153, 155); multiple court hearings, and preparations for proceedings on class certification, summary judgment, and trial. Wittels Decl. ¶ 21. And as in *Kurtz*, going to trial would have been a substantial litigation risk. The fees requested here therefore "reflect [] extensive work," *Kurtz*, 2026 WL 717909 at \*9, Class Counsel have not "undervalued the class's claims in exchange for a higher attorney's fee, or in order to collect a fee more quickly," and this case is not a case where "unscrupulous counsel" seeks to "quickly settle a class's claims to cut a check," *Kurtz*, 142 F.4th at 118 (cleaned up).

22

Class Counsel's fee and expense request is also consistent with public policy, because if the "important public policy [of remedial statutes] is to be carried out, the courts should award fees which will adequately compensate Class Counsel for the value of their efforts, taking into account the enormous risks they undertook." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 02-CV-3400, 2010 WL 4537550, at *29 (S.D.N.Y. Nov. 8, 2010); *see also In re Merrill Lynch Tyco*, 249 F.R.D. 124, 141–42 (S.D.N.Y. 2008) ("In order to attract well qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so, it is necessary to provide appropriate financial incentives." (cleaned up)). The Second Circuit made sure to reaffirm these longstanding principles in *Kurtz*, observing that:

> Alongside providing a class with compensation, class action lawsuits fulfill significant deterrence functions in service of the public. When properly earned, substantial payments to attorneys can help serve that function. As a result, even settlements that grant a substantial proportion of monetary recovery to class counsel may ultimately be fair upon consideration of all the requisite factors.

142 F.4th at 121. Here, the Settlement provides substantial benefits to the public by compensating workers and deterring other employers, who will be on notice that they will suffer unwanted cost, inconvenience, bad publicity, and legal exposure if they fail to properly compensate workers. The Settlement serves the salutary purpose class actions are meant to promote, and approval of Class Counsel's fee and expense request incentivizes them and other counsel to continue to take up these cases.

Moreover, the fee and expense request is reasonable in relation to the result achieved. Wittels Decl. ¶ 52. Here, Defendants have agreed to settle this case for a substantial amount: $1,000,000. This sum is more than 60% of the approximately $1.65 million in pecuniary harm Class Counsel calculated in its damages model. *Id.* To be sure, there is a ***possibility*** that at trial the Class might obtain a higher amount, or that Plaintiffs would achieve multiples in the form of

23

liquidated damages and interest. *Id.* ¶ 53. But those outcomes are not guaranteed and would require Class Members to wait additional years for payment from this matter, assuming such payments were even ordered and collected from Defendants. *Id.*

Given the attendant risks of litigation, the settlement provides substantial value to each Class Member. Every Class Member will receive a payment correlated to their out-of-pocket damages, a decidedly potential realistic recovery at trial. Weighing the benefits of the settlement against the risks of proceeding with litigation, the settlement is reasonable. *See Abarza v. Spirit Pharms. LLC*, 23-CV-3637, 2025 WL 1519147, at *13 (E.D.N.Y. May 28, 2025) ("This settlement amount reflects a balance of the strength of the Class Members' claims versus the risk of trial and thus appears to fall within the "range of reasonableness" set out in the eighth and ninth *Grinnell* factors.") (citation omitted). If this case went to trial, the Class would seek approximately $1.65 million in recovery for pecuniary harm. Wittels Decl. ¶ 52. Under the Settlement, the Class receives $1 million—more than 60% of the pecuniary harm suffered. In other words, Class Members are receiving a significant percentage of what they could have hoped to receive at trial—but without years of additional delay and with certainty of payment. As discussed further in the fee and expense application below, the requested sum is fully supported by the substantial results achieved for Class Members, and the risks borne by Class Counsel to achieve these results. *Id.*

### 4. *Equitable Treatment of Class Members Relative to One Another: The Parties' Allocation Plan Correlates with Actual Damages and Is Reasonable*

Rule 23(e)(2)(D) requires the Court to consider whether "the proposal treats class members equitably relative to each other." Consideration of this factor "could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment.

24

Here, the settlement treats Class Members fairly in relation to their actual damages. As discussed *supra*, the allocation formula bases each Class Member's payment on their *pro rata* share of the fund. Courts routinely find that such *pro rata* allocations are "fair," *Campbell*, 2025 WL 1874485, at *9, and "equitabl[e]," *Hunter*, 2025 WL 1649323, at *17. Moreover, the payment allocation plan correlates with Plaintiffs' damages model. *See* Wittels Decl. ¶ 33.

Further, all Class Members will be bound by the same release. Settlement Agreement § 4.1(A). This release does not affect the apportionment of relief among Class Members, demonstrating equity. *In re Payment Card*, 330 F.R.D. at 47.

Finally, as discussed further *infra* pp. 30–32, the requested service award of $15,000 is well within the range of typical awards in this district and is fully justified by Plaintiff Swanson's extraordinary contributions to this litigation. *See* Wittels Decl. ¶ 70. Plaintiff Swanson did not merely lend his name to this action, he agreed to shoulder the responsibilities of a sole representative plaintiff before initiating this action. He served as the sole named plaintiff for the overwhelming majority of this ten-year litigation, reviewed and discussed the pleadings, repeatedly conferred with Class Counsel on case progress, litigation strategy, and settlement, prepared and appeared for a deposition, and repeatedly made himself available on many occasions to promptly respond to Class Counsel's questions, requests for documents and information about the claims and litigation. *Id.* at ¶ 66. At all times, Plaintiff encouraged Class Counsel to obtain the best possible result for Class Members. *Id.* In short, Plaintiff Swanson's participation in this case was significant and critical. *Id.* Without the evidence Mr. Swanson provided, it is doubtful Class Counsel could have achieved the result they did.

