**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| LARRY SWANSON,<br>Individually and on Behalf of All Others<br>Similarly Situated,<br><br>                              Plaintiff,<br><br>        v.<br><br>MANHATTAN BEER DISTRIBUTORS,<br>LLC AND SIMON BERGSON,<br><br>                        Defendants. | Case No. 15 Civ. 5383 (ENV) (RLM) |

**DECLARATION OF STEVEN L. WITTELS IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF THE**
**CLASS ACTION SETTLEMENT AND RELATED RELIEF**

Steven L. Wittels, an attorney duly admitted to practice before the Eastern District of New York, declares as follows under penalty of perjury and pursuant to 28 U.S.C. § 1746:

1. I am a partner at Wittels McInturff Palikovic ("WMP"). WMP serves as Class Counsel for Plaintiff and the Class. Based on my active participation in and supervision of all material aspects of the prosecution and settlement of this wage and hour class action against Defendants, I have personal knowledge of the matters set forth herein.

2. I make this Declaration in support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Related Relief (the "Final Approval Motion") and to authenticate the attached exhibits referenced therein. Through Plaintiffs' Final Approval Motion, Plaintiffs seek an Order: (1) granting final certification to the Class under Federal Rule of Civil Procedure 23 for purposes of judgment on the parties' settlement proposal; (2) granting final approval of all terms applicable to the Class set forth in the Settlement Agreement and Release (the "Settlement Agreement," ECF No. 181-1); (3) finding that the Court-authorized Notice was the best notice practicable under the circumstances; (4) approving the Service Award to Plaintiff Swanson; (5) awarding Class Counsel attorneys' fees and reimbursement of litigation expenses; (6) approving the parties' proposed final settlement procedure; (7) incorporating all terms of the Settlement Agreement, including the releases; and (8) dismissing this action with prejudice and entering final judgment.[1]

## I.    Class Counsel's Background

3. I have been a member of the New York and New Jersey bars since 1985 and 1984, respectively, and am in good standing in both. I graduated from Berkeley Law School (The University of California) in 1984 with Highest Honors on my class action thesis. I have practiced

---

[1] The proposed Order granting Final Approval and dismissing the action is attached hereto as **Exhibit A**.

primarily in employment and consumer fraud class action litigation for most of my career. I opened my own firm in 1997, and since then, have served as class counsel in dozens of class actions around the United States, generating hundreds of millions of dollars in recoveries to class members.

4.        I was one of the lead trial lawyers in the *Novartis* gender discrimination class action tried before the Honorable Colleen McMahon in the Southern District of New York in May 2010, which led to a $250 million punitive damages verdict, the largest ever obtained in a discrimination class action. *Velez v. Novartis Pharmaceuticals Corporation*, 04-CV-9194. In November 2010, Judge McMahon approved a class-wide settlement of the case for more than 5,600 female sales representatives.

5.        My law firm, WMP, has deep experience handling class actions, including prosecuting and settling wage and hour class actions. For example, in 2017, WMP obtained a $1,500,000 settlement on behalf of home care workers who brought claims for overtime and other wages, which settlement was approved by Magistrate Judge Cheryl L. Pollak in the Eastern District of New York. In 2020, WMP was appointed as Plaintiffs' Coordinating Counsel in a class-wide arbitration involving more than forty home care agencies. In 2021, WMP obtained a wage and hour settlement of $6,500,000 on behalf of home care workers, which was approved by Magistrate Judge Lois Bloom in the Eastern District of New York. In 2024, WMP obtained a $3,500,000 settlement on behalf of home care workers, which was approved by Judge Gregory Woods in the Southern District of New York. And in 2026, WMP obtained a $19,250,000 settlement on behalf of asphalt and concrete pavers who brought claims for unpaid overtime, which was approved by Magistrate Judge Gabriel W. Gorenstein in the Southern District of New York.

6.     Last year, Judge Cathy Seibel of the Southern District of New York approved a $5,750,000 class action settlement in a consumer fraud case brought by WMP against Manhattan Beer, including approving WMP's request for service awards and class counsel's fees.

