UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------X
LARRY SWANSON, individually and on behalf of all others similarly situated,

Plaintiff,

-against-

MANHATTAN BEER DISTRIBUTORS, LLC. and SIMON BERGSON,

Defendant.
---------------------------------------------------------X

**MEMORANDUM AND ORDER**
15-CV-5383 (ENV) (TAM)

**TARYN A. MERKL**, United States Magistrate Judge:

This is a putative class action brought against Manhattan Beer Distributors, LLC ("Manhattan Beer" or the "Company") and Simon Bergson (collectively, "Defendants"). Plaintiff Larry Swanson ("Plaintiff"), on behalf of himself and other current or former members of Defendants' "dedicated delivery force," alleges that certain of Defendants' wage and hour practices violated the New York Labor Law ("NYLL"), its implementing New York State Department of Labor regulations, and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* Am. Compl., ECF 14, ¶¶ 2, 5.

Currently pending before the Court is Plaintiff's unopposed motion for final settlement approval. *See* Mot. for Final Settlement Approval ("Mot."), ECF 194; *see also* Consent Notice, ECF 198; Aug. 6, 2026 ECF Order; Order, ECF 200. For the following reasons, the Court grants Plaintiff's motion.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The Court assumes familiarity with this action's factual background and procedural history, which was recounted in detail in the Court's March 27, 2026 Memorandum and Order on Plaintiff's unopposed motion for preliminary settlement

approval. *See generally* Mem. & Order, ECF 191, *available at Swanson v. Manhattan Beer Distributors, LLC*, No. 15-CV-5383 (ENV) (TAM), 2026 WL 850837 (E.D.N.Y. Mar. 27, 2026).

On March 27, 2026, the Court issued a Memorandum and Order, granting the motion for preliminary settlement approval. *Id.* There, the Court (1) granted Plaintiff's motion for preliminary settlement approval; (2) preliminarily certified the settlement class for the purposes of settlement (hereinafter the "Settlement Class," "Class," or "Class Members"); (3) appointed Plaintiff as the class representative (hereinafter "Class Representative"); (4) appointed Wittels McInturff Palikovic as class counsel (hereinafter "Class Counsel"); (5) approved the notice plan; (6) appointed Arden Claims Service LLC as settlement administrator (hereinafter "Settlement Administrator" or "Arden") and directed the parties to commence the notice plan; and (7) entered the Proposed Preliminary Approval Order. *Id.* That same day, the Court scheduled a final fairness hearing for July 22, 2026. *Id.*

Plaintiff then filed his unopposed motion for final settlement approval and related relief on July 10, 2026. *See* Mot., ECF 194; Mem. in Supp. ("Mem."), ECF 195; Wittels Decl., ECF 196. On July 13, 2026, Class Counsel filed a motion for leave to file its contemporaneous time records and billing records under seal, which the Court granted the next day. Mot. for Leave to File, ECF 197; July 14, 2026 ECF Order; *see also* Time Records, ECF 193-1 (filed under seal). On July 22, 2026, the undersigned Magistrate Judge held the final fairness hearing. *See* July 22, 2026 Min. Entry & Order; *see generally* Final Fairness Hr'g Tr. ("Hr'g Tr."), ECF 199.

For the reasons set forth below, the Court grants the motion for final settlement approval and related relief. The Court also enters a final approval order.

**SETTLEMENT AGREEMENT, FUND ALLOCATION, AND NOTIFICATION TO CLASS**

The Settlement Class encompassed by the settlement agreement includes members of the Reimbursement Subclasses[1] and the Overtime Pay Subclass.[2] Proposed Order, ECF 196-1, at 2–3. Excluded from the Settlement Class are:

> (a) Defendants; (b) Defendants' legal representatives, officers, directors, assigns, and successors; (c) any individual who has, or who at any time during the class period has had, a controlling interest in Manhattan Beer; and (d) the Judge(s) to whom this case is assigned, their judicial staffs, and any member of the Judges' immediate families.

*Id.* at 3; *see* Settlement Agreement, ECF 181-1, § 1.5. According to the settlement agreement, each member of the Settlement Class is entitled to a share of the settlement fund of $1,000,000 (hereinafter the "Settlement Fund"), less: (1) the Settlement

---

[1] The Reimbursements Subclasses are defined as follows:

> Plaintiff and all current and former Manhattan Beer employees who were at any time classified as Drivers in Manhattan Beer's records and who worked for Manhattan Beer in New York State at any time from September 18, 2009, through and including the Court's Preliminary Approval of the Agreement. "Reimbursements Subclass A" or "Reimbursements Subclass A Members" shall be defined as all current and former Manhattan Beer employees who were at any time classified as Drivers in Manhattan Beer's records and who worked for Manhattan Beer in New York State at any time between September 18, 2009 and April 15, 2016. "Reimbursements Subclass B" or "Reimbursements Subclass B Members" shall be defined as all current and former Manhattan Beer employees who were at any time classified as Drivers in Manhattan Beer's records and who were hired by and worked for Manhattan Beer in New York State at any time after April 15, 2016 through and including the Court's Preliminary Approval of the Agreement.

Settlement Agreement, ECF 181-1, at 7.

[2] The Overtime Pay Subclass includes:

> Plaintiff and all current and former Manhattan Beer employees who were employed as Drivers or Helpers and who worked for Manhattan Beer in New York State at any time from September 18, 2009, through and including the Court's Preliminary Approval of the Agreement.

Settlement Agreement, ECF 181-1, at 7.

Administrator's fees; (2) Court-approved attorneys' fees and costs; (3) any Court-approved service award to Plaintiff; and (4) the Court-approved reserve fund.[3] Settlement Agreement, ECF 181-1, §§ 1.16, 1.19; *see also* Revised Long Form Notice, ECF 187-1, at p. 7.

The settlement agreement provides that "Class Members who do not opt-out of the settlement shall be entitled to receive an Individual Settlement Award representing a proportionate share of the Net Settlement Amount[.]" Settlement Agreement, ECF 181-1, § 3.1(A). The Net Settlement Amount is to be split among two subclasses: the Reimbursement Subclasses and the Overtime Pay Subclass. *Id.* The Reimbursement Subclasses shall receive ninety percent (90%) of the Net Settlement Amount and the Overtime Pay Subclass shall receive ten percent (10%) of the Net Settlement Amount. *Id.* Separately, Reimbursement Subclass members whose individual settlement amount is less than $50.00, shall receive $50.00. *Id.* § 3.1(B). Overtime Pay Subclass members whose individual settlement amount is less than $25.00 shall receive a minimum of $25.00. *Id.* Class members who belong in both subclasses shall be allocated at least the minimum individual settlement amounts for each subclass. *Id.*

---

[3] The "Reserve Fund" is defined as

> the Five Thousand Dollars and Zero Cents ($5,000.00) within the Escrow Account to address errors and omissions in the calculation of Class Members' individual shares of the Settlement, as mutually agreed to by the Parties, including but not limited to (1) undisputed claims from individuals claiming to be Class Members but not identified as such by Defendants, (2) Class Members who correctly challenge their share of the Settlement Fund; and (3) Class Members who have reasonable explanations for not having timely cashed their checks.