The $15,000 requested service award, in Class Counsel's assessment, represents the floor and not the ceiling of what Mr. Swanson deserves. *Id.* ¶ 65. It is also well within the range of

25

awards approved in similar cases. *See, e.g.*, *Hasemann*, 2025 WL 2773748, at \*12 (case law supports service awards of between \$2,500 and \$85,000); *Ying*, 2025 WL 968586, at \*13 (approving \$30,000 service award as "reasonable and within the range of awards granted in this district"). Moreover, the award application was subject to arm's length negotiations, was facilitated by an experienced mediator, and was disclosed to the Class. Wittels Decl. ¶ 68. Rule 23(e)(2)(D) requires that class members be treated *equitably*, not identically, *Moses v. New York Times Co.*, 79 F.4th 235, 245 (2d Cir. 2023), and the requested service award here does not undermine that principle.

5. *The Remaining* Grinnell *Factors Demonstrate That the Settlement Is Fair, Reasonable, and Adequate*

a. The Reaction of the Class Is Too Early to Gauge and Therefore Neutral (*Grinnell* Factor 2)

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Carbone*, 2026 WL 686144, at \*8 (quotations omitted). This factor overlaps with Rule 23(e)(4), on the opportunity for exclusion, and Rule 23(e)(5), on the opportunity to object, both of which the settlement provides. No Class Member has objected and only one has opted out. Arden Decl. ¶¶ 12–13.

b. Discovery Is Advanced Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3)

Although litigating to trial would likely require many hundreds (if not thousands) of hours of additional discovery, the parties have completed more than enough discovery to recommend settlement. The question raised by this factor is whether the parties "had an adequate appreciation of the merits of the case before negotiating a resolution." *Ying*, 2025 WL 968586, at \*10 (quoting *Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 433 (S.D.N.Y. 2014)). "The pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a

26

settlement but [are] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *Mendez*, 2022 WL 3704591, at *7 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 176) (cleaned up).

The discovery taken here easily meets this standard. As set forth at preliminary approval, Class Counsel undertook in-depth pre-litigation investigation, and the parties litigated extensively, engaging in substantial discovery, including written discovery, depositions, and extensive analysis of Defendants' records. Wittels Decl. ¶¶ 18–19. The parties also undertook significant pre- and post-lawsuit legal research and analysis concerning Plaintiffs' claims, and conducted extensive motion practice, including multiple court hearings and two rounds of summary judgment briefing. *Id.* As a result of this and vigorous settlement discussions during multiple mediation sessions overseen by two sets of experienced class action mediators, Class Counsel were able to evaluate the strengths and weaknesses of Class Members' claims against Plaintiffs' damages model.

Based on this record, the parties were well-equipped to make the compromises necessary to resolve this litigation. *Charles v. Opinion Access Corp.*, 16-CV-6868, 2020 WL 13659084, at *2 (E.D.N.Y. May 5, 2020) (finding pre-mediation "targeted discovery" sufficient to allow parties to resolve case responsibly; *Faroque v. Park W. Exec. Servs.*, 15-CV-6868, 2020 WL 9812905, at *4 (E.D.N.Y. Jan. 29, 2020) (same); *Bryant v. Potbelly Sandwich Works, LLC*, 17-CV-7638, 2020 WL 563804, at *3 (S.D.N.Y. Feb. 4, 2020) (approving settlement after similar discovery in wage and hour litigation where "parties were well-positioned to evaluate the strength of their respective positions and potential damages recoverable") *see also Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 185 (W.D.N.Y. 2005) (approving settlement "in relatively early stages of discovery" where parties had exchanged extensive information pertaining to defendants' time and pay practices and where counsel's negotiations had "been in no way collusive").

c.    Defendants' Ability to Withstand a Greater Judgment (*Grinnell* Factor 7)

This factor is negligible as Class Counsel identified no issue with Defendants' financial condition as Defendant Manhattan Beer is highly successful and one of the largest beer and beverage distributors in the country. As summarized by Judge Merkl at the preliminary approval hearing, the parties are "settling the claim[s] based upon the valuation that [Class Counsel] actually ascribed the damages that [they] find provable as opposed to giving [Defendants] a big discount because of inability to pay." Ex. C at 40:23–41:3. Thus, this factor is neutral.

d.    The Settlement Amount Is Significant, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9)

"Determining whether a settlement amount is reasonable does not necessarily involve a mathematical equation yielding a particularized sum." *Abarza*, 2025 WL 1519147, at *12 (quotation omitted); *see also In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178) (similar). Rather, "it considers a range of reasonableness which recognizes the uncertainties of law and fact and the accompanying costs of litigation." *Abarza*, 2025 WL 1519147, at *12. "There is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell*, 495 F.2d at 455 n.2; *see also Caccavale*, 2025 WL 882220, at *14 ("A proposed settlement that is only the fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.") (quotation omitted). Here, Defendants have agreed to settle this case for a substantial amount: $1,000,000. This sum is more than 60% of the approximately $1.65 million in pecuniary harm Class Counsel calculated in its damages model. Wittels Decl. ¶ 52. To be sure, there is a ***possibility*** that at trial the Class might obtain a higher amount, or that Plaintiffs would achieve multiples in the form of liquidated damages and interest. *Id.* ¶ 53. But those outcomes are not guaranteed and would require Class Members to wait