7.     The lawyers assigned to this matter are well-versed in wage and hour law and in class action law and are highly qualified to represent the interests of the Class. Lawyers at WMP have represented classes of employees and consumers in dozens of class action lawsuits in state and federal courts throughout the United States, including many in this District. Their backgrounds and qualifications are detailed in WMP's firm resume.

8.     Attached to this Declaration as **Exhibit B** is a true and correct version of WMP's 2026 Firm Resume.

9.     Further, the team of attorneys and staff litigating this matter on behalf of Class Members dedicated substantial time and resources investigating, prosecuting, and settling Class Members' claims during this extraordinarily long litigation. The work that Class Counsel have performed in this case demonstrates our skill and commitment to representing the interests of the Class.

## II.     <u>Introduction to the Proposed Settlement and Relief Sought by this Motion</u>

10.     The proposed settlement resolves the claims brought by Plaintiff Larry Swanson and the Class ("Plaintiffs") against Defendants Manhattan Beer Distributors, LLC and Simon Bergson (collectively, "Manhattan Beer" or "Defendants").

11.     Plaintiff's Final Approval Motion is unopposed and seeks final approval of the settlement of this wage and hour class action—a settlement achieved after ten years of extensive investigation, hard-fought litigation, and forceful negotiations overseen by third-party mediators. The final terms of the parties' settlement were memorialized in the Settlement Agreement that is

now being submitted for the Court's final approval. At all times, the parties' negotiations have been vigorous, adversarial, and conducted at arm's length.

12.    The proposed settlement provides a monetary benefit to the Class in the form of a $1,000,000.00 Settlement Fund. Each Class Member is entitled to a *pro rata* share of all weeks worked by Class Members as reflected in Defendants' records. This formula reasonably correlates with Plaintiffs' claims such that Class Members will be fairly compensated in relation to their alleged damages.

13.    The $1,000,000 Settlement Fund represents approximately 60.6% of the approximately $1.65 million in pecuniary class-wide harm that Class Counsel calculated in connection with their evaluation of potential damages assuming liability was proven.

14.    The average payment for Reimbursements Subclass A is $687.65, $50 for Reimbursements Subclass B, and $30.56 for the Overtime Pay Subclass. The overall average payment to Class Members is $303.08.

15.    In arriving at this favorable result, Plaintiffs recognized the expense and length of a trial and potential appellate process, and further acknowledged that ultimate success on the merits remains uncertain. In addition, Defendants would be likely to continue to contest the merits and propriety of class certification throughout future proceedings.

16.    Pursuant to the terms of the Settlement Agreement, Plaintiffs now move for entry of the proposed final approval order which accomplishes the following:

(i)     Grants final certification to the Class under Federal Rule of Civil Procedure 23 for purposes of judgment on the parties' settlement proposal;

(ii)    Grants final approval of all terms applicable to the Class set forth in the Settlement Agreement;

(iii)   Finds that the Court-authorized Notice was the best notice practicable under the circumstances;

(iv)    Approves the Service Award to Plaintiff Swanson pursuant to the Settlement Agreement;

(v)     Awards Class Counsel attorneys' fees and reimbursement of litigation expenses;

(vi)    Approves the parties' proposed final settlement procedure;

(vii)   Incorporates all terms of the Settlement Agreement, including the releases; and

(viii)  Dismisses this action with prejudice and enters final judgment.

17.     In the paragraphs that follow, I describe the factual background and procedural history of this lawsuit and summarize the terms of the proposed Settlement Agreement. Accompanying this Declaration is Plaintiffs' supporting Memorandum of Law that demonstrates why, under governing law, this Court should grant final approval of the settlement and grant the related relief requested in Plaintiffs' Motion.

**III.    Thorough Investigation of Class Members' Claims**

18.     Prior to commencing this action, Class Counsel conducted a thorough investigation into the merits of the potential claims and defenses. Our investigation and legal research focused on the underlying merits of Class Members' claims, their damages, and the likelihood of obtaining class certification.