Settlement Agreement, ECF 181-1, § 1.26.

In exchange for their share of the Settlement Fund, each class member who does not opt out of this agreement releases:

> [A]ny right to, is precluded from seeking any relief under, and fully releases and discharges Defendants and each of their respective parents, franchisors, partners, subsidiaries, affiliates, predecessors, agents, attorneys, directors, managers, employees, successors, heirs, administrators, executors, assigns, representatives, or other persons or entities acting on each of their behalf (collectively, the "Released Parties"), from any and all actions, causes of action, claims, demands, controversies, disputes, grievances, liabilities, lawsuits, arbitrations, obligations, damages (including, without limitation, punitive, exemplary, statutory and multiple damages), penalties, sanctions, losses, debts, dues, sums of money, judgments, accounts, contracts, agreements, attorneys' fees, costs, expenses, and rights of any nature and description whatsoever, relating to the payment of wages, compensation, or any other benefits, and any associated derivative claims, whether based on federal, state, or local statutes, common law, regulations, rules or any other law of the United States or foreign jurisdiction, known or unknown, fixed or contingent, suspected or unsuspected, in law or in equity or otherwise, from the beginning of the world to, and including, the Court's Preliminary Approval of the Agreement arising out of or related to or in connection with the allegations in the Action that were asserted or could have been asserted by the Releasors against the Released Parties.

*Id.* § 4.1(A) (defining "Released Claims").

On May 6, 2026, the Settlement Administrator sent the Court-approved final notice to the 2,018 class members via mail; 1,068 of those class members were also sent an email. Arden Decl., ECF 196-4, ¶ 7; *see* Mem., ECF 195, at 7. The class list, which was certified by Defendants for accuracy, detailed each class member's first and last name, position (*i.e.*, a driver and/or helper), last known mailing and email address, and the amount of time worked at the company. Mem., ECF 195, at 6; *see also* Arden Decl., ECF 196-4, ¶ 5. Of the notices that were returned to Arden as undeliverable, "Arden was able to re-mail a total of 201" notices. Arden Decl., ECF 196-4, ¶ 8; *see* Mem., ECF 195, at 7. After such attempts, only 34 class members were unable to be reached. Arden Decl., ECF 196-4, ¶ 9. Ultimately, notice successfully reached 98% of the Settlement Class. Mem., ECF 195, at 7; Arden Decl., ECF 196-4, ¶ 9.

Class members with questions were provided the Settlement Administrator's and Class Counsel's contact information. Arden Decl., ECF 196-4, at ECF pp. 9–11; *see also* Revised Long Form Notice, ECF 187-1, at ECF pp. 6, 8. Additionally, a copy of the full settlement agreement could be provided upon request, as well at instructions to access the public court filings of the case. Arden Decl., ECF 196-4, at ECF p. 12. Potential class members could opt out of the settlement or object to it until July 6, 2026. Mem., ECF 195, at 7. As of July 22, 2026, the parties had not received any objections or opt-outs. Hr'g Tr., ECF 199, at 6:13–15 (Class Counsel confirming that "[t]here were zero objections"); *see* Mem., ECF 195, at 7; Wittels Decl., ECF 196, ¶ 44; Arden Decl., ECF 196-4, ¶¶ 12–13.

In addition to the payments to the Settlement Class, the settlement agreement anticipates awarding Class Counsel $333,333 in attorney's fees, which constitutes one-third of the settlement fund, and $4,559.19 in expenses. Mem., ECF 195, at 19 (citing Settlement Agreement, ECF 181-1, § 1.19). The proposed settlement would also grant a $15,000 service award to Plaintiff Larry Swanson, reflecting his contributions to the litigation, *id.* at 30, and $30,500 to Arden for the costs of settlement administration, Settlement Agreement, ECF 181-1, §§ 1.19, 1.27.

For the reasons set forth below, the Court grants the motion for (1) final settlement approval; (2) award of attorneys' fees and expenses; and (3) a case contribution award to Plaintiff.

## DISCUSSION

### I. Legal Standards

The Second Circuit has expressed a "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116–17 (2d Cir. 2005) (quotation marks omitted) (noting that "[t]he

compromise of complex litigation is encouraged by the courts and favored by public policy" (quotation marks omitted)), *superseded on other grounds by Moses v. New York Times Co.*, 79 F.4th 235 (2d Cir. 2023). Under Federal Rule of Civil Procedure 23(e), "[t]he claims, issues, or defenses of . . . a class proposed to be certified for purposes of settlement[] may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e); *see also In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 328–30 (E.D.N.Y. 2010). To approve a class settlement under Rule 23(e), "the district court must determine that it is 'fair, adequate, and reasonable, and not a product of collusion.'" *Loc. 1180 v. City of New York*, 392 F. Supp. 3d 361, 374 (S.D.N.Y. 2019) (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000)). In conducting this inquiry, courts consider the substantive and procedural fairness of a proposed settlement to determine "whether 'the terms of the settlement and the negotiation process leading up to it' are fair." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 408 (S.D.N.Y. 2018) (quoting *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 575 (S.D.N.Y. 2008)), *aff'd sub nom. In re Facebook, Inc.*, 822 F. App'x 40 (2d Cir. 2020) (summary order); *see also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("The District Court determines a settlement's fairness by examining the negotiating process leading up to the settlement as well as the settlement's substantive terms.").

In 2018, Rule 23(e) was revised "to include a list of four 'primary procedural considerations and substantive qualities that should always matter'" in the court's holistic review of a proposed settlement. *Moses*, 79 F.4th at 242 (quoting Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment); *see also Schutter v. Tarena Int'l, Inc.*, No. 21-CV-3502 (PKC) (RML), 2024 WL 4118465, at *6 (E.D.N.Y. Sept. 9, 2024). These four factors include whether (1) class counsel and representatives adequately represented the class; (2) the settlement was negotiated at arm's length; (3) class

members' relief is adequate, considering the costs, risks, and delay trial and appeal might pose along with the effectiveness of class notice and attorneys' fees; and (4) the settlement treats all class members equitably. Fed. R. Civ. P. 23(e)(2); *see also Kurtz v. Kimberly-Clark Corp.*, 142 F.4th 112, 117–18 (2d Cir. 2025). The amendments "prohibit courts from applying a presumption of fairness to proposed settlements arising from an arms-length agreement" and instead require holistic review, including consideration of attorney's fees and incentive awards. *Moses*, 79 F.4th at 243.