28

additional years for payment from this matter, assuming such payments were even ordered and collected from Defendants. *Id.*

Given the attendant risks of litigation, the settlement provides substantial value to each Class Member. Every Class Member will receive a payment correlated to their out-of-pocket damages, a decidedly potential realistic recovery at trial. Weighing the benefits of the settlement against the risks of proceeding with litigation, the settlement is reasonable. *See Abarza*, 2025 WL 1519147, at *13 ("This settlement amount reflects a balance of the strength of the Class Members' claims versus the risk of trial and thus appears to fall within the "range of reasonableness" set out in the eighth and ninth *Grinnell* factors.") (citation omitted).").

*     *     *

In sum, the relevant factors strongly favor approval. Because the settlement "on its face, is fair, adequate, and reasonable, and not the product of collusion," the Court should grant final approval. *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000).

## III.    NOTICE TO THE CLASS SATISFIED RULE 23 AND DUE PROCESS

In addition to having personal jurisdiction over Plaintiff, the Court also has personal jurisdiction over all members of the Class because they received the requisite notice and due process. *Wal-Mart Stores v. Visa U.S.A.*, 396 F.3d 96, 114 (2d Cir. 2005); *Dornberger v. Metro. Life Ins. Co.*, 203 F.R.D. 118 (S.D.N.Y. 2001) ("Because adequate notice has been disseminated and all potential Class Members have been given the opportunity to opt out of this class action, the Court has personal jurisdiction over all Class Members.").

As described *supra* and in Plaintiffs' preliminary approval brief, ECF No. 180 at 8–9, 31–33, the notice program was designed to provide the best notice practicable and to incorporate best practices for class action notices. It was reasonably calculated to apprise Class Members of the

material terms of the settlement; the deadline to submit a claim form if required; the deadline to exclude themselves from the Class or to object; the fairness hearing date; and the settlement hotline. *Id*. The Notice constituted sufficient notice to all persons entitled to notice and satisfied all applicable requirements of law, including Rule 23 and constitutional due process. *Id*. Indeed, Notice reached more than 98% of Class Members. *See* Arden Decl. ¶ 9.

## IV.    CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE

On March 27, 2026, the Court preliminarily certified the Class for settlement purposes. ECF No. 191-1 ¶ 5. There have been no changes to alter the propriety of class certification for settlement purposes. Wittels Decl. ¶ 25 n.2. Thus, this Court should affirm its determinations in the Preliminary Approval Order and certify the Class under Rule 23.

## V.    THE COURT SHOULD GRANT A SERVICE AWARD TO PLAINTIFF SWANSON

In recognition of the services he rendered on behalf of Class Members, Plaintiffs seek a service award for Larry Swanson in the amount of $15,000. Wittels Decl. ¶ 65; Settlement Agreement §§ 1.19, 3.5(E). This amount reflects his contributions to the litigation. *Id*. "Courts regularly grant requests for service awards in class actions 'to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs.'" *Ying*, 2025 WL 968586, at *13 (approving $30k service award in wage and hour class action) (quoting *Hall v. ProSource Techs., LLC*, 14-CV-2502, 2016 WL 1555128, at *9 (E.D.N.Y. Apr. 11, 2016)). Such payments are "particularly appropriate in the employment context" because such persons have "for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers." *Id.*

30

The requested award is intended to compensate Plaintiff Swanson for his valuable efforts in assisting Class Counsel in developing the theories of the case, including obtaining evidence used to convince Defendants of their risks in continuing to defend against liability. Wittels Decl. ¶ 66. As detailed in the Wittels Declaration, before joining this action Plaintiff Swanson agreed to shoulder the responsibilities of serving as the sole named plaintiff and anticipated class representative, served as the sole named plaintiff for the overwhelming majority of this ten-year litigation, reviewed and discussed the pleadings, repeatedly conferred with Class Counsel on case progress, litigation strategy, and settlement, prepared and appeared for a deposition, and repeatedly made himself available on many occasions to promptly respond to Class Counsel's questions, requests for documents and information about the claims and litigation. *Id.* at ¶¶ 66–67. At all times, Plaintiff Swanson encouraged Class Counsel to obtain the best possible result for Class Members. *Id*. ¶ 66.