19.     Our team also conducted in-depth background research on Manhattan Beer, obtaining information on Manhattan Beer's compensation policies and practices. We conducted in-depth interviews with Plaintiff and other Manhattan Beer workers regarding Defendants' payment policies and practices, the number of hours drivers and helpers worked, deductions taken out of Defendants' workers' wages, and other information pertinent to Plaintiff's claims in this action. In addition, we obtained and reviewed documents and communications from Plaintiff and others, and conducted research and investigation into the pertinent and changing case law and the

6

facts developed in other wage and hour class actions that informed this case. Our team also performed extensive legal research and analysis concerning the particular legal complexities attendant to wage and hour and unlawful deductions claims.

## IV.   Plaintiffs' Complaint, Discovery, and the Parties' Settlement Negotiations

20.     On September 18, 2015, Plaintiff filed the Class and Collective Action Complaint against Defendants in the United States District Court for the Eastern District of New York (ECF No. 1), which was later amended on November 2, 2015 (ECF No. 14).

21.     The litigation spawned substantial discovery, including: written discovery; the production and analysis of dense and complicated shortage sheets and other electronic records and documents; numerous interviews with Plaintiff, Class Members, and potential witnesses; two separate depositions of one of Defendants' senior management employees; the deposition of Plaintiff; and the negotiation of a protective order (ECF No. 26) and ESI Protocol (ECF No. 21). The parties also conducted extensive motion practice, including two summary judgment motions by Defendants (ECF Nos. 39 and 108), Plaintiff's summary judgment motion (ECF No. 119), and Plaintiff's motion for reconsideration of the Court's ruling on one of Defendants' summary judgment motions (ECF No. 157), numerous discovery disputes (e.g., ECF Nos. 27–28, 75–76, 86–87, 90–91, 153, 155), including multiple court hearings, and undertook preparations for proceedings on class certification, summary judgment, and trial.

22.     In late 2020, the Court directed the parties to mediation. The parties then engaged in extensive pre-mediation damages analysis, including preparing comprehensive reports on liability and damages. This analysis encompassed the review of twelve years of deductions records for the Class. The parties thereafter engaged in an initial pre-mediation session with Robert J. Kheel, a noted mediator with extensive experience in class action litigation on November 30, 2020,

followed by two joint mediation sessions on December 28, 2020 and January 11, 2021. The parties separately and together further conferred with Mediator Kheel on multiple occasions for four more months through April 2021. Beginning in February 2024, the parties reengaged in further settlement efforts with the assistance of noted class action Mediator Martin F. Scheinman, including a joint virtual mediation session on August 14, 2025 with all counsel led by Mediators Scheinman and Barry Peek. With Mr. Scheinman and Mr. Peek's assistance, the parties reached agreement on most material settlement terms. Following additional months of hard-fought negotiations over many contentious sticking points, the Settlement Agreement was finally executed on November 13, 2025.

23. On November 14, 2025, Plaintiffs filed their unopposed motion for preliminary approval of the Settlement Agreement.

24. The Court held a fairness hearing on February 2, 2026. At the hearing, the Court directed the parties to make specific corrections to the long-form notice to be provided to Class Members. On February 6, 2026, Plaintiffs filed the revised long-form notice reflecting the changes the Court directed. *See* ECF No. 187.

25. On March 27, 2026, the Court adopted the revised long-form notice and issued its preliminary approval opinion and order. ECF Nos. 191–191-1. The Court granted preliminary approval and certified the Class for settlement purposes. *Id.*[2]

26. Attached to this Declaration as **Exhibit C** is a true and correct copy of the transcript from the Court's preliminary approval hearing, held February 2, 2026.

27. While both parties are confident in their prospects, Class Counsel are experienced and realistic and understand that the outcomes and duration of both a trial and the inevitable

---

[2] There have been no changes to alter the propriety of class certification for settlement purposes.

appeals are inherently uncertain. At trial Plaintiffs would have to overcome, among other things, defenses that: (1) that Defendants did not wrongfully deduct all drivers' wages for shortages; and (2) that the Class claims for unpaid overtime lack common support and are not actionable.

28.    With the assistance of multiple third-party neutrals, the parties ultimately concluded that the benefits of settlement outweigh the risks and uncertainties of trial preparation including motions in limine, then trial, and likely appellate review.