In addition to Rule 23(e)(2)'s amendments, the court should also consider the nine familiar *Grinnell* factors:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (citations omitted), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000); *see Moses*, 79 F.4th at 243 (noting that "the revised Rule 23(e)(2) does not displace our traditional *Grinnell* factors, which remain a useful framework for considering the substantive fairness of a settlement"). However, Rule 23(e)(2) also "now mandates courts to evaluate factors that may not have been highlighted in our prior case law." *Moses*, 79 F.4th at 243. Specifically, the Court must consider two core factors: "the adequacy of relief provided to a class and the equitable treatment of class members," in addition to an assessment of attorney's fees. *Id.* at 244.

## II. Analysis

In its March 27, 2026 Memorandum and Order, this Court set forth a detailed analysis of the legal standards under Rule 23 of the Federal Rules of Civil Procedure and the application of those standards to the facts and circumstances surrounding this proposed settlement. *See* Mem. & Order, ECF 191, at 9–32, *available at Swanson*, 2026 WL 850837, at *4–16. That analysis is incorporated by reference into this Memorandum and Order and is repeated only to the extent necessary to address the pending motion for final settlement approval.

### A. Class Certification

"Before approving a class settlement agreement, a district court must first determine whether the requirements for class certification in Rule 23(a) and (b) have been satisfied." *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 238 (2d Cir. 2012). As noted above, on March 27, 2026, the Court preliminarily certified the class for the purposes of settlement under Federal Rule of Civil Procedure 23(a) and (b)(1). Mem. & Order, ECF 191, at 25–29, 38. For the reasons detailed therein, and because "[t]here have been no changes to alter the propriety of class certification for settlement purposes," the Court now grants final certification for settlement purposes as well. Mem., ECF 195, at 30; *see* Mem. & Order, ECF 191, at 25–29.

### B. Settlement Approval

As discussed above, a district court's approval of a class action settlement is contingent on a finding that the settlement is "fair, reasonable, and adequate," which is determined by an evaluation of a settlement's procedural and substantive fairness. Fed. R. Civ. P. 23(e)(2); *see D'Amato*, 236 F.3d at 85; *see also Lea v. Tal Educ. Grp.*, No. 18-CV-5480 (KHP), 2021 WL 5578665, at *7–8 (S.D.N.Y. Nov. 30, 2021); *In re Graña y Montero*

*S.A.A. Sec. Litig.*, No. 17-CV-1105 (LDH) (ST), 2021 WL 4173684, at *11 (E.D.N.Y. Aug. 13, 2021).[4]

*1. Procedural Fairness*

"To evaluate the procedural fairness of a proposed settlement, a court must expressly consider the two factors under Rules 23(e)(2)(A)–(B): whether 'the class representatives and class counsel have adequately represented the class' and whether 'the proposal was negotiated at arm's length.'" *Schutter*, 2024 WL 4118465, at *7 (quoting Fed. R. Civ. P. 23(e)(2)(A)–(B)); *see also Ying v. All-Ways Forwarding of N.Y. Inc.*, No. 20-CV-6242 (ENV) (MMH), 2025 WL 968586, at *6 (E.D.N.Y. Mar. 31, 2025).

This Court's March 27, 2026 Memorandum and Order set forth the legal standards for adequacy of representation and arm's length negotiation and a detailed analysis of their application to the facts and circumstances of this proposed settlement. *See* Mem. & Order, ECF 191, at 10–15. As discussed therein, the record demonstrates that Plaintiff is well positioned to represent the proposed Settlement Class. First, "Plaintiff claims that he was harmed as a Manhattan Beer Driver and Helper because Defendants' pay practices violated the NYLL by unlawfully deducting wages from Manhattan Beer Drivers and Helpers for mistakes or other shortages, and by not paying workers overtime for working lunch breaks"; "the Class has likewise suffered these

[4] As noted *supra*, "Rule 23 also requires the court to consider several criteria — some of which overlap with the *Grinnell* factors — that inform whether the settlement is fair, reasonable, and adequate." *In re Parking Heaters, Antitrust Litig.*, No. 15-MC-0940 (DLI) (JO), 2019 WL 8137325, at *4 (E.D.N.Y. Aug. 15, 2019), *report and recommendation adopted*, Sept. 30, 2019 ECF Order Adopting R. & R.; *see also* Fed. R. Civ. P. 23(e)(2)(A)–(D). These factors do not displace the *Grinnell* factors, but rather "focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal," given that "[t]he central concern in reviewing a proposed class-action settlement is that it be fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment. Accordingly, in light of the significant overlap between the relevant Second Circuit case law and the Rule 23(e)(2) factors, the Court incorporates the Rule 23 factors into its analysis throughout.

harms." Mem. & Order, ECF 191, at 12; *see* Mem., ECF 195, at 12. Second, "Plaintiff Swanson has contributed significant time and effort to the case" throughout the course of this over 10-year litigation, including by "review[ing] and discuss[ing] the pleadings, repeatedly conferr[ing] with Class Counsel on case progress, litigation strategy, and settlement, prepar[ing] and appear[ing] for a deposition, and repeatedly ma[king] himself available on many occasions to promptly respond to Class Counsel's questions, requests for documents and information about the claims and litigation." Mem., ECF 195, at 12 (citing Wittels Decl., ECF 196, ¶ 66); *see* Hr'g Tr., ECF 199, at 13:23–15:21 (Class Counsel detailing Mr. Swanson's contributions "as the class representative for over ten years now"); *id.* at 16:6–13 (confirming no objection to the requested service award).

The Court also finds that Plaintiff and the Class are adequately represented by Plaintiff's attorneys. *See* Mem. & Order, ECF 191, at 12. Class Counsel "has extensive experience in successfully prosecuting wage and hour class actions." Mem., ECF 195, at 13 (citing Wittels Decl., ECF 196, ¶¶ 5, 7); *see* Mem. & Order, ECF 191, at 12 (collecting cases in which Class Counsel was appointed as counsel for the purpose of settlement); *see also generally* Firm Resume, ECF 196-2. The record also demonstrates that Class Counsel have made efforts to thoroughly investigate and substantiate the alleged violations. *See* Mem. & Order, ECF 191, at 13. Accordingly, the Court finds that Plaintiff is being represented by "qualified, experienced" legal counsel. *Cordes & Co. Fin. Servs., Inc.*, 502 F.3d 91, 99 (2d Cir. 2007) (quotation marks omitted).