The requested service award is thus well-deserved and comfortably within the range of awards approved in similar cases. *See, e.g.*, *Hasemann*, 2025 WL 2773748, at *12 (case law supports service awards of between $2,500 and $85,000); *Karic v. Major Automotive Companies, Inc.*, 09-CV-5708, 2016 WL 1745037, at *8 (E.D.N.Y. Apr. 27, 2016) (collecting cases and approving service awards of $20,000 each to seven plaintiffs); *Puglisi v. TD Bank, N.A.*, 13-CV-637, 2015 WL 4608655, at *1 (E.D.N.Y. July 30, 2015) (approving service awards of $15,000 each for two named plaintiffs and $10,000 each for three others in a wage and hour action); *Hernandez v. Merrill Lynch & Co., Inc.*, 11-CV-8472, 2013 WL 1209563, at *10 (S.D.N.Y. Mar. 21, 2013) (approving service awards of $15,000 and $13,000 to class representatives in wage and hour action).[10] Moreover, the award request was subject to arm's length negotiations and disclosed

---

[10] Notably, the *Puglisi* and *Hernandez* courts awarded service awards in the $10,000 to $15,000 range more

*Footnote continued on next page.*

31

to the Class. Wittels Decl. ¶ 68. No Class Member has objected to the proposed service award. *Id.* In sum, the service awards are reasonable in light of both the law and the facts.

**VI.    THE COURT SHOULD GRANT THE NEGOTIATED FEES AND EXPENSES**

Class Counsel bore tremendous financial risk in litigating this action for ten years and secured a substantial settlement that benefits the Class and the public at large. Wittels Decl. ¶ 45. As compensation for their efforts Class Counsel requests the customary one-third legal fee and reimbursement of $333,333, plus $4,559.19 in expenses advanced for the Class's benefit. *Id.* ¶¶ 47.  Moreover, as discussed further discussed below, the requested attorneys' fee is barely 10% of the actual lodestar time expended over ten years to achieve this result.

It is well settled that a one-third fee is well within the percentage range that courts in the Second Circuit have awarded in similarly complex wage and hour litigations. *See supra* at pp. 24–25. Moreover, the fee and expense request was subject to arm's length negotiations, facilitated in a mediation before the Court, and disclosed to the Class. Wittels Decl. ¶ 49. No Class Member has objected to the proposed fee and expense request. *Id*. Class Counsel's request for reimbursement of its litigation costs and expenses is also standard: "[c]ourts typically allow counsel to recover their reasonable out-of-pocket expenses" separately from fees paid as a percentage of the common fund. *Ying*, 2025 WL 968586, at *17 (awarding costs separately, and in addition to, percentage-of-recovery attorneys' fees award of one-third of common fund); *Trostorff v. Mynaric AG*, 800 F. Supp. 3d 486, 493 (E.D.N.Y. 2025) (awarding nearly $15,000 in reasonable costs and further noting class members were notified costs may have been up to

---

than a decade ago in cases that resolved significantly more quickly than the many years the Service Award Recipients were engaged here: approximately 18 months from filing to preliminary approval motion in *Puglisi*, and 12 months in *Hernandez*. Wittels Decl. ¶ 69.

$20,000 with no objections). Here, Notice informed Class Members that Class Counsel may seek expenses of up to $15,000; there were no objections. Wittels Decl. ¶ 64.

Considering these facts, as well as the authorities cited below, Class Counsel's fee and expense reimbursement request is reasonable, and well in line with prior awards in this District, the risks incurred and the results obtained, and the terms sophisticated clients negotiate in contingent fee representation both in class actions and other complex matters.

### A.   Class Counsel Should Be Adequately Compensated for Their Substantial Efforts and the Tremendous Risk They Took for Class Members' Benefit

Awarding Class Counsel fees "serves the salutary purpose of encouraging counsel to pursue meritorious claims on behalf of a class of individuals who could not afford to litigate their individual claims." *Steiner v. Williams*, 99-CV-10186, 2001 WL 604035, at *1 (S.D.N.Y. May 31, 2001); *see also Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 09-CV-486, 2012 WL 5305694, at *8 (E.D.N.Y. Oct. 4, 2012) ("[Class action] contingency fees provide access to counsel for individuals who would otherwise have difficulty obtaining representation . . . and transfer a significant portion of the risk of loss to the attorneys taking a case. Access to the court would be difficult to achieve without compensating attorneys for that risk."). It is also well settled that contingency fee awards should be greater than the fees in non-contingency cases, as "[n]o one expects a lawyer whose compensation is contingent on success of his services to charge, when successful, as little as he would charge a client who in advance has agreed to pay for his services, regardless of success." *Grinnell*, 495 F.2d at 470; *In re Grana y Montero S.A.A. Sec. Litig.*, 17-CV-1105, 2021 WL 4173684, at *17 (E.D.N.Y. Aug. 13, 2021) (same).

Moreover, courts recognize that fee awards discourage "future misconduct of a similar nature." *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 356 (E.D.N.Y. 2010). "[C]lass actions . . . have value to society . . . both as deterrents to unlawful behavior . . . and as private

33

law enforcement regimes that free public sector resources. If we are to encourage these positive societal effects, class counsel must be adequately compensated." *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 287 (6th Cir. 2016); *see also* William B. Rubenstein, *On What A "Private Attorney General" Is—and Why It Matters*, 57 VAND. L. REV. 2129, 2168 (2004) ("[Class Counsel's] clients are not just the class members, but the public and the class members; their goal is not just compensation, but deterrence and compensation."); William B. Rubenstein, *Why Enable Litigation?: A Positive Externalities Theory of the Small Claims Class Action*, 74 UMKC L. REV. 709, 724–25 (2006) ("[T]he class action has the structural consequence of dividing law enforcement among public agencies and private attorneys general and of shifting a significant amount of that enforcement to the private sector.").