29.    At all times, the parties' negotiations have been vigorous, adversarial, and at arm's length.

**V.    Settlement Terms and Allocation Formula**

30.    According to Defendants' records, there are 2,018 Class Members.

31.    Under the Settlement Agreement, Defendants will establish a cash fund of $1,000,000 ("Settlement Fund"). Settlement Agreement § 1.16. Each Class Member will then be issued a direct settlement payment without the need to submit a claim. *Id.* § 3.1. This feature was specifically negotiated to ensure maximum participation and to maximize actual disbursements. Class Members' share of the settlement will be calculated based on their *pro rata* share of all hours worked by Class Members as reflected in Defendants' payroll records, except for Reimbursements Subclass B Members, who were hired on or after April 15, 2016, who will receive at least the allocated minimum amount specified in the Settlement Agreement. *Id.* In addition, each driver will be afforded a minimum allocation of $75, and each helper will receive a minimum of $25 to account for the Parties' assessment of the relative strength of Plaintiff's claims. *Id.* § 3.1(B).

32.    The parties negotiated heavily over the settlement amount, including disputes both as to liability and the value of the wage deduction and overtime claims. These central disputes were the primary reason why this case continued for an extraordinary length of time.

9

33.     The chosen distribution plan reasonably correlates with Plaintiffs' claims for unlawful deductions and unpaid overtime wages for working during lunch breaks and will fairly compensate Class Members in relation to their alleged damages. The $1,000,000 Settlement Fund represents approximately 60.6% of the approximately $1.65 million in pecuniary class-wide harm that Class Counsel calculated in connection with their evaluation of potential damages assuming liability was proven.

34.     There is a ***possibility*** that at trial the Class might obtain amounts in excess of their calculated out-of-pocket losses, or that Plaintiffs would achieve multiples in the form of liquidated damages and interest. But those outcomes are not guaranteed and would require Class Members to wait additional years for payment from this matter, assuming such payments were even ordered and collected from Defendants.

35.     After accounting for deductions for a service award to the named Plaintiff, attorneys' fees and expenses, settlement administration expenses, and a reserve fund to cover administration issues, the average payment for Reimbursements Subclass A is $687.65, $50 for Reimbursements Subclass B, and $30.56 for the Overtime Pay Subclass. The overall average payment to Class Members under the Settlement is $303.08.

36.     Arden Claims Services is serving as Settlement Administrator to provide notice to the Class and administer settlement payments to Class Members. The Settlement Administrator's fee of up to $30,500 will be paid from the Settlement Fund. Based on the experience of Class Counsel, the Settlement Administrator's fee in this matter is reasonable.

## VI.     The Notice and Settlement Fund Distribution Plan

37.     Following the Court's preliminary approval order, the parties and Settlement Administrator implemented the notice plan outlined in the Settlement Agreement.

38.    Specifically, on April 29, 2026 Defendants provided the class list, which included each Class Member's first and last name, title (driver and/or helper), last known mailing address, last known email address, and the tenure that each Class Member worked for Manhattan Beer (used to calculate weeks worked during the Class Period) as that information exists on file with Defendants.

39.    Defendants also provided a written certification that the class list represents the "most accurate and up-to-date information" Defendants had for Class Members.

40.    During this same time, the parties finalized the notice, the notice's transmittal envelope, the FAQs for Class Members who called the Settlement Administrator's hotline, and the recorded message to greet hotline callers.

41.    William Varon, Executive Director of Finance and Operations for the Settlement Administrator Arden Claim Service LLC, has provided a declaration regarding the results of the notice campaign. This certification is attached as **Exhibit D** ("Arden Decl.").

42.    On May 6, 2026, the Court-approved Notice was mailed and emailed to the 2,018 individuals in the Class.[3] The overwhelming majority (98%) were successfully delivered.

43.    While the Settlement Administrator has re-issued 201 notices with updated addresses and/or emails, to date the Settlement Administrator has been unable to reach only 34 Class Members (or 1.7% of the class).

44.    The time for Class Members to opt out of and/or object under the Settlement Agreement ended on July 6, 2026. There were no objections and no opt-outs. Arden Decl. ¶¶ 12–13.

---

[3] Notice was mailed slightly after the Court's original deadline of April 27 due to difficulties extracting the class list and calculating Class Member allocations; this still allowed Class Members the Court-mandated 60 days to comment or otherwise exclude themselves from the settlement.