"A class settlement reached through arm's-length negotiations between experienced, capable counsel knowledgeable in complex class litigation is entitled to a presumption of fairness." *Rosenfeld v. Lenich*, No. 18-CV-6720 (NGG) (PK), 2021 WL 508339, at *5 (E.D.N.Y. Feb. 11, 2021) (quotation marks omitted). Likewise, a mediator's involvement "in pre-certification settlement negotiations helps to ensure that the

proceedings were free of collusion and undue pressure." *D'Amato*, 236 F.3d at 85. As the proposed settlement was arrived at through private mediation after significant discovery, mediations, and motions practice, Mem., ECF 195, at 13–14, and given the record and the parties' representations during the preliminary fairness hearing, there is no "'evidence or indicia suggesting that the negotiations were collusive.'" *Gordon v. Vanda Pharm. Inc.*, No. 19-CV-1108 (FB) (LB), 2022 WL 4296092, at *4 (E.D.N.Y. Sept. 15, 2022) (quoting *Simerlein v. Toyota Motor Corp.*, No. 17-CV-1091 (VAB), 2019 WL 1435055, at *13 (D. Conn. Jan. 14, 2019)); Wittels Decl., ECF 196, ¶ 22; Prelim. Fairness Hr'g, ECF 190, at 25:13–26:25. The Court therefore finds that the parties' proposed settlement was the result of arm's-length negotiations.

2. *Substantive Fairness*

For consideration of whether "the relief provided for the class is adequate," Fed. R. Civ. P. 23(e)(2)(C), the Court now turns to the *Grinnell* factors to evaluate the proposed settlement's substantive fairness.

a. <u>Complexity, Expense, & Likely Duration of Litigation</u>

Although difficult to predict, the complexity, expense, and likely duration of the litigation favor the proposed settlement. Courts must assess whether the proposed settlement "'results in substantial and tangible present recovery, without the attendant risk and delay of trial.'" *Rosenfeld*, 2021 WL 508339, at *5 (quoting *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.* ("*Payment Card*"), 330 F.R.D. 11, 36 (E.D.N.Y. 2019)).

This case has already been pending for more than 10 years. Plaintiff represents that without approval of the settlement agreement, "[c]ontinued litigation will only add more expense and delay" and "additional discovery would be required for class certification, summary judgment, and trial." Mem., ECF 195, at 15. Plaintiff adds that

"any judgment would likely be appealed, adding further uncertainty and delay." *Id.* The parties agree that continued litigation would be extremely risky considering the fact that the case has been pending for over 10 years. *See* Mem. & Order, ECF 191, at 15–16; Prelim. Fairness Hr'g, ECF 190, at 27:7–29:4; *see also* Hr'g Tr., ECF 199, at 18:23–19:2 (noting that the "case is complex" with "a lot of people involved"). In short, the record amply establishes that further litigation would be complex, expensive, and very time consuming. Accordingly, this *Grinnell* factor, in addition to Federal Rule of Civil Procedure 23(e)(2)(C)(i), favors settlement approval.

b. Reaction of the Class to the Settlement

The reaction of the Class also favors the proposed settlement. As the Second Circuit has noted, if "only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement." *Wal-Mart Stores*, 396 F.3d at 118 (quotation marks omitted); *see also In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. 306, 312 (E.D.N.Y. 2006); Newberg & Rubenstein on Class Actions § 13:58 (6th ed. June 2026 update). To date, as mentioned *supra*, of the 2,018 Class Members, only 34 could not be reached. Arden Decl., ECF 196-4, ¶¶ 9–10; *see also* Hr'g Tr., ECF 199, at 5:21–6:7 (Class Counsel observing that notice reached "over 98 percent" of the class, which is "above the top bound of what the [Federal Judicial Center] considers to be reasonable notice"). Class members had until July 6, 2026, to object to the settlement, Arden Decl., ECF 196-4, at ECF p. 7, and as of the July 22, 2026 final fairness hearing, there were no objections or opt outs. Hr'g Tr., ECF 199, at 6:12–15; *see id.* at 11:3–11 (Class Counsel noting that Plaintiff "got a very favorable response from many of his co-workers"). Given the robust notice procedures and no objections or opt-outs to the proposed settlement, the Court concludes that this factor favors settlement approval.

c. Stage of the Proceedings & the Amount of Discovery Completed

For this factor to favor settlement, courts must ensure that the parties have conducted a factual investigation sufficient to evaluate the proposed settlement and confirm that pretrial negotiations were adequately adversarial. *See Plummer v. Chem. Bank*, 668 F.2d 654, 660 (2d Cir. 1982); *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato*, 236 F.3d 78. Here, "Class Counsel undertook in-depth pre-litigation investigation, and the parties litigated extensively, engaging in substantial discovery, including written discovery, depositions, and extensive analysis of Defendants' records." Mem., ECF 195, at 27 (citing Wittels Decl., ECF 196, ¶¶ 18–19); *see* Mem. & Order, ECF 191, at 22. Moreover, "[t]he parties also undertook significant pre- and post-lawsuit legal research and analysis concerning Plaintiff['s] claims, and conducted extensive motion practice, including multiple court hearings and two rounds of summary judgment briefing." Mem., ECF 195, at 27. Therefore, because the Court finds that counsel had sufficient information "to appreciate the merits of the case," this factor favors approval of the settlement. *Burns v. FalconStor Software, Inc.*, Nos. 10-CV-4572 (ERK) (CLP), 10-CV-4632 (ERK) (CLP), 2014 WL 12917621, at *5 (E.D.N.Y. Apr. 11, 2014), *report and recommendation adopted*, May 8, 2014 ECF Order Adopting R. & R. in No. 10-CV-4572 (ERK) (CLP); *see also Lea*, 2021 WL 5578665, at *9; Mem., ECF 195, at 27 (collecting cases).

d. Risks of Establishing Liability

When considering the risks of proceeding to the merits, "the Court need not adjudicate the disputed issues or decide unsettled questions; rather, 'the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement.'" *In re Graña y Montero S.A.A. Sec. Litig.*, 2021 WL 4173684, at *13 (quoting *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004)). Here, Plaintiff