This is especially important here. Class Members faced profound barriers to pursuing their rights individually, including because of the prohibitive economics of individual litigation. Without Class Counsel's willingness to risk significant resources and years of effort on this case, it is extremely unlikely that a meaningful number of Class Members would have received any compensation at all. Wittels Decl. ¶ 50. The litigation and subsequent Settlement have achieved precisely what class actions are designed to achieve: real recovery for workers who had no other realistic avenue for relief. Wittels Decl. ¶ 51.

## B.    The Standard for Awarding Attorneys' Fees to Class Counsel

In common fund settlements such as this one, courts prefer the percentage-of-the-fund method for awarding fees. *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000). This method is "the trend in the Second Circuit," as it "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution." *Carbone*, 2026 WL 686144, at *10 (quotation omitted). Class Counsel are entitled to "a reasonable fee—set by the court—to be taken from the fund." *Goldberger*, 209 F.3d 50; *see*

34

*also Fresno Cnty. Emps.' Ret. Ass'n v. Isaacson/Weaver Family Tr.*, 925 F.3d 63, 68 (2d Cir. 2019)

("The common-fund doctrine is . . . rooted in the courts' 'historic power of equity to permit' a

person who secures a fund for the benefit of others to collect a fee directly from the fund." (citation

omitted)).

### 1. *The Goldberger Factors Support Plaintiffs' One-Third Requested Fee Award*

The requested one-third fee is reasonable when considering the following *Goldberger*

guidelines: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the

litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in

relation to the settlement; and (6) public policy considerations. 209 F.3d at 50. In fact, all

*Goldberger* factors weigh in favor of granting Class Counsel's one-third fee request here.

#### a. Class Counsel's Time and Labor

Class Counsel devoted nearly 3,000 hours throughout the more than ten years they spent

investigating, prosecuting, and settling this case. Wittels Decl. ¶ 55. There can be no doubt that

the extensive amount of time and labor expended by Class Counsel in this action weighs heavily

in favor of the requested fee award. Moreover, Class Counsel are certain to spend additional time

aiding in the further administration of the settlement, *id.* ¶ 58, and the requested fee award is also

meant to compensate them for that time. *See, e.g.*, *Mendez*, 2022 WL 3704591, at *10 ("The fact

that Class Counsel's fee award will not only compensate them for time and effort already

expended, but for time that they will be required to spend administering the settlement going

forward also supports their fee request.") (quotation omitted).

#### b. Magnitude and Complexity of the Litigation

The magnitude and complexity of this decade-long lawsuit strongly weighs in favor of

approval. "[M]ost class actions are inherently complex and settlement avoids the costs, delays and

multitude of other problems associated with them." *Campos*, 2023 WL 8096923, at *6. Here, the

35

magnitude and complexity of this multi-year lawsuit is evident in almost every aspect of the case: the number of employees affected, the breadth of Class Counsel's investigation, the amount of computerized data and discovery involved, the extensive pleading and motion practice, and the hard-fought and lengthy settlement process.

c.   Risks of the Litigation

"The risk of the litigation is often cited as the first, and most important, *Goldberger* factor." *In re Grana*, 2021 WL 4173684, at *17 (quotation omitted). Generally, "little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation." *Id.* (quotation omitted); *see also In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, 05-MD-1720, 2019 WL 6888488, at *13 (E.D.N.Y. Dec. 16, 2019) (noting "contingency fee risks (i.e. the specific risk that lead counsel will not be compensated at all for its work")) (cleaned up).

"The Second Circuit has recognized that risk is inherently associated with a case undertaken on a contingent fee basis." *In re Grana*, 2021 WL 4173684, at *17; *see also Torretto v. Donnelley Fin. Sols., Inc.*, 20-CV-2667, 2023 WL 123201, at *5 (S.D.N.Y. Jan. 5, 2023) (noting "the inherent risk involved in prosecuting a class action litigation on an entirely contingent basis"). Here, Class Counsel took this case on 100% contingency and zealously prosecuted it for ten years without payment. The requested fee is in line with the substantial risks incurred, particularly considering that contingency work is entitled to greater compensation than non-contingency work; indeed, "Plaintiffs may find it difficult to obtain representation if attorneys know their reward for accepting a contingency case is merely payment at the same rate they could obtain risk-free for hourly work, while their downside is no payment whatsoever." *In re Abrams & Abrams, P.A.*, 605 F.3d 238, 246 (4th Cir. 2010).

36

For all the reasons detailed *supra* in connection with *Grinnell* factors four and five, success here was far from assured—and Class Counsel's willingness to invest ten years of effort on a purely contingent basis, with no guarantee of any payment, reflects precisely the kind of risk that warrants full compensation. *See In re Grana*, 2021 WL 4173684, at *17 (fact that counsel "undertook this litigation on a contingent basis and have received no payment for their work during the roughly three years that the case has remained pending . . . counsels in favor of approving the requested [one-third] fee"); *Mendez*, 2022 WL 3704591, at *9 (fact that "Class Counsel risked time and effort and advanced costs and expenses, with no ultimate guarantee of compensation" weighed in favor of a one-third fee).

d.  Quality of Representation

When evaluating the quality of representation, "courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Mendoza v. A.P.P.I. Mgmt. Corp.*, 22-CV-2179, 2023 WL 4471944, at *5 (E.D.N.Y. July 11, 2023). Where Class Counsel has "substantial experience in wage and hour class and collective actions," like here, such experience "further supports approval of attorneys' fees." *Zhu v. Wonrong Trading Corp.*, 18-CV-417, 2024 WL 4351357, at *14 (E.D.N.Y. Sept. 30, 2024); *see also Nyarko v. M&A Restoration & Project*, 18-CV-5194, 2025 WL 2711427, at *2 (E.D.N.Y. Sept. 23, 2025) (granting fee award in light of counsel's substantial experience prosecuting wage and hour class actions); *Mendez*, 2022 WL 3704591, at *9 (same).