### VII.    Attorneys' Fees and Costs

45.    Class Counsel have undertaken substantial risk and committed significant resources to the more than ten years of investigation, litigation, and settlement of this case, bringing viable claims and aggressively pursuing the facts necessary to prevail on the merits in the event the parties were unable to agree on a resolution. As a result of their efforts, they secured a substantial settlement that benefits the Class and the public at large.

46.    Class Counsel committed significant resources to this case, bringing viable claims and aggressively pursuing the facts necessary to prevail on the merits in the event the parties were unable to agree on a resolution. Plaintiffs believe they asserted meritorious claims and would prevail if this matter proceeded to trial.

47.    As compensation for their efforts and pursuant to the terms of the Settlement Agreement, Class Counsel request the customary one-third legal fee of $333,333 and reimbursement of the $4,559.19 in litigation costs and expenses advanced for the Class's benefit.

48.    This fee request represents fair compensation for the years of contingency work Class Counsel devoted to this case. This percentage is consistent with fee awards in the Second Circuit. In Class Counsel's experience, law firms that represent plaintiffs in contingency employment matters in this Circuit typically charge their clients at least one third (33.33%) of their gross recoveries, exclusive of litigation expenses, and as set forth in the accompanying Memorandum of Law, courts in this District and elsewhere routinely approve such one-third fee awards.

49.    Class Counsel's fee and expense request was also subject to arm's length negotiations between the parties, emerged from the same arm's length mediation process overseen

12

by this Court, and was disclosed to the Class. No Class Member has objected to the proposed fee and expense request. *See* Arden Decl. ¶ 13 (confirming no objections received).

50.    Without Class Counsel's willingness to risk significant resources and years of effort on this case, it is extremely unlikely that a meaningful number of Class Members would have received any compensation at all.

51.    The litigation and subsequent Settlement have achieved precisely what class actions are designed to achieve: real recovery for workers who had no other realistic avenue for relief.

52.    The fee and expense request is reasonable in relation to the result achieved and the risks borne by Class Counsel to achieve these results. If this case went to trial, the Class would seek approximately $1.65 million in recovery for pecuniary harm. Under the Settlement, the Class receives $1 million—more than 60% of the pecuniary harm suffered. In other words, Class Members are receiving through this settlement a significant percentage of what they could have hoped to receive at trial—but without years of additional delay and with certainty of payment.

53.    To be sure, there is a ***possibility*** that at trial the Class could obtain more, or that Plaintiffs would achieve multiples in the form of liquidated damages and interest. But those outcomes are not guaranteed and would require Class Members to wait additional years for payment from this matter, assuming such payments were even ordered and successfully collected from Defendant.

54.    Were the Court to grant Class Counsel's fee request ($333,333), a comparison to the hypothetical maximum recovery available to the Class (the entire remaining Settlement Fund minus expenses such as the Settlement Administrator's fee and service award to Plaintiff Swanson), effectively yields a 1:2 ratio of attorneys' fees to Class recovery, whether or not litigation expenses are included.

13

55. Altogether, Class Counsel devoted more than 3,700 hours in the more than ten years they spent investigating, prosecuting, and settling this case. There was no unnecessary expenditure of time, labor, or resources by Class Counsel. The chart below summarizes the billable time each WMP attorney devoted to this matter.[4]

| SUMMARY OF CLASS COUNSEL'S LODESTAR | | | |
|---|---|---|---|
| **TIMEKEEPER** | **RATE** | **TOTAL HOURS** | **TOTAL FEES** |
| Daniel J. Brenner, Senior Associate | $505.00 | 79.4 | $40,097.00 |
| Russell M. Busch, Former Associate | $480.00 | 960 | $460,800.00 |
| J. Burkett McInturff, Shareholder and Partner | $890.00 | 150.6 | $134,034.00 |
| Sharon S. Ourien, Former Senior Associate | $505.00 | 188.7 | $95,293.50 |
| Tiasha Palikovic, Shareholder and Partner | $920.00 | 1,124.00 | $1,032,240.00 |
| Ethan D. Roman, Counsel | $675.00 | 232.8 | $157,140.00 |
| Steven L. Wittels, Founding Partner | $1,185.00 | 973 | $1,153,005.00 |
| **Total** | | **3,708.50** | **$3,072,609.50[5]** |

56. The hours reported are reasonable for a case of this complexity and magnitude and were compiled from time records maintained by each attorney participating in the case. Based on my knowledge and experience in cases of this kind, the time spent was reasonable and necessary to achieve the excellent result Class Counsel's efforts achieved here. Class Counsel's contemporaneous time records are being submitted separately. *See* ECF Nos. 193–193-1.