"face[s] substantial risks in establishing liability." *Id*. As discussed at length in the Court's March 27, 2026 Memorandum and Order, the prior motion practice and protracted nature of the litigation in this case demonstrate the risks Plaintiff faces in establishing liability. *See* Mem. & Order, ECF 191, at 15–16. Without the settlement agreement, "litigation would resume, exposing Plaintiff to 'significant risk, expense, and further delay' on the road to an 'uncertain[]' outcome on motions or at trial." *Id.* at 15 (quoting Pl. Mem. in Supp. of Prelim. Approval, ECF 180, at 13). Additionally, the risk of establishing liability is further compounded by the length of time this case has been pending. As the parties explained during the preliminary approval hearing, "that reality may make it difficult to obtain the relevant documents and electronic records that might be needed at trial, given that the materials may not have been adequately maintained over the years despite the parties' good faith efforts to preserve them." *Id.* at 16 (citing Prelim. Approval Hr'g Tr., ECF 190, at 27:7–28:11, 28:17–29:4). Moreover, "the time that has passed since the alleged conduct underlying Plaintiff's claims has occurred may make it difficult for trial witnesses to recall the events at issue." *Id.* (citing Prelim. Approval Hr'g Tr., ECF 190, at 27:7–9 (Class Counsel noting that "the risk is even exacerbated here because memories fade"), 28:17–21 (raising similar concern from Defendants' perspective)).

For all of these reasons, the Court finds that the $1,000,000 proposed settlement eliminates substantial risks Plaintiff would face in establishing Defendants' liability and favors the motion for final settlement approval. *See In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 177; *see also Massiah v. MetroPlus Health Plan, Inc.*, No. 11-CV-5669 (BMC), 2012 WL 5874655, at *4 (E.D.N.Y. Nov. 20, 2012) (explaining that "[o]ne purpose of a settlement is to avoid the uncertainty of a trial on the merits"); Fed. R. Civ. P. 23(e)(2)(C)(i).

e. Risks of Establishing Damages

Plaintiff also faces substantial risks in proving significant damages. Class Counsel notes that "class certification is not guaranteed, as Defendants would surely oppose certification if the case proceeds." Mem., ECF 195, at 16. Counsel concedes that Plaintiff "would have to overcome, among other things, defenses []: (1) that Defendants did not wrongfully deduct all drivers' wages for shortages; and (2) that the Class claims for unpaid overtime lack common support and are not actionable." *Id.* Moreover, because "the resolution of liability issues, the outcome of trial, and the inevitable appeals are inherently uncertain in terms of outcome and duration," these factors could result in a smaller ultimate recovery to the Settlement Class. *Id.* at 16–17.

In light of these risks, the Court finds this factor also favors settlement. *See* Fed. R. Civ. P. 23(e)(2)(C)(i).

f. Risks of Maintaining a Class Action Through Trial

"Courts generally acknowledge that a contested motion to certify a class would pose at least some increased risk that class certification might be denied." *Mikhlin v. Oasmia Pharm. AB*, No. 19-CV-4349 (NGG) (RER), 2021 WL 1259559, at *6 (E.D.N.Y. Jan. 6, 2021) (citing *Payment Card*, 330 F.R.D. at 39–40). Here, where the parties stipulated to class certification for the purpose of settlement, "[t]he risks attendant to certifying a class and defending any decertification motion supports approval of the settlement." *Lea*, 2021 WL 5578665, at *10 (citing *Garland v. Cohen & Krassner*, No. 08-CV-4626 (KAM) (RLM), 2011 WL 6010211, at *8 (E.D.N.Y. Nov. 29, 2011)); *see also In re Facebook, Inc. IPO Sec. & Derivative Litig.*, No. 12-MD-2389 (RWS), 2015 WL 6971424, at *5 (S.D.N.Y. Nov. 9, 2015) ("The risk of maintaining a class throughout this long and protracted litigation weighs in favor of settlement approval.").

g. Ability of Defendants to Withstand a Greater Judgment

"This factor stands for the proposition that if a defendant could not withstand a greater judgment than what is provided for in the settlement, then the settlement is more likely to be reasonable, fair, and adequate." *In re Graña y Montero S.A.A. Sec. Litig.*, 2021 WL 4173684, at *14. As to this factor, neither party has claimed that the proposed settlement amount approaches the upper limit of Defendants' ability to pay. *See* Mem. & Order, ECF 191, at 23; Prelim. Fairness Hr'g, ECF 190, at 39:1–40:5, 40:11–41:3. At the preliminary fairness hearing, Class Counsel noted that Plaintiff is "settling the claim based upon the valuation that [Class Counsel] actually ascribed the damages that [they] find provable as opposed to giving" Defendants "a big discount." Prelim. Fairness Hr'g, ECF 190, at 40:23–41:3; *see also* Mem., ECF 195, at 28. Class Counsel asserts that "this factor is neutral." Mem., ECF 195, at 28.

"[A]gainst the weight of the remaining factors, this fact alone does not undermine the reasonableness" of a settlement. *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 696 (S.D.N.Y. 2019) (quotation marks omitted); *see Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 178 (W.D.N.Y. 2011) ("It is more important to assess the judgment in light of plaintiffs' claims and the other factors . . . ."). Rather, "[t]his factor must be weighed in conjunction" with the others. *In re AOL Time Warner, Inc.*, No. 02-CV-5575 (SWK), 2006 WL 903236, at *12 (S.D.N.Y. Apr. 6, 2006); *see Caccavale v. Hewlett-Packard Co.*, No. 20-CV-0974 (NJC) (ST), 2025 WL 882220, at *14 (E.D.N.Y. Mar. 14, 2025), *report and recommendation adopted*, 2025 WL 882221 (E.D.N.Y. Mar. 21, 2025). Accordingly, as this Court previously concluded, although the proposed $1,000,000 settlement may be less than Defendants' theoretical capacity to pay, the Court finds that this factor does not preclude final settlement approval given that the settlement amount

represents a substantial percentage of the estimated damages, as discussed *infra* with respect to the final two *Grinnell* factors. *See* Mem. & Order, ECF 191, at 23.

h. Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and in Light of All Attendant Risks of Litigation

These final two *Grinnell* factors "are often combined for the purposes of analysis." *Payment Card*, 330 F.R.D. at 47–48. "In considering the reasonableness of the settlement fund, a court must compare the terms of the compromise with the likely rewards of litigation." *Id.* at 48 (quotation marks omitted); *see also* Fed. R. Civ. P. 23(e)(2)(C)(i); *Caccavale*, 2025 WL 882220, at *14 ("A proposed settlement that is only a 'fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.'" (quoting *Payment Card*, 330 F.R.D. at 48)). "[S]ettlements have been approved as reasonable where the settlement provides a 'meaningful benefit' to the class." *Burns*, 2014 WL 12917621, at *5 (quoting *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d at 340).