Class Counsel have decades of experience successfully prosecuting wage and hour class actions and have secured hundreds of millions of dollars in recoveries for class members, as set forth *supra* on p. 13 in connection with Rule 23(e)(2)(A)'s adequacy of representation requirement. The quality of Class Counsel's representation is demonstrated not just by the result achieved, but by how it was achieved. Over ten years, Class Counsel defeated in part Defendants' motions for

summary judgment, secured partial reversal of summary judgment on a motion for reconsideration, prevailed on partial summary judgment on Plaintiff Swanson's deduction-related claims, and ultimately secured a $1,000,000 settlement—more than 60% of the calculated pecuniary loss to Class Members. Each of these milestones was hard-fought: Defendants vigorously contested the facts and law at every stage, securing significant victories of their own, most notably defeating Plaintiffs' Fair Labor Standards Act claims. That Class Counsel ultimately delivered a settlement that provides for substantial distributions without the need for trial reflects the quality of their representation—quality that courts in this Circuit have consistently recognized warrants a one-third fee. *See D'Angelo v. Hunter Bus. Sch., Inc.*, 21-CV-3334, 2023 WL 4838156, at *11–12 (E.D.N.Y. July 28, 2023); *see also Zhu*, 2024 WL 4351357, at *14–15 (same); *Nyarko*, 2025 WL 2711427, at *2 (same).

e.    The Requested Fee Is Reasonable in Relation to the Settlement

The $333,333 requested fee—which is one-third of the $1,000,000 Settlement Fund—is also reasonable in light of the work performed and the results obtained, *see C.K. through P.K. v. McDonald*, 22-CV-1791, 2026 WL 220984, at *17 (E.D.N.Y. Jan. 15, 2026) (approving $5.3 million for attorneys' fees, costs, and expenses in part due to settlement being "the result of hard work by Class Counsel to secure significant, meaningful, and immediate relief for the Classes"), and falls within the range of common fund awards in the Second Circuit. Class Counsel's fee and expense request was also subject to arm's length negotiations between the parties, emerged from the same arm's length mediation process overseen by Your Honor, and was disclosed to the Class. Wittels Decl. ¶ 49. As the requested fee is clearly in line with the Second Circuit's case law, this factor weighs in favor of granting the requested fees. *See supra* pp. 23–24 for further discussion of the results achieved.

38

f.   Public Policy Considerations

Awarding one third of the cash fund is also consistent with public policy, because the important "public policy [of remedial statutes] also favors approval of attorneys' fees" given the NYLL is "designed to protect the wages of workers." *Nyarko*, 2025 WL 2711427, at *3; *see also In re Signet Jewelers Ltd. Sec. Litig.*, 16-CV-6728, 2020 WL 4196468, at *21 (S.D.N.Y. July 21, 2020) (to carry out "important public policy . . . the courts should award fees which will adequately compensate Class Counsel for the value of their efforts, taking into account the enormous risks they undertook."); *Torretto*, 2023 WL 123201, at *5 ("Public policy also favors an award of the agreed-upon fees, as it will incentivize dedicated and experienced counsel to bring these types of cases."); *In re Merrill Lynch Tyco*, 249 F.R.D. 124, 141–42 (S.D.N.Y. 2008) ("In order to attract well qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so, it is necessary to provide appropriate financial incentives." (cleaned up)). This is especially true where, like here, there are no public enforcement actions.

Moreover, NYLL is a remedial statute designed to protect workers' wages. *See Nyarko*, 2025 WL 2711427, at *3. "Adequate compensation for attorneys who protect wage and hour rights furthers the remedial purposes of the . . . NYLL." *Willix v. Healthfirst, Inc.*, 07-CV-1143, 2011 WL 754862, at *6 (E.D.N.Y. Feb. 18, 2011) (collecting cases). "If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk." *Id.* (citing *Goldberger*, 209 F.3d at 51). Consequently, courts have recognized that fee awards in wage and hour cases serve the dual purposes of encouraging "private attorneys general" to seek redress for violations and discouraging future misconduct of a similar nature. *Id.* (citing *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338–39 (1980)); *see also Khait v. Whirlpool Corp.*, 06-CV-6381, 2010 WL 2025106, at *8 (E.D.N.Y. Jan. 20, 2010) (same); *Toure v. Amerigroup Corp.*, 10-CV-

39

5391, 2012 WL 3240461, at *5 (E.D.N.Y. Aug. 6, 2012) (same); *Raniere v. Citigroup, Inc.*, 11-CV-2448, 2015 WL 5724669, at *9 (S.D.N.Y. Sept. 29, 2015) ("Approval [of one-third fee] forwards the public interest in deterring exploitation of workers by encouraging lawyers to represent their rights.").