---

[4] Class Counsel further used their judgment to write off hours for current and former attorneys from these calculations, including all hours devoted to this case after preliminary approval.

[5] Class Counsel exercised further billing discretion to further lower the lodestar from the original figure provided at preliminary approval. The updated figures are 2,937 hours with a lodestar of $2,355,198.00. This still results in a substantial negative multiplier of 0.14.

14

57.     The rates listed above are my firm's current billing rates and are supported by our extensive and specialized experience in wage and hour cases and recognized expertise in complex class action matters. Our hourly billing rates have been repeatedly approved by courts in this District and the Southern District of New York.[6] I have personal knowledge of the hourly rates charged by other attorneys with comparable experience as well as the attorneys within the firm who worked on this matter. Based on that information, I believe that these rates are fully consistent with the market rate in this District for attorneys with comparable expertise, experience and qualifications, and that they are comparable to rates of attorneys specializing in complex litigation around the country. Based on the information I have, I believe that the rates charged for our partner and non-partner attorney time are reasonable and appropriate fees for those with comparable expertise, experience, and qualifications.

58.     Class Counsel's fees are not based solely on the extensive time and effort thus far expended but are also meant to compensate Class Counsel for time that they will be required to spend administering the settlement in the future. Class Counsel anticipate spending additional time

---

[6] *See, e.g.*, *Diaz v. N.Y. Paving, Inc.*, 18-CV-4910 (S.D.N.Y. June 17, 2026), ECF No. 495 (approving Class Counsel's 2026 rates in wage and hour class action); *Cap 111 Enters., LLC v. Manhattan Beer Distribs., LLC*, No. 22 Civ. 1408 (CS) (AEK), 2025 WL 1212394, at *2 (S.D.N.Y. April 24, 2025) (approving Class Counsel's 2025 rates in business-to-business consumer class action); *Franck v. N.Y. Health Care Inc.*, No. 21 Civ. 4955 (GHW) (JLC), 24 WL 4182601, at *3 (S.D.N.Y. Sept. 13, 2024) (approving Class Counsel's 2024 rates in wage and hour class action); *Nichols v. Noom, Inc.*, No. 20 Civ. 3677 (KHP), 2022 WL 2705354, at *11 (S.D.N.Y. July 12, 2022) (approving Class Counsel's 2022 rates in consumer class action); *Medvedeva v. Assistcare Home Health Servs. LLC*, No. 17 Civ. 5739 (E.D.N.Y. June 1, 2021), ECF No. 151 (approving Class Counsel's 2021 rates in wage and hour class action); *Little v. Ambit Energy Holdings, LLC*, No. 16 Civ. 8800 (D.N.J. July 2, 2020), ECF No. 94 (approving Class Counsel's 2020 rates in consumer class action); *Delgado v. Ocwen Loan Servicing LLC, et al.*, No. 13 Civ. 4427 (E.D.N.Y. Aug. 20, 2019), ECF No. 429 (approving Class Counsel's 2019 rates in consumer class action); *Simmons v. Ambit Energy Holdings, LLC*, No. 503285/2015, NYSCEF No. 205 (N.Y. Sup. Ct. July 16, 2018) (approving Class Counsel's 2018 rates in consumer class action); *Mirkin v. Viridian Energy, Inc.*, No. 15 Civ. 1057 (D. Conn. June 27, 2018), ECF No. 185 (same); *Rasulev v. Good Care Agency, Inc.*, No. 16 Civ. 1993 (E.D.N.Y. July 28, 2017), ECF No. 70 (approving Class Counsel's 2017 rates in wage and hour class action); *Saldana v. Middletown Car-G-Cam Uni Corp.*, No. 15 Civ. 3651 (S.D.N.Y. Jan. 8, 2016), ECF No. 22 (approving Class Counsel's 2015 rates in wage and hour class action); *Davenport v. Elite Model Mgmt. Corp.*, No. 13 Civ. 1061, 2014 WL 12756756, at *11 (S.D.N.Y. May 12, 2014) (approving Class Counsel's 2014 rates in wage and hour class action).

with respect to continuing communications with the Settlement Administrator in administering the settlement, and responding to Class Members' inquiries, especially after checks are issued. In Class Counsel's experience, administering class settlements of this nature requires considerable post-Fairness Hearing attorney and staff time.