Here, the $1,000,000 settlement "is more than 60% of the approximately $1.65 million in pecuniary harm Class Counsel calculated in its damages model." Mem., ECF 195, at 28; *see* Mem. & Order, ECF 191, at 23–24. While "there is a possibility that at trial the Class might obtain a higher amount, . . . those outcomes are not guaranteed and would require Class Members to wait additional years for payment from this matter, assuming such payments were even ordered and collected from Defendants." Mem., ECF 195, at 28–29 (emphasis omitted).

Based on the substantial litigation risks discussed above, because the settlement is reasonably calculated to compensate the Class Members for their injuries, and in light of the fact that the settlement here was reached with the assistance of experienced mediators, the Court concludes that the settlement amount is within a reasonable range.

*See Grinnell*, 495 F.2d at 455 n.2 ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."); *see also In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 270 (S.D.N.Y. 2012) ("It is well-settled that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair." (quotation marks omitted)); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 483 (S.D.N.Y. 2009) (approving $586 million settlement that represented only two percent of aggregate expected recovery); *Caccavale*, 2025 WL 882220, at *14 (approving $625,000 settlement that represented 16.5% of the plaintiff's expert calculations).

3. *Allocation of Settlement Fund*

The method of distributing relief and processing class member claims also supports approving the settlement. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii). Like the settlement agreement itself, the plan of allocation "must also be fair and reasonable." *In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. at 316; *see also In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 158 (S.D.N.Y. 2013) ("When formulated by competent and experienced counsel, a plan for allocation of net settlement proceeds need have only a reasonable, rational basis." (quotation marks omitted)). Furthermore, a proposed "'claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding.'" *Payment Card*, 330 F.R.D. at 40 (quoting Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment). Here, the Court incorporates the discussion in its March 27, 2026 Memorandum and Order and finds that the method for processing settlement class members' claims and distributing the net settlement fund to eligible claimants, which does not even require class

members to file a claim form, is highly efficient and is, overall, "fair and reasonable." *In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. at 316; *see* Mem. & Order, ECF 191, at 16–19.

*4. Identification of Other Agreements*

Federal Rule of Civil Procedure 23(e) requires the Court to take into account "any agreement made in connection with" the proposed settlement. Fed. R. Civ. P. 23(e)(2)(C)(iv), (e)(3). Here, Class Counsel represent that "there are no such agreements." Mem., ECF 195, at 10 n.5. The parties further confirmed at the preliminary fairness hearing and final fairness hearing that there are no other agreements amongst the parties. Prelim. Fairness Hr'g, ECF 190, at 34:9–22; Hr'g Tr., ECF 199, at 22:12–17. Accordingly, this factor weighs in favor of final approval of the settlement.

**C. Attorneys' Fees and Costs & Plaintiff's Award**

The Court must also consider "the terms of any proposed award of attorney's fees." Fed. R. Civ. P. 23(e)(2)(C)(iii). Here, Class Counsel seek an attorneys' fee award of $333,333, which equals one-third of the settlement amount, along with $4,559.19 in costs. *See* Mem., ECF 195, at 19. Class Counsel contend that these amounts are warranted based upon the risks involved in the litigation, the quality of counsel, and the fees granted in similar class action litigations. *See generally id.* In addition, Class Counsel seek a $15,000 award for the named Plaintiff. *See id.* at 30; Wittels Decl., ECF 196, ¶¶ 65–70. Having reviewed the documents submitted by counsel in support of their requests, including attorney declarations, billing records, and counsel's declaration for the claimed costs, the Court finds that attorneys' fees totaling $333,333, costs totaling $4,559.19, and $15,000 for the named Plaintiff are reasonable and therefore approves the requested fees, costs, and award.

*1. Attorneys' Fees*

When determining appropriate counsel fees in class actions, courts generally use "the lodestar method or award[] fees based on a percentage of the settlement fund." *In re Parking Heaters, Antitrust Litig.*, No. 15-MC-0940 (DLI) (JO), 2019 WL 8137325, at *6 (E.D.N.Y. Aug. 15, 2019) (citing *Cohan v. Columbia Sussex Mgmt., LLC*, No. 12-CV-3203 (AKT), 2018 WL 4861391, at *1 (E.D.N.Y. Sept. 28, 2018) (citing *Goldberger*, 209 F.3d at 47)), *report and recommendation adopted*, Sept. 30, 2019 ECF Order Adopting R. & R. The "lodestar method" multiplies a reasonable number of hours spent on the case by a reasonable hourly rate, whereas the "common fund method calculates the fee amount as a percentage of the" total award. *Id.* (citing *Cohan*, 2018 WL 4861391, at *1 (citing *McDaniel v. County of Schenectady*, 595 F.3d 411, 417–22 (2d Cir. 2010))). Courts using the percentage of the fund method, which is the "trend in this Circuit," will also "cross-check the percentage fee against counsel's 'lodestar' amount of hourly rate multiplied by hours spent." *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 2015 WL 6971424, at *9 (citing *Wal-Mart Stores*, 396 F.3d at 121; *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 163 (S.D.N.Y. 2011) (quotation marks omitted)). Under either method, courts will also consider the following *Goldberger* factors: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *In re Parking Heaters, Antitrust Litig.*, 2019 WL 8137325, at *7 (citing *Goldberger*, 209 F.3d at 50); *see also Burns*, 2014 WL 12917621, at *8 (same).

As discussed, Class Counsel seek one-third of the settlement fund, or $333,333. Mem., ECF 195, at 32. This amount "is barely 10% of the actual lodestar time expended over ten years to achieve this result," *id.*, and constitutes approximately 14% of

counsel's aggregate lodestar amount, which is $2,355,198 billed for 2,937 hours worked, Wittels Decl., ECF 196, at 14 n.5. *See* Time Records, ECF 193-1 (submitted under seal). Analyzing this requested award against the *Goldberger* factors and cross-checking it against the lodestar both favor approval of the requested fees.

a. Goldberger Factors

As to the first and second *Goldberger* factors, the time and labor expended by Class Counsel in this case are reasonable considering the duration and complexity of the litigation, which has been proceeding for over 10 years, required litigating two motions for summary judgment, and included multiple rounds of settlement negotiations with the assistance of professional mediators. *See* Mem., ECF 195, at 27. As Class Counsel asserts, "the magnitude and complexity of this multi-year lawsuit is evident in almost every aspect of the case: the number of employees affected, the breadth of Class Counsel's investigation, the amount of computerized data and discovery involved, the extensive pleading and motion practice, and the hard-fought and lengthy settlement process." *Id.* at 35–36. Moreover, the claimed time expended is supported by Class Counsel's declaration and corresponding billing records. *See* Wittels Decl., ECF 196, ¶¶ 45–56; Time Records, ECF 193-1.