The settlement also provides substantial benefits to the public as well as Class Members. It serves public policy as embodied in the wage and hour laws by compensating workers, holding Defendants accountable for their allegedly unlawful conduct, and deterring future similar conduct. This deterrent effect, moreover, will carry over to other market participants, who will be on notice that they will suffer unwanted cost, inconvenience, bad publicity, and legal exposure if they engage in similar conduct.

Moreover, the requested fee does not bestow any windfall on Class Counsel (*see* the lodestar cross check discussion below) and represents reasonable remuneration for devoting nearly 3,000 hours and advancing nearly $5,000 in costs during the more than ten years they devoted to this case. Wittels Decl. ¶ 60. Therefore, any concern about preventing windfalls is not at issue here. Simply put, Class Counsel's requested compensation is reasonable, as this amount falls within the range of fees normally approved within this Circuit. In sum, the *Goldberger* factors support the requested fee.

2.  *The Lodestar Cross Check Further Supports Class Counsel's Fee and Expense Request*

The lodestar cross-check not only confirms the reasonableness of the requested fee, but shows that Class Counsel are seeking less than the fair-market value of their services. Courts can award fees in common fund cases under either the lodestar or the 'percentage of the fund' method. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116–17 (2d Cir. 2005). However, "[t]he trend in this Circuit is toward the percentage method" while using "a lodestar cross-check."

40

*Carbone*, 2026 WL 686144, at \*8. Lodestar has been criticized for creating "a temptation for lawyers to run up the number of hours for which they could be paid" which "created an unanticipated disincentive to early settlement," and for "resurrect[ing] the ghost of Ebenezer Scrooge, compelling district courts to engage in a gimlet-eyed review of line-item fee audits," which produced an "inevitable waste of judicial resources." *Goldberger*, 209 F.3d at 48–49.

Accordingly, "where used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court." *Id.* at 50. "Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case," *id.*, or the court "may rely on summaries submitted by the attorneys and need not review actual billing records," *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306–07 (3d Cir. 2005).

Under the lodestar cross-check, the number of hours each attorney worked is multiplied by that attorney's hourly rate, and the resulting figure may be enhanced by a multiplier to "reflect litigation risk, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors." *In re Flag Telecom*, 2010 WL 4537550, at \*23; *see also Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002) (explaining that the lodestar "is typically enhanced by a multiplier to reflect consideration of a number of factors, including the contingent nature of success and the quality of the attorney's work") (citation omitted).

Here, Class Counsel's lodestar is $2,355,198.00, which reflects nearly 3,000 hours of work across more than ten years of investigation, litigation, and settlement. Wittels Decl. ¶ 55.[11] As detailed above, the scope of that work was extraordinary: Class Counsel conducted a months-long pre-litigation investigation before filing; engaged in substantial discovery, including: written

---

[11] Class Counsel used judgment to write-off hours for current and former attorneys from these calculations. Wittels Decl. ¶ 55 n.4. Class Counsel exercised billing discretion to further lower the lodestar from the original figure provided at preliminary approval. Class Counsel's lodestar is now $2,355,198.00, which still results in a substantial negative multiplier of 0.14. *Id.* ¶ 55 n.5.

41

discovery; the production and analysis of dense and complicated shortage sheets and other electronic records and documents; numerous interviews with Plaintiff Swanson, Class Members, and potential witnesses; two separate depositions of one of Defendants' senior management employees; and the deposition of Plaintiff Swanson. Class Counsel also conducted extensive motion practice, including two summary judgment motions by Defendants, Plaintiff Swanson's summary judgment motion, Plaintiffs' motion for reconsideration of the Court's ruling on one of Defendants' summary judgment motions, numerous discovery disputes, multiple court hearings, and undertook preparations for proceedings on class certification, summary judgment, and trial— all on a purely contingent basis with no payment for ten years. Class Counsel will also have significant post-final approval work responding to Class Member inquiries and overseeing distribution. *See, e.g.*, *Garcia v. Pancho Villa's of Huntington Vill., Inc*, 09-CV-486, 2012 WL 5305694, at *8 (E.D.N.Y. Oct. 4, 2012) (finding fee request supported by fact that additional work would be required to administer settlement).

Critically, Class Counsel are ***not*** seeking a multiplier, even though the ten years of pure contingency work, the complexity of the litigation, and the excellence of the result would plainly have warranted one. Instead, comparing the lodestar to the requested fee yields a ***negative multiplier*** of 0.14—an 86% discount on the fair-market value of their legal services, after Class Counsel voluntarily reduced their lodestar through the exercise of billing judgment. Wittels Decl. ¶¶ 59. In other words, Class Counsel are asking to be paid far less than their time is worth.

Class Counsel's hourly rates are set forth in the detailed table in the Wittels Declaration, ¶ 55, and are in line with the "rates prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation," *Cruz v. Local Union No. 3 of IBEW*, 34 F.3d 1148, 1159 (2d Cir. 1994). They are also reasonable when analyzed under the "*Johnson*

factors," *see Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 190 (2d Cir. 2008), though "separate findings as to each factor are unnecessary." *Espinosa v. Perez*, 18-CV-8855, 2020 WL 2950978, at *1 (S.D.N.Y. Jan. 27, 2020).