59.     In total, the aggregate lodestar of the attorneys that prosecuted this matter for Plaintiffs and the Class amounts to $2,355,198.00. As described more fully in Plaintiffs' accompanying Memorandum of Law, Plaintiffs' counsel are not asking for a multiplier, although as can be seen from the years of work which yielded the remarkable results of this settlement, this is certainly a case that would have warranted a significant multiplier had Plaintiffs' lodestar not exceeded the fees sought here. Instead, comparing the lodestar to the requested fee yields a ***negative multiplier*** of 0.14—an 86% discount on the fair-market value of their legal services.

60.     This discount of 86% off the fair-market value of Class Counsel's lodestar represents a substantially discounted charge for the services Class Counsel rendered to Class Members and the public on a purely contingency basis. The requested fee does not bestow a windfall on Class Counsel and represents reasonable remuneration for devoting nearly 3,000 hours (and in fact more than that, prior to the exercise of billing discretion) and advancing nearly $4,600 in costs in the more than ten years they devoted to this case.

61.     Class Counsel undertook to prosecute this action without any assurance of payment for their services, litigating this case for close to a decade in the face of significant risk. Wage and hour class actions involving hundreds or thousands of class members are, by their very nature, complicated and time-consuming, and attorneys representing clients in these types of class actions inevitably must be prepared to make a tremendous investment of time, energy, and resources. Due also to the purely contingent nature of the customary fee arrangement, attorneys must be prepared

to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind. Indeed, the facts and circumstances of this case presented numerous and substantial hurdles to a successful recovery on behalf of all Class Members. Class Counsel stood to gain no compensation in the event the case was unsuccessful. Thus, cases like this have not revealed themselves to be attractive to the greater wage and hour bar, likely because they are highly complex, much more risky than typical wage and hour cases, and require multi-year efforts.

62.    To date, Class Counsel have worked without compensation of any kind, and their compensation is wholly contingent upon the result achieved.

63.    The majority of Class Counsel's cases are taken on pure contingency, and Class Counsel cover all out-of-pocket costs and expenses incurred. Thus, when Class Counsel spend time on contingency matters, they do so at significant cost and risk for the firm. Class Counsel frequently turn away cases, including hourly litigation matters and other contingency matters, in order to enable their attorneys to work on pending contingency matters, primarily class or collective actions.

64.    The notice informed Class Members that Class Counsel may seek expenses of up to $15,000; there were no objections. Accordingly, Class Counsel request reimbursement of the following costs and expenses, which were incidental to their representation of the Class:

| SUMMARY OF EXPENSES | |
|---|---|
| **EXPLANATION** | **AMOUNT** |
| Administrative costs (binding, mailing, printing, etc.) | $265.21 |
| Court costs (court filings, process servers, etc.) | $400.00 |
| Deposition costs (reporters, transcripts, Realtime, video, etc.) | $1,907.10 |
| Mediator costs | $1,700 |

17

| Transcript costs | $200.55 |
| Travel/Food | $86.33 |
| **TOTAL** | **$4,559.19** |

## VIII.   Named Plaintiff Service Award

65.     As part of the Settlement Agreement, the parties agreed that Plaintiffs may apply to the Court for a service award for Plaintiff Larry Swanson for his assistance in the prosecution of this action. Specifically, Plaintiffs requests that in recognition of the services he rendered on behalf of the more than 2,000 other drivers and helpers, Plaintiff Larry Swanson be granted a service award of $15,000. This amount is reflective of his contributions to the litigation and represents, in Class Counsel's assessment, the floor, not the ceiling, of what Plaintiff Swanson deserves.