The third factor, the risk of litigation, which is "often cited as the . . . most important[] *Goldberger* factor," weighs in favor of approving the requested fee, as "[c]lass counsel undertook this litigation on a contingent basis and have received no payment for their work" in the over ten years this case has been pending. *Lea*, 2021 WL 5578665, at *12 (citing *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d at 361; *Goldberger*, 209 F.3d at 54); *see* Mem., ECF 195, at 36–37; Wittels Decl., ECF 196, ¶ 48. Indeed, Class Counsel note that "Class Counsel's willingness to invest ten years of effort on a purely contingent basis, with no guarantee of any payment, reflects precisely

the kind of risk that warrants full compensation." Mem., ECF 195, at 37. As discussed above, the litigation risk with respect to both liability and damages is significant, and "[w]ithout Class Counsel's willingness to risk significant resources and years of effort on this case, it is extremely unlikely that a meaningful number of Class Members would have received any compensation at all." Wittels Decl., ECF 196, ¶ 50. The settlement agreement assures "real recovery for workers who had no other realistic avenue for relief." *Id.* ¶ 51.

With respect to the fourth factor, as noted above, Class Counsel possess substantial experience litigating wage and hour class action cases and have provided quality representation to Plaintiff and Class Members by, among other things, litigating this case for over ten years and successfully negotiating a settlement. *See, e.g.*, Mem., ECF 195, at 37–38; Wittels Decl., ECF 196, ¶ 5; Mem. & Order, ECF 191, at 12–13, 28–29, 37; *see also generally* Firm Resume, ECF 196-2.

In analyzing the fifth factor, the Court notes that the requested one-third fee constitutes a proportion routinely approved as reasonable, and no opposition to the request has been advanced by the settlement Class Members. *See, e.g.*, *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, 991 F. Supp. 2d 437, 445 (E.D.N.Y. 2014) ("[I]t is very common to see 33% contingency fees in cases with funds of less than $10 million . . . ."); *see also Burns*, 2014 WL 12917621, at *10; Mem., ECF 195, at 38.

Finally, public policy considerations also favor approval of the requested fee amount. *See Wal-Mart Stores*, 396 F.3d at 116 (recognizing the "strong judicial policy in favor of settlements, particularly in the class action context" (quotation marks omitted)); *Nyarko v. M&A Restoration & Project*, No. 18-CV-5194 (ST), 2025 WL 2711427, at *3 (E.D.N.Y. Sept. 23, 2025) (finding that "public policy also favors approval of attorneys'

fees because FLSA and NYLL are remedial statutes designed to protect the wages of workers" and that "class actions safeguard public rights by ensuring plaintiffs have a realistic day in court, one they may not have had they brought claims individually" (quotation marks omitted); *see also* Mem., ECF 195, at 39–40.

b. Lodestar Cross-Check

The requested fees are also reasonable under the lodestar method. As of the date the final approval motion and accompanying declaration were filed, Class Counsel represented that they had spent "nearly 3,000 hours of work across more than ten years of investigation, litigation, and settlement," producing an aggregate lodestar amount of $2,355,198 when multiplied by counsel and staff's hourly billing rates. Mem., ECF 195, at 41; *see* Wittels Decl., ECF 196, ¶¶ 55–56; *id.* at 14 n.5; Time Records, ECF 193-1. Counsel's lodestar equals over 706% of counsel's total requested fee. This calculation results in a "negative" lodestar multiplier of just over 0.14, which is well below the range of multipliers awarded by courts in this circuit and "represents a substantially discounted charge for the services Class Counsel rendered to Class Members and the public on a purely contingency basis." Wittels Decl., ECF 196, ¶¶ 59–60 (observing that "comparing the lodestar to the requested fee yields a negative multiplier of 0.14 — an 86% discount on the fair-market value of their legal services" (emphasis omitted)); *see* Mem., ECF 195, at 41–43 (emphasizing that Class Counsel is "***not*** seeking a multiplier, even though the ten years of pure contingency work, the complexity of the litigation, and the excellence of the result would plainly have warranted one" and that "Class Counsel voluntarily reduced their lodestar through the exercise of billing judgment"); *see also Lozada v. TaskUs, Inc.*, No. 22-CV-1479 (JPC) (GS), 2025 WL 3125848, at *11 (S.D.N.Y. Nov. 6, 2025) ("A negative multiplier strongly suggests that the requested fee amount is reasonable.") (collecting cases), *report and recommendation adopted*, 2025 WL

3482752 (S.D.N.Y. Dec. 4, 2025), *judgment entered*, 2025 WL 3482756 (S.D.N.Y. Dec. 4, 2025).

The Court notes that although Class Counsel's lodestar calculation reflects hourly rates that exceed those normally approved in this district for similar services,[5] *see* Wittels Decl., ECF 196, ¶ 55, "the Court need not finely parse either the reasonableness of the hours billed to this case or the reasonableness of counsel's hourly rates" due to the negative multiplier, *Lozada*, 2025 WL 3125848, at *11. *See In re KeySpan Corp. Sec. Litig.*, No. 01-CV-5852 (ARR), 2005 WL 3093399, at *14 (E.D.N.Y. Sept. 30, 2005) ("The reasonable hourly rates should be based on the rates 'prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation.'" (quoting *Cruz v. Local Union No. 3*, 34 F.3d 1148, 1159 (2d Cir. 1994) (internal quotation marks omitted))); *Rosenfeld*, 2022 WL 2093028, at *4 (approving hourly rates ranging from $225 to $900, which are "regularly accepted in this Circuit" as "well within the range of reasonableness" in a large class action settlement); *Everetts v. Pers. Touch Holding Corp.*, No. 21-CV-2061 (JMA) (ARL), 2025 WL 942800, at *5 (E.D.N.Y. Mar. 28, 2025) (noting that recent cases have approved awards ranging from $100 per hour for paralegals to up to $630 per hour for partners). However, even applying, *arguendo*, reduced hourly rates to the number of hours reflected in Class Counsel's time records, a reasonable aggregate lodestar is $1,430,240, which amounts to approximately 429% of

---

[5] Class Counsel lists an hourly rate of $480 for associates, $505 for senior associates, $675 for counsel, and $890 to $1,185 for partners working on this matter. *See* Wittels Decl., ECF 196, ¶ 55.

the requested fee amount and would produce a lodestar multiplier of approximately 0.23 relative to the requested fee amount.[6] *See generally* Time Records, ECF 193-1.