Here, the most salient factors support the requested rates: this action was undertaken on pure contingency by highly specialized attorneys who devoted nearly 3,000 hours to it, precluding other work. Wittels Decl. ¶¶ 55, 62–63. The case presented novel and complex legal questions that the broader wage and hour bar has not found attractive, likely because they are highly complex, much more risky than typical wage and hour cases, and require multi-year efforts. *Id.* ¶ 61. Moreover, Class Counsel's rates have been repeatedly approved by courts in this District and beyond. *Id.* ¶ 57.[12]

In sum, the lodestar cross-check further supports the reasonableness of the requested fee.

---

[12] *See, e.g.*, *Diaz v. N.Y. Paving, Inc.*, 18-CV-4910 (S.D.N.Y. June 17, 2026), ECF No. 495 (approving Class Counsel's 2026 rates in wage and hour class action); *Cap 111 Enters., LLC v. Manhattan Beer Distribs., LLC*, 22-CV-1408, 2025 WL 1212394, at *2 (S.D.N.Y. April 24, 2025) (approving Class Counsel's 2025 rates in business-to-business consumer class action); *Franck v. N.Y. Health Care Inc.*, 21-CV-4955, 2024 WL 4182601, at *3 (S.D.N.Y. Sept. 13, 2024) (approving Class Counsel's 2024 rates in wage and hour class action); *Nichols v. Noom, Inc.*, 20-CV-3677, 2022 WL 2705354, at *11 (S.D.N.Y. July 12, 2022) (approving Class Counsel's 2022 rates in consumer class action); *Medvedeva v. Assistcare Home Health Servs. LLC*, 17-CV-5739 (E.D.N.Y. June 1, 2021), ECF No. 151 (approving Class Counsel's 2021 rates in wage and hour class action); *Little v. Ambit Energy Holdings, LLC*, 16-CV-8800 (D.N.J. July 2, 2020), ECF No. 94 (approving Class Counsel's 2020 rates in consumer class action); *Delgado v. Ocwen Loan Servicing LLC, et al.*, 13-CV-4427 (E.D.N.Y. Aug. 20, 2019), ECF No. 429 (approving Class Counsel's 2019 rates in consumer class action); *Simmons v. Ambit Energy Holdings, LLC*, No. 503285/2015, NYSCEF No. 205 (N.Y. Sup. Ct. July 16, 2018) (approving Class Counsel's 2018 rates in consumer class action); *Mirkin v. Viridian Energy, Inc.*, 15-CV-1057 (D. Conn. June 27, 2018), ECF No. 185 (same); *Rasulev v. Good Care Agency, Inc.*, 16-CV-1993 (E.D.N.Y. July 28, 2017), ECF No. 70 (approving Class Counsel's 2017 rates in wage and hour class action); *Saldana v. Middletown Car-G-Cam Uni Corp.*, 15-CV-3651 (S.D.N.Y. Jan. 8, 2016), ECF No. 22 (approving Class Counsel's 2015 rates in wage and hour class action); *Davenport v. Elite Model Mgmt. Corp.*, 13-CV-1061, 2014 WL 12756756, at *11 (S.D.N.Y. May 12, 2014) (approving Class Counsel's 2014 rates in wage and hour class action).

**CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion and endorse the proposed Order and Final Judgment as enclosed in ECF No. 196-1, which order will have the effect of: (1) granting final certification to the Class under Federal Rule of Civil Procedure 23, for settlement purposes; (2) granting final approval of all terms applicable to the Class set forth in the Settlement Agreement; (3) finding that the Court-authorized notice was the best notice practicable under the circumstances; (4) approving the requested service award to Plaintiff Larry Swanson; (5) awarding Class Counsel attorneys' fees and reimbursement of litigation expenses; (6) approving the parties' proposed final settlement procedure; (7) incorporating all terms of the Settlement Agreement, including the release; and (8) dismissing this action with prejudice and entering final judgment.

Dated: July 10, 2026
New York, New York

Respectfully submitted,

 /s/ Steven L. Wittels
Steven L. Wittels
Tiasha Palikovic
Ethan D. Roman
**WITTELS MCINTURFF PALIKOVIC**
305 BROADWAY, 7TH FLOOR
NEW YORK, NEW YORK 10007
Telephone: (914) 775-8862
slw@wittelslaw.com
tpalikovic@wittelslaw.com
edr@wittelslaw.com

*Class Counsel for Plaintiff and the Class*

44

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the following documents in support of Plaintiffs' Motion for Final Approval of the Class Action Settlement and Related Relief was served via ECF this 10th day of July 2026 upon the below-listed counsel of record:

1. Plaintiffs' Notice of Motion for Final Approval of the Class Action Settlement and Related Relief, dated July 10, 2026;

2. Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Final Approval of the Class Action Settlement and Related Relief, dated July 10, 2026;

3. Declaration of Lead Class Counsel Steven L. Wittels, dated July 10, 2026, with Exhibits; and

4. Proposed Order and Final Judgment (Exhibit A to Declaration of Steven L. Wittels).

Allen B. Roberts
Christopher Coyne
Jeffrey Ruzal
Epstein Becker Green, P.C.
875 Third Avenue
New York, NY 10022
(212) 351-4500
aroberts@ebglaw.com
ccoyne@ebglaw.com
jruzal@ebglaw.com

*Attorneys for Defendants*

/s/ Steven L. Wittels
Steven L. Wittels

45