66.     This proposed award is intended to compensate Mr. Swanson for his valuable and tremendous efforts in assisting counsel throughout 10 years of this litigation in developing the theories of the case and obtaining evidence used to convince Manhattan Beer of its risks in defending against liability. Plaintiff Swanson did not merely lend his name to this action, he agreed to shoulder the responsibilities of a sole representative plaintiff before initiating this action. He served as the sole named plaintiff for the overwhelming majority of this ten-year litigation, reviewed and discussed the pleadings, repeatedly conferred with Class Counsel on case progress, litigation strategy, and settlement, prepared and appeared for a deposition, and repeatedly made himself available on many occasions to promptly respond to Class Counsel's questions, requests for documents and information about the claims and litigation. At all times, Plaintiff encouraged Class Counsel to obtain the best possible result for Class Members.

67.     Notably, Plaintiff was also deposed at length after earnestly preparing for his deposition. And, on multiple occasions during the decade this case was pending, Mr. Swanson was called upon to provide documents and other information and data supporting both his own and the Class claims in this litigation. Plaintiff also assisted with preliminary settlement negotiations and lent support during two mediation sessions and various follow-up calls. His participation in this case was significant and critical. Without the evidence Mr. Swanson provided, it is doubtful Class Counsel could have achieved the result they did.

68.     The service award request was subject to arm's length negotiations between the parties, was facilitated by an experienced mediator, and was disclosed to the Class. Class Members were informed the service award could be as much as $15,000 with no objections to the proposed service award. Plaintiffs are hereby moving for Court approval of the Service Award simultaneously with Plaintiffs' Final Approval Motion.

69.     Plaintiffs' Memorandum of Law, *see* p. 42 n.1, cites two cases awarding service awards in the $10,000 to $15,000 range more than a decade ago (i.e., those awards would be worth substantially more today accounting for inflation). I have reviewed the dockets in those cases and determined that those amounts were approved even though those cases had resolved significantly more quickly than this one, requiring less sustained commitment from the awardees. Specifically, there were approximately 18 months from the filing of the complaint to preliminary approval in *Puglisi v. TD Bank, N.A.*, 13-CV-637, 2015 WL 4608655, at *1 (E.D.N.Y. July 30, 2015) (approving service awards of $15,000 each for two of the named plaintiffs and $10,000 each for three other named plaintiffs in a wage and hour action), and 12 months in *Hernandez v. Merrill Lynch & Co., Inc.*, 11-CV-8472, 2013 WL 1209563, at *10 (S.D.N.Y. Mar. 21, 2013) (approving service awards of $15,000 and $13,000 to class representatives in wage and hour action).

70.    In sum, the proposed Service Award is well within the range of typical awards in this district and is fully justified by Plaintiff Swanson's extraordinary contributions to this litigation.

## IX.    Conclusion

71.    Accompanying this Declaration is a proposed Order (attached hereto as Exhibit A) and a supporting Memorandum of Law that demonstrates why, under governing law, this Court should grant final approval of the proposed settlement and grant the relief requested in the instant motion.

WHEREFORE, Plaintiffs respectfully request that the Court: (1) grant final certification to the Class under Federal Rule of Civil Procedure 23 for purposes of judgment on the parties' settlement proposal; (2) grant final approval of all terms applicable to the Class set forth in the Settlement Agreement and Release (the "Settlement Agreement," ECF No. 181-1); (3) find that the Court-authorized Notice was the best notice practicable under the circumstances; (4) approve the Service Award to Plaintiff Swanson; (5) award Class Counsel attorneys' fees and reimbursement of litigation expenses; (6) approve the parties' proposed final settlement procedure; (7) incorporate all terms of the Settlement Agreement, including the releases; and (8) dismiss this action with prejudice and entering final judgment.

I declare under penalty of perjury that the foregoing is true and correct.


Executed:    New York, New York
             July 10, 2026            /s/   *Steven L. Wittels*
                                            Steven L. Wittels

                                      **WITTELS MCINTURFF PALIKOVIC**
                                      305 BROADWAY, 7TH FLOOR
                                      NEW YORK, NEW YORK 10007
                                      Telephone: (914) 775-8862
                                      slw@wittelslaw.com

                                      *Counsel for Plaintiff and the Class*