Even at this reduced amount, the lodestar produces a negative multiplier and is lower than those typically deemed reasonable in this Circuit. *Lozada*, 2025 WL 3125848, at *11 (collecting cases); *City of Providence v. Aeropostale, Inc.*, No. 11-CV-7132 (CM) (GWG), 2014 WL 1883494, at *13 (S.D.N.Y. May 9, 2014) (finding a negative multiplier of 0.70 "well below the parameters used throughout district courts in the Second Circuit" and observing that it "affords additional evidence that the requested fee is reasonable"), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015) (summary order). Moreover, counsel will expend additional time on this litigation following the adjudication of this motion, which will increase any lodestar calculations and further decrease the lodestar multiplier. Wittels Decl., ECF 196, ¶ 58. Accordingly, the lodestar cross-check also favors approval of the amount of fees awarded in the settlement.

In light of the foregoing, the Court approves Class Counsel's request for attorneys' fees in the amount of one-third of the settlement fund, or $333,333.

2. *Attorneys' and Claims Administration Expenses*

"The Court may award counsel reasonable out-of-pocket expenses that were necessary to successfully litigate and resolve the action." *Burns*, 2014 WL 12917621, at *11 (citing *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d at 363–64; *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. at 468). Class Counsel request reimbursement in

---

[6] The Court calculated this reduced lodestar by multiplying the hours spent on the litigation by hourly rates that courts in this district generally find reasonable, *i.e.*, $600 for partners, $450 for attorneys who hold the position of counsel, $400 for senior associates, and $300 for associates. *See Rubin v. HSBC Bank USA, NA*, 763 F. Supp. 3d 233, 243–44 (E.D.N.Y. 2025).

the amount of $4,559.19 for expenses incurred while prosecuting this action.[7] Mem., ECF 195, at 32; Wittels Decl., ECF 196, ¶¶ 47, 64. At the final fairness hearing, the Court commended Class Counsel for "keeping the expenses under control while zealously advocating" for Plaintiff and the Class "given the length of the history of this case." Hr'g Tr., ECF 199, at 22:3–9. Additionally, as set forth above, the notice distributed to Class Members included information about these expected costs, notified Class Members that counsel may seek expenses of up to $15,000, and there have been no objections to the proposed settlement. *See* Wittels Decl., ECF 196, ¶ 64; Revised Long Form Notice, ECF 187-1, at 7.

The parties also estimated up to $30,500 in costs associated with Arden's settlement administration, which was disclosed to the Class in the notice. *See* Arden Decl., ECF 196-4, at ECF p. 11. As of the July 22, 2026 Fairness Hearing, Class Counsel confirmed that estimate remained accurate. Hr'g Tr., ECF 199, at 16:19–17:3. As set forth above, there has been no objection to the proposed settlement, including these expected costs. *See* Arden Decl., ECF 196-4, at ECF p. 11; *see also id.* ¶¶ 12–13, 16; Wittels Decl., ECF 196, ¶¶ 36, 44; Hr'g Tr., ECF 199, at 6:13–15.

Having reviewed counsel's declaration, and given the complexity of the underlying claims and settlement administration, as well as the fact that the notice distributed to Class Members noted the exclusion of Court-approved costs from the settlement fund, the Court finds that the claimed costs were, on the whole, reasonably expended and that they should be paid for from the settlement fund. *See* Wittels Decl.,

[7] The $4,559.19 in costs comprises (1) $265.21 in administrative costs (binding, mailing, printing, etc.); (2) $400 in court costs (court filings, process servers, etc.); (3) $1,907.10 in deposition costs (reporters, transcripts, Realtime, video, etc.); (4) $1,700 in mediator costs; (5) $200.55 in transcript costs; and (6) $86.33 in travel/food. Wittels Decl., ECF 196, ¶ 64.

ECF 196, ¶ 17; Revised Long Form Notice, ECF 187-1, at 7. Accordingly, the Court approves the request for an award of attorneys' expenses in the amount of $4,559.19, and the payment of settlement administration costs to Arden in the amount of $30,500.

*3. Plaintiff's Award*

"Incentive awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs." *In re Parking Heaters, Antitrust Litig.*, 2019 WL 8137325, at *8 (quotation marks omitted); *see also Hernandez v. Immortal Rise, Inc.*, 306 F.R.D. 91, 101 (E.D.N.Y. 2015).

Here, the Class Representative seeks an award of $15,000 in connection with his representation of the Settlement Class. Mem., ECF 195, at 25–26, 30–32; *see* Hr'g Tr., ECF 199, at 13:23–15:21. Class Counsel has detailed the Class Representative's efforts in this action since it was initiated more than 10 years ago. In addition to lending his name to the case caption, Plaintiff "served as the sole named plaintiff for the overwhelming majority of this [10]-year litigation, reviewed and discussed the pleadings, repeatedly conferred with Class Counsel on case progress, litigation strategy, and settlement, prepared and appeared for a deposition, and repeatedly made himself available on many occasions to promptly respond to Class Counsel's questions, requests for documents and information about the claims and litigation." Mem., ECF 195, at 31; *see also* Wittels Decl., ECF 196, ¶¶ 66–67. The incentive award requested in this case is in line with others that have been awarded in the Second Circuit. *See, e.g.*, *Hernandez v. Merrill Lynch & Co., Inc.*, No. 11-CV-8472 (KBF) (DCF), 2013 WL 1209563, at *11 (S.D.N.Y. Mar. 21, 2013) (approving service awards to the named plaintiffs ranging from $12,500 to $15,000); *Puglisi v. TD Bank, N.A.*, No. 13-CV-0637 (GRB), 2015 WL

4608655, at *1 (E.D.N.Y. July 30, 2015) (approving service awards for the named plaintiffs ranging from $10,000 to $15,000); *Fteja v. Nusret New York LLC*, No. 19-CV-0429 (KHP), 2020 WL 4038344, at *3 (S.D.N.Y. July 17, 2020) (approving $15,000 service award for the named plaintiff). Given Plaintiff's substantial contributions in this case, the Court approves the application for an incentive award of $15,000 to Mr. Swanson.

**CONCLUSION**

For the foregoing reasons, the Court grants Plaintiff's motion for final settlement approval, attorneys' fees and expense reimbursement, and incentive award to Plaintiff. *See* Mot., ECF 194. The Court also enters the attached final approval order.

**SO ORDERED.**

Dated: Brooklyn, New York
October 5, 2026

Taryn A. Merkl
TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE